**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOSEPH S. BEALE,

        PLAINTIFF

v.

REVOLUTION PORTFOLIO, LLC; and
SECURITY LIFE OF DENVER
INSURANCE COMPANY,

        DEFENDANTS.

CASE NO. 07-06909

Judge Kocoras
Magistrate Judge Valdez

**ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIM OF REVOLUTION PORTFOLIO, LLC**

Defendant REVOLUTION Portfolio, LLC ("REVOLUTION") responds to the numbered

paragraphs of the Verified Complaint for Specific Performance, Injunction, and Other Relief (the

"Complaint") as follows:

1.     This action arises out of an amendment to a settlement agreement between Beale

and Revolution. In that amendment, Revolution required that Beale make certain payments and

transfer to Revolution an insurance policy on Beale's life -- issued by ING -- in exchange for

releases in favor of Beale. However, Revolution insisted on strict deadlines in the amendment

and then intentionally interfered with Beale's compliance with those deadlines, causing delays.

Based on these delays -- all of which were of its own doing -- Revolution has falsely claimed that

Beale has breached the amendment and, consequently, it has failed and refused to perform

thereunder. In doing so, Revolution has wrongfully retained all of the benefits that Beale

provided to it pursuant to the amendment including the ING life insurance policy -- while

simultaneously pursuing at least one action against Beale that it was supposed to have released.

ANSWER:  REVOLUTION admits that it entered into a First Amendment to Settlement Agreement with Plaintiff Joseph S. Beale ("Beale") on or about June 26, 2007 which required Beale to make certain payments, procure an insurance policy, and take certain additional actions. REVOLUTION further admits that it required Beale to honor all of his obligations under this agreement, including his obligation to timely perform all obligations. REVOLUTION denies all remaining allegations contained in paragraph 1 of the Complaint.

2.      Beale brings this action for, among other things: (a) specific performance of the settlement agreement as amended; and (b) an injunction against Revolution to prevent it from proceeding with lawsuits on the claims it was required to release; or, in the alternative (c) rescission of the amendment to the settlement agreement due to Revolution's substantial nonperformance thereof and the imposition of a constructive trust against Revolution, compelling it to disgorge the benefits that it received pursuant to the amendment to the settlement agreement.

ANSWER: Paragraph 2 of the Complaint contains statements relating to the relief sought by Beale under the Complaint and, therefore, requires no response from REVOLUTION.  To the extent that a response is required, REVOLUTION denies that Beale is entitled to any of the relief he is seeking.

3.      Beale is an individual who consents to the personal jurisdiction of Illinois for purposes of this dispute.

ANSWER: REVOLUTION admits the allegations contained in paragraph 3 of the Complaint.

4.      Revolution is a Virginia limited liability company. This Court has personal

jurisdiction over Revolution because it expressly consented to the jurisdiction of Illinois state courts in the settlement agreement out of which this action arises. Additionally, this Court has personal jurisdiction over Revolution under 735 ILCS 5/2-209(a)(l) because Revolution has transacted business within the State of Illinois out of which this action arises, and under 735 ILCS 512-209(a)(7) because Revolution made a contract in this State out of which this lawsuit arises.

ANSWER: REVOLUTION admits that it is a Virginia limited liability company and further admits that it has consented to this Court's jurisdiction in connection with the dispute over the First Amendment raised by Beale in the Complaint. REVOLUTION denies all remaining allegations contained in paragraph 4 of the Complaint.

5.      ING is a Colorado corporation doing business as ING. This Court has personal jurisdiction over IING under 735 ILCS 5/2-209(a)( 1) because IING has transacted business within the State of Illinois out of which this lawsuit arises, and under 735 ILCS 5/2-209(a)(4) because ING contracted to insure a person located within Illinois at the time of contracting

ANSWER: REVOLUTION is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6.      Venue is proper in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-101 because, among other things: (a) Defendants in this action are all nonresidents of the State of Illinois and, thus, venue is proper in any county; and (b) because the transactions out of which the causes of action alleged herein arose occurred in Cook County, Illinois.

ANSWER:  Paragraph 6 of the Complaint contains a statement of law to which no response is required from REVOLUTION.

7.      Revolution is in the business of, among other things, purchasing judgments from

litigants at a discount and attempting to collect on the judgments that it purchases, In this capacity, Revolution purchased a judgment that had been rendered against Beale (the "Judgment").

ANSWER: REVOLUTION admits that it is the holder of a judgment and other claims against Beale. REVOLUTION denies all remaining allegations contained in paragraph 7 of the Complaint.

8.    After it purchased the Judgment, on or about March 5, 2004, Revolution initiated involuntary Chapter 7 bankruptcy proceedings against Beale (the "Bankruptcy Proceedings').

ANSWER: REVOLUTION admits that it was one of four petitioning creditors that initiated Beale's bankruptcy proceeding with an involuntary petition. REVOLUTION denies all remaining allegations contained in paragraph 8 of the Complaint.

9.    In connection with these Bankruptcy Proceedings, the bankruptcy trustee instituted certain adversary proceedings against Beale and certain third-parties (the "Adversary Proceedings").

ANSWER: REVOLUTION admits the allegations contained in paragraph 9 of the Complaint.

10.    Beale, the bankruptcy trustee and the third parties desired to settle the Adversary Proceedings and, to that end, entered into a settlement agreement on or about November 15, 2005 (the "Bankruptcy Settlement Agreement").

ANSWER: REVOLUTION admits that Beale, his bankruptcy trustee, and certain other parties entered into a settlement agreement which was subsequently approved by the Bankruptcy Court. REVOLUTION is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint.

11.    Beale then entered into a separate settlement agreement with Revolution on or about December 12, 2005 (the "Revolution Settlement Agreement"), a copy of which is attached hereto as Exhibit A. Pursuant to the Revolution Settlement Agreement, Revolution agreed, among other things: (a) to release claims that it had against Beale; and (b) not to object to the Bankruptcy Settlement Agreement. In exchange, Beale agreed, among other things, to make a payment to Revolution in the amount of $350,000 and to attempt to secure a $1.25 million life insurance policy on his own life (the "Policy") and transfer ownership thereof to Revolution.

ANSWER: REVOLUTION admits that Beale and REVOLUTION executed a Settlement Agreement dated as of December 12, 2005 (the "Original Agreement"). Further responding, REVOLUTION states that the Original Agreement is a written document that speaks for itself. To the extent that the allegations and characterizations contained in paragraph 11 of the Complaint are contradicted by, or different from, those contained in the Original Agreement, REVOLUTION denies those allegations and characterizations.

12.    Because Beale and Revolution did not know when -- or even if -- a life insurance policy would be issued on Beale's life, the Revolution Settlement Agreement provided that Beale would "use all best efforts to obtain the Policy and [would] cooperate with REVOLUTION in obtaining the Policy." (Ex. A, ¶2(b)(ii).) Additionally, Beale was required to make certain payments to Revolution, which were to be applied toward the premiums on the Policy once it was issued. If Beale could not qualify for a life insurance policy, then his obligations with respect to the Policy would be deemed satisfied by his payment of the amounts that would otherwise have been applied to the Policy premiums. (j~) In other words, if Beale could not qualify for a life insurance policy, that would not undo the Revolution Settlement Agreement.

ANSWER: REVOLUTION admits that paragraph 12 of the Complaint contains an accurate partial quotation from section 2(b)(ii) of the Original Agreement.  Further answering, REVOLUTION states that the Original Agreement is a written document that speaks for itself.  To the extent that the allegations and characterizations contained in paragraph 12 of the Complaint are contradicted by, or different from, those contained in the Original Agreement, REVOLUTION denies those allegations and characterizations.

13.     Beale paid Revolution the $350,000 payment required by the Revolution Settlement Agreement.

ANSWER: REVOLUTION admits that it received $350,000.00 from Beale or on his behalf.  REVOLUTION denies all remaining allegations contained in paragraph 13 of the Complaint.

14.     Although Beale used his best efforts to obtain the Policy, due to certain health concerns, he was unable to immediately qualify for a life insurance policy. However, once those concerns were resolved, Beale did qualify for a life insurance policy issued by ING.

ANSWER: REVOLUTION admits that Beale eventually obtained a life insurance policy.  REVOLUTION denies all remaining allegations contained in paragraph 14 of the Complaint.

15.     Accordingly, on or about June 6, 2007, Beale informed Revolution that he had qualified for the Policy as specified in the Revolution Settlement Agreement.

ANSWER: REVOLUTION admits that Beale eventually notified it that he could obtain a life insurance policy.  REVOLUTION denies all remaining allegations contained in paragraph 15 of the Complaint.

16.     Despite the fact that there was no specific deadline for issuance of the Policy in the Revolution Settlement Agreement -- indeed, the agreement contemplated the possibility that the

Policy would never be issued -- Revolution argued that Beale had defaulted by not securing the Policy soon enough. Revolution used this argument to extract further concessions from Beale.

ANSWER: REVOLUTION admits that it advised Beale that he had committed one or more events of default under the Original Agreement. REVOLUTION denies all remaining allegations contained in paragraph 16 of the Complaint.

17.    In particular, Revolution refused to comply with the Revolution Settlement Agreement unless Beale would agree to, among other things: (a) make additional payments to Revolution; (b) sign a promissory note in favor of Revolution; and (c) amend the Revolution Settlement Agreement.

ANSWER: REVOLUTION admits that Beale's default under the Original Agreement eliminated one or more obligations it may have had under that same agreement. REVOLUTION denies all remaining allegations contained in paragraph 17 of the Complaint.

18.    Thus, in order to appease Revolution, Beale agreed to enter into an amendment to the Revolution Settlement Agreement. However, in drafts of the amendment, Revolution insisted on an onerous set of deadlines. For example, Revolution demanded that the Policy be issued, that it be transferred to Revolution, and that ING issue an acknowledgment demonstrating that the Policy had been issued and transferred to Revolution (the "Acknowledgment") -- all in less than one week after the amendment was to be signed.

ANSWER: REVOLUTION admits that Beale and REVOLUTION executed the First Amendment. REVOLUTION further admits that the First Amendment – which Beale signed - contained a number of performance deadlines, each of which was followed by the language, "TIME BEING OF THE ESSENCE." Further responding, REVOLUTION states that the First Amendment is a written document that speaks for itself. To the extent that the allegations and

characterizations contained in paragraph 18 of the Complaint are contradicted by, or different from, those contained in the First Amendment, REVOLUTION denies those allegations and characterizations.

19.    In an attempt to meet these anticipated obligations, Beale worked with ING and insurance agents to make sure that the Policy would be issued and transferred to Revolution upon payment of the required premium while, at the same time, the amendment to the Revolution Settlement Agreement was still being negotiated.

ANSWER: REVOLUTION is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.    By June 25, 2007, the amendment to the Revolution Settlement Agreement was substantially completed -- but not yet signed. Nevertheless, by that date, Beale had made all arrangements necessary with respect to the Policy so that it could be issued and transferred to Revolution upon the payment of the initial premium. Additionally, Beale made arrangements with ING to expedite the issuance and delivery of the Acknowledgment to Revolution.

ANSWER: REVOLUTION is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.    Due to the very tight deadlines, on June 26, 2007 -- even before the amendment was signed -- Beale sent an e-mail directly to Revolution's outside counsel, Jeffrey Ganz ("Ganz"), inquiring about the procedures the parties could use to ensure that ING would issue the Acknowledgment to Revolution on time. On the same date, Revolution's counsel Ganz responded in an e-mail to Beale's counsel, Scott Clar ("Clar"), in which Ganz refused to answer Beale's questions. Nevertheless, Beale persisted in his efforts to make arrangements with

Revolution and Ganz, both directly and through Clar, to expedite the issuance of the Policy and delivery of the Acknowledgment

ANSWER: REVOLUTION admits that Beale, Beale's counsel and REVOLUTION's counsel exchanged a number of communications via electronic mail at or near the time the First Amendment was executed.  Further responding, REVOLUTION states that each of these communications is a writing that speaks for itself.  To the extent that the allegations and characterizations contained in paragraph 21 of the Complaint are contradicted by, or different from, those contained in the communications, REVOLUTION denies those allegations and characterizations.

22.     On June 27, 2007, Beale executed the First Amendment to the Revolution Settlement Agreement (the "Amendment"), which was sent to Ganz for Revolution's execution. A copy of the Amendment is attached hereto as Exhibit B. Additionally, Beale executed other documents to cause the Policy to be transferred to Revolution upon the payment of the initial premium, and he further delivered certain signed documents to Revolution to allow it to re-sell the Policy including, among other things, HIPAA-complaint medical release forms and a Durable Power of Attorney (collectively, the "Re-Sale Authorizations"), all of which were required under the Amendment -- but not under the original Revolution Settlement Agreement.

ANSWER: REVOLUTION admits that, on or about June 27, 2007, Beale executed a number of documents – including the First Amendment - and caused them to be delivered to REVOLUTION's counsel at various times. Further responding, REVOLUTION states that each document is a written document that speaks for itself.  To the extent that the allegations and characterizations contained in paragraph 22 of the Complaint are contradicted by, or different

from, those signed by Beale and delivered to REVOLUTION's counsel, REVOLUTION denies those allegations and characterizations.

23.    Under the Amendment, on or before June 29, 2007, Beale also was to make two cash payments to Revolution (by wire transfer) in the total amount of $67,500. Upon receipt of these payments, Revolution was required to sign and deliver a release of lien concerning certain real estate located in Florida (the "Florida Property"), to be held in escrow (the "Florida Release"), and to promptly notify Beale that it had done so. On or before July 2, 2007, Beale was further required to make an additional payment to Revolution of $115,500.

ANSWER: REVOLUTION admits that the First Amendment  - which was signed by Beale - contained a number of performance deadlines by which Beale was required to make certain payments to REVOLUTION , each of which was followed by the language "TIME BEING OF THE ESSENCE."  Further responding, REVOLUTION states that the First Amendment is a written document that speaks for itself.  To the extent that the allegations and characterizations contained in paragraph 23 of the Complaint are contradicted by, or different from, those contained in the First Amendment, REVOLUTION denies those allegations and characterizations.

24.    Beale preferred to make this $1 15,500 payment from proceeds of a loan that he intended to make by using the Florida Property as collateral. Beale advised Revolution that it was his preference to do so, and that it was essential that the Florida Release be delivered to the title company processing Beale's loan so that the loan would be funded in time for Beale to make the $115,500 payment to Revolution by July 2, 2007. Beale further advised Revolution that he could not obtain a loan on the Florida Property without securing the Florida Release.

ANSWER: REVOLUTION admits that Beale requested REVOLUTION to deviate from the requirements of the First Amendment with respect to the $115,500.00 installment payment and certain other requirements imposed by that agreement. REVOLUTION further admits that Beale offered a number of reasons in support of his request. REVOLUTION denies all remaining allegations contained in paragraph 24 of the Complaint.

25.    Pursuant to the Amendment, the Acknowledgment also was due to Revolution on or before July 2, 2007. Before wiring the first payments totaling $67,500, at about noon on June 27, 2007, Beale sent an e-mail to Ganz (copying Clar) asking about a way that the parties could expedite the payment to ING of the initial premium for the Policy which, in turn, would expedite the delivery of the Acknowledgment to Revolution. Specifically, Beale wrote:

> Here's a thought for the two of you to consider. If I were to wire the funds directly to ING for the first year's premium, it will expedite the process. Assuming it's around $40,000, I could then wire the remaining $27,500 to Jeff Ganz. The Policy will then be in full force and the documents re: the transfer of ownership in place. I'm still focused on a close by Friday. Let me know and if you agree, and if so, we can work out the wire to ING. Joe

A copy of this June 27, 2007 e-mail is attached hereto as Exhibit C.

ANSWER: REVOLUTION admits that the First Amendment contained a number of performance deadlines to which Beale agreed, each of which was followed by the language "TIME BEING OF THE ESSENCE." Further responding, REVOLUTION states that the First Amendment is a written document that speaks for itself. To the extent that the allegations and characterizations contained in paragraph 25 of the Complaint are contradicted by, or different from, those contained in the First Amendment, REVOLUTION denies those allegations and

characterizations.   Further responding, REVOLUTION admits that, on or about June 27, 2007,

Beale delivered one or more communications to its counsel via electronic mail and that each

such communication is a writing that speaks for itself. To the extent that the allegations,

quotations, and characterizations contained in paragraph 25 of the Complaint are contradicted by,

or different from, those contained in Beale's communications, REVOLUTION denies those

allegations, quotations, and characterizations.

26.     Later that day, Beale sent another e-mail to Revolution's counsel asking: "Any

response to my memo about paying the ING payment?" A copy of this later June 27, 2007 e-mail

is attached hereto as Exhibit D.

ANSWER: REVOLUTION admits that, on or about June 27, 2007, Beale delivered one

or more communications to its counsel via electronic mail and that each such communication is a

writing that speaks for itself. To the extent that the allegations, quotations, and characterizations

contained in paragraph 26 of the Complaint are contradicted by, or different from, those

contained in Beale's communications, REVOLUTION denies those allegations, quotations, and

characterizations.

27.     Hours later, Ganz, on behalf of Revolution, told Beale and Clar that Revolution

could not agree or disagree with Beale's proposal to wire the initial premium payment directly to

ING. Beale then told Ganz that he would wire the entire $67,500 payment directly to Revolution,

and he did so. Revolution received and accepted the $67,500 from Beale on June 28, 2007.

ANSWER: REVOLUTION admits that, on one or more occasions, counsel to

REVOLUTION advised Beale that REVOLUTION would not grant Beale's request to deviate

from the terms and conditions of the First Amendment.  REVOLUTION admits that on or about

June 28, 2007, REVOLUTION's counsel received the sum of $67,500.00 via wire transfer.

28.     Further, on June 27, 2007, Beale told Ganz that he had learned from Revolution's own insurance agent, Stuart Youngentaub, that if Revolution sent the initial premium payment for the Policy to ING on June 28, 2007 -- i.e., the date that Revolution received the $67,500 from Beale -- then the Acknowledgment would be issued by ING on the following day, June 29, 2007 -- i.e., the Friday before the deadline of Monday, July 2, 2007.

ANSWER: REVOLUTION denies the allegations contained in paragraph 28 of the Complaint.

29.     Despite its receipt of the signed documents and money from Beale on June 28th, Revolution waited until June 29, 2007 to execute the Amendment.

ANSWER: REVOLUTION admits that its representative signed the First Amendment on June 29, 2007, the day he received it.  REVOLUTION denies all remaining allegations contained in paragraph 29 of the Complaint.

30.     Even worse, after signing the Amendment on June 29, 2007, Revolution delayed making the initial premium payment on the Policy to ING until July 2, 2007 -- the very same day that the Acknowledgment was due -- thereby ensuring that the Acknowledgment would ~ be issued on time. Thus, Revolution waited four days from its receipt of funds from Beale before it paid ING the initial premium.

ANSWER: REVOLUTION denies that it delayed in taking any action it was required to take under the First Amendment.  REVOLUTION admits that it paid the initial premium installment due under the life insurance policy procured by Beale.  REVOLUTION denies all remaining allegations contained in paragraph 30 of the Complaint.

31.     As a result of Revolution's own delay in paying the initial Policy premium, the Acknowledgment was not issued on July 2, 2007. Rather, it was issued one day late -- on July 3,

2007. A copy of the Acknowledgment is attached hereto as Exhibit E.

ANSWER: REVOLUTION denies the allegations contained in paragraph 31 of the Complaint.

32.    Additionally, despite receiving the $67,500 from Beale, Revolution failed to: (a) deliver the fully executed Florida Release; and (b) promptly notify Beale's counsel that it had done so, as expressly required under the Amendment. These failures were material breaches of the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 32 of the Complaint.

33.    If Revolution had not breached these material obligations, either: (a) Beale's loan on the Florida Property would have closed and Beale would have timely paid the additional $115,500 from the proceeds of that loan; or (b) Beale would have been on notice that the Florida Release was insufficient to cause the loan on the Florida Property to close and that he needed to make the additional $115,500 payment from another source, which he would have done. Either way, the $115,500 payment would have been made.

ANSWER: REVOLUTION denies the allegations contained in paragraph 33 of the Complaint.

34.    By engaging in the aforementioned tactics and breaches, Revolution materially breached the covenant of good faith and fair dealing implied in the Amendment, and interfered with, delayed and/or excused Beale's further performance under the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 34 of the Complaint.

35.    Moreover, Revolution used the aforementioned tactics and delays to issue a bogus

notice of default to Beale. Specifically, Revolution improperly claimed that Beale breached the Amendment because: (a) the Acknowledgment was late; and (b) the $115,500 payment was late --both of which were directly caused by Revolution. Based on these purported defaults, Revolution has failed and refused to perform under the Revolution Settlement Agreement and Amendment and, therefore, it has materially breached the same.

ANSWER: REVOLUTION admits that it provided Beale with written notice of certain events of default under the First Amendment. REVOLUTION denies all remaining allegations contained in paragraph 35 of the Complaint.

36.    Among other things, Revolution failed to: (a) deliver the Florida Release; (b) promptly give Beale notice that it delivered the Florida Release; (c) issue or deliver the general release also required by the Amendment and the Revolution Settlement Agreement (the "General Release"); and (d) honor the covenant not to sue contained in the Revolution Settlement Agreement and Amendment (the "Covenant Not To Sue"). Indeed, on or about July 9, 2007, Revolution instituted proceedings in Florida to execute on its lien against the Florida Property in a case captioned Revolution v. J. Beale, et al., Case No. 502007 CA 013090, pending in the Circuit Court for Palm Beach County, Florida (the "Florida Execution Proceedings").

ANSWER: REVOLUTION admits that it took certain action after Beale defaulted under the First Amendment including the filing of a lawsuit in Florida which Beale has labeled the "Florida Execution Proceedings." REVOLUTION further admits that it refrained from taking certain action that – but for Beale's defaults under the First Amendment – it would have been required to take. REVOLUTION denies all remaining allegations contained in the paragraph 36 of the Complaint.

37.    Revolution has wrongfully retained the benefits of the Revolution Settlement Agreement and the Amendment. Specifically, despite Beale's demand that Revolution return the benefits, Revolution has retained the Policy, the Re-Sale Authorizations, the $67,500 that Beale paid pursuant to the Amendment and all prior payments made by Beale to Revolution pursuant to the Revolution Settlement Agreement-- including the initial $350,000 payment. Moreover, Revolution is proceeding with the Florida Execution Proceedings in direct breach of its releases and covenant not to sue, despite its retention of all of the other benefits it received from Beale.

ANSWER: REVOLUTION denies the allegations contained in paragraph 37 of the Complaint.

38.    Due to Revolution's breach of the Revolution Settlement Agreement and Amendment, Beale contacted ING directly to revoke his transfer of the Policy to Revolution, and to request that the Policy be transferred back to Beale. Ganz, on behalf of Revolution, likewise contacted ING, and directed it not to honor Beale's request.

ANSWER: REVOLUTION denies that it committed a breach of the First Amendment. REVOLUTION admits that its counsel directed a letter to ING after learning that Beale had attempted to revoke certain actions he had previously taken.  Further responding, REVOLUTION asserts that its counsel's letter is a written document that speaks for itself. To the extent that the allegations and characterizations contained in paragraph 38 of the Complaint are contradicted by, or different from, those contained in the letter, REVOLUTION denies those allegations and characterizations.

39.    On July 18, 2007, ING responded to Beale and Ganz by letter, stating:

As a result of the conflicting opinion of the parties involved concerning the change in ownership, the Company has placed a "hold" on the policy. No transactions will

be permitted on the policy, other than premium payments, until this situation has

been resolved.

A true and correct copy of the July 18, 2007 letter is attached hereto as Exhibit F.

ANSWER: REVOLUTION admits that paragraph 39 of the Complaint contains a portion

of a quotation from a letter sent on behalf of co-defendant Security Life.

40.     Due to ING's "hold" on the Policy, Beale has been unable to re-obtain possession

of the Policy.

ANSWER: REVOLUTION denies the allegations contained in paragraph 40 of the

Complaint.

41.     Notwithstanding all of the foregoing, Beale has repeatedly offered to

simultaneously exchange all of the parties' remaining deliverables under the Amendment

through the use of a mutually acceptable escrow agent, which is what equity requires. Revolution

has refused.

ANSWER: REVOLUTION admits that, since he defaulted under the First Amendment,

Beale has made a number of proposals to take certain actions in an effort to cure or remedy his

defaults.

42.     Nevertheless, Beale stands ready, willing and able to fully perform his remaining

obligations under the Revolution Settlement Agreement and Amendment.

ANSWER: REVOLUTION is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 42 of the Complaint.

## COUNT I

43.     Beale incorporates by reference paragraphs 1 through 42 above as though fully set

forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

44.    The Revolution Settlement Agreement and Amendment are valid, binding and enforceable contracts.

ANSWER: REVOLUTION admits that the document that most recently embodied the terms of the agreement between REVOLUTION and Beale was the First Amendment that, as a result of Beale's actions and omissions, is now in default.  REVOLUTION denies all remaining allegations contained in paragraph 44 of the Complaint.

45.    Beale has fully complied with the material terms of the Revolution Settlement Agreement and Amendment, or his performance thereof has been excused or waived due to Revolution's actions and/or by operation of law.

ANSWER: REVOLUTION denies the allegations contained in paragraph 45 of the Complaint.

46.    Beale stands ready, willing and able to perform any and all remaining obligations thereunder.

ANSWER: REVOLUTION is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint.

47.    Revolution has materially breached the Amendment to the Revolution Settlement Agreement, and presently refuses to perform thereunder.

ANSWER: REVOLUTION denies the allegations contained in paragraph 47 of the Complaint.

48.    Beale has no adequate remedy at law.

ANSWER: REVOLUTION denies the allegations contained in paragraph 48 of the Complaint.

49.    Accordingly, the Court should order Revolution to specifically perform all of its obligations under the Amendment, including, without limitation, delivering to Beale the Florida Release and the General Release.

ANSWER: REVOLUTION denies the allegations contained in paragraph 49 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## COUNT II

50.    Beale incorporates by reference paragraphs I through 42 above as though fully set forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

51.    Pursuant to the Revolution Settlement Agreement and its Amendment, among other things, Revolution is required to sign and deliver the Florida Release, discharge its lien on the Florida Property, and it is prohibited from suing thereon.

ANSWER: In light of Beale's failures to comply with his obligations under the First Amendment, REVOLUTION denies the remaining allegations contained in paragraph 51 of the Complaint.

52.    Revolution's institution and ongoing pursuit of the Florida Execution Proceedings is in direct violation of the terms of the Settlement Agreement, including but not limited to Sections 2 through 4 thereof.

ANSWER: REVOLUTION denies the allegations contained in paragraph 52 of the Complaint.

53.    Beale has no adequate remedy at law with respect to Revolution's breaches set forth herein.

ANSWER: REVOLUTION denies the allegations contained in paragraph 53 of the Complaint.

54.    Beale will be irreparably harmed if the relief requested herein is not granted.

ANSWER: REVOLUTION denies the allegations contained in paragraph 54 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## **COUNT III**

55.    Beale incorporates by reference paragraphs I through 42 above as though fully set forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

56.    This Count is pleaded in the alternative to Counts I and II and applies in the event that the Court does not grant the relief sought therein.

ANSWER: Paragraph 56 of the Complaint contains a statement of intention to which no response is required from REVOLUTION.

57.    By reason of the foregoing, there has been substantial breach and substantial non-performance by Revolution of the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 57 of the Complaint.

58.    Revolution and Beale may be returned to the status quo ante by ordering Revolution to: (a) return the Re-Sale Authorizations to Beale; and (b) return to Beale all money and other benefits that Revolution received from Beale pursuant to the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 58 of the Complaint.

59.    Accordingly, the Court should enter an Order rescinding the Amendment and returning the parties to the status quo ante, i.e, place the parties back in the positions that they were in pursuant to the original Revolution Settlement Agreement.

ANSWER: REVOLUTION denies the allegations contained in paragraph 59 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## **COUNT IV**

60.    Beale incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

61.    This Count is pleaded in the alternative to Counts I and II and applies in the event that the Court does not grant the relief sought therein.

ANSWER: Paragraph 61 of the Complaint contains a statement of intention to which no response is required from REVOLUTION.

62.    By reason of the foregoing, the Amendment to the Revolution Settlement Agreement should be rescinded. Nevertheless, Revolution refuses to return to Beale the Re-Sale

Authorizations, the money and the other benefits that it received from Beale pursuant to the Amendment.

ANSWER: REVOLUTION admits that it has not returned to Beale anything it received from him in connection with the First Amendment because it is not obligated to do so. REVOLUTION denies the remaining allegations contained in paragraph 62 of the Complaint.

63.    Accordingly, Revolution is wrongfully in possession of the Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 63 of the Complaint.

64.    Under the circumstances, it would be unjust to allow Revolution to retain Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 64 of the Complaint.

65.    Accordingly, this Court should enter an order: (a) imposing a constructive trust on the Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment, naming Revolution the trustee and Beale the beneficiary thereof; and (b) compelling Revolution to turn over to Beale instanter the Re-Sale Authorizations and the money and any and all other benefits tendered by Beale to Revolution pursuant to the Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 65 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## COUNT V

66.    Beale incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

67.    This Count is pleaded in the alternative to Counts I through IV and applies in the event that the Court does not grant the relief sought therein.

ANSWER: Paragraph 67 of the Complaint contains a statement of intention to which no response is required from REVOLUTION.

68.    By reason of the foregoing, there has been a substantial breach and substantial nonperformance by Revolution of the Settlement Agreement and its Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 68 of the Complaint.

69.    Beale has no adequate remedy at law.

ANSWER: REVOLUTION denies the allegations contained in paragraph 69 of the Complaint.

70.    Revolution and Beale may be returned to the status quo ante by ordering Revolution to return to Beale: (a) ownership of the Policy; (b) all payments it received from Beale; (c) all Resale Authorizations; and (d) any and all other benefits that Revolution received from Beale pursuant to the Settlement Agreement and Amendment.

ANSWER: REVOLUTION denies the allegations contained in paragraph 70 of the Complaint.

71.    Accordingly, the Court should enter an Order rescinding the Amendment and returning the parties to the status quo ante - i.e., place the parties back in the positions that they were in before the original Revolution Settlement Agreement.

ANSWER: REVOLUTION denies the allegations contained in paragraph 71 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## COUNT VI

72.    Beale incorporates by reference paragraphs I through 42 above as though fully set forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

73.    This Count is pleaded in the alternative to Counts I through IV and applies in the event that the Court does not grant the relief sought therein.

ANSWER: Paragraph 73 of the Complaint contains a statement of intention to which no response is required from REVOLUTION.

74.    This Count is brought pursuant to 735 ILCS 5/2-701.

ANSWER: Paragraph 74 of the Complaint contains a statement of law to which no response is required from REVOLUTION.

75.    Beale has no adequate remedy at law with respect to the matters set forth herein.

ANSWER: REVOLUTION denies the allegations contained in paragraph 75 of the Complaint.

76.     There is an actual controversy among Beale, Revolution and ING as to Beak's and Revolution's rights with respect to ownership of the Policy, and ING's obligations to Beale and/or Revolution with respect to ownership of the Policy. Resolution of this controversy by means of the declaration requested herein will terminate the controversy or some part thereof.

ANSWER: REVOLUTION admits the allegations contained in paragraph 76 of the Complaint.

77.     By reason of the foregoing, this Court should declare that Beale is entitled to ownership of the Policy and Revolution is not.

ANSWER: REVOLUTION denies the allegations contained in paragraph 77 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## COUNT VII

78.     Beale incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

ANSWER: REVOLUTION incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

79.     This Count is pleaded in the alternative to all prior Counts seeking equitable relief and applies solely in the event that the Court determines that Beak does have an adequate legal remedy for the injuries alleged above.

ANSWER: Paragraph 79 of the Complaint contains a statement of intention to which no response is required from REVOLUTION.

80.     Beale has fully performed all obligations required to be performed by him pursuant to the Amendment to Revolution Settlement Agreement, or his performance thereof has been

excused or waived due to Revolution's actions and/or by operation of law.

ANSWER: REVOLUTION denies the allegations contained in paragraph 80 of the Complaint.

81.    By reason of the foregoing, Revolution has materially breached the Amendment to the Revolution Settlement Agreement, and Beale has been injured and suffered damages thereby.

ANSWER: REVOLUTION denies the allegations contained in paragraph 81 of the Complaint and states that Beale is not entitled to the relief requested in the un-numbered paragraph that follows.

## AFFIRMATIVE DEFENSES

1.    The Complaint must be dismissed because Beale has failed to state a claim upon which relief may be granted.

2.    All claims arising under the Original Agreement fail because of an accord and satisfaction.

3.    All claims arising under the Original Agreement fail because of a novation.

4.    All claims arising against REVOLUTION as a result of actions, events or circumstances which occurred prior to the execution of the First Amendment fail because of Beale's release.

5.    All claims arising against REVOLUTION as a result of actions, events or circumstances which occurred prior to the execution of the First Amendment fail because of Beale's waiver.

6.    Beale is estopped from pursuing any and all claims arising against REVOLUTION as a result of actions, events or circumstances which occurred prior to the execution of the First Amendment fail because of Beale's actions, omissions, and statements.

7.    All claims for breach of contract fail because of Beale's prior breach, relieving REVOLUTION of any further obligations.

8.    All claims based upon misrepresentations and/or fraud fail because of Beale's failure to plead them with the specificity required by Fed.R.Civ.P. 9(b).

9.    All claims advanced in the Complaint fail because of Beale's failure to satisfy all conditions precedent.

10.    All claims advanced in the Complaint fail because of a lack of consideration.

11.    Beale's claims for specific performance and rescission fail because of his failure to tender.

12.    Beale's requests for equitable and injunctive relief fail because he has an adequate remedy at law.

13.    Beale's requests for equitable and injunctive relief fail because of his unclean hands.

14.    The Complaint must be dismissed because Beale has suffered no damages.

15.    The Complaint must be dismissed because any damages suffered by Beale were caused by his own actions and omissions.

16.    The Complaint must be dismissed because any damages suffered by Beale were caused by the actions and omissions over people or entities over whom REVOLUTION had no control.

## **COUNTERCLAIM**

Without waiving any of the affirmative defenses raised above, REVOLUTION Portfolio, LLC ("REVOLUTION") brings the following Counterclaim against Joseph S. Beale.

## PARTIES AND JURISDICTION

1.      The Plaintiff in this Counterclaim, REVOLUTION, is a Virginia limited liability company with its principal place of business in Maryland.

2.      The Defendant in this Counterclaim, Joseph S. Beale, an individual with a principal residence in Illinois and/or Hawaii.

3.      This Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. Sec. 1332(a)  because REVOLUTION seeks to recover in excess of $6 million from Beale and because REVOLUTION and Beale are citizens of different states.

## FACTS COMMON TO ALL COUNTS

4.      REVOLUTION is the holder of a certain judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida (the "Judgment").

5.      Following the assignment to REVOLUTION, the Judgment went unsatisfied and the total amount due under the Judgment currently exceeds $6 million, after applying all payments received from Beale or any other source.

6.      On or about March 5, 2004, REVOLUTION and other creditors initiated an involuntary bankruptcy proceeding against Beale in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-8748. ("Bankruptcy Case").

7.      The Bankruptcy Case remains open but Beale has waived any right to a discharge of debts that he may have been entitled to receive.  As a result, no automatic stay arising from the Bankruptcy Case prevents REVOLUTION from pursuing Beale for recovery of the total amount due under the Judgment or otherwise.

8. On or about December 12, 2005, Beale and REVOLUTION entered into that certain Settlement Agreement dated December 12, 2005. ("Original Agreement").

9. Among other terms and conditions, the Original Agreement required Beale to pursue, in good faith, the acquisition of an insurance policy on his life (the "Policy").

10. Beale defaulted under the terms of the Original Amendment by, among other things, failing, refusing and neglecting to pursue, in good faith, the acquisition of the Policy. For that reason, among others, Beale defaulted under the Original Agreement.

11. In an effort to resolve the dispute, which followed Beale's defaults under the Original Agreement, Beale and REVOLUTION entered into a certain First Amendment to Settlement Agreement dated as of June 26, 2007. ("First Amendment").

12. Almost immediately thereafter, Beale defaulted under the First Amendment by, among other things, failing to make all payments as and when due, despite Beale's clear and express acknowledgment in paragraph 7 of the First Amendment that "TIME IS OF THE ESSENCE" with respect to all of his obligations under the First Amendment.

13. As a result of Beale's defaults under the Original Agreement and the First Amendment, REVOLUTION is entitled to pursue recovery of all amounts remaining due under the Judgment and all other amounts recoverable under those agreements including, but not limited to, all attorneys' fees and expenses.

WHEREFORE, REVOLUTION Portfolio, LLC, request this Court to grant the following relief:

1. Enter judgment as to all Counts of the Complaint in favor of the REVOLUTION Portfolio, LLC and against the Plaintiff, Joseph S. Beale;

2. Expressly declare REVOLUTION the owner of the Policy;

3.      Deny all equitable and injunctive relief sought by Joseph S. Beale in the

Complaint;

4.      Enter judgment as to the Counterclaim in favor of REVOLUTION Portfolio, LLC

and against Joseph S. Beale in an amount to be determined by the Court;

5.      Award REVOLUTION Portfolio LLC its costs in defending against the

Complaint and prosecuting the Counterclaim; and

6.      Grant any additional relief this Court may deem just and appropriate.

Respectfully Submitted,
REVOLUTION PORTFOLIO, LLC

By: /s/ Matthew P. Connelly
One of its attorneys

Matthew P. Connelly
ARDC No. 6229052
Garrett C. Carter
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) 251-9600 Telephone
(312( 251-9601 Facsimile

Christopher B. Lega
ARDC No. 6276619
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts
(617) 523-9000 Telephone
(617) 880-3456 Facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certify that on December 14, 2007, a true copy of the **Corporate Disclosure Statement** was served upon the attorney of record for each other party via the ECF Filing System.

By: _/s/ Matthew P. Connelly_