UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH S. BEALE,<br><br>        PLAINTIFF<br><br>v.<br><br>REVOLUTION PORTFOLIO, LLC; and SECURITY LIFE OF DENVER INSURANCE COMPANY,<br><br>        DEFENDANTS. | CASE NO. 07-06909<br><br>JUDGE Kocoras<br>MAGISTRATE Judge Valdez |

**REVOLUTION PORTFOLIO, LLC'S RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS TO ADMIT**

Defendant, REVOLUTION Portfolio, LLC ("REVOLUTION"), through its attorneys, Connelly Roberts & McGivney LLC, provides the following Responses to Plaintiff's First Set of Requests to Admit.

1.   Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0001.

   **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. BEALE 0001 is a correspondence between Security Life of Denver Insurance Company and Beale and for that reason REVOLUTION lacks sufficient information as to whether this correspondence is genuine.**

2.   Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0002 through BEALE 0003.

   **Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0002 through Beale 0003 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0003 through Beale 0003 printed by the Plaintiff. Notwithstanding the**

foregoing, REVOLUTION admits that Beale 0002 through Beale 0003 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.

3. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0004 through BEALE 0005.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0004 through Beale 0005 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0004 through Beale 0005 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0004 through Beale 0005 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

4. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0006 through BEALE 0008.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0006 through Beale 0008 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0006 through Beale 0008 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0006 through Beale 0008 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

5. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0009 through BEALE 0010.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0009 through Beale 0010 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0009 through Beale 0010 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0009 through Beale 0010 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

6. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0011.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0011 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0011 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0011 appears to partially depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel. However, upon information and belief, Beale 0011 is missing certain "disclaimer" language and other text that should have appeared on the following page.**

7.  Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0012.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0012 is a paper copy of email that appears to have been printed by Colleen Smith and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0012 printed by the Colleen Smith. Notwithstanding the foregoing, REVOLUTION admits that Beale 0012 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

8.  Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0013 through BEALE 0014.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0013 through Beale 0014 is a paper copy of email that appears to have been printed by Colleen Smith and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0013 through Beale 0014 printed by Colleen Smith. Notwithstanding the foregoing, REVOLUTION admits that Beale 0013 through Beale 0014 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

9.  Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0015.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0015 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0015 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION**

**admits that Beale 0015 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

10. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0016.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0016 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0016 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0016 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel, although this document refers to an attachment that is not included within this document..**

11. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0017.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0017 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0017 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0017 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

12. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0018.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0018 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0018 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0018 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

13. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0019 through BEALE 0021.

**Response: REVOLUTION admits that Beale 0019 through Beale 0021 appears to be a genuine document, although this document refers to an attachment that is not included within this document.**

14.   Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0022 through BEALE 0034.

**Response: REVOLUTION admits that Beale 0022 through Beale 0034 appears to be a genuine copy of the Settlement Agreement entered into between the parties on December 12, 2005 as well as an additional document entitled "Release."**

15.   Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0035 through BEALE 0048.

**Response: REVOLUTION admits that Beale 0035 through Beale 0048 appears to be a genuine copy of the First Amendment of the Settlement Agreement dated June 26, 2007 as well as an additional document entitled "Release."**

16.   Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0049.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0049 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0049 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0049 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

17.   Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0050.

**Response**: **REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0050 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0050 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0050 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

18. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0051 through BEALE 0052.

**Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. Beale 0051 through Beale 0052 is a correspondence between Security Life of Denver Insurance Company and Beale and for that reason REVOLUTION lacks sufficient information as to whether this correspondence is genuine.**

19. Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0053 through BEALE 0054.

**Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. Beale 0053 through Beale 0054 is a correspondence between Security Life of Denver Insurance Company and Beale and for that reason REVOLUTION lacks sufficient information as to whether this correspondence is genuine, although REVOLUTION's counsel did receive a copy of it.**

20. Admit that the REVOLUTION Settlement Agreement was a valid, binding and enforceable agreement on the date it was executed by REVOLUTION.

**Response: REVOLUTION objects to this request as is not a request to admit a fact, but rather a request to admit a conclusion of law. Therefore, no response is required.**

21. Admit that the Amendment was a valid binding and enforceable agreement on the date it was executed by REVOLUTION.

**Response: REVOLUTION objects to this request as is not a request to admit a fact, but rather a request to admit a conclusion of law. Therefore, no response is required.**

22. Admit that the REVOLUTION Settlement Agreement is a valid binding and enforceable agreement.

**Response: REVOLUTION objects to this request as is not a request to admit a fact, but rather a request to admit a conclusion of law. Therefore, no response is required.**

6

23. Admit that the Amendment is a valid binding and enforceable agreement.

**Response: REVOLUTION objects to this request as is not a request to admit a fact, but rather a request to admit a conclusion of law. Therefore, no response is required.**

24. Admit that REVOLUTION did not fully perform the REVOLUTION Settlement Agreement.

**Response: Deny.**

25. Admit that REVOLUTION did not fully perform the Amendment.

**Response: Deny.**

26. Admit that REVOLUTION did not execute the General Release.

**Response: REVOLUTION objects to Plaintiff's definition of General Release. Both the Settlement Agreement and the First Amendment to the Settlement Agreement contained separate general releases. Notwithstanding the foregoing, REVOLUTION denies the matter asserted in this request.**

27. Admit that REVOLUTION did not execute the Islamorada Release.

**Response: Deny.**

28. Admit that REVOLUTION did not deliver the General Release to Beale.

**Response: Admit.**

29. Admit that REVOLUTION did not deliver the Islamorada Release to Beale.

**Response: Admit.**

30. Admit that Beale has offered to REVOLUTION to perform all of his remaining obligations under the Amendment if REVOLUTION would fully perform under the Amendment.

**Response: Deny.**

31. Admit that REVOLUTION does not contend that Beale breached any provision of the Amendment other than Paragraph 2(g) and 2(i).

**Response: Deny.**

7

32. Admit that REVOLUTION knew on or before June 29, 2007, that Beale intended to obtain the Beale Loan secured by the Florida Property.

**Response: REVOLUTION cannot truthfully admit or deny how Beale "intended" to obtain the "Beale Loan." REVOLUTION was not told by Beale how he intended to do this.**

33. Admit that Beale could not obtain the Beale Loan secured by the Florida Property unless REVOLUTION delivered the Islamorada Release to the Escrow Agent or Beale.

**Response: REVOLUTION cannot truthfully admit or deny why Beale could not obtain the "Beale Loan." REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

34. Admit that REVOLUTION knew on or before June 29, 2007, that Beale intended to make the $115,000 payment to REVOLUTION provided for in Paragraph 2(i) of the Amendment out of the proceeds of the Beale Loan.

**Response: REVOLUTION cannot truthfully admit or deny how, or whether, Beale "intended" to make the $115,000 payment to REVOLUTION. REVOLUTION was not told by Beale how he intended to do this.**

35. Admit that the reason Paragraph 2(d) of the Amendment required REVOLUTION to deliver the Islamorada Release to the Escrow Agent was to enable Beale to obtain the Beale Loan so that he could use the proceeds of the Beale Loan to make the $115,000 payment to REVOLUTION required by Paragraph 2(i) of the Amendment.

**Response: Deny.**

36. Admit that REVOLUTION agreed that Beale could make the $115,000 payment required by Paragraph 2(i) of the Amendment with the proceeds of the Beale Loan.

**Response: Upon information and belief, REVOLUTION admits that Beale could have made the $115,000 payment with the proceeds of the "Beale Loan." REVOLUTION cannot admit or deny whether the "Beale Loan" was the <u>only</u> way he could have made the $115,000 payment.**

37. Admit that the Beale Loan was to be closed by Coral Reef Title.

8

**Response: REVOLUTION cannot truthfully admit or deny that the "Beale Loan" was to be closed by Coral Reef Title. REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

38. Admit that the Beale Loan was to be closed on June 29, 2007.

**Response: REVOLUTION cannot truthfully admit or deny that the "Beale Loan" was to be closed on June 29, 2007. REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

39. Admit that, on or about June 29, 2007, REVOLUTION provided wire transfer instructions to Coral Reef Title.

**Response: Admit.**

40. Admit that, on or about June 29, 2007, REVOLUTION provided wire transfer instructions to Coral Reef Title so that Beale could make the $115,000 payment to REVOLUTION out of the proceeds of the Beale Loan.

**Response: REVOLUTION admits that it provided wire transfer instructions to Coral Reef Title so that Beale could make the $115,000 payment to REVOLUTION. REVOLUTION cannot truthfully admit or deny that the $115,000 payment was to be made from the proceeds of the "Beale Loan." REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

41. Admit that if the Beale Loan had closed on June 29, 2007, REVOLUTION would have received the $115,000 payment required by Paragraph 2(i) of the Amendment on or before July 2, 2007.

**Response: REVOLUTION cannot truthfully admit or deny that REVOLUTION would have received the $115,000 on or before July 2, 2007 if the "Beale Loan" had closed on June 29, 2007. REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

42. Admit that the only reason that the Beale Loan did not close on June 29, 2007 was because REVOLUTION did not deliver the Islamorada Release to the Escrow Agent or Beale.

**Response: REVOLUTION cannot truthfully admit or deny that the "only reason" the "Beale Loan" did not close on June 29, 2007 was because REVOLUTION did not deliver the Islamorada Release to the Escrow Agent. REVOLUTION was not a**

**party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

43. Admit that on June 29, 2007, Coral Reef Title confirmed to REVOLUTION, through its counsel, that a $115,000 wire transfer would be made to REVOLUTION upon the closing of the Beale Loan.

**Response: REVOLUTION admits that Coral Reef Title confirmed that a $115,000 wire transfer would be made to REVOLUTION upon certain conditions being satisfied. REVOLUTION denies the remaining parts of this request.**

44. Admit that on June 29, 2007, Coral Reef Title asked REVOLUTION to confirm that REVOLUTION would deliver the Islamorada Release to the Escrow Agent.

**Response: Deny.**

45. Admit that, on or before June 29, 2007, REVOLUTION repudiated the Amendment.

**Response: Deny.**

46. Admit that, on or before June 29, 2007, REVOLUTION decided that it would not deliver the Islamorada Release to the Escrow Agent.

**Response: Deny.**

47. Admit that, on or before June 29, 2007, REVOLUTION decided that it would not deliver the General Release to Beale.

**Response: Deny.**

48. Admit that REVOLUTION did not deliver the Islamorada Release to the Escrow Agent.

**Response: Deny.**

49. Admit that REVOLUTION did not deliver the Islamorada Release to Beale.

**Response: Admit.**

50. Admit that REVOLUTION did not deliver the General Release to Beale.

**Response: Admit.**

51. Admit that REVOLUTION did not notify Beale's counsel on or before June 29, 2007 that it had delivered the Islamorada Release to the Escrow Agent.

**Response: Deny.**

52. Admit that REVOLUTION did not notify Beale's counsel on or before June 29, 2007 that it had delivered the Islamorada Release to the Beale.

**Response: Admit.**

53. Admit that REVOLUTION did not inform Beale or Beale's counsel on or before June 29, 2007 that REVOLUTION did not intend to deliver the Islamorada Release to the Escrow Agent.

**Response: Admit.**

54. Admit that REVOLUTION did not inform Beale or Beale's counsel on or before June 29, 2007 that REVOLUTION did not intend to deliver the Islamorada Release to Beale.

**Response: Admit.**

55. Admit that the Beale Loan did not close on June 29, 2007 because REVOLUTION did not deliver the Islamorada Release to the Escrow Agent.

**Response: Deny.**

56. Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on June 29, 2007.

**Response: Admit.**

57. Admit that REVOLUTION's counsel did not return Beale's counsel's June 29, 2007 telephone call until July 3, 2007.

**Response: Deny.**

58. Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on June 30, 2007.

   **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

59. Admit that REVOLUTION's counsel did not return Beale's counsel's June 30, 2007 telephone call until July 3, 2007.

   **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

60. Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on July 1, 2007.

   **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

61. Admit that REVOLUTION's counsel did not return Beale's counsel's July 1, 2007 telephone call until July 3, 2007.

   **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

62. Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on July 2, 2007.

   **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

63. Admit that REVOLUTION's counsel did not return Beale's counsel's July 2, 2007 telephone call until July 3, 2007.

**Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

64. Admit that, on or before July 3, 2007, REVOLUTION's counsel told Beale's counsel that REVOLUTION did not intend to deliver the Islamorada Release to the Escrow Agent or Beale.

**Response: Deny.**

65. Admit that, on or before July 3, 2007, REVOLUTION's counsel told Beale's counsel that REVOLUTION did not intend to deliver the General Release to Beale.

**Response: Deny.**

66. Admit that REVOLUTION filed the Motion for Writ of Execution on July 9, 2007.

**Response: Deny.**

67. Admit that REVOLUTION's counsel began work on the Motion for Writ of Execution on or before July 2, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

68. Admit that REVOLUTION's counsel began work on the Motion for Writ of Execution on or before June 29, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

69. Admit that REVOLUTION's counsel began work on the Motion for Writ of Execution on or before June, 28, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

70. Admit that REVOLUTION initiated the Florida Execution Proceedings on August 7, 2007.

**Response: Deny.**

71. Admit that REVOLUTION's counsel began work in the Complaint filed in the Florida Execution Proceedings on or before June 29, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

72. Admit that the Acknowledgment would have been issued on June 29, 2007 if REVOLUTION had paid the initial Policy premium on June 28, 2007.

**Response: REVOLUTION cannot truthfully admit or deny whether the acknowledgment would have been issued on June 29, 2007, if REVOLUTION had paid the initial Policy Premium on June 28, 2007. REVOLUTION is not aware of how long it takes for an insurance company to issue an acknowledgment upon receipt of the premium.**

73. Admit that the Acknowledgment was issued one day after REVOLUTION made the initial premium payment on the Policy.

**Response: Deny.**

74. Admit that Beale told REVOLUTION that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

**Response: Deny.**

75. Admit that on or before June 28, 2007, REVOLUTION knew that the Acknowledgment would be issued one day after the payment of the initial premium on the Policy.

**Response: Deny.**

76. Admit that REVOLUTION did not pay the initial premium on the Policy until July 2, 2007.

**Response: Deny.**

77. Admit that, on or before June 28, 2007, REVOLUTION's insurance broker told REVOLUTION that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

**Response: REVOLUTION denies that it had an insurance broker working with REVOLUTION with respect to the Policy. The insurance brokers were the agents of Beale, not REVOLUTION.**

78. Admit that, on or before June 28, 2007, REVOLUTION's insurance broker told Beale's insurance broker that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

**Response: REVOLUTION denies that it had an insurance broker working with REVOLUTION with respect to the Policy. The insurance brokers were the agents of Beale, not REVOLUTION.**

79. Admit that, on or before July 2, 2007, REVOLUTION knew that the Acknowledgment would be issued on July 3, 2007 if REVOLUTION paid the initial premium on the Policy on July 2, 2007.

**Response: Deny.**

80.     Admit, on June 27, 2007, Beale sent an email to REVOLUTION's counsel informing him that if REVOLUTION sent the initial premium payment on the Policy to ING on June 28, 2007, the Acknowledgment would be issued by ING on June 29, 2007.

**Response: Deny.**

81.     Admit that on or about June 27, 2007, Stuart Youngentob was an insurance broker for REVOLUTION.

**Response: Deny.**

82.     Admit that, on or about June 27, 2007, Stuart Youngentob told Bruce Schlesinger that if REVOLUTION sent the initial premium payment on the Policy to ING on June 28, 2007, the Acknowledgment would be issued by ING on June 29, 2007.

**Response: REVOLUTION denies that Stuart Youngentob was the insurance broker for REVOLUTION. Furthermore, REVOLUTION cannot truthfully admit or deny what conversations took place between Stuart Youngentob and Bruce Schlesinger.**

83.     Admit that the dollar value of the Islamorada Release cannot be determined.

**Response: Deny.**

84.     Admit that the dollar value of the General Release cannot be determined.

**Response: Deny.**

85.     Admit that REVOLUTION intends to file additional actions in order to collect on the amounts that it claims Beale owes to it pursuant to the Amendment.

**Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

86.     Admit that REVOLUTION intends to file additional actions to enforce the "Judgment" defined in Paragraph 4 of REVOLUTION's Counterclaim.

**Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

87. Admit that REVOLUTION intends to attempt to enforce the "Judgment" defined in Paragraph 4 of REVOLUTION's Counterclaim against property owned by Beale other than the Florida Property.

**Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

88. Admit that REVOLUTION does not intend to attempt to enforce the "Judgment" defined in Paragraph 4 of REVOLUTION's Counterclaim against any property owned by Beale except for the Florida Property.

**Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

89. Admit that REVOLUTION could have paid the initial premium due on the Policy on or before June 29, 2007.

**Response: Admit.**

90. Admit that, if REVOLUTION had paid to ING the initial premium due on the Policy on or before June 29, 2007, then the Acknowledgment could have been delivered to REVOLUTION on or before July 2, 2007.

**Response: REVOLUTION cannot truthfully admit or deny this matter contained in this request. REVOLUTION is not aware of how long it takes for an insurance company to issue an acknowledgment upon receipt of the premium.**

91. Admit that, on June 29, 2007, REVOLUTION believed that, if REVOLUTION paid to ING the initial premium due on the Policy on or before June 29, 2007, then the Acknowledgment could have been delivered to REVOLUTION on or before July 2, 2007.

**Response: Admit.**

92. Admit that REVOLUTION did not pay to ING the initial premium due on the Policy on or before June 29, 2007.

17

**Response: Deny.**

93.     Admit that ING issued the Acknowledgment on July 3, 2007.

**Response: REVOLUTION cannot truthfully admit or deny this matter contained in this request. REVOLUTION does not know the exact date in which ING issued the Acknowledgment.**

94.     Admit that the Acknowledgment is dated July 3, 2007.

**Response: Admit.**

95.     Admit that REVOLUTION did not suffer any actual damages due to the delay in its receipt of the Acknowledgment.

**Response: Deny.**

96.     Admit that REVOLUTION would not suffer any irreparable harm if the Amendment were rescinded.

**Response: Deny.**

97.     Admit that REVOLUTION would not suffer any irreparable harm if the REVOLUTION Settlement Agreement were rescinded.

**Response: Deny.**

                                      Respectfully Submitted,
                                      REVOLUTION PORTFOLIO, LLC

                                      By:  /s/ *Matthew P. Connelly*
                                              One of its attorneys

Matthew P. Connelly
ARDC No. 6229052
Garrett C. Carter
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) 2251-9600 Telephone
(312) 251-9601 Facsimile

Christopher B. Lega
ARDC No. 6276619
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts

7888001/Reponse.Plaintiff.Request.Admit