UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH S. BEALE, ) | |
| ) | Case No. 07 CV 6909 |
| Plaintiff, ) | |
| ) | Judge Kocoras |
| v. ) | |
| ) | Magistrate Judge Valdez |
| REVOLUTION PORTFOLIO, LLC, and ) | |
| SECURITY LIFE OF DENVER ) | |
| INSURANCE COMPANY d/b/a/ ING, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| REVOLUTION PORTFOLIO, LLC, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH S. BEALE, ) | |
| ) | |
| Counter-Defendant. ) | |

**MOTION TO QUASH SUBPOENAS**

Plaintiff Joseph S. Beale ("Beale"), by and through his attorneys, Novack and Macey LLP, pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, hereby moves the Court for the entry of an Order quashing the subpoenas issued by Defendant Revolution Portfolio, LLC ("Revolution") to: (a) Bruce Schlesinger; and (b) The Leaders Bank. In support hereof, Beale states as follows:

**I.      BACKGROUND**

1.      In this action, Beale seeks to enforce a settlement agreement entered into by Beale and Revolution on or about December 12, 2005, as amended on or about June 28, 2007 (the "Settlement Agreement").

2. The Settlement Agreement provides for, among other things, Beale to obtain a life insurance policy to be transferred to Revolution, and for Beale to make certain payments to Revolution. In return, Revolution was to, among other things, provide certain releases to Beale at specific points in time.

3. The life insurance policy was issued and transferred to Revolution, and all of the required payments have been made to Revolution, except that the final $115,500.00 payment is being held in escrow for Revolution (and has been since June, 2007) pending Revolution's issuance of the agreed-upon releases -- which Revolution refuses to provide. Further, Beale has offered to make the payment via other means if Revolution will provide the Releases, but Revolution refuses to do so.

4. On March 14, 2008, Revolution issued subpoenas to Bruce Schlesinger ("Schlesinger") at JMB Insurance, Beale's long-time insurance agent (the "Schlesinger Subpoena"), and The Leader's Bank ("Leaders Bank"), a bank with which Beale has done business for years (the "Leaders Bank Subpoena"). Copies of the Schlesinger Subpoena and the Leaders Bank Subpoena are attached hereto as Exhibits A and B, respectively.

5. The subpoenas seek extensive information about all of Beale's personal dealings with Schlesinger and Leaders Bank since 2005 -- regardless of whether they relate to any matter at issue in this suit. The vast majority of the requested information has no relevance to this suit, and is not likely to lead to the discovery of admissible evidence in this action.

6. Moreover, the requested information includes personally identifiable health and financial information. Such information is confidential, and should be produced, if at all, only pursuant to a protective order.

7. On April 2, 2008, Richard Douglass, as counsel for Beale, and Garrett Carter, as counsel for Revolution, conferred via telephone regarding their disagreements over the Subpoenas.

After consultation by telephone and good faith attempts to resolve their differences, the parties are unable to reach an accord on the issue of the Subpoenas.

**II.     ARGUMENT**

8.      Pursuant to Rule 45(c)(3)(A)(iii), "the court by which a subpoena is issued shall quash or modify the subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

9.      A party has standing to quash a subpoena directed to a non-party when the party claims a "personal right or privilege" regarding the documents sought. Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau, 183 F.R.D. 627, 629 (N.D. Ill., 1999). Where, as here, a subpoena seeks the personal financial or medical information of a party, that party possesses the requisite personal right to quash the subpoena. Cohn v. Taco Bell Corp., 147 F.R.D. 154, 158-59 (N.D. Ill., 1993) (granting party's motion to quash subpoena to non-party for the party's financial records); Chaikin v. Fidelity and Guaranty Life Ins. Co., 2003 WL 22715826 at *2 (N.D. Ill., Nov. 17, 2003) (same); Moss v. Jones, No. 07-332, 2008 WL 563412 at *2 (S.D. Ill., Feb. 28, 2008) (granting party's motion to quash overbroad subpoena to non-party for party's medical records) (copies of all unpublished decisions that are cited herein are collectively attached hereto as Exhibit C.)

10.     Where a party moving to quash a subpoena makes a prima facie showing that the subpoena is overbroad, burdensome or requests confidential information, the party seeking the discovery has the burden to "establish a need for the breadth of the information sought." Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993).

11.     Here, both of the subpoenas are overbroad, seek irrelevant information and seek confidential information. Both should be quashed.

     **A.**    **The Schlesinger Subpoena Seeks Irrelevant and Confidential Personal Medical Information**

12. As noted, among other things, the Settlement Agreement at issue required Beale to obtain a life insurance policy, and transfer it to Revolution. Revolution contends that the policy was transferred a day late and, therefore, Beale breached the Settlement Agreement.

13. In fact, the reason the policy was transferred a day late is because Revolution failed to provide the insurer with the proper paperwork to accomplish the transfer on time. Moreover, even if the delay was Beale's fault -- it was not -- the alleged breach does not excuse Revolution from performing under the Settlement Agreement because, among other reasons, the alleged breach was immaterial.

14. Nevertheless, Revolution issued a subpoena to Schlesinger, the insurance agent that assisted Beale with his efforts to obtain the subject policy. The Schlesinger Subpoena seeks:

    (a)    All correspondence between Schlesinger and Beale from January 2005 through the present, no matter what the subject;

    (b)    <u>All</u> of Beale's life insurance applications from January 2005 through the present, regardless of whether they relate to the policy at issue;

    (c)    All documents exchanged between Schlesinger and any insurer relating to <u>all</u> of Beale's life insurance applications from January 2005 through the present, not limited to the policy at issue;

    (d)    All documents exchanged between Schlesinger and any other insurance agent relating to all of Beale's life insurance application from January 2005 through the present, not limited to the policy at issue;

    (e)    All documents relating to Revolution;

    (f)    All documents relating to the life insurance policy at issue;

(Ex. A, p. 3.)

15. Requests (a) through (d) are patently overbroad. Documents relating to Beale's applications for policies of insurance other than the policy at issue have no relevance to this matter, and are not likely to lead to the discovery of admissible evidence. Likewise, Beale's communications with Schlesinger on topics that do not relate to Revolution or to the policy at issue are likewise irrelevant, and are not likely to lead to the discovery of admissible evidence. Accordingly, these requests in the Schlesinger Subpoena should be quashed.

16. Requests (e) and (f) might lead to the discovery of admissible evidence, but they encompass Beale's personal medical records. That is because Beale underwent medical examinations and procedures in connection with his application for the life insurance policy required by the Settlement Agreement.

17. During the April 2, 2008 meet-and-confer between counsel for Revolution and Beale, Revolution's counsel agreed that Beale's personal medical information was confidential, and agreed that Beale's counsel could review any documents to be produced by Schlesinger prior to their production, and could designate as "Confidential" Beale's personal medical information.

18. On April 9, however, Revolution's counsel retracted their agreement. Although Revolution's counsel still agrees that Beale's personal medical information is confidential and should be the subject of a protective order, Revolution will not allow Beale to review the information in Schlesinger's possession <u>before</u> it is produced to Revolution, thus eliminating Beale's ability to protect that confidential information.

19. Accordingly, the Court should quash the Schlesinger Subpoena in its entirety. Alternatively, the Court should order the Schlesinger shall not respond to requests (e) and (f) of the Schlesinger Subpoena until such time as: (a) the Court has entered an appropriate Protective Order; and (b) Beale's counsel has been allowed to review the information to be produced by Schlesinger

to designate as Confidential any of Beale's personal medical information. To that end, Beale has filed his Motion for Entry of Protective Order contemporaneously herewith.

### B. The Leaders Bank Subpoena Seeks Irrelevant and Confidential Personal Financial Information

20. As alleged in the Complaint, Beale preferred to make one of the payments required under the Settlement Agreement out of the proceeds of a loan (the "Subject Loan"), which would be secured by Beale's interest in certain real property in Islamadora, Florida (the "Islamadora Property"). Beale made all arrangements to ensure that the Subject Loan closed and the payment was made before the due date -- on June 29, 2007. Likewise, Revolution's counsel provided wire transfer instructions to the closing agent, and appeared to be prepared to accept the payment from the proceeds of the Subject Loan. But, at the last minute, Revolution refused to provide a release of its lien on the Islamadora Property in order to close the Subject Loan. Accordingly, the payment to Revolution was placed in escrow, where it still remains to this day.

21. Revolution contends that the fact that it did not receive the payment is a breach of the Settlement Agreement, which excuses its performance thereunder. This is not so for several reasons, including the fact that Revolution caused the supposed breach.

22. Nevertheless, Revolution issued the Leaders Bank Subpoena seeking the following documents:

    (a)    All documents and correspondence from January 2005 through the present concerning the Islamadora Property;

    (b)    All of Beale's applications and underwriting documents from January 2005 through the present relating to any loan as to which he intended to use the Islamadora Property as collateral;

  (c) All documents and correspondence related to any property owned by Beale that he intended to use as collateral for any loan between January 2005 and the present;

  (d) All correspondence between Beale and the Bank on any topic between January 2005 and the present;

  (e) All loan applications submitted by Beale to the Bank from January 2005 through the present; and

  (f) All documents relating to Revolution.

(Ex. B, p. 3.)

23. These requests primarily seek documents related to Beale's assets that are not related to this lawsuit. Indeed, as Beale's counsel informed Revolution's counsel, Leaders Bank is not even the lender for the Subject Loan.

24. When a subpoena seeks confidential financial information that has no relationship to the claims or defenses in a case -- like the Leaders Bank Subpoena -- the court should not hesitate to quash the subpoena. Cohn, 147 F.R.D. at 158. In Cohn, for example, the defendant franchisor served subpoenas on non-party financial institutions and accounting firms in order to obtain financial information on the plaintiff franchisees. Id. at 162. The court granted the plaintiffs' motion to quash, finding that "the manner in which defendant proceeds in attempting to obtain the financial information is indeed heavy-handed and quite apparently designed to harass and embarrass both the plaintiffs and [the non-party]." Id.

25. Likewise, here, Revolution is seeking to discover irrelevant personal financial information concerning Beale through non-parties. Further, Revolution rejected Beale's request to narrow the Leaders Bank Subpoena to documents relating to the the Subject Loan -- the only potentially relevant topic.

26. Instead, Revolution persists in its attempt to use the Leaders Bank Subpoena to get far-reaching discovery of Beale's personal financial condition and assets. The reason is obvious. Revolution is not using discovery to learn facts relevant to the claims and defenses in this case. Instead, it is trying to use discovery to locate Beale's assets, so that it can pursue additional collection efforts, despite that it has not obtained a judgment in this case.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Joseph S. Beale respectfully requests that the Court enter an Order as follows:

A. Quashing the JMB Bank Subpoena in its entirety or, alternatively, quashing requests (a) through (d) identified herein, and ordering that JMB Insurance not produce documents in response to requests (e) and (f) until the Court has entered a Protective Order, and Beale's counsel has had an opportunity to review the responsive documents to designate them as "Confidential" where appropriate;

B. Quashing the Leaders Bank Subpoena in its entirety or, alternatively, quashing requests (a) through (e) identified herein, and ordering that Leaders Bank not produce documents in response to request (f) until the Court has entered a Protective Order, and Beale's counsel has had an opportunity to review the responsive documents to designate them as "Confidential" where appropriate; and

C. Granting Beale such other and further relief as is appropriate.

        Respectfully submitted,

        JOSEPH S. BEALE

        By:   /s/ Monte L. Mann
                One of His Attorneys

Monte L. Mann
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm No. 91731
Doc. #: 214793

**CERTIFICATE OF SERVICE**

      Monte L. Mann, an attorney, hereby certifies that, on April 21, 2008, he caused a true and correct copy of the foregoing *Motion to Quash Subpoenas* to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.



                                                    /s/ Monte L. Mann
                                                       Monte L. Mann