EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH S. BEALE, | ) | |
| | ) | Case No.: 07-CV-6909 |
| Plaintiff, | ) | |
| | ) | Judge Kocoras |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| REVOLUTION PORTFOLIO, LLC and | ) | |
| SECURITY LIFE OF DENVER | ) | |
| INSURANCE COMPANY, d/b/a ING, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST SET OF REQUESTS TO**
**ADMIT TO DEFENDANT REVOLUTION PORTFOLIO, LLC**

Plaintiff Joseph S. Beale, by his attorneys, pursuant to Rule 36 of the Federal Rules of Civil

Procedure, requests that Defendant Revolution Portfolio, LLC provide written admissions or denials

of the following Requests to Admit no later than 30 days after service hereof.

**DEFINITIONS**

1.      "Beale" means or refers to Plaintiff Joseph S. Beale and his agents, employees and

all other persons acting or purporting to act on behalf of any of them.

2.      "Revolution," "You" or "Your" means or refers to Defendant Revolution Portfolio,

LLC, its predecessors, successors and assigns, as well as any agents, attorneys, employees, partners,

associates, and all persons acting or purporting to act on behalf of any of them.

3.      "ING" means or refers to Defendant Security Life of Denver Insurance Company

d/b/a ING, its predecessors, successors and assigns, as well as any agents, attorneys, employees,

partners, associates, and all persons acting or purporting to act on behalf of any of them.

4.    "Complaint" means the Verified Complaint for Specific Performance, Injunction and Other Relief filed by Beale in this matter.

5.    "Revolution Settlement Agreement" means or refers to that certain Settlement Agreement between Beale and Revolution dated as of December 12, 2005, a copy of which was attached as Exhibit A to the Complaint, and produced to Revolution and ING by Beale as BEALE 0022 through BEALE 0034.

6.    "Amendment" means or refers to the First Amendment to Settlement Agreement between Beale and Revolution dated as of June 26, 2007, a copy of which was attached as Exhibit B to the Complaint, and produced to Revolution and ING by Beale as BEALE 0035 through BEALE 0048.

7.    "Policy" means or refers to the life insurance policy on Beale's life issued by ING, policy number 1620821, and which is further described in the Complaint.

8.    "Acknowledgment" means or refers to the acknowledgment of the transfer of the Policy from Beale to Revolution, and which is further described in the Complaint.

9.    "Florida Property" means or refers to the property located in Islamorada, Florida, as described in paragraph 23 of the Complaint, and which is referenced in paragraph 4(c) of the Revolution Settlement Agreement.

10.    "Islamadora Release" means or refers to the release of lien against the Florida Property described in paragraph 23 of the Complaint, and which is referred to in the Revolution Settlement Agreement and the Amendment.

2

11.    "Florida Execution Proceedings" means or refers to the proceedings to foreclose and/or execute upon the lien against the Florida Property, which were filed by Revolution in the Circuit Court of Palm Beach County, Florida.

12.    "Motion for Writ of Execution" means or refers to that certain Motion for Writ of Execution filed by Revolution, as assignee of the Federal Deposit Insurance Corporation, in the case captioned <u>Federal Deposit Insurance Corporation as receiver of New Bank of New England, N.A. v. Joseph S. Beale</u>, Case No. CL 90-8877 AD, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County.

13.    "General Release" means or refers to the release required to be given to Beale by Revolution pursuant to the Revolution Settlement Agreement and/or the Amendment.

14.    "Beale Loan" means or refers to the loan that Beale sought in order to make the $115,000 payment to Revolution, which loan was to be secured by the Florida Property and to be closed by Coral Reef Title Company, and which is further described in the Complaint.

15.    "Escrow Agent" means or refers to the "Escrow Agent" that is defined in the Amendment.

16.    "Coral Reef Title" means or refers to Coral Reef Title Company in Key Largo Florida, which was the title company responsible for closing the Beale Loan.

## INSTRUCTIONS

17.    Whenever appropriate, the singular form of a word should be interpreted in the plural.

18.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request any information which might otherwise be construed to be outside of the scope.

19.    Unless otherwise provided in a specific Request to Admit, the time period covered by these Requests to Admit are from January 1, 2000 through the date You complete Your response.

20.    The fact that any of the Requests to Admit below is more specific than any other Requests to Admit is not intended to limit the scope of any of the Requests to Admit herein.

21.    If You cannot truthfully admit or deny a Request to Admit, specifically set forth the reasons why You cannot truthfully admit or deny the matters about which admission is requested.

22.    If written objections to a part of a Request to Admit are made, the remainder of the request shall be answered.

## REQUESTS TO ADMIT

1.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0001.

2.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0002 through BEALE 0003.

3.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0004 through BEALE 0005.

4.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0006 through BEALE 0008.

5.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0009 through BEALE 0010.

4

6.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0011.

7.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0012.

8.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0013 through BEALE 0014.

9.    Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0015.

10.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0016.

11.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0017.

12.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0018.

13.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0019 through BEALE 0021.

14.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0022 through BEALE 0034.

15.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0035 through BEALE 0048.

16.   Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0049.

17.     Admit the genuineness of the document produced to Revolution by Beale bearing Bates number BEALE 0050.

18.     Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0051 through BEALE 0052.

19.     Admit the genuineness of the document produced to Revolution by Beale bearing Bates numbers BEALE 0053 through BEALE 0054.

20.     Admit that the Revolution Settlement Agreement was a valid, binding and enforceable agreement on the date it was executed by Revolution.

21.     Admit that the Amendment was a valid binding and enforceable agreement on the date it was executed by Revolution.

22.     Admit that the Revolution Settlement Agreement is a valid binding and enforceable agreement.

23.     Admit that the Amendment is a valid binding and enforceable agreement.

24.     Admit that Revolution did not fully perform the Revolution Settlement Agreement.

25.     Admit that Revolution did not fully perform the Amendment.

26.     Admit that Revolution did not execute the General Release.

27.     Admit that Revolution did not execute the Islamadora Release.

28.     Admit that Revolution did not deliver the General Release to Beale.

29.     Admit that Revolution did not deliver the Islamadora Release to Beale.

30.     Admit that Beale has offered to Revolution to perform all of his remaining obligations under the Amendment if Revolution would fully perform under the Amendment.

31.    Admit that Revolution does not contend that Beale breached any provision of the Amendment other than Paragraph 2(g) and 2(i).

32.    Admit that Revolution knew on or before June 29, 2007, that Beale intended to obtain the Beale Loan secured by the Florida Property.

33.    Admit that Beale could not obtain the Beale Loan secured by the Florida Property unless Revolution delivered the Islamadora Release to the Escrow Agent or Beale.

34.    Admit that Revolution knew on or before June 29, 2007, that Beale intended to make the $115,000 payment to Revolution provided for in Paragraph 2(i) of the Amendment out of the proceeds of the Beale Loan.

35.    Admit that the reason Paragraph 2(d) of the Amendment required Revolution to deliver the Islamadora Release to the Escrow Agent was to enable Beale to obtain the Beale Loan so that he could use the proceeds of the Beale Loan to make the $115,000 payment to Revolution required by Paragraph 2(i) of the Amendment.

36.    Admit that Revolution agreed that Beale could make the $115,000 payment required by Paragraph 2(i) of the Amendment with the proceeds of the Beale Loan.

37.    Admit that the Beale Loan was to be closed by Coral Reef Title.

38.    Admit that the Beale Loan was to be closed on June 29, 2007.

39.    Admit that, on or about June 29, 2007, Revolution provided wire transfer instructions to Coral Reef Title.

40.    Admit that, on or about June 29, 2007, Revolution provided wire transfer instructions to Coral Reef Title so that Beale could make the $115,000 payment to Revolution out of the proceeds of the Beale Loan.

7

41.    Admit that if the Beale Loan had closed on June 29, 2007, Revolution would have received the $115,000 payment required by Paragraph 2(i) of the Amendment on or before July 2, 2007.

42.    Admit that the only reason that the Beale Loan did not close on June 29, 2007 was because Revolution did not deliver the Islamadora Release to the Escrow Agent or Beale.

43.    Admit that on June 29, 2007, Coral Reef Title confirmed to Revolution, through its counsel, that a $115,000 wire transfer would be made to Revolution upon the closing of the Beale Loan.

44.    Admit that on June 29, 2007, Coral Reef Title asked Revolution to confirm that Revolution would deliver the Islamadora Release to the Escrow Agent.

45.    Admit that, on or before June 29, 2007, Revolution repudiated the Amendment.

46.    Admit that, on or before June 29, 2007, Revolution decided that it would not deliver the Islamadora Release to the Escrow Agent.

47.    Admit that, on or before June 29, 2007, Revolution decided that it would not deliver the General Release to Beale.

48.    Admit that Revolution did not deliver the Islamadora Release to the Escrow Agent.

49.    Admit that Revolution did not deliver the Islamadora Release to Beale.

50.    Admit that Revolution did not deliver the General Release to Beale.

51.    Admit that Revolution did not notify Beale's counsel on or before June 29, 2007 that it had delivered the Islamadora Release to the Escrow Agent.

52.    Admit that Revolution did not notify Beale's counsel on or before June 29, 2007 that it had delivered the Islamadora Release to the Beale.

8

53.    Admit that Revolution did not inform Beale or Beale's counsel on or before June 29, 2007 that Revolution did not intend to deliver the Islamadora Release to the Escrow Agent.

54.    Admit that Revolution did not inform Beale or Beale's counsel on or before June 29, 2007 that Revolution did not intend to deliver the Islamadora Release to Beale.

55.    Admit that the Beale Loan did not close on June 29, 2007 because Revolution did not deliver the Islamadora Release to the Escrow Agent.

56.    Admit that Beale's counsel attempted to contact Revolution's counsel by telephone on June 29, 2007.

57.    Admit that Revolution's counsel did not return Beale's counsel's June 29, 2007 telephone call until July 3, 2007.

58.    Admit that Beale's counsel attempted to contact Revolution's counsel by telephone on June 30, 2007.

59.    Admit that Revolution's counsel did not return Beale's counsel's June 30, 2007 telephone call until July 3, 2007.

60.    Admit that Beale's counsel attempted to contact Revolution's counsel by telephone on July 1, 2007.

61.    Admit that Revolution's counsel did not return Beale's counsel's July 1, 2007 telephone call until July 3, 2007.

62.    Admit that Beale's counsel attempted to contact Revolution's counsel by telephone on July 2, 2007.

63.    Admit that Revolution's counsel did not return Beale's counsel's July 2, 2007 telephone call until July 3, 2007.

9

64.    Admit that, on or before July 3, 2007, Revolution's counsel told Beale's counsel that Revolution did not intend to deliver the Islamadora Release to the Escrow Agent or Beale.

65.    Admit that, on or before July 3, 2007, Revolution's counsel told Beale's counsel that Revolution did not intend to deliver the General Release to Beale.

66.    Admit that Revolution filed the Motion for Writ of Execution on July 9, 2007.

67.    Admit that Revolution's counsel began work on the Motion for Writ of Execution on or before July 2, 2007.

68.    Admit that Revolution's counsel began work on the Motion for Writ of Execution on or before June 29, 2007.

69.    Admit that Revolution's counsel began work on the Motion for Writ of Execution on or before June, 28, 2007.

70.    Admit that Revolution initiated the Florida Execution Proceedings on August 7, 2007.

71.    Admit that Revolution's counsel began work in the Complaint filed in the Florida Execution Proceedings on or before June 29, 2007.

72.    Admit that the Acknowledgment would have been issued on June 29, 2007 if Revolution had paid the initial Policy premium on June 28, 2007.

73.    Admit that the Acknowledgment was issued one day after Revolution made the initial premium payment on the Policy.

74.    Admit that Beale told Revolution that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

75.    Admit that on or before June 28, 2007, Revolution knew that the Acknowledgment would be issued one day after the payment of the initial premium on the Policy.

10

76.    Admit that Revolution did not pay the initial premium on the Policy until July 2, 2007.

77.    Admit that, on or before June 28, 2007, Revolution's insurance broker told Revolution that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

78.    Admit that, on or before June 28, 2007, Revolution's insurance broker told Beale's insurance broker that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

79.    Admit that, on or before July 2, 2007, Revolution knew that the Acknowledgment would be issued on July 3, 2007 if Revolution paid the initial premium on the Policy on July 2, 2007.

80.    Admit, on June 27, 2007, Beale sent an email to Revolution's counsel informing him that if Revolution sent the initial premium payment on the Policy to ING on June 28, 2007, the Acknowledgment would be issued by ING on June 29, 2007.

81.    Admit that on or about June 27, 2007, Stuart Youngentob was an insurance broker for Revolution.

82.    Admit that, on or about June 27, 2007, Stuart Youngentob told Bruce Schlesinger that if Revolution sent the initial premium payment on the Policy to ING on June 28, 2007, the Acknowledgment would be issued by ING on June 29, 2007.

83.    Admit that the dollar value of the Islamadora Release cannot be determined.

84.    Admit that the dollar value of the General Release cannot be determined.

85.    Admit that Revolution intends to file additional actions in order to collect on the amounts that it claims Beale owes to it pursuant to the Amendment.

11

86.    Admit that Revolution intends to file additional actions to enforce the "Judgment" defined in Paragraph 4 of Revolution's Counterclaim.

87.    Admit that Revolution intends to attempt to enforce the "Judgment" defined in Paragraph 4 of Revolution's Counterclaim against property owned by Beale other than the Florida Property.

88.    Admit that Revolution does not intend to attempt to enforce the "Judgment" defined in Paragraph 4 of Revolution's Counterclaim against any property owned by Beale except for the Florida Property.

89.    Admit that Revolution could have paid the initial premium due on the Policy on or before June 29, 2007.

90.    Admit that, if Revolution had paid to ING the initial premium due on the Policy on or before June 29, 2007, then the Acknowledgment could have been delivered to Revolution on or before July 2, 2007.

91.    Admit that, on June 29, 2007, Revolution believed that, if Revolution paid to ING the initial premium due on the Policy on or before June 29, 2007, then the Acknowledgment could have been delivered to Revolution on or before July 2, 2007.

92.    Admit that Revolution did not pay to ING the initial premium due on the Policy on or before June 29, 2007.

93.    Admit that ING issued the Acknowledgment on July 3, 2007.

94.    Admit that the Acknowledgment is dated July 3, 2007.

95.    Admit that Revolution did not suffer any actual damages due to the delay in its receipt of the Acknowledgment.

96.    Admit that Revolution would not suffer any irreparable harm if the Amendment were rescinded.

97.    Admit that Revolution would not suffer any irreparable harm if the Revolution Settlement Agreement were rescinded.

JOSEPH S. BEALE

By: _____

One of His Attorneys

Monte L. Mann
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm No. 91731
Doc. #: 201160

13

## CERTIFICATE OF SERVICE

Richard G. Douglass, an attorney, hereby certifies that he served the foregoing ***Plaintiff's***

***First Set of Requests to Admit to Defendant Revolution Portfolio, LLC*** by causing a true and

correct copy thereof to be delivered by messenger delivery to:

>Matthew P. Connelly
>Garrett C. Carter
>CONNELLY, ROBERTS & MCGIVNER LLC
>55 W. Monroe Street, Suite 1700
>Chicago, Illinois 60603

>Thomas B. Keegan
>Edward Gleason
>KEEGAN, LATERZA, LOFGREN & GLEASON LLC
>566 West Adams Street, Suite 750
>Chicago, Illinois 60661

and by U.S. Mail, proper First Class postage pre-paid, to:

>Christopher B. Lega
>REIMER & BRAUNSTEIN LLP
>Three Center Plaza, 6th Floor
>Boston, MA 02108

on this 30th day of January, 2008.

>Richard G. Douglass

EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOSEPH S. BEALE,

         PLAINTIFF

v.

REVOLUTION PORTFOLIO, LLC; and
SECURITY LIFE OF DENVER
INSURANCE COMPANY,

         DEFENDANTS.

CASE NO. 07-06909

JUDGE Kocoras
MAGISTRATE Judge Valdez

**REVOLUTION PORTFOLIO, LLC'S RESPONSES TO**
**PLAINTIFF'S FIRST SET OF REQUESTS TO ADMIT**

Defendant, REVOLUTION Portfolio, LLC ("REVOLUTION"), through its attorneys,

Connelly Roberts & McGivney LLC, provides the following Responses to Plaintiff's First Set of

Requests to Admit.

       1.     Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates number BEALE 0001.

> **Response: After conducting a reasonable inquiry into the information known or
> readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the
> matter asserted in this request. BEALE 0001 is a correspondence between Security
> Life of Denver Insurance Company and Beale and for that reason REVOLUTION
> lacks sufficient information as to whether this correspondence is genuine.**

       2.     Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates numbers BEALE 0002 through BEALE 0003.

> **Response: REVOLUTION cannot truthfully admit or deny the matter asserted in
> this request. Beale 0002 through Beale 0003 is a paper copy of email that appears to
> have been printed by the Plaintiff and REVOLUTION cannot admit or deny that
> this is a genuine document. REVOLUTION further denies that it received a paper
> copy of Beale 0003 through Beale 0003 printed by the Plaintiff. Notwithstanding the**

foregoing, REVOLUTION admits that Beale 0002 through Beale 0003 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.

3.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0004 through BEALE 0005.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0004 through Beale 0005 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0004 through Beale 0005 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0004 through Beale 0005 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

4.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0006 through BEALE 0008.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0006 through Beale 0008 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0006 through Beale 0008 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0006 through Beale 0008 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

5.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0009 through BEALE 0010.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0009 through Beale 0010 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0009 through Beale 0010 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0009 through Beale 0010 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

6.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0011.

2

Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0011 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0011 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0011  appears to partially depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel. However, upon information and belief, Beale 0011 is missing certain "disclaimer" language and other text that should have appeared on the following page.

7.      Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0012.

Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0012 is a paper copy of email that appears to have been printed by Colleen Smith and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0012 printed by the Colleen Smith. Notwithstanding the foregoing, REVOLUTION admits that Beale 0012 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.

8.      Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0013 through BEALE 0014

Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0013 through Beale 0014 is a paper copy of email that appears to have been printed by Colleen Smith and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0013 through Beale 0014 printed by Colleen Smith. Notwithstanding the foregoing, REVOLUTION admits that Beale 0013 through Beale 0014 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.

9.      Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0015.

Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0015 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0015 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION

admits that Beale 0015 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.

10.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0016.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0016 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0016 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0016 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel, although this document refers to an attachment that is not included within this document..**

11.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0017.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0017 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0017 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0017 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

12.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates number BEALE 0018.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0018 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0018 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0018 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

13.     Admit the genuineness of the document produced to REVOLUTION by Beale bearing Bates numbers BEALE 0019 through BEALE 0021.

**Response: REVOLUTION admits that Beale 0019 through Beale 0021 appears to be a genuine document, although this document refers to an attachment that is not included within this document.**

14.   Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates numbers BEALE 0022 through BEALE 0034.

**Response: REVOLUTION admits that Beale 0022 through Beale 0034 appears to be a genuine copy of the Settlement Agreement entered into between the parties on December 12, 2005 as well as an additional document entitled "Release."**

15.   Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates numbers BEALE 0035 through BEALE 0048.

**Response: REVOLUTION admits that Beale 0035 through Beale 0048 appears to be a genuine copy of the First Amendment of the Settlement Agreement dated June 26, 2007 as well as an additional document entitled "Release."**

16.   Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates number BEALE 0049.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0049 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0049 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0049 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

17.   Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates number BEALE 0050.

**Response: REVOLUTION cannot truthfully admit or deny the matter asserted in this request. Beale 0050 is a paper copy of email that appears to have been printed by the Plaintiff and REVOLUTION cannot admit or deny that this is a genuine document. REVOLUTION further denies that it received a paper copy of Beale 0050 printed by the Plaintiff. Notwithstanding the foregoing, REVOLUTION admits that Beale 0050 appears to depict an accurate email exchange between counsel for REVOLUTION, the Plaintiff, and Plaintiff's counsel.**

5

18.     Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates numbers BEALE 0051 through BEALE 0052.

> **Response: After conducting a reasonable inquiry into the information known or
> readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the
> matter asserted in this request. Beale 0051 through Beale 0052 is a correspondence
> between Security Life of Denver Insurance Company and Beale and for that reason
> REVOLUTION lacks sufficient information as to whether this correspondence is
> genuine.**

19.     Admit the genuineness of the document produced to REVOLUTION by Beale

bearing Bates numbers BEALE 0053 through BEALE 0054.

> **Response: After conducting a reasonable inquiry into the information known or
> readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the
> matter asserted in this request. Beale 0053 through Beale 0054 is a correspondence
> between Security Life of Denver Insurance Company and Beale and for that reason
> REVOLUTION lacks sufficient information as to whether this correspondence is
> genuine, although REVOLUTION's counsel did receive a copy of it.**

20.     Admit that the REVOLUTION Settlement Agreement was a valid, binding and

enforceable agreement on the date it was executed by REVOLUTION.

> **Response: REVOLUTION objects to this request as is not a request to admit a fact,
> but rather a request to admit a conclusion of law. Therefore, no response is
> required.**

21.     Admit that the Amendment was a valid binding and enforceable agreement on the

date it was executed by REVOLUTION.

> **Response: REVOLUTION objects to this request as is not a request to admit a fact,
> but rather a request to admit a conclusion of law. Therefore, no response is
> required.**

22.     Admit that the REVOLUTION Settlement Agreement is a valid binding and

enforceable agreement.

> **Response: REVOLUTION objects to this request as is not a request to admit a fact,
> but rather a request to admit a conclusion of law. Therefore, no response is
> required.**

23.     Admit that the Amendment is a valid binding and enforceable agreement.

**Response: REVOLUTION objects to this request as is not a request to admit a fact, but rather a request to admit a conclusion of law. Therefore, no response is required.**

24.     Admit that REVOLUTION did not fully perform the REVOLUTION Settlement Agreement.

**Response: Deny.**

25.     Admit that REVOLUTION did not fully perform the Amendment.

**Response: Deny.**

26.     Admit that REVOLUTION did not execute the General Release.

**Response: REVOLUTION objects to Plaintiff's definition of General Release. Both the Settlement Agreement and the First Amendment to the Settlement Agreement contained separate general releases. Notwithstanding the foregoing, REVOLUTION denies the matter asserted in this request.**

27.     Admit that REVOLUTION did not execute the Islamorada Release.

**Response: Deny.**

28.     Admit that REVOLUTION did not deliver the General Release to Beale.

**Response: Admit.**

29.     Admit that REVOLUTION did not deliver the Islamorada Release to Beale.

**Response: Admit.**

30.     Admit that Beale has offered to REVOLUTION to perform all of his remaining obligations under the Amendment if REVOLUTION would fully perform under the Amendment.

**Response: Deny.**

31.     Admit that REVOLUTION does not contend that Beale breached any provision of the Amendment other than Paragraph 2(g) and 2(i).

**Response: Deny.**

7

32.     Admit that REVOLUTION knew on or before June 29, 2007, that Beale intended to obtain the Beale Loan secured by the Florida Property.

**Response:  REVOLUTION cannot truthfully admit or deny how Beale "intended" to obtain the "Beale Loan."  REVOLUTION was not told by Beale how he intended to do this.**

33.     Admit that Beale could not obtain the Beale Loan secured by the Florida Property unless REVOLUTION delivered the Islamorada Release to the Escrow Agent or Beale.

**Response: REVOLUTION cannot truthfully admit or deny why Beale could not obtain the "Beale Loan."  REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

34.     Admit that REVOLUTION knew on or before June 29, 2007, that Beale intended to make the $115,000 payment to REVOLUTION provided for in Paragraph 2(i) of the Amendment out of the proceeds of the Beale Loan.

**Response: REVOLUTION cannot truthfully admit or deny how, or whether, Beale "intended" to make the $115,000 payment to REVOLUTION.  REVOLUTION was not told by Beale how he intended to do this.**

35.     Admit that the reason Paragraph 2(d) of the Amendment required REVOLUTION to deliver the Islamorada Release to the Escrow Agent was to enable Beale to obtain the Beale Loan so that he could use the proceeds of the Beale Loan to make the $115,000 payment to REVOLUTION required by Paragraph 2(i) of the Amendment.

**Response: Deny.**

36.     Admit that REVOLUTION agreed that Beale could make the $115,000 payment required by Paragraph 2(i) of the Amendment with the proceeds of the Beale Loan.

**Response: Upon information and belief, REVOLUTION admits that Beale could have made the $115,000 payment with the proceeds of the "Beale Loan." REVOLUTION cannot admit or deny whether the "Beale Loan" was the <u>only</u> way he could have made the $115,000 payment.**

37.     Admit that the Beale Loan was to be closed by Coral Reef Title.

**Response: REVOLUTION cannot truthfully admit or deny that the "Beale Loan" was to be closed by Coral Reef Title.   REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

38.   Admit that the Beale Loan was to be closed on June 29, 2007.

**Response: REVOLUTION cannot truthfully admit or deny that the "Beale Loan" was to be closed on June 29, 2007.   REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

39.   Admit that, on or about June 29, 2007, REVOLUTION provided wire transfer instructions to Coral Reef Title.

**Response: Admit.**

40.   Admit that, on or about June 29, 2007, REVOLUTION provided wire transfer instructions to Coral Reef Title so that Beale could make the $115,000 payment to REVOLUTION out of the proceeds of the Beale Loan.

**Response: REVOLUTION admits that it provided wire transfer instructions to Coral Reef Title so that Beale could make the $115,000 payment to REVOLUTION. REVOLUTION cannot truthfully admit or deny that the $115,000 payment was to be made from the proceeds of the "Beale Loan." REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

41.   Admit that if the Beale Loan had closed on June 29, 2007, REVOLUTION would have received the $115,000 payment required by Paragraph 2(i) of the Amendment on or before July 2, 2007.

**Response: REVOLUTION cannot truthfully admit or deny that REVOLUTION would have received the $115,000 on or before July 2, 2007 if the "Beale Loan" had closed on June 29, 2007.  REVOLUTION was not a party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."**

42.   Admit that the only reason that the Beale Loan did not close on June 29, 2007 was because REVOLUTION did not deliver the Islamorada Release to the Escrow Agent or Beale.

**Response: REVOLUTION cannot truthfully admit or deny that the "only reason" the "Beale Loan" did not close on June 29, 2007 was because REVOLUTION did not deliver the Islamorada Release to the Escrow Agent. REVOLUTION was not a**

> party to the "Beale Loan" nor is REVOLUTION aware of the terms of the "Beale Loan."

43. Admit that on June 29, 2007, Coral Reef Title confirmed to REVOLUTION, through its counsel, that a $115,000 wire transfer would be made to REVOLUTION upon the closing of the Beale Loan.

> **Response: REVOLUTION admits that Coral Reef Title confirmed that a $115,000 wire transfer would be made to REVOLUTION upon certain conditions being satisfied. REVOLUTION denies the remaining parts of this request.**

44. Admit that on June 29, 2007, Coral Reef Title asked REVOLUTION to confirm that REVOLUTION would deliver the Islamorada Release to the Escrow Agent.

> **Response: Deny.**

45. Admit that, on or before June 29, 2007, REVOLUTION repudiated the Amendment.

> **Response: Deny.**

46. Admit that, on or before June 29, 2007, REVOLUTION decided that it would not deliver the Islamorada Release to the Escrow Agent.

> **Response: Deny.**

47. Admit that, on or before June 29, 2007, REVOLUTION decided that it would not deliver the General Release to Beale.

> **Response: Deny.**

48. Admit that REVOLUTION did not deliver the Islamorada Release to the Escrow Agent.

> **Response: Deny.**

49. Admit that REVOLUTION did not deliver the Islamorada Release to Beale.

> **Response: Admit.**

50.    Admit that REVOLUTION did not deliver the General Release to Beale.

**Response: Admit.**

51.    Admit that REVOLUTION did not notify Beale's counsel on or before June 29, 2007 that it had delivered the Islamorada Release to the Escrow Agent.

**Response: Deny.**

52.    Admit that REVOLUTION did not notify Beale's counsel on or before June 29, 2007 that it had delivered the Islamorada Release to the Beale.

**Response: Admit.**

53.    Admit that REVOLUTION did not inform Beale or Beale's counsel on or before June 29, 2007 that REVOLUTION did not intend to deliver the Islamorada Release to the Escrow Agent.

**Response: Admit.**

54.    Admit that REVOLUTION did not inform Beale or Beale's counsel on or before June 29, 2007 that REVOLUTION did not intend to deliver the Islamorada Release to Beale.

**Response: Admit.**

55.    Admit that the Beale Loan did not close on June 29, 2007 because REVOLUTION did not deliver the Islamorada Release to the Escrow Agent.

**Response: Deny.**

56.    Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on June 29, 2007.

**Response: Admit.**

57.    Admit that REVOLUTION's counsel did not return Beale's counsel's June 29, 2007 telephone call until July 3, 2007.

11

**Response: Deny.**

58.    Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on June 30, 2007.

> **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

59.    Admit that REVOLUTION's counsel did not return Beale's counsel's June 30, 2007 telephone call until July 3, 2007.

> **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

60.    Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on July 1, 2007.

> **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

61.    Admit that REVOLUTION's counsel did not return Beale's counsel's July 1, 2007 telephone call until July 3, 2007.

> **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

62.    Admit that Beale's counsel attempted to contact REVOLUTION's counsel by telephone on July 2, 2007.

> **Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request. REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

63.     Admit that REVOLUTION's counsel did not return Beale's counsel's July 2, 2007 telephone call until July 3, 2007.

**Response: After conducting a reasonable inquiry into the information known or readily attainable, REVOLUTION lacks sufficient knowledge to admit or deny the matter asserted in this request.  REVOLUTION does not have a record of when or if the phone call from Beale's counsel referenced in this request was placed.**

64.     Admit that, on or before July 3, 2007, REVOLUTION's counsel told Beale's counsel that REVOLUTION did not intend to deliver the Islamorada Release to the Escrow Agent or Beale.

**Response: Deny.**

65.     Admit that, on or before July 3, 2007, REVOLUTION's counsel told Beale's counsel that REVOLUTION did not intend to deliver the General Release to Beale.

**Response: Deny.**

66.     Admit that REVOLUTION filed the Motion for Writ of Execution on July 9, 2007.

**Response: Deny.**

67.     Admit that REVOLUTION's counsel began work on the Motion for Writ of Execution on or before July 2, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

68.     Admit that REVOLUTION's counsel began work on the Motion for Writ of Execution on or before June 29, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

13

69.    Admit that REVOLUTION's counsel began work on the Motion for Writ of Execution on or before June, 28, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

70.    Admit that REVOLUTION initiated the Florida Execution Proceedings on August 7, 2007.

**Response: Deny.**

71.    Admit that REVOLUTION's counsel began work in the Complaint filed in the Florida Execution Proceedings on or before June 29, 2007.

**Response: REVOLUTION objects to this request as it violates the attorney-client privilege and the work-product doctrine.**

72.    Admit that the Acknowledgment would have been issued on June 29, 2007 if REVOLUTION had paid the initial Policy premium on June 28, 2007.

**Response: REVOLUTION cannot truthfully admit or deny whether the acknowledgment would have been issued on June 29, 2007, if REVOLUTION had paid the initial Policy Premium on June 28, 2007. REVOLUTION is not aware of how long it takes for an insurance company to issue an acknowledgment upon receipt of the premium.**

73.    Admit that the Acknowledgment was issued one day after REVOLUTION made the initial premium payment on the Policy.

**Response: Deny.**

74.    Admit that Beale told REVOLUTION that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

**Response: Deny.**

14

75.   Admit that on or before June 28, 2007, REVOLUTION knew that the Acknowledgment would be issued one day after the payment of the initial premium on the Policy.

**Response: Deny.**

76.   Admit that REVOLUTION did not pay the initial premium on the Policy until July 2, 2007.

**Response: Deny.**

77.   Admit that, on or before June 28, 2007, REVOLUTION's insurance broker told REVOLUTION that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

> **Response: REVOLUTION denies that it had an insurance broker working with REVOLUTION with respect to the Policy. The insurance brokers were the agents of Beale, not REVOLUTION.**

78.   Admit that, on or before June 28, 2007, REVOLUTION's insurance broker told Beale's insurance broker that the Acknowledgment would be issued one day after payment of the initial premium on the Policy.

> **Response: REVOLUTION denies that it had an insurance broker working with REVOLUTION with respect to the Policy. The insurance brokers were the agents of Beale, not REVOLUTION.**

79.   Admit that, on or before July 2, 2007, REVOLUTION knew that the Acknowledgment would be issued on July 3, 2007 if REVOLUTION paid the initial premium on the Policy on July 2, 2007.

> **Response: Deny.**

15

80.     Admit, on June 27, 2007, Beale sent an email to REVOLUTION's counsel informing him that if REVOLUTION sent the initial premium payment on the Policy to ING on June 28, 2007, the Acknowledgment would be issued by ING on June 29, 2007.

**Response: Deny.**

81.     Admit that on or about June 27, 2007, Stuart Youngentob was an insurance broker for REVOLUTION.

**Response: Deny.**

82.     Admit that, on or about June 27, 2007, Stuart Youngentob told Bruce Schlesinger that if REVOLUTION sent the initial premium payment on the Policy to ING on June 28, 2007, the Acknowledgment would be issued by ING on June 29, 2007.

> **Response: REVOLUTION denies that Stuart Youngentob was the insurance broker for REVOLUTION. Furthermore, REVOLUTION cannot truthfully admit or deny what conversations took place between Stuart Youngentob and Bruce Schlesinger.**

83.     Admit that the dollar value of the Islamorada Release cannot be determined.

**Response: Deny.**

84.     Admit that the dollar value of the General Release cannot be determined.

**Response: Deny.**

85.     Admit that REVOLUTION intends to file additional actions in order to collect on the amounts that it claims Beale owes to it pursuant to the Amendment.

> **Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

86.     Admit that REVOLUTION intends to file additional actions to enforce the "Judgment" defined in Paragraph 4 of REVOLUTION's Counterclaim.

> **Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

87.    Admit that REVOLUTION intends to attempt to enforce the "Judgment" defined in Paragraph 4 of REVOLUTION's Counterclaim against property owned by Beale other than the Florida Property.

**Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

88.    Admit that REVOLUTION does not intend to attempt to enforce the "Judgment" defined in Paragraph 4 of REVOLUTION's Counterclaim against any property owned by Beale except for the Florida Property.

**Response: REVOLUTION objects to this request to the extent it violates the attorney-client privilege and the work-product doctrine.**

89.    Admit that REVOLUTION could have paid the initial premium due on the Policy on or before June 29, 2007.

**Response: Admit.**

90.    Admit that, if REVOLUTION had paid to ING the initial premium due on the Policy on or before June 29, 2007, then the Acknowledgment could have been delivered to REVOLUTION on or before July 2, 2007.

**Response: REVOLUTION cannot truthfully admit or deny this matter contained in this request. REVOLUTION is not aware of how long it takes for an insurance company to issue an acknowledgment upon receipt of the premium.**

91.    Admit that, on June 29, 2007, REVOLUTION believed that, if REVOLUTION paid to ING the initial premium due on the Policy on or before June 29, 2007, then the Acknowledgment could have been delivered to REVOLUTION on or before July 2, 2007.

**Response: Admit.**

92.    Admit that REVOLUTION did not pay to ING the initial premium due on the Policy on or before June 29, 2007.

**Response: Deny.**

93.    Admit that ING issued the Acknowledgment on July 3, 2007.

**Response: REVOLUTION cannot truthfully admit or deny this matter contained in this request. REVOLUTION does not know the exact date in which ING issued the Acknowledgment.**

94.    Admit that the Acknowledgment is dated July 3, 2007.

**Response: Admit.**

95.    Admit that REVOLUTION did not suffer any actual damages due to the delay in its receipt of the Acknowledgment.

**Response: Deny.**

96.    Admit that REVOLUTION would not suffer any irreparable harm if the Amendment were rescinded.

**Response: Deny.**

97.    Admit that REVOLUTION would not suffer any irreparable harm if the REVOLUTION Settlement Agreement were rescinded.

**Response: Deny.**

<div style="margin-left:40%">

Respectfully Submitted,
REVOLUTION PORTFOLIO, LLC

By:  /s/ Matthew P. Connelly
      One of its attorneys

</div>

Matthew P. Connelly
ARDC No. 6229052
Garrett C. Carter
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) 2251-9600 Telephone
(312) 251-9601 Facsimile

Christopher B. Lega
ARDC No. 6276619
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts

7888001/Reponse.Plaintiff.Request.Admit

EXHIBIT C

## Joe Beale

**From:**       Joe Beale [jbeale@hawthorninterests.com]
**Sent:**       Monday, June 25, 2007 6:45 PM
**To:**         'Jeffrey D Ganz'; 'sclar@craneheyman.com'
**Cc:**         'Colleen Smith'
**Subject:**    RE: REVOLUTION - Beale :: Ancillary Documents

Thanks, Jeff. I'll send draft of Release to Coral Reef in the AM, and get their response.
Joe

-----Original Message-----
From: Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]
Sent: Monday, June 25, 2007 6:45 PM
To: jbeale@hawthorninterests.com; sclar@craneheyman.com
Subject: Re: REVOLUTION - Beale :: Ancillary Documents

In short, the point is to release the lien against the Islamorada property while
preserving REVOLUTION's right to enforce the underlying judgment (as provided in the First
Amendment). This document accomplishes exactly what Leaders and Coral Reef need and, if
not, please have them contact me to explain the problem.

----- Original Message -----
From: Joe Beale <jbeale@hawthorninterests.com>
To: Jeffrey D Ganz
Sent: Mon Jun 25 18:41:10 2007
Subject: RE: REVOLUTION - Beale :: Ancillary Documents

Explain to me the concept of the Partial Release.  Please respond this evening.

-----Original Message-----
From: Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]
Sent: Monday, June 25, 2007 5:33 PM
To: Scott R. Clar
Cc: jbeale@hawthorninterests.com
Subject: REVOLUTION - Beale :: Ancillary Documents


Scott:

At your request, I am providing both you and Joe with a copy of the following draft
documents:

1.      Release (a/k/a the "New Revolution Release");

2.      Partial Release of Judgment Lien (a/k/a the "Islamorada Release");

3.      Draft escrow instructions to Charter Title;

4.      Joseph S. Beale Limited Durable Power of Attorney (a/k/a the "Power of Attorney");
and

5.      Authorization for Release of Protected Health Information (a/k/a the "HIPAA
Form").

Please note that we have learned that the HIPAA Authorization is effective only to the
extent that it allows Joe to revoke it at any time.  Accordingly, we will be incorporating
into the First Amendment a provision that any effort by Joe to revoke one or more of the
HIPAA Authorizations shall be an event of default.  This will likely require minor
revisions to paragraph 2(h) of the First Amendment.

1

**BEALE 0002**

Please also note that REVOLUTION is continuing to review these documents and, therefore, we must reserve the right to make any necessary changes.

Kindly provide me with your comments at your first opportunity. Thank you for your attention to this matter.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct dial (617) 880-3568
direct fax (617) 692-3568
jganz@riemerlaw.com

============================================================

This message contains confidential information, intended
only for the person(s) named above, which may also be privileged. Any use, distribution,
copying or disclosure by any other person is strictly prohibited. If you have received
this message in error, please notify the e-mail sender immediately, and delete the
original message without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
============================================================

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

============================================================

This message contains confidential information, intended
only for the person(s) named above, which may also be privileged. Any use, distribution,
copying or disclosure by any other person is strictly prohibited. If you have received
this message in error, please notify the e-mail sender immediately, and delete the
original message without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
============================================================

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0003**

## Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Tuesday, June 26, 2007 10:06 AM |
| **To:** | 'Jeffrey D Ganz'; 'Scott R. Clar' |
| **Subject:** | RE: REVOLUTION - Beale :: Ancillary Documents |

It's what's not said in Jeff's memos that concern me. My other concern is getting this transaction done today with the dispatch of documents to ensure a funding by the end of the week. Jeff is stipulating the receipt by Revolution of $183,000 before Coral reef gets a release. My guess is that Coral Reef will interface with FATCO and send them the money, but this is a detail that can be worked out if we address the timing issue of funding in the next one or two days. The other documents including the note have been signed. Let's talk this morning.  Joe

> -----Original Message-----
> **From:** Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]
> **Sent:** Monday, June 25, 2007 9:59 PM
> **To:** Joe Beale; Scott R. Clar
> **Subject:** RE: REVOLUTION - Beale :: Ancillary Documents
>
> In order to get REVOLUTION to sign the releases and allow me to deposit them into escrow, I need to receive a signed agreement and the initial deposit of $30,000. REVOLUTION simply won't take any action until it receives that deposit. If I can obtain REVOLUTION's final approval on the minor changes resulting from our discussions today, I'll be sending you a revised First Amendment in the morning so we can try to accomplish these initial steps as soon as possible to get everyone comfortable with the fact that we all intend to honor the obligations created by that First Amendment. In light of the step-by-step approach to this process, the dual escrow agents will provide the best mechanism for both sides to meet their goals so we will continue to plan on using First American.
>
> Thank you for your cooperation.
>
> Jeffrey D. Ganz
> Riemer & Braunstein LLP
> 3 Center Plaza
> Boston, Massachusetts 02108
> direct tel: 617-880-3568
> direct fax: 617-692-3568
> email: jganz@riemerlaw.com
>
>
>
> -----Original Message-----
> **From:** Joe Beale [mailto:jbeale@hawthorninterests.com]
> **Sent:** Monday, June 25, 2007 7:09 PM
> **To:** Jeffrey D Ganz; 'Scott R. Clar'
> **Subject:** RE: REVOLUTION - Beale :: Ancillary Documents
>
>> Scott and Jeff—The attached forms seem to be fine. I'm assuming the General Release is the same Release as attached to the original Settlement Agreement with the exception of the reference to the provision in the First Amendment about the 25 month holding period. Jeff should advise us as to how he is handling what he refers to as the Partial Release. Is he going to send this directly to Coral Reef, which is my preference, or is he still using FATCO as an intermediary? Coral Reef won't release the funds without the Lien Release, hence dealing with them directly might alleviate the problem. Also, I need an explanation from Jeff as to the Partial Release of the Lien vs. a full release. I'll sign and fax the other documents as well as Fed. Ex. the originals on Tues. Is the Amended Settlement Agreement being revised? Jeff, please get back to us tonight or early in the AM as I am out of pocket for the better part of the day on Tuesday, and if we want to close on Wednesday, we need to get everything resolved and dispatched on Tuesday.  Joe
>>
>> -----Original Message-----

**BEALE 0004**

8/2/2007

**From:** Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]
**Sent:** Monday, June 25, 2007 5:33 PM
**To:** Scott R. Clar
**Cc:** jbeale@hawthorninterests.com
**Subject:** REVOLUTION - Beale :: Ancillary Documents

Scott:

At your request, I am providing both you and Joe with a copy of the following **draft** documents:

1.    Release (a/k/a the "New Revolution Release");

2.    Partial Release of Judgment Lien (a/k/a the "Islamorada Release");

3.    Draft escrow instructions to Charter Title;

4.    Joseph S. Beale Limited Durable Power of Attorney (a/k/a the "Power of Attorney"); and

5.    Authorization for Release of Protected Health Information (a/k/a the "HIPAA Form").

Please note that we have learned that the HIPAA Authorization is effective only to the extent that it allows Joe to revoke it at any time. Accordingly, we will be incorporating into the First Amendment a provision that any effort by Joe to revoke one or more of the HIPAA Authorizations shall be an event of default. This will likely require minor revisions to paragraph 2(h) of the First Amendment.

Please also note that REVOLUTION is continuing to review these documents and, therefore, we must reserve the right to make any necessary changes.

Kindly provide me with your comments at your first opportunity. Thank you for your attention to this matter.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct dial (617) 880-3568
direct fax (617) 692-3568
jganz@riemerlaw.com

========================================================

This message contains confidential information, intended
only for the person(s) named above, which may also be
privileged. Any use, distribution, copying or disclosure
by any other person is strictly prohibited. If you have
received this message in error, please notify the e-mail
sender immediately, and delete the original message
without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
========================================================

BEALE 0005

## Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Tuesday, June 26, 2007 10:43 AM |
| **To:** | 'Jeffrey D Ganz'; 'Scott R. Clar' |
| **Subject:** | RE: REVOLUTION - Beale :: Ancillary Documents |

Jeff and Scott—Look at Article 2(f) on Page 3 of Amended Settlement Agreement. How do I get this Acknowledgement from ING? Is this Stuart's task?
Also, Jeff should look at Article 5 on Page 8. Jeff should look at the last sentence before the red line commences (3rd Sentence). It lacks completion. Please advise.      Joe

-----Original Message-----
**From:** Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]
**Sent:** Monday, June 25, 2007 9:59 PM
**To:** Joe Beale; Scott R. Clar
**Subject:** RE: REVOLUTION - Beale :: Ancillary Documents

In order to get REVOLUTION to sign the releases and allow me to deposit them into escrow, I need to receive a signed agreement and the initial deposit of $30,000. REVOLUTION simply won't take any action until it receives that deposit. If I can obtain REVOLUTION's final approval on the minor changes resulting from our discussions today, I'll be sending you a revised First Amendment in the morning so we can try to accomplish these initial steps as soon as possible to get everyone comfortable with the fact that we all intend to honor the obligations created by that First Amendment. In light of the step-by-step approach to this process, the dual escrow agents will provide the best mechanism for both sides to meet their goals so we will continue to plan on using First American.

Thank you for your cooperation.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct tel: 617-880-3568
direct fax: 617-692-3568
email: jganz@riemerlaw.com

-----Original Message-----
**From:** Joe Beale [mailto:jbeale@hawthorninterests.com]
**Sent:** Monday, June 25, 2007 7:09 PM
**To:** Jeffrey D Ganz; 'Scott R. Clar'
**Subject:** RE: REVOLUTION - Beale :: Ancillary Documents

Scott and Jeff—The attached forms seem to be fine. I'm assuming the General Release is the same Release as attached to the original Settlement Agreement with the exception of the reference to the provision in the First Amendment about the 25 month holding period. Jeff should advise us as to how he is handling what he refers to as the Partial Release. Is he going to send this directly to Coral Reef, which is my preference, or is he still using FATCO as an intermediary? Coral Reef won't release the funds without the Lien Release, hence dealing with them directly might alleviate the problem. Also, I need an explanation from Jeff as to the Partial Release of the Lien vs. a full release. I'll sign and fax the other documents as well as Fed. Ex. the originals on Tues. Is the Amended Settlement Agreement being revised? Jeff, please get back to us tonight or early in the AM as I am out of pocket for the better part of the day on Tuesday, and if we want to close on Wednesday, we need to get everything resolved and dispatched on Tuesday.    Joe

-----Original Message-----
**From:** Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]

**BEALE 0006**

**Sent:** Monday, June 25, 2007 5:33 PM
**To:** Scott R. Clar
**Cc:** jbeale@hawthorninterests.com
**Subject:** REVOLUTION - Beale :: Ancillary Documents

Scott:

At your request, I am providing both you and Joe with a copy of the following **draft** documents:

1.    Release (a/k/a the "New Revolution Release");

2.    Partial Release of Judgment Lien (a/k/a the "Islamorada Release");

3.    Draft escrow instructions to Charter Title;

4.    Joseph S. Beale Limited Durable Power of Attorney (a/k/a the "Power of Attorney"); and

5.    Authorization for Release of Protected Health Information (a/k/a the "HIPAA Form").

Please note that we have learned that the HIPAA Authorization is effective only to the extent that it allows Joe to revoke it at any time. Accordingly, we will be incorporating into the First Amendment a provision that any effort by Joe to revoke one or more of the HIPAA Authorizations shall be an event of default. This will likely require minor revisions to paragraph 2(h) of the First Amendment.

Please also note that REVOLUTION is continuing to review these documents and, therefore, we must reserve the right to make any necessary changes.

Kindly provide me with your comments at your first opportunity. Thank you for your attention to this matter.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct dial (617) 880-3568
direct fax (617) 692-3568
jganz@riemerlaw.com

===========================================================

This message contains confidential information, intended only for the person(s) named above, which may also be privileged. Any use, distribution, copying or disclosure by any other person is strictly prohibited. If you have received this message in error, please notify the e-mail sender immediately, and delete the original message without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has been swept by Postini for the presence of computer viruses.
===========================================================

**BEALE 0007**

8/2/2007

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

======================================================

This message contains confidential information, intended
only for the person(s) named above, which may also be
privileged. Any use, distribution, copying or disclosure
by any other person is strictly prohibited. If you have
received this message in error, please notify the e-mail
sender immediately, and delete the original message
without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
======================================================

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0008**

Message`                                                                      Page 1 of 2

---

## Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Tuesday, June 26, 2007 11:17 AM |
| **To:** | 'Jeffrey D Ganz' |
| **Cc:** | 'Scott R. Clar' |
| **Subject:** | FW: 118 Sapodilla Dr., Islamorada |

Jeff and Scott—This memo comes from Lisa Miller of Coral Reef Title Co. Jeff, can you respond as I think the documents re: the transition from the FDIC to Revolution have to come from you, as well as the response to the other questions.
Joe

-----Original Message-----
**From:** Colleen Smith [mailto:csmith@hawthorninterests.com]
**Sent:** Tuesday, June 26, 2007 11:16 AM
**To:** 'Joe Beale'
**Subject:** FW: 118 Sapodilla Dr., Islamorada


-----Original Message-----
**From:** Coral Reef Title Key Largo Office [mailto:coralreeftitlekl@msn.com]
**Sent:** Tuesday, June 26, 2007 11:01 AM
**To:** csmith@hawthorninterests.com
**Subject:** RE: 118 Sapodilla Dr., Islamorada

Colleen, I went over the release and the only trouble I have is who is Revolution to sign for FDIC. Also, the LLC should have the state of were it is registered. I do not know who the other companies as general partner are and why are they on it.

Please let Joe know asap as he has been calling.

Thanks,

Lisa


Coral Reef Title Company
100125 Overseas Hwy
Key Largo, Fl 33037
305-451-6200
305-451-0994fax
**coralreeftitlekl@msn.com**

---

From: "Colleen Smith" <csmith@hawthorninterests.com>
To: "Coral Reef Title Key Largo Office'" <coralreeftitlekl@msn.com>
Subject: 118 Sapodilla Dr., Islamorada
Date: Tue, 26 Jun 2007 10:13:08 -0500
MIME-Version: 1.0
Received: from mail03.georgejon.com ([67.63.3.68]) by bay0-mc4-f8.bay0.hotmail.com with Microsoft SMTPSVC(6.0.3790.2668); Tue, 26 Jun 2007 08:04:55 -0700
Received: from COLLEENXP (Not Verified[74.0.223.111]) by mail03.georgejon.com with MailMarshal (v6,1,8,2074)id <B46812b370000>;

*Tue, 26 Jun 2007 10:05:27 -0500*

Lisa and Wendy,

Attached is a draft Release form sent on behalf of Joseph Beale regarding the above referenced property.  I also sent this document to your office via fax.

Please review the attached and let Joe know if this is satisfactory.  Joe can be reached on his cell phone:  312-543-5864.

Colleen Smith
312-642-2016

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.9.9/870 - Release Date: 6/26/2007 10:07 AM

> << revisedpartialrelease1.DOC >>

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.9.9/870 - Release Date: 6/26/2007 10:07 AM

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.9.9/870 - Release Date: 6/26/2007 10:07 AM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0010**

**Joe Beale**

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Tuesday, June 26, 2007 11:31 AM |
| **To:** | 'Scott R. Clar'; 'Jeffrey D Ganz' |
| **Subject:** | RE: Beale/Revolution |

Hey Guys.  I'm only trying to keep a transaction moving that has been bogged down for
weeks.  I'm not seeking advice but clarification of language in documents I'm supposed to
sign, and it's cheaper to communicate by email.  I'm leaving the office at noon Chicago
time and won't return until late PM.  In the interim, email a copy of the revised
Settlement Amendment to Colleen Smith of our office, and she'll get the red line to me.
As I've stated earlier, we need to wrap this up today, and I need to know the impediments
to accomplishing this objective.      Joe

-----Original Message-----
From: Scott R. Clar [mailto:sclar@craneheyman.com]
Sent: Tuesday, June 26, 2007 11:36 AM
To: Jeffrey D Ganz
Subject: Re: Beale/Revolution

Don't be snotty.  His questions did not request legal advice from you.

Jeffrey D Ganz wrote:

>I'd prefer not to deal with them in a piecemeal fashion and I'd prefer
>not to be providing him with any legal advice.  I'm circulating a
>revised version of the First Amendment shortly - you and I should try
>to deal with all of the outstanding issues thereafter.  If Joe needs to
>be on that call, so be it.
>
>Jeffrey D. Ganz
>Riemer & Braunstein LLP
>3 Center Plaza
>Boston, Massachusetts 02108
>direct dial (617) 880-3568
>direct fax (617) 692-3568
>jganz@riemerlaw.com
>
>
>-----Original Message-----
>From: Scott R. Clar [mailto:sclar@craneheyman.com]
>Sent: Tuesday, June 26, 2007 12:32 PM
>To: Jeffrey D Ganz
>Subject: Beale/Revolution
>
>
>Jeff, I am on a conference call.  Can you respond to Joe's questions?
>
>
>

--
Scott R. Clar
Crane, Heyman, Simon, Welch & Clar
135 S. LaSalle, Suite 3705
Chicago, Illinois 60603
(312) 641-6777
Fax (312) 641-7114

CIRCULAR 230 DISCLOSURE:
PURSUANT TO REGULATIONS GOVERNING PRACTICE BEFORE THE INTERNAL REVENUE SERVICE, ANY TAX
ADVICE CONTAINED HEREIN IS NOT INTENDED OR WRITTEN TO BE USED AND CANNOT BE USED BY A
TAXPAYER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER.

1

**BEALE 0011**

**Colleen Smith**

| | |
|---|---|
| **From:** | Jeffrey D Ganz [JGanz@riemerlaw.com] |
| **Sent:** | Tuesday, June 26, 2007 4:57 PM |
| **To:** | Scott R. Clar |
| **Cc:** | jbeale@hawthorninterests.com |
| **Subject:** | REVOLUTION - Beale |

Scott:

Here are the appropriate wiring instructions for use in connection with the payments required under the First Amendment to Settlement Agreement:

Name of Account :     Riemer & Braunstein LLP, Clients Trust Fund
Account Number:       000053776978
Bank:                 Bank of America
Transit Number:       0260-0959-3

Please forward a federal reference number and a confirmation of the amount sent to tthompson@riemerlaw.com and to jganz@riemerlaw.com.

Please let me know if you need any additional information.  Thank you, Jeff.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct dial (617) 880-3568
direct fax (617) 692-3568
jganz@riemerlaw.com


===========================================================
This message contains confidential information, intended
only for the person(s) named above, which may also be
privileged. Any use, distribution, copying or disclosure
by any other person is strictly prohibited. If you have
received this message in error, please notify the e-mail
sender immediately, and delete the original message
without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
===========================================================

**BEALE 0012**

REVOLUTION - Beale

---

**Colleen Smith**

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Thursday, August 02, 2007 9:46 AM |
| **To:** | 'Colleen Smith' |
| **Subject:** | FW: REVOLUTION - Beale |

-----Original Message-----
**From:** Joe Beale [mailto:jbeale@hawthorninterests.com]
**Sent:** Tuesday, June 26, 2007 6:47 PM
**To:** 'Joe Beale'; 'Jeffrey D Ganz'; 'Scott R. Clar'
**Subject:** RE: REVOLUTION - Beale

I erred in my last transmittal. Jeffrey Michael Berends has witnessed the note and Jane Rodak notarized my signature. I couldn't have Jane act as a notary and Witness.

   -----Original Message-----
   **From:** Joe Beale [mailto:jbeale@hawthorninterests.com]
   **Sent:** Tuesday, June 26, 2007 6:34 PM
   **To:** 'Jeffrey D Ganz'; 'Scott R. Clar'
   **Subject:** RE: REVOLUTION - Beale

   Jeff and Scott—16 Notarized HIPAA forms, 2 First Amendments to the Settlement Agreement (Notarized), One Note (Notarized and witnessed by Jane Rodak), a revised, Notarized Power of Attorney, an original hard copy of the Insurance Policy and a signed Receipt for the Policy, and an Authorization for the Release of Protected Health Information have been sent to Jeff Ganz by Fed Ex Priority Overnight, Tracking # 7907 7076 9509. The $67,500. will be wired to the account below tomorrow. All of these deliverables are being sent with the understanding that Jeff will work out the transmittal of the Release of the Life Estate Lien between the two Title Cos tomorrow. We have to fund on Friday, the end of the Quarter, with Revolution receiving $115,500, the balance of the Premium payment, by wire transfer from the Coral Reef Title Co. Also, Jeff will send to Scott Clar by Fed Ex the fully executed counterparts of the documents I have signed. Let's talk in the AM.        Joe

      -----Original Message-----
      **From:** Jeffrey D Ganz [mailto:JGanz@riemerlaw.com]
      **Sent:** Tuesday, June 26, 2007 4:57 PM
      **To:** Scott R. Clar
      **Cc:** jbeale@hawthorninterests.com
      **Subject:** REVOLUTION - Beale


      Scott:

      Here are the appropriate wiring instructions for use in connection with the payments required under the First Amendment to Settlement Agreement:

      Name of Account :      Riemer & Braunstein LLP, Clients Trust Fund
      Account Number:        000053776978
      Bank:                  Bank of America
      Transit Number:        0260-0959-3

      Please forward a federal reference number and a confirmation of the amount sent to

**BEALE 0013**

tthompson@riemerlaw.com and to jganz@riemerlaw.com.

Please let me know if you need any additional information.  Thank you, Jeff.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct dial (617) 880-3568
direct fax (617) 692-3568
jganz@riemerlaw.com

======================================================

This message contains confidential information, intended
only for the person(s) named above, which may also be
privileged. Any use, distribution, copying or disclosure
by any other person is strictly prohibited. If you have
received this message in error, please notify the e-mail
sender immediately, and delete the original message
without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
======================================================

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.11.2/931 - Release Date: 8/1/2007 4:53 PM


No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.11.2/931 - Release Date: 8/1/2007 4:53 PM


**BEALE 0014**

## Joe Beale

**From:**  Joe Beale [jbeale@hawthorninterests.com]

**Sent:**  Wednesday, June 27, 2007 11:15 AM

**To:**  'Jeffrey D Ganz'

**Cc:**  'Scott R. Clar'

**Subject:** Settlement Agreemen

I'm focused on getting this deal done, and ask that Jeff work out the details with Coral Reef title on mutually acceptable Escrow instructions. I'm going to Scott's office and will execute a new note with Scott as a witness and will Fed Ex it to Jeff's office. Also, please confirm receipt of the stuff sent yesterday to Jeff by Fed Ex. By tomorrow, all the deliverables will have been sent to Jeff and Leaders Bank is implementing a wire for $67,500. I've advised Coral Reef that the payment to Revolution from the escrow is now $115,500 rather than $183,000, which takes into consideration the advance payment of $67,500.              Joe

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

8/2/2007

**BEALE 0015**

## Joe Beale

| | |
|---|---|
| **From:** | Jeffrey D Ganz [JGanz@riemerlaw.com] |
| **Sent:** | Wednesday, June 27, 2007 4:11 PM |
| **To:** | Scott R. Clar |
| **Cc:** | jbeale@hawthorninterests.com |
| **Subject:** | REVOLUTION - Beale |

Scott:

As we discussed a short time ago, I received the package of documents Joe sent late this afternoon and, at your request, I am copying Joe on this email. Among other things, the package contained two copies of the wrong version of the First Amendment (Joe signed version 13 of the document, not version 14 which was the final version we sent to you yesterday). I've attached a copy of the correct version to this email. If Joe chooses to sign it, please have him initial each page and send me two duplicate originals. The package I received also contained the Demand Promissory Note without you as a witness, but I understand that you and Joe have corrected that document today and one of you is sending me a new original. The package I received also contained the original insurance policy, the original, signed durable power of attorney, and fifteen original, signed HIPAA forms.

With respect to one of the questions Joe posed earlier in the day, I would ask that you and/or he check with Bruce to determine whether the insurance company would accept a premium payment via wire before asking REVOLUTION to assent to that request. Without knowing whether it is a feasible option, REVOLUTION simply cannot provide direction.

Please contact me if you have any questions concerning this matter. Thank you for your consideration.

Jeffrey D. Ganz
Riemer & Braunstein LLP
3 Center Plaza
Boston, Massachusetts 02108
direct dial (617) 880-3568
direct fax (617) 692-3568
jganz@riemerlaw.com

<<amendment to settlement agreement - 6_26.DOC¤>>

============================================================
This message contains confidential information, intended
only for the person(s) named above, which may also be
privileged. Any use, distribution, copying or disclosure
by any other person is strictly prohibited. If you have
received this message in error, please notify the e-mail
sender immediately, and delete the original message
without making a copy.

Riemer & Braunstein LLP
Counselors at Law

This footnote also confirms that this email message has
been swept by Postini for the presence of computer viruses.
============================================================

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0016**

## Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Thursday, June 28, 2007 12:02 PM |
| **To:** | 'Jeffrey D Ganz' |
| **Cc:** | 'Scott Clar' |
| **Subject:** | Wire Transfer |

The Fed Reference Number for the wire is: IMAD20070628 QMGFT009 001462.  The time transmitted is 12:34:05 ET

Let me know if there are any issues or problems.              Joe

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0017**

8/2/2007

# Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Friday, June 29, 2007 9:42 AM |
| **To:** | 'Jeffrey D Ganz' |
| **Cc:** | 'Scott Clar' |
| **Subject:** | Coral Reef |

Scott is out of pocket in Oregon and hopefully Jeff will be in touch with him. In Scott's absence, I've had Ben Randall, an atty and partner with Randall and Kenig, review the documents and can join in a call if Scott is unavailable and Jeff wants to discuss anything with me with an atty on the line representing my interests. We sent all the deliverables and money under the premise we'd close today. Please let me know the status.          Joe

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0018**

# Joe Beale

**From:**    Joe Beale [jbeale@hawthorninterests.com]
**Sent:**    Wednesday, June 27, 2007 12:23 PM
**To:**       'Jeffrey D Ganz'
**Cc:**        'Scott R. Clar'
**Subject:** ING

Here's a thought for the two of you to consider.  If I were to wire the funds directly to ING for the first year's premium, it will expedite the process. Assuming it's around $40,000, I could then wire the remaining $27,500 to Jeff Ganz. The Policy will then be in full force and the documents re: the transfer of ownership in place. I'm still focused on a close by Friday.  Let me know and if you agree, and if so, we can work out the wire to ING.          Joe

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

**BEALE 0049**

# Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Wednesday, June 27, 2007 1:55 PM |
| **To:** | 'Jeffrey D Ganz' |
| **Cc:** | 'Scott R. Clar' |
| **Subject:** | FW: Assignment of Judgment |

Thanks, Jeff. Any response to my memo about paying the ING premium?

-----Original Message-----
**From:** Coral Reef Title Key Largo Office [mailto:coralreeftitlekl@msn.com]
**Sent:** Wednesday, June 27, 2007 1:05 PM
**To:** JGanz@riemerlaw.com
**Cc:** jbeale@hawthorninterests.com
**Subject:** Assignment of Judgment

Thank you for sending that so soon. I have searched the public records of Monroe county and Palm Beach county and could not locate any documentation that is required. The Assignment is the exact thing I need to record in front of the Release. Since the Judgment was recorded in Monroe County we need the appropriate documentation to satisfy it in Monroe County.

Please let me know when you can get another completed original or get the original that was emailed to me, completed along with the power of attorney, so I can have it recorded with the closing documents.

Thanks for your time and effort.


Lisa Miller

Coral Reef Title Company
100125 Overseas Hwy
Key Largo, Fl 33037
305-451-6200
305-451-0994fax
**coralreeftitlekl@msn.com**

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM


Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM


**BEALE 0050**

6/2/2007

EXHIBIT D

**Westlaw.**

Slip Copy                                                                                                          Page 1
Slip Copy, 2007 WL 2752175 (S.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 2752175)**

C Oakley v. McCabe
S.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. Illinois.
John W. OAKLEY, Plaintiff,
v.
Scott McCABE, Defendant.
**No. 06-4073-JPG.**

Sept. 21, 2007.

Hugh R. Williams, Williams Law Firm, Carbondale, IL, for Plaintiff.
Joseph A. Bleyer, K. Rockne Bleyer, Bleyer & Bleyer, Marion, IL, for Defendant.

***ORDER***

PROUD, Magistrate Judge.
**\*1** Before the court is Defendant's Motion to Deem Facts Admitted. (**Doc.26**). Plaintiff has not filed a response and the time for doing so is now expired. The court deems the failure to file a response to be an admission of the merits of the motion. SDIL-LR 7.1(g).

Defendant served Requests for Admissions on plaintiff concerning his medical records. The first request asked plaintiff to admit, in effect, that the attached medical records qualified as business records. The second request asked plaintiff to admit that his alcohol level was .245 at the hospital following the altercation between plaintiff and defendant. **See, Doc. 21.**

Plaintiff's response, which was erroneously docketed as "proposed findings of fact and conclusions of law" was that defendant should be required to have a "sponsoring witness" for the records. He also objected that his alcohol level is irrelevant. **See, Doc. 22.**

This case involves a claim by plaintiff that defendant, a police officer, used excessive force on plaintiff during an arrest. Defendant contends that plaintiff resisted arrest. Whether plaintiff was intoxicated at the time is obviously relevant. The objection is denied.

The Federal Rules of Civil Procedure **contemplate** that parties will, in good faith, **admit** the **genuineness** of documents when asked to do so, thereby doing away with the necessity of bringing in a custodian of records to establish the business records foundation. This is particularly appropriate in the case of medical records. Rule 37(c)(2) provides for the imposition of sanctions against a party who refuses to admit the genuineness of documents without reasonable grounds. Plaintiff has not set forth any reasonable grounds, and has not, in fact, denied that the records are genuine or that they qualify as business records.

Upon consideration and for good cause shown, Defendant's Motion to Deem Facts Admitted (**Doc.26**) is **GRANTED.**The matters set forth in defendant' Requests for Admission (**Doc.21**) are deemed admitted.

**IT IS SO ORDERED.**

S.D.Ill.,2007.
Oakley v. McCabe
Slip Copy, 2007 WL 2752175 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.