EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH S. BEALE, | ) | |
| | ) | Case No.: 07-CV-6909 |
| Plaintiff, | ) | |
| | ) | Judge Kocoras |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| REVOLUTION PORTFOLIO, LLC and | ) | |
| SECURITY LIFE OF DENVER | ) | |
| INSURANCE COMPANY, d/b/a ING, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT REVOLUTION PORTFOLIO, LLC

Plaintiff Joseph S. Beale, by his attorneys, pursuant to Rule 33 of the Federal Rules of Civil

Procedure, requests that Defendant Revolution Portfolio, LLC answer the following Interrogatories,

under oath, no later than 30 days after service hereof.

### DEFINITIONS

A.    "Beale" means or refers to Plaintiff Joseph S. Beale and his agents, employees and

all other persons acting or purporting to act on behalf of any of them.

B.    "Revolution," "You" or "Your" means or refers to Defendant Revolution Portfolio,

LLC, its predecessors, successors and assigns, as well as any agents, attorneys, employees, partners,

associates, and all persons acting or purporting to act on behalf of any of them.

C.    "ING" means or refers to Defendant Security Life of Denver Insurance Company

d/b/a ING, its predecessors, successors and assigns, as well as any agents, attorneys, employees,

partners, associates, and all persons acting or purporting to act on behalf of any of them.

D.    "Complaint" means the Verified Complaint for Specific Performance, Injunction and Other Relief filed by Beale in this matter.

E.    "Ganz" means or refers to Jeffrey D. Ganz, and any of his agents, attorneys, employees, partners, associates, and all persons acting or purporting to act on behalf of any of them.

F.    "Clar" means Scott R. Clar, and any of his agents, attorneys, employees, partners, associates, and all persons acting or purporting to act on behalf of any of them.

G.    "Bankruptcy Proceeding" means or refers to those certain involuntary Chapter 7 Bankruptcy initiated against Beale by, among others, Revolution, in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-8748.

H.    "Trustee" means or refers to Andrew J. Maxwell in his capacity as the Chapter 7 Trustee in the Bankruptcy Proceeding, and any of his agents, attorneys, employees, partners, associates, and all persons acting or purporting to act on behalf of any of them.

I.    "Adversary Proceeding" means or refers to the Adversary Proceeding No. 04-A-2416 initiated by the Trustee in the Bankruptcy Proceeding.

J.    "Bankruptcy Settlement Agreement" means or refers to that certain Amended Settlement Agreement among the Trustee, Beale and others through which they intended to resolve the disputes underlying the Adversary Proceeding.

K.    "Revolution Settlement Agreement" means or refers to that certain Settlement Agreement between Beale and Revolution dated as of December 12, 2005, a copy of which was attached as Exhibit A to the Complaint, and produced to Revolution and ING by Beale as BEALE 0022 through BEALE 0034.

L.    "Amendment" means or refers to the First Amendment to Settlement Agreement between Beale and Revolution dated as of June 26, 2007, a copy of which was attached as Exhibit B to the Complaint, and produced to Revolution and ING by Beale as BEALE 0035 through BEALE 0048.

M.    "Policy" means or refers to the life insurance policy on Beale's life issued by ING, policy number 1620821, and which is further described in the Complaint.

N.    "Acknowledgment" means or refers to the acknowledgment of the transfer of the Policy from Beale to Revolution, and which is further described in the Complaint.

O.    "Re-Sale Authorizations" means or refers to the HIPAA-compliant medical release forms and Durable Power of Attorney which Beale delivered to Revolution pursuant to the Amendment, and which are further described in the Complaint.

P.    "Florida Property" means or refers to the property located in Islamorada, Florida, as described in paragraph 23 of the Complaint, and which is referenced in paragraph 4(c) of the Revolution Settlement Agreement.

Q.    "Florida Release" means or refers to the release of lien against the Florida Property described in paragraph 23 of the Complaint, and which is referred to in the Revolution Settlement Agreement and the Amendment.

R.    "Florida Execution Proceedings" means or refers to the proceedings to foreclose and/or execute upon the lien against the Florida Property, which were filed by Revolution in the Circuit Court of Palm Beach County, Florida.

S.    "Motion for Writ of Execution" means or refers to that certain Motion for Writ of Execution filed by Revolution, as assignee of the Federal Deposit Insurance Corporation, in the case

captioned <u>Federal Deposit Insurance Corporation as receiver of New Bank of New England, N.A.</u>

<u>v. Joseph S. Beale</u>, Case No. CL 90-8877 AD, in the Circuit Court of the Fifteenth Judicial Circuit

in and for Palm Beach County.

      T.      "General Release" means or refers to the release required to be given to Beale by

Revolution pursuant to the Revolution Settlement Agreement and/or the Amendment.

      U.      "Beale Loan" means or refers to the loan that Beale sought in order to make the

$115,000 payment to Revolution pursuant to the Amendment, which loan was to be secured by the

Florida Property and to be closed by Coral Reef Title Company, and which is further described in

the Complaint.

      V.      "Escrow Agent" means or refers to the "Escrow Agent" that is defined in the

Amendment.

      W.      "Coral Reef Title" means or refers to Coral Reef Title Company in Key Largo

Florida, which was the title company responsible for closing the Beale Loan.

      X.      "Communications" shall mean or refer to all inquiries, discussions, conversations,

negotiations, agreements, understandings, meetings, telephone conversations, letters,

correspondence, e-mails, voice mails, notes, telegrams, advertisements, memoranda or any and all

other form of verbal exchange, whether oral or written.

      Y.      As used herein, the term "document" is used in the broadest sense permissible

pursuant to the Federal Rules of Civil Procedure, and includes all written or graphic matter of every

kind and description however produced or reproduced, whether draft or final, original or

reproduction and all tangible things, including, without limitation, all Communications and all

4

electronically stored information ("ESI") stored on any electronic storage media.  For purposes of these Requests, ESI includes, but is not limited to, the following:

1.  Correspondence;

2.  Document drafts;

3.  Document changes not saved;

4.  Documents created not saved;

5.  Instant messages-sent and received;

6.  E-mails;

7.  Attachments;

8.  Metadata associated with specific data files;

9.  Internet Service Provider (ISP) e-mails i.e., Yahoo mail, Hot Mail, Gmail, AOL etc.;

10.  Voice mail messages/deleted voice messages;

11.  Folder names/File directory;

12.  Master File Table;

13.  Images (including all website images visited);

14.  All website visiting activities, history and cookies (including elapsed time while viewing each site);

15.  History of internet searches by search terms;

16.  Spreadsheets;

17.  Draft spreadsheets;

18.  Database files;

19.  Financial records (including tax and accounting records);

5

20.    Facsimile transmissions;

21.    Facsimile machine logs;

22.    File access history from computer servers, intranets and extranets;

23.    Contact lists;

24.    Calendar appointments;

25.    Personal Digital Assistant and/or Smartphone synchronized data;

26.    Web Logs or "Blogs;"

27.    Deleted files; and

28.    Slack (i.e., data fragments stored randomly from Random Access Memory on a hard drive during the normal operation of a computer, sometimes called "RAM slack," or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

For purposes of these Requests, electronic storage media includes, but is not limited to, hard drives, CD-ROMs, CD-Rs, CD-RWs, DVD-ROMs, DVD-Rs, DVD-RWs, memory cards, USB Drives, cellular phone memory, PDA memory, tapes, JAZ cartridges and any other media capable of storing ESI. Any draft of a document or non-identical copy of a document constitutes a separate "document."

Z.    "Relate to," including its various forms such as "related to" or "relating to," shall mean to consist of, refer to, reflect or be in any way logically or factually connected with the matter discussed.

AA.    "Person" means or refers to any individual, corporation, partnership, association, organization and any other entity of all types and natures.

BB.    The terms "describe" and "identify" either alone or when used in connection with any

of the following terms mean to state:

    a.    With respect to a natural person:

        i.    Such person's name and present or last known address;

        ii.    The name and address of his or her present or last known employer and title or position with such employer;

        iii.    If employed by You, each position and title during his or her employment and period during which such position was held;

        iv.    If employed by You, the nature and description of his or her duties and responsibilities in each position indicated; and

        v.    If such person was employed by You and is no longer employed by You, the date and reason for termination.

    b.    With respect to any person other than a natural person:

        i.    Its full name and all of the names by which it is known or referred to;

        ii.    Its form of organization, e.g., corporation, partnership, or sole proprietorship;

        iii.    The state under whose law it is organized;

        iv.    The present or last known address of its principal place of business or office; and

        v.    A description of the nature of its business.

    c.    With respect to a document:

        i.    The date of the document;

        ii.    The type of document (e.g., letter, memorandum, telegram);

        iii.    The subject matter or substance of the document;

        iv.    The identity of each author, addressee and person copied on the document;

      v.      The identity of all persons who now have custody of the document, or any copy of the document;

      vi.     The location of such document; and

      vii.    If any such document was at any time in Your possession, custody or control, but is no longer, state whether such document is missing, lost, destroyed, or has been transferred, voluntarily or involuntarily, to any other person, or otherwise disposed of, and the circumstances surrounding it, and authorization given, if any, for such disposition, the approximate date of such disposition and the identity of person or persons to whom such document was transferred, if any.

d.     With respect to a meeting or conference:

      i.      The date and location thereof;

      ii.     The identity of all persons present;

      iii.    The identity of any documents which record, refer or relate to such meeting; and

      iv.    The subject matter or matters discussed.

e.     With respect to a Communication:

      i.      The date, location and medium of Communication;

      ii.     The identity of the author or declarant of such Communication;

      iii.    The identity of the recipient of such Communication;

      iv.    The identity of any document which records, refers or relates to such Communication; and

      v.     The subject matter or substance of such Communication.

## **INSTRUCTIONS**

CC.    Whenever appropriate, the singular form of a word should be interpreted in the plural.

DD.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request any information which might otherwise be construed to be outside of the scope.

EE.    All objections which cause You to fail or refuse to fully respond on the ground of any claim of privilege of any kind whatsoever shall:

      1.    State the nature of the claim of privilege;

      2.    State all facts relied upon in support of the claim of privilege;

      3.    Identify all documents related to the claim of privilege;

      4.    Identify all persons having knowledge of any facts related to the claim of privilege; and

      5.    Identify all events, transactions or occurrences related to the claim of privilege.

FF.    Unless otherwise provided in a specific interrogatory, the time period covered by these interrogatories are from January 1, 2000 through the date You complete Your response.

GG.    In the event that You produce Documents in response to any of these Interrogatories in reliance upon Rule 33(d), specify (by Bates number) which Document or Documents You contend contain, in whole or in part, the information requested in the Interrogatory.

HH.    The fact that any of the Interrogatories below is more specific than any other Interrogatories is not intended to limit the scope of any of the Interrogatories herein.

## INTERROGATORIES

1.     Identify the person answering these Interrogatories and each and every individual, other than counsel, who was consulted, who provided information for, and/or who assisted in answering these Interrogatories.

**ANSWER:**

2.     Identify each person who has personal knowledge of any facts relating to any allegations in the Complaint and/or the denials and allegations in the Answer, Affirmative Defenses and Counterclaim of Revolution Portfolio, LLC, and provide a description of all of such facts known by each such person.

**ANSWER:**

3.      Identify all Communications that occurred after June 1, 2007, between Revolution and any other person which refer or relate to the Revolution Settlement Agreement, the Amendment, the Policy, the Acknowledgment, the Re-Sale Authorizations, the General Release, the Islamadora Release, the Beale Loan, the Motion for Writ of Execution and/or the Florida Execution Proceedings.

**ANSWER:**

4.      State the date of, and provide a description of, each breach of the Revolution Settlement Agreement and/or Amendment which Revolution contends was committed by Beale, including, but not limited to, the specific provision(s) of the Revolution Settlement Agreement and/or Amendment that Beale breached and how he breached it.

**ANSWER:**

11

5.    State all reasons why Revolution did not pay the initial premium due on the Policy until July 2, 2007, and identify all persons with any knowledge referring or relating to Revolution's payment thereof.

**ANSWER:**

6.    State all reasons why Revolution did not deliver the Islamadora Release to the Escrow Agent, and identify all persons with any knowledge referring or relating thereto.

**ANSWER:**

7.    State whether Revolution notified Beale (or his counsel) that Revolution was not going to deliver the Islamadora Release to the Escrow Agent and, if so, state when Revolution notified Beale or his counsel, and identify the Communication(s) (if any) constituting or containing such notification.

**ANSWER:**

12

8.    Describe any irreparable harm that Revolution would suffer if the Amendment and/or the Revolution Settlement Agreement were rescinded.

**ANSWER:**

9.    If Revolution contends that the Acknowledgment would not have been delivered to Revolution on or before July 2, 2007 even if the initial premium payment on the Policy had been made on June 28, 2007, then state all facts that support Revolution's contention, identify all persons with knowledge of such facts and the full scope of their knowledge thereof, and identify all documents that refer or relate to such facts.

**ANSWER:**

10.    State whether the provisions of Paragraph 2(d) of the Amendment, which required Revolution to deliver the Islamadora Release to the Escrow Agent before Beale made the $115,000 payment required by Paragraph 2(i) of the Amendment, were intended by the parties to allow Beale

13

to use the Islamadora Release to obtain a loan on the Florida Property and use the proceeds of that loan to make the $115,000 payment and, if not, describe the purpose of the provisions of Paragraph 2(d) relating to when the Islamadora Release would be delivered to the Escrow Agent.

**ANSWER:**

11.    State the dollar values of the Islamadora Release and the General Release.

**ANSWER:**

14

12.    If Revolution denied, in whole or in part, any of Plaintiff's First Set of Requests to Admit to Defendant Revolution Portfolio, LLC, state the factual basis for each such denial, identify all persons with knowledge of such facts and the full scope of their knowledge thereof, and identify all documents that refer or relate to such facts.

**ANSWER:**

JOSEPH S. BEALE

By: _____

One of His Attorneys

Monte L. Mann
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm No. 91731
Doc. #: 201131

15

## CERTIFICATE OF SERVICE

Richard G. Douglass, an attorney, hereby certifies that he served the foregoing *Plaintiff's*

*First Set of Interrogatories to Defendant Revolution Portfolio, LLC* by causing a true and correct

copy thereof to be delivered by messenger delivery to:

>Matthew P. Connelly
>Garrett C. Carter
>CONNELLY, ROBERTS & McGIVNER LLC
>55 W. Monroe Street, Suite 1700
>Chicago, Illinois 60603
>
>Thomas B. Keegan
>Edward Gleason
>KEEGAN, LATERZA, LOFGREN & GLEASON LLC
>566 West Adams Street, Suite 750
>Chicago, Illinois 60661

and by U.S. Mail, proper First Class postage pre-paid, to:

>Christopher B. Lega
>REIMER & BRAUNSTEIN LLP
>Three Center Plaza, 6th Floor
>Boston, MA 02108

on this 30th day of January, 2008.

_____
Richard G. Douglass

EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSEPH S. BEALE,

        PLAINTIFF

v.

REVOLUTION PORTFOLIO, LLC; and
SECURITY LIFE OF DENVER
INSURANCE COMPANY,

        DEFENDANTS.

CASE NO. 07-06909

JUDGE Kocoras
MAGISTRATE Judge Valdez

## DEFENDANT REVOLUTION PORTFOLIO, LLC'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, REVOLUTION Portfolio, LLC ("REVOLUTION"), through its attorneys, Connelly Roberts & McGivney, for its Answers to Plaintiff's First Set of Interrogatories, states:

1.　　Identify the person answering these Interrogatories and each and every individual, other than counsel, who was consulted, who provided information for, and/or who assisted in answering these Interrogatories.

**ANSWER:**

**Jeffrey Ganz**
Mr. Ganz can be contacted through his attorneys at Connelly, Roberts & McGivney. Mr. Ganz has information pertaining to the Settlement Agreement, as well as the First Amendment to Settlement Agreement, which is the subject of this litigation.

**Robert Eisman**
Mr. Eisman can be contacted through his attorneys at Connelly, Roberts & McGivney. Mr. Eisman has information pertaining to the Settlement Agreement, as well as the First Amendment to Settlement Agreement, which is the subject of this litigation.

Defendants reserve the right to supplement this response as information becomes available.

2.　　Identify each person who has personal knowledge of any facts relating to any

allegations in the Complaint and/or the denials and allegations in the Answer, Affirmative Defenses

and Counterclaim of REVOLUTION Portfolio, LLC, and provide a description of all of such facts

known by each such person.

> **ANSWER: See REVOLUTION's Federal Rule of Civil Procedure 26 disclosure statement.**
>
> **Defendants reserve the right to supplement this response as information becomes available.**

3.    Identify all Communications that occurred after June 1, 2007, between

REVOLUTION and any other person which refer or relate to the REVOLUTION Settlement

Agreement, the Amendment, the Policy, the Acknowledgment, the Re-Sale Authorizations, the

General Release, the Islamorada Release, the Beale Loan, the Motion for Writ of Execution and/or the

Florida Execution Proceedings.

> **ANSWER: Defendants object to this interrogatory based on attorney-client privilege. Without waiving our objection, Counsel for REVOLUTION and Counsel for Beale had several communications after June 1, 2007. Additionally, communications took place between Counsel for REVOLUTION and Coral Reef Title Company, The Escrow Agent, Stuart Yougentob, and Bruce Schlesinger all relating to the issues contained in this lawsuit, but cannot remember the specific dates for each communication.**
>
> **Defendants reserve the right to supplement this response as information becomes available.**

4.    State the date of, and provide a description of, each breach of the REVOLUTION

Settlement Agreement and/or Amendment which REVOLUTION contends was committed by

Beale, including, but not limited to, the specific provision(s) of the REVOLUTION Settlement

Agreement and/or Amendment that Beale breached and how he breached it.

> **ANSWER:**
>
> **Beale breached Paragraph 2(a) of the Amendment by failing to execute and deliver to REVOLUTION's counsel the original, signed Demand Promissory Note by June 27, 2007.**

Beale breached Paragraph 2(b) of the Amendment by failing to deliver to REVOLUTION's counsel via federal funds wire transfer the sum of thirty thousand dollars by June 27, 2007.

Beale breached Paragraph 2(b)(ii), 2(b)(iii) subparagraphs 1-7, 2(b)(vi), 2(b)(vii), and 2(b)(viii) of the Settlement Agreement by not complying with the Agreement.

Beale breached Paragraph 2(e) of the Amendment by failing to deliver to REVOLUTION's counsel via federal funds wire transfer the sum of one hundred fifteen thousand, five hundred dollars by July 2, 2007.

Beale breached Paragraph 2(f) of the Amendment by failing to irrevocably transfer ownership of the ING Policy to REVOLUTION by July 2, 2007.

Beale breached Paragraph 2(g) of the Amendment by failing to deliver the original and the Acknowledgment to REVOLUTION's counsel by July 2, 2007.

Beale breached Paragraph 2(i) of the Amendment by failing to provide $115,000 to REVOLUTION's counsel via federal funds wire transfer the sum of one hundred fifteen thousand, five hundred dollars by July 2, 2007.

Defendants reserve the right to supplement this response as information becomes available.

5.      State all reasons why REVOLUTION did not pay the initial premium due on the Policy until July 2, 2007, and identify all persons with any knowledge referring or relating to REVOLUTION's payment thereof.

ANSWER: REVOLUTION was not obligated to pay the initial premium due under the Policy. Nevertheless, REVOLUTION paid the initial premium on June 29, 2007. Jeffrey Ganz, Robert Eisman, William Buland, Stuart Youngentob, and Diane LaRoche have information relating to this interrogatory.

Defendants reserve the right to supplement this response as information becomes available.

6.      State all reasons why REVOLUTION did not deliver the Islamorada Release to the Escrow Agent, and identify all persons with any knowledge referring or relating thereto.

ANSWER: REVOLUTION did deliver the Islamorada Release to the Escrow Agent. Jeffrey Ganz, Judi Washington, and Robert Eisman have information relating to this interrogatory.

Defendants reserve the right to supplement this response as information becomes

3

available.

7.     State whether REVOLUTION notified Beale (or his counsel) that REVOLUTION was not going to deliver the Islamorada Release to the Escrow Agent and, if so, state when REVOLUTION notified Beale or his counsel, and identify the Communication(s) (if any) constituting or containing such notification.

**ANSWER: REVOLUTION did not notify Beale or his counsel that it was not going to deliver the Islamorada Release.**

**Defendants reserve the right to supplement this response as information becomes available.**

8.     Describe any irreparable harm that REVOLUTION would suffer if the Amendment and/or the REVOLUTION Settlement Agreement were rescinded.

**ANSWER: REVOLUTION objects to this request as vague, overbroad and not narrowly tailored to lead to the discovery of relevant information. Without waving said objection, REVOLUTION states one reason is that the rescinding of the Settlement Agreement will cause the Insurance policy to be voided, which in turn will cause REVOLUTION irreparable harm.**

**Defendants reserve the right to supplement this response as information becomes available.**

9.     If REVOLUTION contends that the Acknowledgment would not have been delivered to REVOLUTION on or before July 2, 2007 even if the initial premium payment on the Policy had been made on June 28, 2007, then state all facts that support REVOLUTION's contention, identify all persons with knowledge of such facts and the full scope of their knowledge thereof, and identify all documents that refer or relate to such facts.

**ANSWER: REVOLUTION does not contend that the Acknowledgment would not have been delivered to REVOLUTION on or before July 2, 2007 even if the initial premium payment on the Policy had been made on June 28, 2007. REVOLUTION is not in the insurance business and has no knowledge as to how long it takes an insurance company to issue an acknowledgment.**

10.     State whether the provisions of Paragraph 2(d) of the Amendment, which required

REVOLUTION to deliver the Islamorada Release to the Escrow Agent before Beale made the $115,000 payment required by Paragraph 2(i) of the Amendment, was intended by the parties to allow Beale to use the Islamorada Release to obtain a loan on the Florida Property and use the proceeds of that loan to make the $115,000 payment and, if not, describe the purpose of the provisions of Paragraph 2(d) relating to when the Islamorada Release would be delivered to the Escrow Agent.

**ANSWER: No. The reason stated by Beale and/or his representatives is that Mr. Beale did not trust REVOLUTION or their counsel would in fact deliver the Islamorada Release if Mr. Beale were to have met his obligation and thus Mr. Beale required this Amendment to provide a solution for his mistrust.**

**Defendants reserve the right to supplement this response as information becomes available.**

11.    State the dollar values of the Islamorada Release and the General Release.

**ANSWER: REVOLUTION does not know the exact value of the Islamorada Release or the General Releases. However, upon information and belief the Islamorada Release value is likely equal to Mr. Beale's interest in the Life Estate of the Florida Property.**

12.    If REVOLUTION denied, in whole or in part, any of Plaintiff's First Set of Requests to Admit to Defendant REVOLUTION Portfolio, LLC, state the factual basis for each such denial, identify all persons with knowledge of such facts and the full scope of their knowledge thereof, and identify all documents that refer or relate to such facts.

**ANSWER: REVOLUTION objects to this request as vague, overbroad and not narrowly tailored to lead to the discovery of relevant information.**

Respectfully Submitted,
REVOLUTION PORTFOLIO, LLC

By: _____
       Robert Eisman, for the answers

By: _____
       One of its attorneys, for the objections

5

REVOLUTION to deliver the Islamorada Release to the Escrow Agent before Beale made the $115,000 payment required by Paragraph 2(i) of the Amendment, was intended by the parties to allow Beale to use the Islamorada Release to obtain a loan on the Florida Property and use the proceeds of that loan to make the $115,000 payment and, if not, describe the purpose of the provisions of Paragraph 2(d) relating to when the Islamorada Release would be delivered to the Escrow Agent.

**ANSWER: No. The reason stated by Beale and/or his representatives is that Mr. Beale did not trust REVOLUTION or their counsel would in fact deliver the Islamorada Release if Mr. Beale were to have met his obligation and thus Mr. Beale required this Amendment to provide a solution for his mistrust.**

**Defendants reserve the right to supplement this response as information becomes available.**

11.    State the dollar values of the Islamorada Release and the General Release.

**ANSWER: REVOLUTION does not know the exact value of the Islamorada Release or the General Releases. However, upon information and belief the Islamorada Release value is likely equal to Mr. Beale's interest in the Life Estate of the Florida Property.**

12.    If REVOLUTION denied, in whole or in part, any of Plaintiff's First Set of Requests to Admit to Defendant REVOLUTION Portfolio, LLC, state the factual basis for each such denial, identify all persons with knowledge of such facts and the full scope of their knowledge thereof, and identify all documents that refer or relate to such facts.

**ANSWER: REVOLUTION objects to this request as vague, overbroad and not narrowly tailored to lead to the discovery of relevant information.**

Respectfully Submitted,
REVOLUTION PORTFOLIO, LLC
By: _____
    Robert Eisman, for the answers

By: _____
    Jeffrey Ganz, for the answers

5

Matthew P. Connelly
ARDC No. 6229052
Garrett C. Carter
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) a2251-9600 Telephone
(312) 251-9601 Facsimile

Christopher B. Lega
ARDC No. 6276619
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts
(617) 523-9000 Telephone
(617) 880-3456 Facsimile

7888001/Response.Plaintiff's.First.Interrogatories

6

## CERTIFICATE OF SERVICE

The undersigned hereby certify that on February 29, 2008, a true copy of the **Defendant REVOLUTION PORTFOLIO, LLC's Response to the Plaintiff's First Set of Interrogatories** was served upon the attorney of record for each other party via facsimile.

By: _____
Matthew P. Connelly