UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH S. BEALE,<br><br>PLAINTIFF<br><br>v.<br><br>REVOLUTION PORTFOLIO, LLC; and<br>SECURITY LIFE OF DENVER<br>INSURANCE COMPANY,<br><br>DEFENDANTS. | CASE NO. 07-06909<br><br>Judge Kocoras<br>Magistrate Judge Valdez |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE EVASIVE ANSWERS TO REQUESTS TO ADMIT AND TO DEEM REQUESTS ADMITTED**

Defendant REVOLUTION Portfolio, LLC ("REVOLUTION"), through its attorneys, Connelly Roberts & McGivney LLC, for its Response to Plaintiff Joseph Beale's ("Beale") Motion To Strike Evasive Answers To Requests to Admit and to Deem Requests Admitted, states:

**I. INTRODUCTION**

1. Of the 97 Requests to Admit propounded by Plaintiff upon REVOLUTION, only those which were poorly drafted are at issue in this motion. The requests in dispute ask REVOLUTION to (a) admit to genuineness of documents created by someone other than REVOLUTION and produced for the first time in conjunction with the Requests to Admit, (b) admit pure conclusions of law, (c) admit requests which clearly invade the attorney-client privilege, and (d) admit to the terms of a loan to which REVOLUTION was not a party.

2. REVOLUTION'S responses to the disputed requests comply with Fed.R.Civ.P. 36(a). Therefore, Beale's Motion must be denied.

## II. ARGUMENT

3.      A request for admission, except in rare circumstances, should be drafted in such a way that it can be answered "yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer, such as in the case of privilege." *Vergara v. City of Waukegan*, 2007 WL 3334501, *1 (N.D.Ill. 2007). In other words, the standard for a request for admission is to "phrase direct simple facts that can be admitted or denied without explanation." *Id*.

4.      In responding to a request to admit, an answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny. Fed.R.Civ.P. 36(a)

**A.      Revolution Cannot Admit the Genuineness Of Documents Created by Beale and Produced For the First Time in Connection with the Requests to Admit.**

5.      Requests to Admit numbers 2 through 12, 16 and 17 ask REVOLUTION to admit to the genuineness of certain documents. These documents appear to reflect email exchanges between Beale and his counsel and REVOLUTION and its counsel.

6.      The heading on each document indicates that the documents were created by Beale or his assistant, Colleen Smith. REVOLUTION acknowledged receipt of the emails, but it had never seen the physical paper copies of the emails, created by Beale or Smith, prior to being served with the Requests for Admissions. Therefore, REVOLUTION could not truthfully admit or deny that the documents were "genuine." These responses comply with Rule 36(a) in that each answer explained why it could not admit or deny the truth of the matter asserted in the request.

7.       Furthermore, REVOLUTION'S responses to these requests are not intended "to make trial more time consuming and difficult" nor were they evasive as Beale suggests. Under Federal Rule of Evidence 901, documents must be properly authenticated as a condition to their admissibility by evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed.R.Civ.P. 901(a). "E-mail communications may be authenticated as being from the purported author based on an affidavit of the recipient; the e-mail address from which it originated; comparison of the content to other evidence; and/or statements or other communications from the purported author acknowledging the e-mail communication that is being authenticated." *Fenje v. Feld*, 301 F.Supp.2d 781, 809 (N.D.Ill 2003); *U.S. v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000).

8.       Despite not being able to admit or deny the genuineness of the documents, REVOLUTION, in good faith, admits that each document appears to be an accurate depiction of an email exchange between Beale and REVOLUTION. This should alleviate any authenticity issues arising from email sent from REVOLUTION or its counsel. Certainly Beale will be able to figure out a way to authenticate emails he or his counsel originated.

**B.      Requests to Admit Which Seek the Admission of Legal Conclusions are Improper.**

9.       Requests numbers 20 through 23 ask REVOLUTION to admit that the Settlement Agreement and its First Amendment were valid, binding and enforceable agreements. This is a classic example of a request to admit a legal conclusion, which is improper. *Golden Valley Microwave Foods, Inc., v. Weaver Popcorn Co., Inc.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990) (request seeking a "bald legal conclusion" that a patent claim was invalid was improper under Rule 36(a)).

10. Beale is essentially asking REVOLUTION to act as a Judge and make a determination on the validity of the Settlement Agreement and the First Amendment. Such a determination should be made by this Court, not REVOLUTION.

11. Certainly REVOLUTION believes that the Settlement Agreement and the First Amendment are "valid, binding and enforceable" agreements. Indeed, REVOLUTION'S counterclaim alleges that Beale breached both agreements. Nevertheless, it is for this Court to ultimately decide whether these documents are "valid, binding and enforceable."

    **C.**    **REVOLUTION Cannot Admit to the Terms of the Infamous "Beale Loan."**

12. Request to Admit number 36 asks REVOLUTION to admit that it "agreed" that Beale could make the $115,000 payment required under the First Amendment with the proceeds of the "Beale Loan."

13. The "Beale Loan" is defined by the Requests to Admit as the "loan that Beale sought in order to make the $115,000 payment to Revolution, which loan was to be secured by the Florida Property and to be closed by Coral Reef Title Company, and which is further described in [Beale's] Complaint."

14. According to the Complaint as well as Beale's Motion, Beale "preferred" to make the $115,000 payment required of him under the First Amendment with the proceeds of the so-called "Beale Loan." How Beale "preferred" to make this payment is completely irrelevant. The First Amendment did not put any limitations as to how Beale could make the $115,000 payment.

15. Request number 36 is not drafted in a way for REVOLUTION to answer it with a yes, no or a simple explanation as to why it cannot answer. REVOLUTION has no idea what the terms were for the so-called "Beale Loan." Although REVOLUTION admitted that Beale could have made the payment with the proceeds of the "Beale Loan," REVOLUTION does not know

4

whether there were any restrictions on the "Beale Loan" which may prevent Beale from making the $115,000 with the proceeds of this loan.

16. Moreover, the term "agreed" implies that the $115,000 payment had to be made with the proceeds of the "Beale Loan" and that payment from any other asset would be unacceptable. As previously stated, the First Amendment did not place restrictions as to how Beale could make the $115,000 payment.

17. As drafted, REVOLUTION could not admit or deny that it "agreed" Beale could have made the $115,000 payment with the proceeds of the Beale loan.

### D. Requests Numbers 67 through 69 and 71 Invade the Attorney-Client Privilege.

18. Requests numbers 67 through 69 and 71 seek admissions as to when REVOLUTION began working on the pleadings filed in the execution proceeding. These requests are entirely irrelevant to this lawsuit. The fact that the Florida proceeding commenced "so quickly on the heels" has absolutely zero bearing on whether Beale or REVOLUTION breached the Settlement Agreement or the First Amendment.

19. Furthermore, these requests violate the attorney-client privilege. The attorney-client privilege protects confidential communications made by a client to his or her lawyer where legal advice of any kind is sought from a professional legal advisor in his or her capacity as such. *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (N.D.Ill 2000). The attorney-client privilege protects communications between an attorney and his client which "reveals the client's motivation for creation of the [attorney-client] relationship or possible litigation strategy…" *Stock v. Integrated Health Plan, Inc.*, 2006 WL 3076457, *2 (S.D.Ill 2006); quoting *Matter of Witness Before Special March 1980 Grand Jury,* 726 F.2d 789, 495 (7th Cir. 1984).

20. Exactly when REVOLUTION and its counsel began working on the Florida execution proceeding is protected by the attorney-client privilege in that it relates to REVOLUTION'S "possible litigation strategy."

21. REVOLUTION has provided Beale with a privilege log which identifies certain correspondences between REVOLUTION and its attorney in the Florida execution proceedings. However, Beale wants to know exactly what was discussed between REVOLUTION and Smith, this is tantamount to asking about REVOLUTION'S litigation plans and therefore violates the attorney-client privilege.

### III.  CONCLUSION

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests this Court enter an order denying Joseph Beale's Motion to Strike Evasive Answer and Deem Requests Admitted and for any other relief this Court deems just and proper.

Dated: May 13, 2008                    Respectfully Submitted,

                                       REVOLUTION PORTFOLIO, LLC

                                       By: /s/ *Matthew P. Connelly*
                                             One of its attorneys

Matthew P. Connelly
ARDC No. 6229052
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) 251-9600 Telephone
(312) 251-9601 Facsimile

Christopher B. Lega
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts
(617) 523-9000 Telephone
(617) 880-3456 Facsimile

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that on May 13, 2008, a true copy of the foregoing document was served upon the attorney of record for each other party via the ECF Filing System.

By: /s/ *Matthew P. Connelly*