UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSEPH S. BEALE,

    PLAINTIFF

v.

REVOLUTION PORTFOLIO, LLC; and
SECURITY LIFE OF DENVER
INSURANCE COMPANY,

    DEFENDANTS.

CASE NO. 07-06909

Judge Kocoras
Magistrate Judge Valdez

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO QUASH**

Defendant REVOLUTION Portfolio, LLC ("REVOLUTION"), through its attorneys, Connelly Roberts & McGivney LLC, for its Response to Plaintiff Joseph Beale's ("Beale") Motion to Quash, states:

**I. INTRODUCTION**

1. At the center of this litigation is Beale's repeated failures to perform his contractual obligations. REVOLUTION and Beale originally executed a Settlement Agreement on December 12, 2005. (A copy of the Settlement Agreement is attached as Exhibit 1.) One of the provisions of the Settlement Agreement required Beale to pursue, in good faith, the acquisition of an insurance policy on his life. Despite this requirement, Beale did not act in good faith in procuring the insurance policy. In fact, Beale did not obtain the said policy until 2007 at which time a policy was issued by the Security Life of Denver Insurance Company (the "ING Policy"). By then, Beale was already in default.

2. Nevertheless, in an effort to resolve this matter, REVOLUTION and Beale executed the First Amendment to the Settlement Agreement on June 28, 2007. (A copy of the

First Amendment is attached as Exhibit 2.) One of the provisions in the First Amendment required Beale to make a $115,000 payment to REVOLUTION on or before July 2, 2007.  Also on that date, Beale was further required to transfer to REVOLUTION a written confirmation from ING that it has acknowledged and accepted the transfer of ownership of the ING policy to REVOLUTION (the "Acknowledgement." Beale, however, did not make the $115,000 payment nor did he transfer the Acknowledgment on July 2, 2007, thereby again breached the Settlement Agreement.

3. Beale's Complaint alleges that he complied with all of the material terms of the Settlement Agreement as well as the First Amendment. (Compl. at ¶45.) To that end, REVOLUTION issued a subpoena to Bruce Schlesinger, Beale's "long-time insurance agent" (the "Schlesinger Subpoena").  The Schlesinger subpoena is narrowly tailored to obtain relevant documents relating to Beale's efforts to obtain the Policy as required by the Settlement Agreement as well as to ensure that he did not apply for life insurance after obtaining the ING Policy so as to violate the First Amendment.

4. Additionally, REVOLUTION also issued a subpoena to The Leader's Bank ("Leader's Bank Subpoena"). The Leader's Bank Subpoena requests documents which might relate to the "Beale Loan" (as explained below) or refute Beale's apparent argument that the only way he could have made the $115,000 payment required by the First Amendment was with the proceeds of the "Beale Loan."

5. The Schlesinger and Leader's Bank Subpoenas seek documents that are relevant as to whether Beale performed his contractual obligations. Beale now moves to quash both subpoenas on the basis that the subpoenas are overbroad and seek irrelevant information; arguments which are without merit. Beale has not met his burden of providing why the subpoenas are improper. As such, his Motion should be denied.

## II. ARGUMENT

6. The Federal Rules of Civil Procedure provide for broadest possible discovery. *General Tel. & Electronic Laboratories Inc. v. Natl. Video Corp.*, 297 F.Supp. 981 (N.D. Ill. 1968). It is the burden of the objecting party to show why the discovery request is improper. *Rubin v. The Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D.Ill. 2004).

7. A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251, 254 (N.D. Ill. 1978); *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610 (N.D. Ill 2001). As such, relevancy objections, while permissible, will not be sustained where discovery sought is relevant to the subject matter. *Alliance to End Repression v. Rochford*, 75 F.R.D. 441, 444 (N.D. Ill. 1977).

### A. Documents Relating to the Protective Order.

8. Beale has filed a Motion for a Protective Order contemporaneously with the Motion to Quash. The Motion for a Protective Order seeks a designation that Beale's health and financial information be deemed confidential. REVOLUTION agrees that Beale's health information should be designated confidential, but disagrees on the designation concerning his financial information.

9. Certain documents requested in both the Schlesinger Subpoena and the Leader's Bank Subpoena may reveal Beale's health and financial information. REVOLUTION understands that a ruling is necessary on the Protective Order before this information can be produced.

**B. The Schlesinger Subpoena Seeks Relevant Information Pertaining to the Settlement Agreement and the First Amendment.**

10.     Paragraph 2(b) of the Settlement Agreement required Beale to "use all best efforts to obtain the Policy." Examples of such efforts included, but were not limited to, Beale submitting "no fewer than three separate applications for insurance and that Beale be required to submit himself to no more than three physical and/or medical examinations." (Exh. 1 at ¶2(b).)

11.     Furthermore, in Paragraph 2(e) of the First Amendment, Beale represented that "during the time period beginning February 13, 2007 and ending thirty (30) days after the Policy is issued, Beale has not submitted (and no one acting on his behalf has submitted) any application for life insurance on Beale's life" and that he "will not submit (nor will he allow anyone else to submit) … any application for life insurance on Beale's life other than the Policy identified" in the First Amendment." (Exh. 2 at ¶2(e).)

12.     Beale alleges that he complied with all of the material terms of the Settlement Agreement. REVOLUTION's counterclaim alleges that Beale did not act in good faith in pursuing the acquisitions of the Policy as required by the Settlement Agreement and that he defaulted under the First Amendment. Hence, the issue of whether he complied with the terms of the Settlement Agreement and the First Amendment is clearly in dispute.

13.     The documents requested in the Schlesinger Subpoena are entirely relevant to whether Beale did in fact comply with the terms of the Settlement Agreement and the First Amendment. The Schlesinger Subpoena is limited to communications between Schlesinger and Beale, REVOLUTION and Beale's insurance agent from January 2005 until the present. The Schlesinger Subpoena also requests documents relating to Beale's life insurance applications from January 2005 until the present. Furthermore, the subpoena may elicit documents pertaining to Beale's transfer of the ING Policy to REVOLUTION. This scope of the subpoena is narrowly

4

tailored to encompass the time period when Beale was required to submit, as well as prohibited from submitting, life insurance applications. Hence, the subpoena is not overbroad and the documents requested in the Schlesinger Subpoena are relevant to the subject matter of this action and Beale's Motion to Quash should be denied.

14. Although entirely irrelevant for purpose of the Motion to Quash, Beale blatantly mischaracterizes the discussion between counsel in which Beale's counsel specifically requested an opportunity to inspect the Schlesinger documents for **privilege**, not for confidential material. (See the March 26, 2007, correspondence from Richard Douglass attached as Exhibit 3.) REVOLUTION initially agreed to permit such an inspection even though it could not fathom how Schlesinger could possess privileged information. However, once REVOLUTION learned Schlesinger retained counsel to assist in the handling of the subpoena, REVOLUTION proposed allowing Schlesinger's attorney to review the production for "privileged" documents rather than for Beale's counsel to do so.

15. To avoid a pre-screening process, after Schlesinger's counsel reviews the documents for attorney-client and work-product privileges, the documents should be produced to REVOLUTION and Beale simultaneously. REVOLUTION is agreeable to providing Beale 30 days to review and designate documents "confidential" as permitted by the protective order.

    **C. The Leader's Bank Subpoena Seeks Relevant Information Pertaining to the Settlement Agreement and the First Amendment.**

16. Beale's Complaint, along with his discovery requests, refer to the so-called "Beale Loan," which is defined in the discovery requests as the "loan that Beale sought in order to make the $115,000 payment to Revolution, which loan was to be secured by the Florida Property and to be closed by Coral Reef Title Company, and which is further described in

[Beale's] Complaint." The Motion to Quash appears to refer to this loan as well, although the Motion refers to it as the "Subject Loan."

17. According to the Complaint as well as the Motion to Quash, Beale "preferred" to make one of the payments required under the Settlement Agreement out of the proceeds of the "Beale Loan." (Compl. at ¶24; Motion to Quash at ¶20.) How Beale "preferred" to make "one of the payments" is irrelevant as the First Amendment is void of any terminology that specified how Beale had to make the payments.

18. Nevertheless, Beale has placed this "Beale Loan" at issue in this lawsuit. Despite requests for such information, Beale has not provided REVOLUTION with any information pertaining to the "Beale Loan."

19. As admitted in the motion to quash, Leader's Bank is a "bank with which Beale had done business for years." (Motion to Quash at ¶4.) Without knowing the terms of the Beale Loan or even the lender involved in the "Beale Loan", the documents requested in the Leader's Bank are narrowly tailored to elicit information which may relate to the "Beale Loan."

20. Additionally, Beale appears to be taking the position that the "Beale Loan" is the only way he could have made the $115,000 payment required under the First Amendment. The documents requested in the Leader's Bank Subpoena are relevant in that they may prove that Beale had assets or other ways of making the payment outside of the "Beale Loan."

21. The "Beale Loan" as well as how Beale "preferred" to make the $115,000 payment to REVOLUTION is at issue. The documents requested in the Leader's Bank Subpoena are therefore relevant to the subject matter of the lawsuit.

### III. CONCLUSION

22. Beale has not met his burden of proving why the Schlesinger and Leader's Bank Subpoenas are improper. As such, Beale's Motion to Quash should be denied.

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests this Court enter an order denying Joseph Beale's Motion to Quash and for any other relief this Court deems just and proper.

Dated: May 13, 2008								Respectfully Submitted,

												REVOLUTION PORTFOLIO, LLC

												By: /s/ *Matthew P. Connelly*
												　　　One of its attorneys

Matthew P. Connelly
ARDC No. 6229052
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) 251-9600 Telephone
(312) 251-9601 Facsimile

Christopher B. Lega
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts
(617) 523-9000 Telephone
(617) 880-3456 Facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certify that on May 13, 2008, a true copy of the foregoing document was served upon the attorney of record for each other party via the ECF Filing System.

By: /s/ *Matthew P. Connelly*