## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, (the "Agreement") dated as of December 12, 2005 by and between Joseph S. Beale ("Beale"), an individual with a business address in Chicago, Illinois and REVOLUTION Portfolio, LLC ("REVOLUTION"), a Virginia limited liability company with a business address in Rockville, Maryland.

## RECITALS

R.1  WHEREAS, judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida (the "Judgment"); and

R.2  WHEREAS, the Judgment remains currently outstanding; and

R.3  WHEREAS, on November 21, 1997, the FDIC assigned the Judgment to REVOLUTION; and

R.4  WHEREAS, on March 5, 2004, REVOLUTION and certain other creditors initiated an involuntary bankruptcy proceeding against Beale in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-8748 (the "Bankruptcy Proceeding"); and

R.5  WHEREAS, on March 5, 2004, the amount due under the Judgment was not less than Seven Million Three Hundred Thousand Dollars ($7,300,000) including post-judgment interest and legal fees and expenses; and

R.6  WHEREAS, on April 5, 2004, an Order for Relief was entered in the Bankruptcy Proceeding and Andrew J. Maxwell (the "Trustee") was appointed to serve as the Chapter 7 Trustee; and

R.7  WHEREAS, on and after March 5, 2004, REVOLUTION incurred legal fees and other expenses in connection with the enforcement of its rights under the Judgment in excess of Two Million Two Hundred Thousand Dollars ($2,200,000); and

R.8  WHEREAS, the Trustee initiated Adversary Proceeding No. 04-A-2416 (the "Adversary Proceeding") against Beale and others alleging, among other things, that certain assets which the defendants in the Adversary Proceeding claim to own are, in fact, assets transferred, directly or indirectly, by Beale to the defendants in the Adversary Proceeding and/or to entities in which those defendants have an interest that may be avoided by the Trustee; and

R.9  WHEREAS, Beale and the other defendants have denied and disputed the Trustee's allegations in the Adversary Proceeding; and

R.10  WHEREAS, on or about November 15, 2005, the Trustee and Beale and others entered into an Amended Settlement Agreement (the "Settlement Agreement") through which they intend to resolve the disputes underlying the Adversary Proceeding and certain other claims,



1



BEALE 0022

and the Trustee subsequently filed a motion seeking Bankruptcy Court approval of the terms of the Settlement Agreement; and

R.11 WHEREAS, the Settlement Agreement proposes to resolve certain claims and dispose of certain assets which REVOLUTION asserts is not in the best interests of Beale's creditors and his bankruptcy estate, but results in the waiver of any discharge of debts which will not impair REVOLUTION's rights and remedies regarding assets not recovered or administered by the Trustee and its ability to pursue full payment of its claim against Beale; and

R.12 WHEREAS, REVOLUTION and Beale wish to resolve REVOLUTION's objections to the Settlement Agreement and to insure that REVOLUTION's claim, rights, and remedies will not be impaired if the Settlement Agreement is approved,

R.13 WHEREAS, REVOLUTION is willing to refrain from objecting to the Settlement Agreement, but only if Beale strictly complies with the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to resolve their disputes, BUT ONLY under the following terms and conditions:

1. Acknowledgement of Obligation:

   Beale stipulates to the accuracy of all of the recitals and statements set forth above and hereby acknowledges, ratifies and affirms all obligations under Judgment (collectively, the "Obligations"). Beale further stipulates that, upon approval of the Settlement Agreement and the entry of the Order acknowledging Beale's waiver of discharge under 11 U.S.C. §727(a)(10), the Obligations will include, without limitations, all attorneys' fees and expenses incurred by REVOLUTION after March 5, 2004 (the "Post-Petition Fees and Expenses") in connection with the efforts undertaken by REVOLUTION in the Bankruptcy Proceeding to enforce its rights under the Judgment. As of the date of this Agreement, Beale stipulates that the Post-Petition Fees and Expenses are at least Two Million Two Hundred Thousand Dollars ($2,200,000) and, as a result, the total amount of the Obligations exceeds Nine Million Five Hundred Thousand Dollars ($9,500,000) to the extent that Beale does not receive a discharge of debts. To further induce REVOLUTION to enter into this Agreement, Beale hereby acknowledges and agrees that there are no defenses, offsets, claims, counterclaims and recoupments whether now known or unknown or otherwise, and, to the extent that such defenses do exist, they are hereby WAIVED to the fullest extent permitted by law.

2. Payment of Beale Settlement Sum:

   In satisfaction of Beale's personal liability to satisfy the Obligations as a consequence of Beale's waiver of discharge, REVOLUTION agrees to accept from Beale the sum of One Million, Six Hundred Thousand Dollars ($1,600,000) (the "Beale Settlement Sum"). It is the express intention of Beale and REVOLUTION that the satisfaction of the Beale Settlement Sum contemplated



2



BEALE 0023

by this Agreement will not limit, reduce, or alter REVOLUTION's right to participate in any distribution as a creditor of the Bankruptcy Proceeding in connection with its proof of claim and any award of an administrative claim. In this regard, Beale agrees that the funds received by REVOLUTION shall be applied against the Obligations in its discretion and that REVOLUTION intends to apply any such payments to the Post-Petition Fees and Expenses not subject to reimbursement or distribution from the Bankruptcy Proceeding. REVOLUTION and Beale agree that the Beale Settlement Sum shall be satisfied in the following manner:

(a) <u>Cash Payment</u>. On the eleventh business day after the Order approving the Settlement Agreement is entered by the Bankruptcy Court and in the absence of a stay of barring the implementation of the Settlement Agreement (the "Initial Payment Date"), Beale shall pay REVOLUTION the sum of Three Hundred and Fifty Thousand Dollars ($350,000) from assets which are not property of the Beale bankruptcy estate. This sum is currently being held in escrow by Attorney Scott R. Clar and, upon entry of the Order approving the Settlement Agreement, Attorney Clar shall hold these funds in trust for REVOLUTION. On the Initial Payment Date, the funds will be transferred to REVOLUTION via wire transfer in accordance with the following instructions or as may be later modified in writing by REVOLUTION:

| | |
|---|---|
| To: | Wachovia Bank<br>740 15th Street, NW, Washington, DC |
| ABA Routing Number: | 054001220 |
| Account Number: | 4380126891 |
| For Credit To: | REVOLUTION Portfolio, LLC |
| Attention: | Phyllis Black (Tel: 202-879-7521)<br>Branch Manager |

Also, please call and leave a message at 301-770-2490 for either Bill Buland (ext 203) or Rob Eisman (ext 204) giving whomever the Federal Reference Number, date and time the wire was sent.

(b) <u>Life Insurance Policy</u>.

(i) The balance of the Beale Settlement Sum shall be paid from the proceeds of the One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000) death benefit from an insurance policy on Beale's life (the "Policy").

(ii) Beale hereby agrees to use all best efforts to obtain the Policy and to cooperate with REVOLUTION in obtaining the Policy.

3

BEALE 0024

Examples of such efforts shall include, but not be limited to, the requirement that Beale submit no fewer than three separate applications for insurance and that Beale be required to submit himself to no more than three physical and/or medical examinations. In the event that Beale fails to qualify for an insurance policy acceptable to REVOLUTION after Beale exercises reasonable efforts (as determined by REVOLUTION in its sole and reasonable discretion), then Beale's obligations under paragraph 2(b) of this Agreement shall be limited to the payment of the Beale Premium Obligation (as defined below) in accordance with the deadlines described below and REVOLUTION shall be entitled to retain said premiums for its sole benefit and use.

(iii) Beale further agrees to take all steps necessary to allow REVOLUTION to bind the Policy on or before December 16, 2005 including, but not be limited to, the following:

(1) Completing a preliminary application for insurance including the contact information for all physicians Beale has consulted since December 1, 2000 and providing this information to Bruce Schlesinger at JMB Insurance Agency and Stuart Youngentob at Arkin, Youngentob Associates, LLC (collectively, the "Agents");

(2) Complying with all requests of the Agents and potential insurers in connection with the application process including, but not limited to obtaining supplemental information from, or participating in follow-up examinations with Beale's physicians;

(3) Providing to the Agents two complete insurance applications including all requisite financial information for the Policy and for a similar policy with a benefit limited to One Million Dollars ($1,000,000);

(4) Being examined by one or more physicians, nurses, and other insurance-related professionals specified by any potential insurance company and taking all steps necessary to insure that the Agents receive the resulting report(s) as quickly as possible;

(5) Being available for, and cooperating with an inspection report and/or interview;

(6) Providing funds to the Agents sufficient to bind the Policy; and




4

BEALE 0025

(7) Insuring the availability of the initial 10% of the Beale Premium Obligation (as defined below), by placing $15,000 from assets which are not property of the Beale bankruptcy estate in escrow with Attorney Scott R. Clar. Upon entry of the Order approving the Settlement Agreement, Attorney Clar shall hold these funds in trust for REVOLUTION and, to the extent necessary, such funds will be used to fund the Security Deposit (as defined below).

(iv) Subject only to Beale's ability to qualify for coverage, REVOLUTION, in its sole discretion, shall have the right to designate the type of insurance policy to be obtained and the insurance company to issue the Policy.

(v) REVOLUTION or its designee shall be the owner of the Policy. The premiums due under the Policy shall be paid by REVOLUTION and Beale shall be required to contribute to the payment of those premiums. Beale's obligation to pay those premiums shall be satisfied by paying to REVOLUTION a sum equal to ten years of premiums under a hypothetical ten-year, level premium, term insurance policy for which Beale could have qualified had he applied for such a policy instead of the Policy (the "Beale Premium Obligation"). Based upon the information available currently, Beale and REVOLUTION agree that the total amount of the Beale Premium Obligation will not be less than One Hundred Two Thousand Nine Hundred and Forty Dollars ($102,940), payable at $10,294 per year for ten years, if Beale qualifies for preferred insurance rates, but will be higher if Beale does not qualify for such rates. However, Beale and REVOLUTION agree that the exact amount of the Beale Premium Obligation shall be determined based upon the type of policy available to Beale as a result of the underwriting process and his physical and/or medical examinations and at the time he obtains the Policy. In the event that Beale fails to qualify for an insurance policy acceptable to REVOLUTION after Beale exercises reasonable efforts (as determined by REVOLUTION in its sole and reasonable discretion), then the Beale Premium Obligation shall be determined by using the insurance rates for sub-standard rated health and/or underwriting on a ten year, fixed rate basis.

(vi) On or before December 16, 2005, Beale shall deposit with Attorney Clar, in trust for REVOLUTION, an additional Fifteen Thousand Dollars ($15,000) which is the estimated amount of one year of annual premiums if Beale qualifies for only standard insurance rates. From these funds, Attorney Clar shall pay to REVOLUTION ten percent (10%) of the actual Beale Premium

5

BEALE 0026

MAR-28-2007 WED 04:30 PM    CRHNF HEYMEN              FAX NO.                      P. 07
DEC-27-2005  11:24

Obligation (the "Security Deposit") on the later of (i) the day that the Policy is bound and (ii) the Initial Payment Date. The Security Deposit shall be held in escrow at interest by REVOLUTION as security for Beale's performance under this Agreement. Any excess from the funds held by Attorney Clar shall continue to be held by him until the Policy is issued and the actual premium is determined. At that time, any additional amount owed to REVOLUTION to reach the full 10% of the actual Beale Premium Obligation will be due and payable to REVOLUTION immediately. Any excess held by Attorney Clar at that time over the full 10% of the actual Beale Premium Obligation may, at Beale's option, be returned to Beale at that time.

(vii) Beale shall pay the balance of the Beale Premium Obligation to REVOLUTION from assets which are not property of the Beale bankruptcy estate in accordance with the following schedule, TIME BEING OF THE ESSENCE:

(1) ten-percent (10%) on or before the earlier of the issuance of the Policy or January 15, 2006;

(2) ten-percent (10%) on or before December 1, 2006;

(3) ten-percent (10%) on or before December 1, 2007;

(4) ten-percent (10%) on or before December 1, 2008;

(5) ten-percent (10%) on or before December 1, 2009;

(6) ten-percent (10%) on or before December 1, 2010;

(7) ten-percent (10%) on or before December 1, 2011;

(8) ten-percent (10%) on or before December 1, 2012;

(9) ten-percent (10%) on or before December 1, 2013; and

(10) ten-percent (10%) on or before December 1, 2014. To the extent that the Security Deposit has not been reduced prior to December 1, 2014 and in the absence of any default, Beale may elect to have this final payment satisfied by application of the Security Deposit, with any excess to be returned to Beale.

(viii) To the extent that the payments described in the previous paragraph are not paid on or before the associated date, interest shall accrue on such payment in the amount of ten percent (10%) per annum based on the actual days outstanding and a 360 day



6



BEALE 0027

year. Beale also agrees to pay a late charge equal to five percent (5%) of the amount of any such payment not actually received by REVOLUTION on or before five (5) business days after the due dates described in the previous paragraph. In the event that any payment is not actually received by REVOLUTION on or before twenty (20) days after the due dates described in the previous paragraph, REVOLUTION shall have the right to declare a default under this Agreement and if such a default is declared by REVOLUTION, the entire remaining balance of the Beale Premium Obligation shall be accelerated and become immediately due and payable to REVOLUTION if such default is not cured within ten (10) business days after REVOLUTION provides notice of its declaration of default and intention to accelerate. Beale further agrees he shall be personally obligated for the Beale Premium Obligation and all interest and late charges described in this paragraph, plus all pre-judgment and post-judgment legal fees and expenses incurred by REVOLUTION in connection with any efforts it engages in to enforce its rights to receive the full amount due from Beale under this Agreement until such amount is paid in full. In the event of a default which is not cured within (10) business days after REVOLUTION provides notice of its declaration of default, REVOLUTION may, in its sole discretion, release the Security Deposit (and any interest accrued thereon) from escrow and apply it against any amount owed to it by Beale under this Agreement.

(ix) Beale may pre-pay all remaining amounts due under the Beale Premium Obligation plus accrued interest, late charges, and costs of collection (including attorneys' fees and expenses) without penalty at any time, provided that such funds are not derived from assets which are property of the Beale bankruptcy estate.

(x) After issuance of the Policy, Beale shall execute or cause to be executed whatever documents, instruments, and agreements are reasonably required in order for REVOLUTION to administer or implement the policy including, but not limited to, executing additional illustrations of premium payments.

3. <u>Withdrawal by REVOLUTION of Objection to Settlement Agreement</u>:

Upon confirmation that Attorney Clar is in possession of the full amount of $350,000 as required by paragraph 2(a) above, REVOLUTION will cease all discovery efforts relating to the Settlement Agreement. Upon confirmation that (i) Beale has executed this Agreement, (ii) Attorney Clar is in possession of the full amount of $15,000 as required by paragraph 2(b)(iii)(7), and (iii) the Policy has been bound, REVOLUTION will withdraw any objection it has filed, or intends to file, to the Settlement Agreement.

7



BEALE 0028

DEC-27-2005  11:25

4. <u>Releases</u>:

(a) At the time he executes this Agreement, Beale, for himself and his partners, attorneys, agents, representatives, heirs, and executors, hereby remises, releases and forever discharges REVOLUTION and its members and their employees, partners attorneys, agents, subsidiaries, affiliates, predecessors (including the FDIC), successors and assigns of and from all and any manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, decrees, extents, execution, claims, and demands whatsoever, in law or in equity or otherwise, which against said party the other (and their successors, affiliates and assigns) ever had, now have or may have by reason of any cause or thing including, but not limited to, the Judgment, the Bankruptcy Proceeding, and the Adversary Proceeding from the beginning of the world to the date of this Agreement. In addition to the foregoing, Beale hereby waives and releases any right he may have to object to or oppose (i) any settlement reached by and between the Trustee and REVOLUTION and (ii) any claim by REVOLUTION for allowance and payment of an administrative claim in the Bankruptcy Proceeding.

(b) At the time it executes this Agreement, REVOLUTION shall also execute the Release annexed hereto as Exhibit A (the "REVOLUTION Release"). The REVOLUTION Release shall be held in escrow by Attorney Jeffrey D. Ganz until the later of (i) the Initial Payment Date, (ii) the receipt by REVOLUTION of the cash payment required by Paragraph 2(a), above, (iii) the receipt by REVOLUTION of the payment required by Paragraph 2(b)(vii)(1), above, (iv) the issuance of the Policy, and (v) the receipt by REVOLUTION of the Security Deposit. Upon Beale's timely compliance with all five of the foregoing requirements, Attorney Ganz shall release the REVOLUTION Release from escrow and deliver it to Attorney Clar. In the event that Beale fails to qualify for an insurance policy acceptable to REVOLUTION after Beale exercises best efforts (as determined by REVOLUTION in its sole and reasonable discretion), then Attorney Ganz shall release the REVOLUTION Release from escrow and deliver it to Attorney Clar on the later of (i) the Initial Payment Date, (ii) the receipt by REVOLUTION of the cash payment required by Paragraph 2(a), above, (iii) the receipt by REVOLUTION of the payment required by Paragraph 2(b)(vii)(1), above, and (iv) the receipt by REVOLUTION of the Security Deposit.

(c) Effective on the date of the delivery of the REVOLUTION Release to Beale, REVOLUTION shall also release its lien against Beale's life estate interest in certain property located in Islamorada, Florida. To the extent that the execution of any instrument or other documentation is required for the release of REVOLUTION's interest in this property to take effect, Beale shall be responsible for preparing same, subject to REVOLUTION's reasonable review.

 8 

(d) Within sixty (60) days after the date of the delivery of the REVOLUTION Release to Beale, REVOLUTION shall cause all non-public documents it and its counsel has received through subpoena or other process in the Bankruptcy Proceeding, and over which REVOLUTION and/or its counsel currently has possession, custody, or control (the "Beale Documents"), to be either (i) delivered to the Trustee or (ii) destroyed. For the purposes of this paragraph the words "documents" and "Beale Documents" mean the original and all copies including, but not limited to, all paper copies and all electronic copies stored on CD-Rom, hard-drive or otherwise. Upon completion of the delivery or the destruction of the Beale Documents, REVOLUTION shall provide written notice to Beale confirming same and providing a general outline of the categories of documents delivered and/or destroyed. Thereafter, in the event that it learns or is notified that any Beale Document has not been delivered to the Trustee or destroyed, REVOLUTION agrees to take such efforts as may be reasonably necessary to cause that document to be delivered to the Trustee or destroyed. To the extent that any Beale Document is not delivered to the Trustee or destroyed, but is instead disseminated to a third party or publicly disclosed, REVOLUTION stipulates that Beale could suffer irreparable harm as a result and further stipulates to the entry of a temporary restraining order and/or preliminary injunction in any action brought by Beale to enforce the terms of this provision.

5. <u>Advice of Counsel</u>: The parties hereto acknowledge each has had the opportunity to be advised by counsel and the parties agree that for all purposes (including the resolution of any ambiguities herein), this Agreement shall be deemed to have been negotiated by all parties and construed as if all parties shared equally in the drafting of same.

6. <u>Modification; Waiver, Etc.</u>: This Agreement may only be modified by a writing executed by all parties. This Agreement and the obligations hereunder are for commercial and/or business purposes and not for family, household or personal purposes. Until payment in full of the Beale Premium Obligation, REVOLUTION is authorized by Beale to obtain credit information relating to Beale. Notwithstanding any defense of any nature available to Beale, the parties acknowledge that evidence of the execution of this Agreement (including a fax or photostatic copy hereof) shall be complete and legally sufficient evidence for REVOLUTION to meet its burden of establishing Beale's liability under this Agreement. If any provision of this Agreement is invalidated or declared against public policy by a court of law, the rest of the Agreement shall still be valid. Beale hereafter waives and relinquishes all claims, offsets, defenses, counterclaims and recoupments related to laches or to REVOLUTION's failure to prosecute or file any claim within any time period that may be required by law. It is not the intent of the parties to charge an interest rate greater than that allowed by law. If the interest rate charged hereunder is determined to be greater than that allowed by law or if there is any ambiguity with respect to the interest rate, then the parties agree that this Agreement shall be modified retroactively to reflect that the rate charged shall be limited to the highest rate allowed by law. If REVOLUTION has or obtains a judgment, the parties acknowledge that in the



9

BEALE 0030

event of a failure by Beale to strictly comply with the terms of the Agreement, Beale shall be responsible for all post judgment legal fees and costs of collection. TIME IS OF THE ESSENCE with respect to all payments and performance required by the Beale under this Agreement. This Agreement shall be construed under the laws of the State of Illinois and all parties hereto consent to the jurisdiction of that state's courts. This Agreement shall not be binding until executed by all parties hereto. This Agreement may be executed in counterparts and shall be deemed to be executed under seal.

7. <u>JURY TRIAL WAIVER</u>: BEALE MAKES THE FOLLOWING WAIVER KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, AND UNDERSTANDS THAT REVOLUTION, IN ENTERING INTO THE WITHIN AGREEMENT, IS RELYING THEREON. BEALE HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT TO A TRIAL BY JURY IN ANY CASE OR CONTROVERSY IN WHICH REVOLUTION IS OR BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST REVOLUTION OR IN WHICH REVOLUTION IS JOINED AS A PARTY LITIGANT, WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN BEALE AND REVOLUTION) CONCERNING, ARISING FROM, OR RELATING TO THIS AGREEMENT. THE TERM "REVOLUTION" SPECIFICALLY INCLUDES ANY PREDECESSOR OR SUCCESSOR IN INTEREST TO REVOLUTION.

8. <u>Payment Address</u>: Until further notice, the payments shall be made payable to REVOLUTION Portfolio, LLC and delivered c/o Union Financial Corporation, Attn: Robert N. Eisman, 5510 Edson Lane, Rockville, MD 20852-3135. REVOLUTION's rights hereunder shall be assignable without Beale's consent, and REVOLUTION reserves the right to change the address for payments to be made at any time by providing thirty (30) days notice to Beale.

9. <u>No Waiver</u>: By electing any one or more remedies set forth in this Agreement, REVOLUTION does not waive any rights to later elect additional remedies until all amounts due under this Agreement are paid in full. If REVOLUTION does not elect any remedy or forbears or fails to take any action upon an event of default, or if REVOLUTION accepts payments after the due date or after a default, unless REVOLUTION agrees in writing to waive its rights and remedies, REVOLUTION may later exercise such rights or remedies as provided in this Agreement. Receipt and/or deposit of payments after a default (and the expiration of any applicable cure period) shall not act to cure or waive said default unless specifically acknowledged in writing by REVOLUTION to be such a case or waiver. At any time, without effecting the rights and remedies of REVOLUTION hereunder, REVOLUTION may extend the time for performance to be made by Beale hereunder and said extension shall be conclusively deemed to extend any prevailing statute of limitation.




10

BEALE 0031

DEC-27-2005  11:26        CRANE-HEYMEN

10. **Notice:** Until further notice (given in accordance with this paragraph ("Notice")), any notices or mailings required to be sent to REVOLUTION under this Agreement shall be sent certified mail, return receipt requested, in writing to:

If to REVOLUTION:

At the address shown in Paragraph 8 hereof.

With copies to:

    Jeffrey D. Ganz, Esquire
    Riemer & Braunstein LLP
    Three Center Plaza
    Boston, Massachusetts 02108
    Fax: 617-692-3568
    Email: jganz@riemerlaw.com

And

    Robert G. Gottlieb, Esquire
    Venable
    575 7th Street, N.W.
    Washington, D.C. 20004
    Fax: 202-244-8300
    Email: rggottlieb@venable.com

All notices which may be required to be sent by REVOLUTION under this Agreement shall be deemed received by Beale on the earlier of actual receipt or two (2) calendar days after mailing by REVOLUTION via certified mail, return receipt requested or overnight mail or delivery to:

    Joseph S. Beale
    676 N. Orleans Street
    Chicago, Illinois 60610

With copies to:

    Scott R. Clar, Esquire
    Crane, Heyman, Simon, Welch & Clar
    135 South La Salle Street
    Chicago, Illinois 60603
    Fax: (312) 641-6777
    Email: sclar@craneheyman.com

IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the date first set forth above and represent and warrant that they have obtained all requisite and

11

BEALE 0032

appropriate authority to enter into this transaction and to execute this Agreement in the capacity shown without further action or approval.

_____ (Seal)
Joseph S. Beale

### STATE OF ILLINOIS

_____, ss.

On this 27th day of December, 2005, before me, the undersigned notary public, personally appeared JOSEPH S. BEALE, proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Colleen J Smith
Notary Public
My commission expires:

OFFICIAL SEAL
COLLEEN T SMITH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 06/20/08

REVOLUTION Portfolio, LLC
by: Union Recovery Limited Partnership, a member
by: Union Financial Corporation, a general partner

by: _____ (Seal)
Robert N. Eisman, President

### STATE OF MARYLAND

County of Montgomery, ss.                                    _____, 2005

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me.

_____
Notary Public
My commission expires:

WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exp. Oct. 1, 2009

926676.5

12

BEALE 0033

## RELEASE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency whereof are hereby acknowledged, the undersigned, REVOLUTION Portfolio, LLC, a Virginia limited liability company with a place of business located at 5510 Edson Lane, Rockville, Maryland (the "Releasor"), hereby releases, remises, and forever discharges Joseph S. Beale, his partners, representatives, agents, attorneys, successors, and assigns (the "Releasee"), from any and all claims, causes of action, suits, controversies, agreements, promises, acts, omissions, damages, liabilities, and any and all claims of every kind, nature, and description whatsoever, both in law and in equity, known or unknown, which against the Releasee the Releasor has or ever had, from the beginning of the world to this date including, but not limited to, that certain judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida, and excepting only those obligations arising out of a certain Settlement Agreement executed by the Releasor and the Releasee dated as of December 12, 2005 and any subsequent amendments thereto.

It is the express intention of the Releasor and the Releasee that this Release is intended to release the Releasee's personal liability only and it is not intended to release, limit, reduce, or alter the Releasor's ability to participate in any distribution as a creditor of the Chapter 7 bankruptcy estate of Joseph S. Beale (United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-0748) arising from the Releasor's proof of claim and any award of an administrative claim.

This Release is being executed by the Releasor upon full consideration and advice of independent counsel and is not executed in reliance upon any representations made by Releasee or its attorneys. This Release shall be governed by and construed in accordance with the law of the State of Illinois.

EXECUTED under seal this 22 day of December 2005.

REVOLUTION Portfolio, LLC
by:     Union Recovery Limited Partnership, a member
by:     Union Financial Corporation, a general partner

by:     _____ (Seal)
        Robert N. Eisman, President

STATE OF MARYLAND
County of Montgomery, ss.                    _____, 2005

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me.

WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exp. Oct. 1, 2009

Notary Public
My commission expires: