## FIRST AMENDMENT TO SETTLEMENT AGREEMENT

THIS FIRST AMENDMENT TO SETTLEMENT AGREEMENT, (the "Amendment") dated as of June 26, 2007 by and between Joseph S. Beale ("Beale"), an individual with a business address in Chicago, Illinois and REVOLUTION Portfolio, LLC ("REVOLUTION"), a Virginia limited liability company with a business address in Rockville, Maryland.

### RECITALS

R.1   WHEREAS, as of December 12, 2005, Beale and REVOLUTION entered into a Settlement Agreement (the "Agreement") which required, among other things, Beale to pay the Beale Settlement Amount (as defined in the Agreement") of $1,600,000.00 and, upon receipt of the Beale Settlement Amount and the satisfaction of certain other conditions stated therein, REVOLUTION was required to provide certain releases; and

R.2   WHEREAS, the Agreement contemplated that $1,250,000.00 of the Beale Settlement Amount would be satisfied as a result of the issuance of the Policy (as defined in the Agreement) and that Beale would "use all best efforts to obtain the Policy"; and

R.3   WHEREAS, as of the date of this Amendment, the Beale Settlement Amount has not been paid in full and the Policy has not issued; and

R.4   WHEREAS, REVOLUTION asserts that Beale has committed one or more defaults under the Agreement and Beale asserts that no such defaults exist; and

R.5   WHEREAS, one or more disputes have arisen under the Agreement and REVOLUTION and Beale seek to resolve those disputes; and

R.6   WHEREAS, REVOLUTION is willing to refrain from exercising whatever rights it may have to pursue Beale's alleged defaults under the Agreement, but only if Beale strictly complies with the terms of this Amendment.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to resolve their disputes, BUT ONLY under the following terms and conditions:

1. <u>Acknowledgement of Agreement, Obligations, and Underlying Recitals.</u>

   Beale stipulates to the accuracy of all of (a) the recitals and statements set forth in the Agreement and (b) the recitals and statements set forth above in this Amendment. Beale further stipulates and hereby acknowledges, ratifies and re-affirms the existence of the Obligations (as defined in the Agreement), the absence of any defense he may have had to the Obligations, and his further waiver of any such defense. Unless specifically amended by the terms of this Amendment, the Agreement remains in full force and effect, subject to any defaults which may presently exist.

2. <u>Settlement Funds and Life Insurance Policy</u>.

Beale's obligation to procure an insurance policy on his life (the "Policy") providing a death benefit of One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000) under paragraph 2(b) of the Agreement shall be amended, replaced and superceded in accordance with sub-paragraphs 2(a) through 2(j), below. In all respects, the nature, type, form, and carrier of the Policy shall be subject to REVOLUTION's sole and unfettered discretion. TIME IS OF THE ESSENCE for each and every payment and for all performance required by Beale hereunder.

(a)  On or before the date that this Amendment is executed, but in any event no later than Wednesday, June 27, 2007 (TIME BEING OF THE ESSENCE), Beale shall execute and deliver to REVOLUTION's counsel the original, signed Demand Promissory Note annexed hereto as Exhibit A (the "Note");

(b)  On or before the date that this Amendment is executed, but in any event no later than Wednesday, June 27, 2007 (TIME BEING OF THE ESSENCE), Beale shall deliver to REVOLUTION's counsel via federal funds wire transfer the sum of Thirty Thousand Dollars ($30,000.00) so that it is actually received by REVOLUTION's counsel on or before Wednesday, June 27, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE). This sum represents a non-refundable deposit.

(c)  On or before Friday, June 29, 2007 (TIME BEING OF THE ESSENCE), Beale shall deliver to REVOLUTION's counsel via federal funds wire transfer the sum of Thirty-Seven Thousand, Five Hundred Dollars ($37,500.00) so that it is actually received by REVOLUTION's counsel on or before Friday, June 29, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE). This sum represents an additional non-refundable deposit.

(d)  After confirming the timely receipt of the two payments totaling Sixty-Seven Thousand, Five Hundred Dollars ($67,500.00) required by paragraphs 2(b) and 2(c) above, REVOLUTION will deliver a release of its lien against only Beale's life estate in the property located in Islamorada, Florida (the "Islamorada Release") to First American Title Insurance Company d/b/a/ Charter Title Company, Inc., 31 Ocean Reef Drive, Key Largo, Florida (the "Escrow Agent") to be held in escrow pending Beale's timely performance of the remaining obligations in this paragraph 2 and in accordance with the escrow instructions to be prepared by REVOLUTION. Upon transmitting the fully executed, original Islamorada Release to the Escrow Agent, REVOLUTION's counsel shall promptly notify Beale's counsel that the Islamorada Release has been delivered subject to the terms of this Amendment and the escrow instructions. In the event that the Note and either or both of the two non-refundable deposits are not received by REVOLUTION's counsel on or before 3:00 p.m. Eastern time on the dates set forth above (TIME BEING OF THE ESSENCE), then REVOLUTION shall not be required to execute the Islamorada Release and Beale will not be

entitled to receive it. Notwithstanding the foregoing, REVOLUTION will be entitled to retain all monies paid to it and all property and rights received by it under this Amendment, applying them against the Obligations (as that term is defined in the Agreement) in REVOLUTION's sole discretion.

(e) Beale represents that he has applied for the Policy and his application has been approved by ING USA Annuity and Life Insurance Company or Security Life of Denver Insurance Company ("ING"). Beale further represents to REVOLUTION that during the time period beginning February 13, 2007 and ending thirty (30) days after the Policy is issued, Beale has not submitted (and no one acting on his behalf has submitted) any application for life insurance on Beale's life other than the Policy identified in this Amendment and the Agreement; Beale further warrants that he will not submit (nor will he allow anyone else to submit) nor will he consent to the submission of any application for life insurance on Beale's life other than the Policy identified in this Amendment and the Agreement. Beale further represents to REVOLUTION that he will not cause any lien, assignment or other encumbrance to be recorded against the Policy, EXCEPT that he has caused to be submitted to ING an Assignment of Life Insurance Policy as Collateral for the benefit of REVOLUTION in a form prepared by REVOLUTION (the "Assignment"). Beale represents that the Assignment has been filed with, and shall be acknowledged and accepted by ING, no later than the date that the Policy is issued.

(f) After the Policy has been issued by ING, but in any event no later than July 2, 2007 (TIME BEING OF THE ESSENCE), Beale shall irrevocably transfer ownership of the Policy to REVOLUTION, free and clear of any lien, assignment, or other encumbrance except for the Assignment. Beale shall also obtain written confirmation from ING (the "Acknowledgement") that it has acknowledged and accepted the transfer of ownership of the Policy to REVOLUTION.

(g) After the Policy has been issued and its ownership transferred to REVOLUTION, but in any event no later than July 2, 2007 (TIME BEING OF THE ESSENCE), Beale shall deliver the original Policy and the Acknowledgement to REVOLUTION's counsel so that they are actually received by REVOLUTION's counsel no later than July 2, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE).

(h) REVOLUTION shall be authorized by Beale to sell, assign, or transfer the Policy at its discretion and, in connection with that authorization, Beale shall execute fifteen (15) standard form, HIPAA-compliant medical release forms (collectively, the "HIPAA Forms") authorizing the release of his medical records to a potential purchaser of the Policy. Beale shall also execute one Durable Power of Attorney (the "Power of Attorney") limited in scope to the extent necessary to allow REVOLUTION's counsel (but neither REVOLUTION nor its, managers, members or principals) to authorize the release and/or execution of all such documents as may be required in connection with a potential sale,



FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

3

assignment, valuation or transfer of the Policy. The HIPAA Forms and the Power of Attorney shall be delivered to REVOLUTION's counsel no later than July 2, 2007, so that they are actually received by REVOLUTION's counsel on or before July 2, 2007 at 3:00 p.m. Eastern time (TIME BEING OF THE ESSENCE). The HIPAA Forms and the Power of Attorney shall not be held by REVOLUTION, but instead will be held by its counsel in escrow. The HIPAA Forms and the Power of Attorney shall only be released from escrow by REVOLUTION's counsel for the purpose of a possible sale, assignment, valuation or transfer of the Policy and then only to the extent requested by the prospective purchaser, assignee, appraiser or transferee. Under no circumstances, even in the event of a default by Beale, will the HIPAA Forms, the Power of Attorney, or any records obtained as a result of their use be delivered to REVOLUTION, its affiliates, or representatives, other than its counsel. In the event that the HIPAA Forms and the Power of Attorney are not sufficient to accomplish a sale, assignment, valuation or transfer of the Policy, or if additional documents are later requested or required to accomplish those ends, Beale shall execute all documents reasonably requested of him by REVOLUTION within ten (10) days of any such request (however, in no event shall Beale be required to take any additional medical examinations or tests). In the event that Beale fails to honor any such request, or in the event that Beale takes any action toward revoking the authorizations granted by him in any of the HIPAA Forms or the Power of Attorney or otherwise interfering with, hindering or delaying the implementation of any request for information or the receipt by REVOLUTION's counsel of such information, then the parties agree that Beale will be in default. In addition, REVOLUTION will be entitled to bring a suit against Beale for specific performance. If, in that suit, REVOLUTION's request is found to have been reasonable or Beale is found to have revoked any authorization or interfered with, hindered, or delayed the implementation of any request for information or the receipt by REVOLUTION's counsel of such information, then Beale shall be required to specifically perform the request and/or renew the authorization and REVOLUTION shall further be awarded all attorneys' fees and expenses it incurred in obtaining such a finding, plus interest on said amounts computed at the rate of twelve percent (12%) per year from the date of REVOLUTION's request until such amounts are paid in full. The remedies provided for in this paragraph 2(h) shall not be exclusive, but shall be cumulative of any other remedy or right REVOLUTION may have in the event of a default under this Amendment.

(i)   On or before July 2, 2007, Beale shall deliver to REVOLUTION's counsel via federal funds wire transfer the additional sum of One Hundred Fifteen Thousand, Five Hundred Dollars ($115,500.00) so that it is actually received by REVOLUTION's counsel on or before July 2, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE). In the event that this entire sum is not received by REVOLUTION's counsel on or before July 2, 2007 at 3:00 p.m. Eastern time (TIME BEING OF THE ESSENCE), then the Escrow Agent shall return the Islamorada Release to REVOLUTION and Beale will not be entitled to receive it. Notwithstanding the foregoing, REVOLUTION will be entitled to retain all monies paid to it and all property and rights received by it under this



FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

Amendment, applying them against the Obligations (as that term is defined in the Agreement) in REVOLUTION's sole discretion.

(j)     In the event that the Note, the Policy, the Acknowledgement, the HIPAA Forms, and the Power of Attorney are not actually received by REVOLUTION or its counsel on or before July 2, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE), then the Escrow Agent shall return the Islamorada Release to REVOLUTION and Beale will not be entitled to receive it. Notwithstanding the foregoing, REVOLUTION will be entitled to retain all monies paid to it and all property and rights received by it under this Amendment, applying them against the Obligations (as that term is defined in the Agreement) in REVOLUTION's sole discretion.

3.  Releases.

Paragraphs 4(b), 4(c), and 4(d) of the Agreement shall be amended, replaced and superceded as follows:

(a)     At the time he executes this Amendment, Beale, for himself and his partners, attorneys, agents, representatives, heirs, and executors, hereby remises, releases and forever discharges REVOLUTION and its members and their employees, partners attorneys, agents, subsidiaries, affiliates, predecessors (including the FDIC), successors and assigns of and from all and any manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, decrees, extents, execution, claims, and demands whatsoever, in law or in equity or otherwise, which against said party the other (and their successors, affiliates and assigns) ever had, now have or may have by reason of any cause or thing including, but not limited to, the Agreement, the Judgment, the Bankruptcy Proceeding, and the Adversary Proceeding (as those terms are defined in the Agreement), from December 11, 2005 to the date of this Amendment.

(b)     If Beale makes each and every payment required by this Amendment so that said payment is actually received by REVOLUTION (or its counsel) on or before the dates set forth herein and REVOLUTION (or its counsel) actually receives (i) the Note, (ii) the Policy free and clear of all liens, assignments and encumbrances, except for the Assignment, (iii) the Acknowledgement, (iv) the HIPAA Forms, and (v) the Power of Attorney on or before July 2, 2007 at 3:00 p.m., Eastern time, (TIME BEING OF THE ESSENCE FOR ALL OF THE ABOVE) then, and only then, shall the Escrow Agent deliver the Islamorada Release to Beale.

(c)     Within sixty (60) days after the date of the delivery by the Escrow Agent of the Islamorada Release to Beale, as long as there is no subsequent default by Beale, then REVOLUTION shall cause all non-public documents it and its counsel have received through subpoena or other process in the Bankruptcy



FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

5

BEALE 0039

Proceeding (as defined in the Agreement), and over which REVOLUTION and/or its counsel currently has possession, custody, or control (the "Beale Documents"), to be either (i) delivered to the Trustee (as defined in the Agreement) or (ii) destroyed. For the purposes of this paragraph the words "documents" and "Beale Documents" mean the original and all copies including, but not limited to, all paper copies and all electronic copies stored on CD-Rom, hard-drive or otherwise. Upon completion of the delivery or the destruction of the Beale Documents, REVOLUTION shall provide written notice to Beale confirming same and providing a general outline of the categories of documents delivered and/or destroyed. Thereafter, in the event that it learns or is notified that any Beale Document has not been delivered to the Trustee or destroyed, REVOLUTION agrees to take such efforts as may be reasonably necessary to cause that document to be delivered to the Trustee or destroyed. To the extent that any Beale Document is not delivered to the Trustee or destroyed, but is instead disseminated to a third party or publicly disclosed, REVOLUTION stipulates that Beale could suffer irreparable harm as a result and further stipulates to the entry of ONLY a temporary restraining order and/or preliminary injunction in any action brought by Beale to enforce the terms of this provision. The parties further stipulate and agree that the sole remedy for any breach by REVOLUTION of this requirements of this sub-paragraph 3(c) shall be limited to an order requiring the delivery to the Trustee, and/or the destruction of the Beale Documents, and Beale shall not be entitled to recover any monetary or other damages against REVOLUTION.

(d) At the time it executes this Amendment, REVOLUTION shall also execute the Release annexed hereto as Exhibit B (the "New REVOLUTION Release"). The New REVOLUTION Release shall be held in escrow by counsel to REVOLUTION. Upon receiving the original, signed New REVOLUTION Release, counsel to REVOLUTION shall be authorized and directed to destroy the REVOLUTION Release executed in connection with the Agreement. Counsel to REVOLUTION shall release the New REVOLUTION Release to counsel to Beale twenty-five months after the date REVOLUTION's counsel receives the Policy free and clear of all liens, assignments and encumbrances, except for the Assignment, BUT ONLY IF AT THAT TIME (i) Beale has timely performed all of his obligations under this Amendment, (ii) no other default exists under this Amendment (or existed after the execution of this Amendment, the existence of which was not specifically waived, in writing, by REVOLUTION)., and (iii) the Policy has not been cancelled, rescinded, modified, or the benefits denied to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer.

4. <u>Covenant Not to Sue.</u>

(a) REVOLUTION shall refrain and forbear from taking any action to recover the remaining amounts due under the Obligations, the Agreement or this Amendment, BUT ONLY to the extent that -



  (i)  Beale makes each and every payment required by this Amendment so that said payment is actually received by REVOLUTION (or its counsel) on or before the dates set forth herein and REVOLUTION (or its counsel) actually receives (i) the Note, (ii) the Policy free and clear of all liens, assignments and encumbrances, except for the Assignment, (iii) the Acknowledgement, (iv) the HIPAA Forms, and (v) the Power of Attorney on or before July 2, 2007 at 3:00 p.m., Eastern time, (TIME BEING OF THE ESSENCE) such that the Islamorada Release is released from escrow to Beale, and

  (ii)  The Policy is not cancelled, rescinded, modified, or the benefits denied to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer; and

  (iii)  No other default exists under this Amendment (or existed after the execution of this Amendment, the existence of which was not specifically waived, in writing, by REVOLUTION).

(b) REVOLUTION shall refrain and forbear from taking any action to recover the amounts due under the Note, BUT ONLY to the extent that -

  (i)  The Policy is not cancelled, rescinded, modified, or the benefits denied to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer; and

  (ii)  Either

    (A) The New REVOLUTION Release has not been delivered to Beale's counsel in accordance with paragraph 3(d), above; or

    (B) The New REVOLUTION Release has been delivered to Beale's counsel in accordance with paragraph 3(d), above, AND no other default exists under this Amendment (or existed after the execution of this Amendment, the existence of which was not specifically waived, in writing, by REVOLUTION).

(c) Notwithstanding the requirements of paragraph 4(b), above, if conditions are such that REVOLUTION is no longer required to refrain from taking action to recover the amounts due under the Obligations in accordance with paragraph 4(a),



above, then REVOLUTION may, in its sole and exclusive discretion, elect to enforce the terms of the Note and take any action as may be necessary to recover the full amount due thereunder. In the event that REVOLUTION elects to enforce the Note, then immediately upon making such election, the amount due under the Obligations shall be reduced by One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000). REVOLUTION's right to make this election shall not be exclusive, but shall be cumulative of other remedy or right REVOLUTION may have recover the amounts due under the Obligations, the Agreement or this Amendment.

5. Beale acknowledges that the execution of this Amendment, the issuance of the Policy, and the payment of the benefits arising under the Policy are dependent upon the truth, accuracy and completeness of the statements, disclosures and representations to REVOLUTION and ING made by Beale and his attorneys, agents, and representatives on his behalf. Beale further acknowledges that by entering into this Amendment, REVOLUTION is relying upon the truth, accuracy and completeness of those statements, disclosures and representations (including, but not limited to, the representations and warranties expressed in paragraphs 1 and 2(e), above). If, after the execution of this Amendment, (i) Beale is at any time in default hereunder, (ii) ING issues a notice asserting any reservation of its rights or challenge to the viability of the Policy, or (iii) the Policy is cancelled, rescinded, modified, or the benefits under the Policy are not paid to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer, then, notwithstanding anything to the contrary contained in the Agreement, this Amendment, or any other document,

(a) until the New REVOLUTION Release is delivered to Beale's counsel, Beale shall be liable to REVOLUTION for the full amount remaining due under the Obligations (as defined in the Agreement), after accounting for all accrued interest and Post-Petition Fees and Expenses (as provided for in the Agreement), and after giving credit for all payments actually received by REVOLUTION; and

(b) after the New REVOLUTION Release is delivered to Beale's counsel, Beale shall be liable to REVOLUTION for the full amount remaining due under the Note and no credit shall be given for any payments received under this Amendment, as all such payments will have been applied against the amounts due under the Obligations.

Notwithstanding the foregoing, as long as there has not been any default at any time after the execution of this Amendment, if REVOLUTION actually receives at least the full sum of One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000) from the payment of the proceeds from the Policy, then it shall be required to accept that payment in full satisfaction of the amounts due under the Note and the Obligations. In the event that the Policy generates any amount in



FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

8

excess of the One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000), under no circumstances will Beale be entitled to receive any portion thereof.

6. <u>Advice of Counsel</u>: The parties hereto acknowledge each has had the opportunity to be advised by counsel and the parties agree that for all purposes (including the resolution of any ambiguities herein), this Amendment shall be deemed to have been negotiated by all parties and construed as if all parties shared equally in the drafting of same.

7. <u>Modification; Waiver, Etc.</u>: This Amendment may only be modified by a writing executed by all parties. This Amendment and the obligations hereunder are for commercial and/or business purposes and not for family, household or personal purposes. Notwithstanding any defense of any nature available to Beale, the parties acknowledge that evidence of the execution of this Amendment (including a fax or photostatic copy hereof) shall be complete and legally sufficient evidence for REVOLUTION to meet its burden of establishing Beale's liability under this Amendment. If any provision of this Amendment is invalidated or declared against public policy by a court of law, the rest of the Amendment shall still be valid. Beale hereafter waives and relinquishes all claims, offsets, defenses, counterclaims and recoupments related to laches or to REVOLUTION's failure to prosecute or file any claim within any time period that may be required by law. It is not the intent of the parties to charge an interest rate greater than that allowed by law. If the interest rate charged hereunder is determined to be greater than that allowed by law or if there is any ambiguity with respect to the interest rate, then the parties agree that this Amendment shall be modified retroactively to reflect that the rate charged shall be limited to the highest rate allowed by law. If REVOLUTION has or obtains a judgment, the parties acknowledge that in the event of a failure by Beale to strictly comply with the terms of the Amendment, Beale shall be responsible for all post-judgment legal fees and costs of collection. <u>TIME IS OF THE ESSENCE</u> with respect to all payments and performance required by the Beale under this Amendment. Except with respect to the Note, This Amendment shall be construed under the laws of the State of Illinois and all parties hereto consent to the jurisdiction of that state's courts. The Note shall be construed under the laws of the Commonwealth of Massachusetts and all parties hereto consent to the jurisdiction of that state's courts in connection with any dispute that shall arise under the Note. This Amendment shall not be binding until executed by all parties hereto. This Amendment may be executed in counterparts and shall be deemed to be executed under seal.

8. <u>JURY TRIAL WAIVER</u>: BEALE MAKES THE FOLLOWING WAIVER KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, AND UNDERSTANDS THAT REVOLUTION, IN ENTERING INTO THE WITHIN AMENDMENT, IS RELYING THEREON. BEALE HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT TO A TRIAL BY JURY IN ANY CASE OR CONTROVERSY IN WHICH REVOLUTION IS OR BECOMES A PARTY (WHETHER SUCH CASE OR



CONTROVERSY IS INITIATED BY OR AGAINST REVOLUTION OR IN WHICH REVOLUTION IS JOINED AS A PARTY LITIGANT, WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN BEALE AND REVOLUTION) CONCERNING, ARISING FROM, OR RELATING TO THIS AMENDMENT. THE TERM "REVOLUTION" SPECIFICALLY INCLUDES ANY PREDECESSOR OR SUCCESSOR IN INTEREST TO REVOLUTION.

9. No Waiver: By electing any one or more remedies set forth in this Amendment, REVOLUTION does not waive any rights to later elect additional remedies until all amounts due under this Amendment are paid in full and all performance by Beale required under this Amendment has been timely completed in strict compliance with the terms set forth herein. If REVOLUTION does not elect any remedy or forbears or fails to take any action upon an event of default, or if REVOLUTION accepts payments after the due date or after a default, unless REVOLUTION specifically agrees in writing to waive its rights and remedies, REVOLUTION may later exercise such rights or remedies as provided in this Amendment. Receipt and/or deposit of payments after a default (and the expiration of any applicable cure period) shall not act to cure or waive said default unless specifically acknowledged in writing by REVOLUTION to be such a case or waiver. At any time, without effecting the rights and remedies of REVOLUTION hereunder, REVOLUTION may extend the time for performance to be made by Beale hereunder and said extension shall be conclusively deemed to extend any prevailing statute of limitation.

10. Notice: Until further notice (given in accordance with this paragraph ("Notice")), any notices or mailings required to be sent to REVOLUTION under this Agreement shall be sent ONLY BY certified mail, return receipt requested, or Fed Ex or UPS overnight delivery only, in writing to:

If to REVOLUTION:

REVOLUTION Portfolio, LLC
c/o Union Financial Corporation
5510 Edson Lane
Rockville, Maryland 20852-3135
Attention: Robert N. Eisman

With copies to:

Jeffrey D. Ganz, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
Fax: 617-692-3568
Email: jganz@riemerlaw.com

FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

10

And

Robert G. Gottllieb, Esquire
Venable
575 7th Street, N.W.
Washington, D.C. 20004
Fax: 202-244-8300
Email: rggottlieb@venable.com

All notices which may be required to be sent by REVOLUTION under this Amendment shall be deemed received by Beale on the earlier of actual receipt or two (2) calendar days after mailing by REVOLUTION via certified mail, return receipt requested or overnight mail by Fed Ex or UPS delivery to:

Mr. Joseph S. Beale
676 N. Orleans Street
Chicago, Illinois 60610

With copies to:

Scott R. Clar, Esquire
Crane, Heyman, Simon, Welch & Clar
135 South La Salle Street
Chicago, Illinois 60603
Fax: (312) 641-6777
Email: sclar@craneheyman.com

IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the date first set forth above and represent and warrant that they have obtained all requisite and appropriate authority to enter into this transaction and to execute this Amendment in the capacity shown without further action or approval.

_____ (Seal)
Joseph S. Beale

REVOLUTION Portfolio, LLC
by: Union Recovery Limited Partnership, a member
by: Union Financial Corporation, a general partner

by: _____ (Seal)
Robert N. Eisman, President



## STATE OF ILLINOIS

_____, ss.

On this 27th day of June, 2007, before me, the undersigned notary public, personally appeared JOSEPH S. BEALE, proved to me through satisfactory evidence of identification, which was State of Ill drivers license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

*OFFICIAL SEAL*
*COLLEEN T SMITH*
*NOTARY PUBLIC - STATE OF ILLINOIS*
*MY COMMISSION EXPIRES:06/20/09*

Notary Public
My commission expires: 6/20/09

State of Maryland
County of Montgomery, ss.

## STATE OF MARYLAND

June 29, 2007

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me.

Notary Public
My commission expires:



WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exps. Oct. 1, 2009

1006861.14

## RELEASE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency whereof are hereby acknowledged, the undersigned, **REVOLUTION Portfolio, LLC**, a Virginia limited liability company with a place of business located at 5510 Edson Lane, Rockville, Maryland (the "**Releasor**"), hereby releases, remises, and forever discharges Joseph S. Beale, his partners, representatives, agents, attorneys, successors, and assigns (the "**Releasee**"), from any and all claims, causes of action, suits, controversies, agreements, promises, acts, omissions, damages, liabilities, and any and all claims of every kind, nature, and description whatsoever, both in law and in equity, known or unknown, which against the Releasee the Releasor has or ever had, from the beginning of the world to this date including, but not limited to, that certain judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida, and excepting only those obligations arising out of a certain Settlement Agreement executed by the Releasor and the Releasee dated as of December 12, 2005, as amended, replaced, and superceded by a certain First Amendment to Settlement Agreement dated as of June 26, 2007 (the "First Amendment"), and any subsequent amendments thereto.

It is the express intention of the Releasor and the Releasee that this Release is intended to release the Releasee's personal liability only and it is not intended to release, limit, reduce, or alter the Releasor's ability to participate in any distribution as a creditor of the Chapter 7 bankruptcy estate of Joseph S. Beale (United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-0748) arising from the Releasor's proof of claim.

This Release is being executed by the Releasor upon full consideration and advice of independent counsel and is not executed in reliance upon any representations made by Releasee or its attorneys. This Release shall be governed by and construed in accordance with the law of the State of Illinois.

Upon execution, this original, signed Release is being delivered into escrow subject to certain conditions specified in the First Amendment. This Release shall not be effective until the original, signed Release is released from escrow, which shall be the only evidence that the conditions outlined in the Amendment have been satisfied. As such, only the original, signed Release shall be effective and no copy or facsimile of this Release shall be enforceable against the Releasor.

EXECUTED under seal this ___ day of June 2007.

*[remainder of page intentionally left blank]*

1

BEALE 0047

REVOLUTION Portfolio, LLC

by: Union Recovery Limited Partnership, a member

by: Union Financial Corporation, a general partner

by: _____/s/_____ (Seal)
Robert N. Eisman, President


STATE OF MARYLAND

*County of Montgomery*, ss.                June 27, 2007

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me,

_____/s/_____
Notary Public
My commission expires:



WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exps. Oct. 1, 2009

1019662.1

2

BEALE 0048