# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH S. BEALE, | ) | |
| | ) | Case No. 07 CV 6909 |
| Plaintiff, | ) | |
| | ) | Judge Kocoras |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| REVOLUTION PORTFOLIO, LLC, | ) | |
| SECURITY LIFE OF DENVER | ) | |
| INSURANCE COMPANY d/b/a/ ING, | ) | |
| ARKIN YOUNGENTOB ASSOCIATES, | ) | |
| LLC and STUART YOUNGENTOB, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| REVOLUTION PORTFOLIO, LLC, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH S. BEALE, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## FIRST AMENDED COMPLAINT FOR SPECIFIC
## PERFORMANCE, INJUNCTION AND OTHER RELIEF

Plaintiff Joseph S. Beale ("Beale"), by his attorneys, Novack and Macey LLP, as and for his

First Amended Complaint for Specific Performance, Injunction and Other Relief against Defendants

Revolution Portfolio, LLC ("Revolution"), Security Life of Denver Insurance Company d/b/a ING

("ING"), Arkin Youngentob Associates, LLC ("AYA") and Stuart Youngentob ("Youngentob"),

alleges and states as follows:

## NATURE OF ACTION

1.     This action arises out of an amendment to a settlement agreement between Beale and Revolution.  In that amendment, Revolution required that Beale make certain payments and transfer to Revolution an insurance policy on Beale's life -- issued by ING -- in exchange for releases in favor of Beale.  However, Revolution insisted on strict deadlines in the amendment and then intentionally interfered with Beale's compliance with those deadlines, causing delays.  Based on these delays -- all of which were of its own doing -- Revolution has falsely claimed that Beale has breached the amendment and, consequently, it has failed and refused to perform thereunder.  In doing so, Revolution has wrongfully retained all of the benefits that Beale provided to it pursuant to the amendment -- including the ING life insurance policy -- while simultaneously pursuing at least one action against Beale that it was supposed to have released.

2.     Additionally, Youngentob and his company, AYA, were retained to act as Beale's insurance agent to assist him in acquiring the insurance policy required by the amendment and, as such, had a fiduciary duty to act on behalf of Beale and had a duty to act with ordinary care and skill. In violation of their duties, Youngentob and AYA concealed information from Beale, acted at the direction of -- and on behalf of -- Revolution instead of Beale, and failed to disclose to Beale problems that Youngentob and AYA knew would delay the issuance of the policy --- that were caused by Revolution -- which Revolution now contends are the basis for its non-performance under the amendment.  Youngentob and AYA thus assisted Revolution in facilitating its scheme against Beale and, in so doing, breached their duties to Beale.

3.     Beale brings this action for, among other things:  (a) specific performance of the settlement agreement as amended; (b) damages against Youngentob and AYA for their breaches of

fiduciary duties and negligence; (c) an injunction against Revolution to prevent it from proceeding with lawsuits on the claims it was required to release; or, in the alternative; (d) rescission of the amendment to the settlement agreement due to Revolution's substantial non-performance thereof and the imposition of a constructive trust against Revolution, compelling it to disgorge the benefits that it received pursuant to the amendment to the settlement agreement.

## PARTIES, JURISDICTION AND VENUE

4.      Beale is an individual who consents to the personal jurisdiction of Illinois for purposes of this dispute.

5.      Revolution is a Virginia limited liability company.  Revolution is engaged in the business of, among other things, purchasing judgments at a discount and attempting to collect upon them.

6.      ING is a Colorado corporation doing business as ING.  ING is an insurance company, which issued the policy of insurance at issue in this lawsuit within the State of Illinois.

7.      AYA is a Maryland limited liability company, which is licensed to act as an insurance agent in Illinois.  AYA acted as Beale's insurance agent (along with non-party JMB Insurance) in connection with Beale's procurement of the subject insurance policy.

8.      Youngentob is an individual residing in the State of Maryland.  Youngentob is an insurance agent licensed in Illinois, and is the individual who acted as Beale's insurance agent in connection with his procurement of the subject insurance policy.

9.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this matter is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Venue is proper in the this Court pursuant to 28 U.S.C § 1391(a)(2) because the transactions giving rise to the causes of action alleged herein occurred in Cook County, Illinois.

## GENERAL ALLEGATIONS

11.     On or about November 21, 1997, Revolution purchased a judgment that had been rendered against Beale (the "Judgment").

12.     After it purchased the Judgment, in or about 2004, Revolution solicited the agreement of three creditors of partnerships in which Beale was a member or partner -- each of which had much smaller claims than Revolution -- to begin involuntary Bankruptcy Proceedings against Beale.  In connection therewith, Revolution agreed to subordinate part if its claims in favor of at least one of the other creditors (which contended that it held a claim in the amount of only $16,000).

13.     Thereafter, on or about March 5, 2004, Revolution and the three other creditors initiated involuntary Chapter 7 bankruptcy proceedings against Beale in the Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Proceedings").

14.     In connection with these Bankruptcy Proceedings, the bankruptcy trustee instituted certain adversary proceedings against Beale and certain third-parties (the "Adversary Proceedings").

15.     Beale, the bankruptcy trustee and the third parties desired to settle the Adversary Proceedings and, to that end, entered into a settlement agreement on or about November 15, 2005 (the "Bankruptcy Settlement Agreement").

16.     Beale then entered into a separate settlement agreement with Revolution on or about December 12, 2005 (the "Revolution Settlement Agreement"), a copy of which is attached hereto as Exhibit A.  Pursuant to the Revolution Settlement Agreement, Revolution agreed, among other things:  (a) to release claims that it had against Beale; and (b) not to object to the Bankruptcy

4

Settlement Agreement.  In exchange, Beale agreed, among other things, to make a payment to Revolution in the amount of $350,000 and to attempt to secure a $1.25 million life insurance policy on his own life (the "Policy") and transfer ownership thereof to Revolution.

17.     Because Beale and Revolution did not know when -- or even if -- a life insurance policy would be issued on Beale's life, the Revolution Settlement Agreement provided that Beale would "use all best efforts to obtain the Policy and [would] cooperate with REVOLUTION in obtaining the Policy." (Ex. A, ¶2(b)(ii).) Additionally, Beale was required to make certain payments to Revolution, which were to be applied toward the premiums on the Policy once it was issued.  (Id.) If Beale could not qualify for a life insurance policy, then his obligations with respect to the Policy would be deemed satisfied by his payment of the amounts that would otherwise have been applied to the Policy premiums.  (Id.)  In other words, if Beale could not qualify for a life insurance policy, that would not undo the Revolution Settlement Agreement.

18.     Beale paid to Revolution the $350,000 payment required by the Revolution Settlement Agreement.

19.     Further, at the request of Revolution, AYA and Youngentob agreed to act as Beale's insurance agent to assist Beale in obtaining the insurance policy required by the Revolution Settlement Agreement.  Despite that Beale used his best efforts to obtain the Policy, due to certain potential health concerns and, ironically, the filing of the involuntary Bankruptcy Proceedings, Beale was unable to immediately qualify for a life insurance policy.

20.     After several months of Beale using his best efforts to obtain the life insurance policy, Beale's counsel requested that Revolution provide the release required by the Revolution Settlement

5

Agreement. Revolution refused, and asked that Beale continue his efforts to obtain the life insurance policy.

21.    Finally, in early 2007, Beale's other insurance agent -- JMB Insurance -- was able to obtain a tentative agreement from an insurer to underwrite the required life insurance policy. Revolution, however, objected to the proposed terms of that policy. Revolution again requested that Beale continue his efforts to obtain a life insurance policy, but asked that he work with his other insurance agent -- AYA and Youngentob -- to acquire a different policy from ING. That is because, behind Beale's back, AYA and Youngentob told Revolution that they had certain relationships with ING that they could use to obtain a cheaper life insurance policy for Beale. As a result, Revolution would not accept the life insurance policy procured by Beale and JMB Insurance.

22.    Then, on or about April 4, 2007, despite that the Revolution Settlement Agreement specifically contemplated the possibility that a policy would not be issued, and while Beale was in the process of working with AYA and Youngentob to obtain a cheaper policy per Revolution's request, Revolution declared that Beale was in default of the Revolution Settlement Agreement for not yet obtaining a policy. Revolution used this supposed default to extract further concessions from Beale.

23.    In particular, Revolution refused to comply with the Revolution Settlement Agreement unless Beale would agree to, among other things: (a) make additional payments to Revolution; (b) sign a promissory note in favor of Revolution; and (c) amend the Revolution Settlement Agreement.

24.    In the meantime, on or about April 9, 2007, AYA and Youngentob, again behind Beale's back, contacted Revolution to provide it with options for the policy structure that they would

6

proposed for Beale. AYA and Youngentob continued to secretly communicate with Revolution and its counsel over what policy terms to pursue for approximately two weeks. During this time, and for several days thereafter, AYA and Youngentob refused to respond to Beale's other insurance agent.

25.    After hearing nothing from AYA or Youngentob, on or about April 29, 2007, Beale, through his other insurance agent, submitted a new application to ING in order to prevent Beale's medical underwriting examinations from expiring. Unfortunately, this application was denied.

26.    Shortly thereafter, AYA and Youngentob once again contacted Beale, and offered to re-submit the application to ING in a manner that would take advantage of Youngentob's contacts. Accordingly, AYA and Youngentob, on behalf of Beale, submitted an additional insurance application to ING on or about May 15, 2007. This application was approved on or about June 6, 2007, and Beale informed Revolution that he had qualified for the Policy.

27.    Nevertheless, in the meantime, in order to appease Revolution, Beale agreed to enter into an amendment to the Revolution Settlement Agreement. However, in drafts of the amendment, Revolution insisted on onerous deadlines. For example, Revolution demanded that the Policy be issued, that it be transferred to Revolution, and that ING issue an acknowledgment demonstrating that the Policy had been issued and transferred to Revolution (the "Acknowledgment") -- all in less than one week after the amendment was to be signed.

28.    In an attempt to meet these anticipated obligations, Beale, directly and through his insurance agents, worked with ING to make sure that the Policy would be issued and transferred to Revolution upon payment of the required premium while, at the same time, the amendment to the Revolution Settlement Agreement was still being negotiated.

7

29.    By June 25, 2007, the amendment to the Revolution Settlement Agreement was substantially completed -- but not yet signed.  Nevertheless, by that date, Beale had made all arrangements necessary with respect to the Policy so that it could be issued and transferred to Revolution upon the payment of the initial premium.  Additionally, Beale made arrangements with ING, AYA and Youngentob to expedite the issuance and delivery of the Acknowledgment to Revolution.

30.    Due to the very tight deadlines, on June 26, 2007 -- even before the amendment was signed -- Beale sent an e-mail directly to Revolution's outside counsel, Jeffrey Ganz ("Ganz"), inquiring about the procedures the parties could use to ensure that ING would timely issue the Acknowledgment to Revolution.  On the same date, Revolution's counsel Ganz responded in an e-mail to Beale's counsel, Scott Clar ("Clar"), in which Ganz refused to answer Beale's questions.  Nevertheless, Beale persisted in his efforts to make arrangements with Revolution and Ganz, both directly and through Clar, to expedite the issuance of the Policy and delivery of the Acknowledgment.

31.    On June 27, 2007, Beale executed the First Amendment to the Revolution Settlement Agreement (the "Amendment"), which was sent to Ganz for Revolution's execution.  A copy of the Amendment is attached hereto as Exhibit B.  Additionally, Beale executed other documents to cause the Policy to be transferred to Revolution upon the payment of the initial premium, and he further delivered certain signed documents to Revolution to allow it to re-sell the Policy including, among other things, HIPAA-complaint medical release forms and a Durable Power of Attorney (collectively, the "Re-Sale Authorizations"), all of which were required under the Amendment -- but not under the original Revolution Settlement Agreement.

32.     On or about June 27, 2007, Youngentob and AYA, purportedly on behalf of Beale, advised Revolution that ING would issue the Acknowledgment one day after it received all required materials from Beale and Revolution.   Youngentob and AYA further advised Revolution, purportedly on behalf of Beale, that they already had everything required from Beale to meet the deadline for the issuance of the Policy and the Acknowledgment of its transfer to Revolution -- i.e., July 2, 2007 -- and that the only remaining item to be received was the initial premium payment from Revolution.   Accordingly, Youngentob and AYA sent an invoice for the initial premium payment to Revolution and its counsel on June 27, 2007.

33.     In another attempt to meet the tight deadlines set forth in the Amendment, on June 27, 2007, Beale sent an e-mail to Ganz (copying Clar) asking about a way that the parties could expedite the payment to ING of the initial premium for the Policy which, in turn, would expedite the delivery of the Acknowledgment to Revolution.   Specifically, Beale wrote:

> Here's a thought for the two of you to consider.  If I were to wire the funds directly to ING for the first year's premium, it will expedite the process.   Assuming it's around $40,000, I could then wire the remaining $27,500 to Jeff Ganz.  The Policy will then be in full force and the documents re: the transfer of ownership in place.  I'm still focused on a close by Friday.  Let me know and if you agree, and if so, we can work out the wire to ING.  Joe

A copy of this June 27, 2007 e-mail is attached hereto as Exhibit C.

34.     Later that day, Beale sent another e-mail to Revolution's counsel asking:  "Any response to my memo about paying the ING payment?"  A copy of this later June 27, 2007 e-mail is attached hereto as Exhibit D.

35.     Hours later, Ganz, on behalf of Revolution, told Beale and Clar that Revolution could not agree or disagree with Beale's proposal to wire the initial premium payment directly to ING.

Beale then told Ganz that he would wire the entire $67,500 payment directly to Revolution, and he did so. Revolution received and accepted the $67,500 from Beale on June 28, 2007.

36.    Pursuant to the Amendment, upon receipt of the $67,500 from Beale, Revolution was required to sign and deliver a release of lien concerning certain real estate located in Florida (the "Florida Property"), to be held in escrow (the "Florida Release"), and to promptly notify Beale that it had done so. Then, on or before July 2, 2007, Beale was further required to make an additional payment to Revolution of $115,500.

37.    Beale preferred to make this $115,500 payment from proceeds of a loan that he intended to make by using the Florida Property as collateral (the "Beale Loan"). Beale advised Revolution that it was his preference to do so, and that it was essential that the Florida Release be available to the title company processing the Beale Loan so that it would be funded in time for Beale to make the $115,500 payment to Revolution by July 2, 2007. Beale further advised Revolution that he could not obtain the Beale Loan on the Florida Property without securing the Florida Release.

38.    Revolution agreed that it would accept the $115,500 payment out of the proceeds of the Beale Loan. To that end, Revolution's counsel had numerous communications with the title company closing the Beale Loan -- including providing wire instructions for the $115,500 payment and obtaining additional documents to be delivered at closing.

39.    Despite that Revolution had received all of the deliverables required of Beale on or before June 28, 2007 -- including the $67,500 payment -- Revolution waited until the following day, Friday, June 29, 2007, to send the initial premium payment and Policy transfer documents to ING. Because June 29, 2007 was a Friday, the package was not received until Monday, July 2, 2007 -- the very same day that the Acknowledgment was due. Revolution thereby prevented the timely

10

occurrence of a benefit that it was to receive by ensuring that the Acknowledgment would <u>not</u> be issued on time.

40.     Worse, on or about June 29, 2007, AYA and Youngentob realized that, in addition to the materials already provided, ING would also require an additional document signed by Revolution evidencing the authorization of Revolution's signature on the Policy Transfer documents. Had AYA and Youngentob exercised ordinary care, they would have known of this problem earlier so that it could have been corrected and the Acknowledgment would have been issued in a timely fashion.  Further compounding this breach of duty to Beale, AYA and Youngentob did not advise Beale that the essential document was still missing.  AYA and Youngentob did, however, tell Revolution.

41.     Instead of immediately providing the final required document, Revolution waited until July 2, 2007 -- the due date for the Acknowledgment -- to give the document to AYA ad Youngentob.  Then, AYA and Youngentob did not provide the final required document to ING until 3:50 p.m. on the due date.  Thus, AYA, Youngentob and Revolution all knew that there was no way for the Acknowledgment to be issued on July 2, 2007.  No one told Beale.

42.     As a result of Revolution's delay in paying the initial Policy premium, and Revolution's, AYA's and Youngentob's delay in providing the required paperwork to ING, the Acknowledgment was not issued on July 2, 2007.  Rather, it was issued one day late -- on July 3, 2007.  A copy of the Acknowledgment is attached hereto as Exhibit E.

43.     Despite receiving the $67,500 from Beale, Revolution failed to:  (a) deliver the fully executed Florida Release; and (b) promptly notify Beale or his counsel that it had done so, as expressly required under the Amendment.  These failures were material breaches of the Amendment.

11

44.     If Revolution had not breached these material obligations, either: (a) the Beale Loan would have closed and the final $115,500 payment would have been made to Revolution from the proceeds of that loan on or before July 2, 2007; or (b) Beale would have been on notice that the Florida Release was insufficient to cause the loan on the Florida Property to close and that he needed to make the additional $115,500 payment from another source, which he would have done on or before July 2, 2007. Either way, the $115,500 payment would have been made on time.

45.     By engaging in the aforementioned tactics and breaches, Revolution materially breached the covenant of good faith and fair dealing implied in the Amendment, and interfered with, delayed and/or excused Beale's further performance under the Amendment.

46.     Moreover, Revolution used the aforementioned tactics and delays to issue a bogus notice of default to Beale. Specifically, Revolution improperly claimed that Beale breached the Amendment because: (a) the Acknowledgment was late; and (b) the $115,500 payment was late -- both of which were directly caused by Revolution. Based on these purported defaults, Revolution has failed and refused to perform under the Revolution Settlement Agreement and Amendment and, therefore, it has materially breached the same.

47.     Among other things, Revolution failed to: (a) deliver the Florida Release; (b) promptly give Beale notice that it delivered the Florida Release; (c) issue or deliver the general release also required by the Amendment and the Revolution Settlement Agreement (the "General Release"); and (d) honor the covenant not to sue contained in the Revolution Settlement Agreement and Amendment (the "Covenant Not To Sue"). Indeed, on or about July 9, 2007, Revolution instituted proceedings in Florida to execute on its lien against the Florida Property in a case

captioned <u>Revolution v. J. Beale, et al.</u>, Case No. 502007 CA 013090, pending in the Circuit Court

for Palm Beach County, Florida (the "Florida Execution Proceedings").

48.    Revolution has wrongfully retained the benefits of the Revolution Settlement

Agreement and the Amendment.  Specifically, despite Beale's demand that Revolution return the

benefits, Revolution has retained the Policy, the Re-Sale Authorizations, the $67,500 that Beale paid

pursuant to the Amendment and all prior payments made by Beale to Revolution pursuant to the

Revolution Settlement Agreement -- including the initial $350,000 payment.  Moreover, Revolution

is proceeding with the Florida Execution Proceedings in direct breach of its releases and covenant

not to sue, despite its retention of all of the other benefits it received from Beale.

49.    Due to Revolution's breach of the Revolution Settlement Agreement and

Amendment, Beale contacted ING directly to revoke his transfer of the Policy to Revolution, and to

request that the Policy be transferred back to Beale.  Ganz, on behalf of Revolution, likewise

contacted ING, and directed it not to honor Beale's request.

50.    On July 18, 2007, ING responded to Beale and Ganz by letter, stating:

> As a result of the conflicting opinion of the parties involved
> concerning the change in ownership, the Company has placed a
> "hold" on the policy.  No transactions will be permitted on the policy,
> other than premium payments, until this situation has been resolved.

A true and correct copy of the July 18, 2007 letter is attached hereto as Exhibit F.

51.    Due to ING's "hold" on the Policy, Beale has been unable to re-obtain possession of

the Policy.

52.     Notwithstanding all of the foregoing, Beale has repeatedly offered to simultaneously exchange all of the parties' remaining deliverables under the Amendment through the use of a mutually acceptable escrow agent, which is what equity requires.  Revolution has refused.

53.     Nevertheless, Beale stands ready, willing and able to fully perform his remaining obligations under the Revolution Settlement Agreement and Amendment.

## COUNT I

### Specific Performance of the Amendment
### (Against Revolution)

54.     Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

55.     The Revolution Settlement Agreement and Amendment are valid, binding and enforceable contracts.

56.     Beale has substantially performed all of the material terms of the Revolution Settlement Agreement and Amendment, and all material conditions precedent to Revolution's obligations have occurred.

57.     Revolution contends that Beale breached certain terms of the Revolution Settlement Agreement and Amendment and/or that certain conditions precedent to its obligations did not occur. Even assuming *arguendo* that such breaches were committed by Beale -- which Beale does not admit -- they were not material and were of no pecuniary importance.  Alternatively, the forfeitures which would be caused by enforcement of the condition precedent would be unconscionable.

58.     Beale stands ready, willing and able to perform any and all remaining obligations thereunder.

14

59.    Revolution has materially breached the Amendment to the Revolution Settlement Agreement, and presently refuses to perform thereunder.

60.    Beale has no adequate remedy at law.

61.    Accordingly, the Court should order Revolution to specifically perform all of its obligations under the Amendment, including, without limitation, delivering to Beale the Florida Release and the General Release.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against Revolution as follows:

A.    Ordering Revolution to specifically perform the Amendment to the Revolution Settlement Agreement;

B.    Awarding Beale his costs of suit; and

C.    Granting Beale such other and further relief as is appropriate.

## COUNT II

### Injunction
### (Against Revolution)

62.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

63.    Pursuant to the Revolution Settlement Agreement and its Amendment, among other things, Revolution is required to sign and deliver the Florida Release, discharge its lien on the Florida Property, and it is prohibited from suing thereon.

64.    Revolution's institution and ongoing pursuit of the Florida Execution Proceedings is in direct violation of the terms of the Settlement Agreement, including but not limited to Sections 2 through 4 thereof.

65.    Beale has no adequate remedy at law with respect to Revolution's breaches set forth herein.

66.    Beale will be irreparably harmed if the relief requested herein is not granted.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against Revolution as follows:

A.    Permanently enjoining Revolution from prosecuting the Florida Execution Proceedings, or from instituting any other action against the Florida Property;

B.    Granting Beale his costs of suit; and

C.    Granting Beale such other and further relief as is appropriate.

## COUNT III

### Rescission of Amendment to Settlement Agreement
### (Pleaded in the Alternative Against Revolution)

67.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

68.    This Count is pleaded in the alternative to Counts I and II and applies in the event that the Court does not grant the relief sought therein.

69.    By reason of the foregoing, there has been substantial breach and substantial non-performance by Revolution of the Amendment.

16

70.    Revolution and Beale may be returned to the *status quo ante* by ordering Revolution to:  (a) return the Re-Sale Authorizations to Beale; and (b) return to Beale all money and other benefits that Revolution received from Beale pursuant to the Amendment.

71.    Accordingly, the Court should enter an Order rescinding the Amendment and returning the parties to the *status quo ante* -- i.e., place the parties back in the positions that they were in pursuant to the original Revolution Settlement Agreement.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against Revolution as follows:

A.    Ordering that the Amendment to the Revolution Settlement Agreement is rescinded;

B.    Ordering Revolution to return to Beale the Re-Sale Authorizations and all money and any and all other benefits that it received pursuant to the Amendment, plus interest thereon.

C.    Granting Beale his costs of suit; and

D.    Granting Beale such other and further relief as is appropriate.

## COUNT IV

### Unjust Enrichment/Constructive Trust
### (Pleaded in the Alternative Against Revolution)

72.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

73.    This Count is pleaded in the alternative to Counts I and II and applies in the event that the Court does not grant the relief sought therein.

74.    By reason of the foregoing, the Amendment to the Revolution Settlement Agreement should be rescinded.  Nevertheless, Revolution refuses to return to Beale the Re-Sale Authorizations, the money and the other benefits that it received from Beale pursuant to the Amendment.

75.    Accordingly, Revolution is wrongfully in possession of the Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment.

76.    Under the circumstances, it would be unjust to allow Revolution to retain Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment.

77.    Accordingly, this Court should enter an order:  (a) imposing a constructive trust on the Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment, naming Revolution the trustee and Beale the beneficiary thereof; and (b) compelling Revolution to turn over to Beale *instanter* the Re-Sale Authorizations and the money and any and all other benefits tendered by Beale to Revolution pursuant to the Amendment.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against Revolution as follows:

A.    Imposing a constructive trust on the Re-Sale Authorizations and the money and any and all other benefits tendered by Beale to Revolution pursuant to the Amendment, plus all gains or other revenues derived therefrom during Revolution's possession thereof, and naming Revolution the trustee and Beale the beneficiary thereof;

B.    Granting Beale his costs of suit; and

C.    Granting Beale such other and further relief as is appropriate.

18

## COUNT V

### Rescission of Settlement Agreement and Amendment
### (Pleaded in the Alternative Against Revolution)

78.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

79.    This Count is pleaded in the alternative to Counts I through IV and applies in the event that the Court does not grant the relief sought therein.

80.    By reason of the foregoing, there has been a substantial breach and substantial non-performance by Revolution of the Settlement Agreement and its Amendment.

81.    Beale has no adequate remedy at law.

82.    Revolution and Beale may be returned to the *status quo ante* by ordering Revolution to return to Beale: (a) ownership of the Policy; (b) all payments it received from Beale; (c) all Re-Sale Authorizations; and (d) any and all other benefits that Revolution received from Beale pursuant to the Settlement Agreement and Amendment.

83.    Accordingly, the Court should enter an Order rescinding the Amendment and returning the parties to the *status quo ante* -- i.e., place the parties back in the positions that they were in before the original Revolution Settlement Agreement.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against Revolution as follows:

A.    Ordering that the Revolution Settlement Agreement and Amendment are rescinded;

19

B.    Ordering Revolution to return the ING Policy to Beale, as well as all money, all Re-Sale Authorizations and any and all other benefits that it received pursuant to the Revolution Settlement Agreement and/or Amendment, plus interest thereon;

C.    Ordering Revolution to return ownership of the Policy to Beale;

D.    Granting Beale his costs of suit; and

E.    Granting Beale such other and further relief as is appropriate.

## COUNT VI

## Declaratory Judgment
### (Pleaded in the Alternative Against Revolution and ING)

84.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

85.    This Count is pleaded in the alternative to Counts I through IV and applies in the event that the Court does not grant the relief sought therein.

86.    This Count is brought pursuant to 28 U.S.C. § 2201.

87.    Beale has no adequate remedy at law with respect to the matters set forth herein.

88.    There is an actual controversy among Beale, Revolution and ING as to Beale's and Revolution's rights with respect to ownership of the Policy, and ING's obligations to Beale and/or Revolution with respect to ownership of the Policy.  Resolution of this controversy by means of the declaration requested herein will terminate the controversy or some part thereof.

89.    By reason of the foregoing, this Court should declare that Beale is entitled to ownership of the Policy and Revolution is not.

WHEREFORE, Beale respectfully requests entry of a Declaratory Judgment as follows:

20

A.      Declaring that Beale is the rightful owner of the Policy;

B.      Granting Beale his costs of suit; and

C.      Granting Beale such other and further relief as is appropriate.

## COUNT VII

### Breach of Contract
### (Pleaded in the Alternative Against Revolution)

90.      Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

91.      This Count is pleaded in the alternative to all prior Counts seeking equitable relief and applies solely in the event that the Court determines that Beale does have an adequate legal remedy for the injuries alleged above.

92.      Beale has substantially performed all of the material terms of the Revolution Settlement Agreement and Amendment, and all material conditions precedent to Revolution's obligations have occurred.

93.      Revolution contends that Beale breached certain terms of the Revolution Settlement Agreement and Amendment and/or that certain conditions precedent to its obligations did not occur. If such breaches were committed by Beale -- which Beale does not admit -- they were not material and were of no pecuniary importance.  Alternatively, the forfeitures which would be caused by enforcement of the condition precedent would be unconscionable.

94.      By reason of the foregoing, Revolution has materially breached the Amendment to the Revolution Settlement Agreement, and Beale has been injured and suffered damages thereby.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against Revolution as follows:

A.    Awarding Beale damages in an amount in excess of $417,500, to be specifically determined at trial, plus pre-judgment interest thereon;

B.    Granting Beale his costs of suit; and

C.    Granting Beale such other and further relief as is appropriate.

### COUNT VIII

### Breach of Fiduciary Duty
**(Against AYA and Youngentob)**

95.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

96.    At all relevant times, AYA and Youngentob were acting as insurance agents for Beale in connection with Beale's efforts to obtain the Policy required by the Revolution Settlement Agreement and the Amendment.

97.    As agents of Beale, AYA and Youngentob each owed a fiduciary duty to Beale to exercise the utmost good faith, act with due care, and conduct themselves with absolute loyalty to Beale.

98.    While AYA and Youngentob were supposed to be working as Beale's fiduciary, they were instead taking direction from Revolution, providing information to Revolution that was withheld from Beale and otherwise acting on behalf of Revolution.

99.    Among other things, on or about June 29, 2007, AYA and Youngentob knew that Revolution had failed to provide all of the materials necessary to obtain the Acknowledgment by the

22

deadline set forth in the Amendment, and that Revolution was going to declare a default under the Amendment as soon as the Policy was transferred.

100.    AYA and Youngentob withheld this information from Beale.  They withheld the information because they knew that Beale had a right to rescind the Policy, which Beale would exercise if he knew that Revolution was going to declare a default, and which would cause AYA and Youngentob to lose its commission on the Policy.

101.    In fact, AYA and Youngentob had multiple communications with Revolution about Beale's right of rescission.  At Revolution's request, Youngentob had discussions with ING without Beale's knowledge about whether Beale's right of rescission would survive the transfer of the Policy to Revolution.  Youngentob discovered that, once the Policy was transferred, Beale could not rescind the Policy, and AYA and Youngentob's commission would be assured.

102.    Youngentob relayed this information to Revolution, but withheld it from Beale.  Thus, on or before July 2, 2007, Youngentob knew:  (a) that the Acknowledgment would not be issued on time; (b) that Revolution was going to declare a default once the Policy was transferred; (c) that Beale could rescind the Policy before the transfer; and (d) that Beale would lose the right of rescission once the Policy was transferred.  Youngentob also knew that, if the Policy was rescinded, AYA and Youngentob would lose their commission.

103.    In order to protect their commission, AYA and Youngentob withheld the material information from Beale to his great financial detriment, and otherwise acted in preference of their own interests and the interests of Revolution over the interests of Beale.

104.    The foregoing conduct constitutes an egregious breach of AYA and Youngentob's fiduciary duties to Beale, and misappropriation of money in the form of commissions.  Further, the

23

foregoing conduct was wilful, wanton malicious and undertaken with callous disregard for Beale's rights.

105.    As a direct and proximate result of the foregoing wrongful conduct, Beale has suffered and continues to suffer, substantial damages.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against AYA and Youngentob as follows:

A.    Awarding Beale damages in an amount to be specifically determined at trial, plus pre-judgment interest thereon;

B.    Ordering AYA and Youngentob to disgorge all profits obtained through their relationship with Beale;

C.    Granting Beale his attorney's fees and costs of suit; and

D.    Granting Beale such other and further relief as is appropriate.

### COUNT IX

### Negligence
### (Against AYA and Youngentob)

106.    Beale incorporates by reference paragraphs 95 through 103 above as though fully set forth herein.

107.    At all relevant times, AYA and Youngentob were acting as insurance agents for Beale in connection with Beale's efforts to obtain the Policy required by the Revolution Settlement Agreement and the Amendment.

108.    As agents of Beale, AYA and Youngentob each owed a duty to Beale to exercise ordinary care and skill in procuring the coverage requested by Beale.

109.    AYA and Youngentob violated their duty to Beale to exercise ordinary care and skill in procuring the coverage requested by Beale.  Among other things, AYA and Youngentob:  (a) failed to identify all of the materials required to be provided to ING in time for the Policy and Acknowledgment to be issued in a timely fashion; (b) failed to provide competent counsel and service to Beale; (c) failed to advise Beale regarding his rights to rescind the Policy; (d) failed to advise Beale regarding the impact that the transfer of the Policy would have on his right to rescind; (e) secretly took direction from Revolution and its counsel; (f) failed to disclose all material information to Beale; (g) withheld information from Beale in an effort to protect their commission; and (h) otherwise failed to exercise ordinary care and skill in the procurement of the Policy for Beale.

110.    The foregoing conduct constitutes breaches of AYA and Youngentob's duty of care to Beale.  Further, the foregoing conduct was wilful, wanton malicious and undertaken with callous disregard for Beale's rights.

111.    As a direct and proximate result of the foregoing wrongful conduct, Beale has suffered and continues to suffer, substantial damages.

WHEREFORE, Beale respectfully requests the entry of Judgment in his favor and against AYA and Youngentob as follows:

A.    Awarding Beale damages in an amount to be specifically determined at trial, plus pre-judgment interest thereon;

B.    Granting Beale his attorney's fees and costs of suit; and

C.    Granting Beale such other and further relief as is appropriate.

Respectfully submitted,

JOSEPH S. BEALE

By:_____

One of His Attorneys

Monte L. Mann
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm No. 91731
Doc. #: 214698

26

# EXHIBIT A

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, (the "Agreement") dated as of December 12, 2005 by and between Joseph S. Beale ("Beale"), an individual with a business address in Chicago, Illinois and REVOLUTION Portfolio, LLC ("REVOLUTION"), a Virginia limited liability company with a business address in Rockville, Maryland.

## RECITALS

R.1     WHEREAS, judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida (the "Judgment"); and

R.2     WHEREAS, the Judgment remains currently outstanding; and

R.3     WHEREAS, on November 21,1997, the FDIC assigned the Judgment to REVOLUTION; and

R.4     WHEREAS, on March 5, 2004, REVOLUTION and certain other creditors initiated an involuntary bankruptcy proceeding against Beale in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-8748 (the "Bankruptcy Proceeding"); and

R.5     WHEREAS, on March 5, 2004, the amount due under the Judgment was not less than Seven Million Three Hundred Thousand Dollars ($7,300,000) including post-judgment interest and legal fees and expenses; and

R.6     WHEREAS, on April 5, 2004, an Order for Relief was entered in the Bankruptcy Proceeding and Andrew J. Maxwell (the "Trustee") was appointed to serve as the Chapter 7 Trustee; and

R.7     WHEREAS, on and after March 5, 2004, REVOLUTION incurred legal fees and other expenses in connection with the enforcement of its rights under the Judgment in excess of Two Million Two Hundred Thousand Dollars ($2,200,000); and

R.8     WHEREAS, the Trustee initiated Adversary Proceeding No. 04-A-2416 (the "Adversary Proceeding") against Beale and others alleging, among other things, that certain assets which the defendants in the Adversary Proceeding claim to own are, in fact, assets transferred, directly or indirectly, by Beale to the defendants in the Adversary Proceeding and/or to entities in which those defendants have an interest that may be avoided by the Trustee; and

R.9     WHEREAS, Beale and the other defendants have denied and disputed the Trustee's allegations in the Adversary Proceeding; and

R.10    WHEREAS, on or about November 15, 2005, the Trustee and Beale and others entered into an Amended Settlement Agreement (the "Settlement Agreement") through which they intend to resolve the disputes underlying the Adversary Proceeding and certain other claims,

1



and the Trustee subsequently filed a motion seeking Bankruptcy Court approval of the terms of the Settlement Agreement; and

R.11   WHEREAS, the Settlement Agreement proposes to resolve certain claims and dispose of certain assets which REVOLUTION asserts is not in the best interests of Beale's creditors and his bankruptcy estate, but results in the waiver of any discharge of debts which will not impair REVOLUTION's rights and remedies regarding assets not recovered or administered by the Trustee and its ability to pursue full payment of its claim against Beale; and

R.12   WHEREAS, REVOLUTION and Beale wish to resolve REVOLUTION's objections to the Settlement Agreement and to insure that REVOLUTION's claim, rights, and remedies will not be impaired if the Settlement Agreement is approved,

R.13   WHEREAS, REVOLUTION is willing to refrain from objecting to the Settlement Agreement, but only if Beale strictly complies with the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to resolve their disputes, BUT ONLY under the following terms and conditions:

1.   Acknowledgement of Obligation:

Beale stipulates to the accuracy of all of the recitals and statements set forth above and hereby acknowledges, ratifies and affirms all obligations under Judgment (collectively, the "Obligations"). Beale further stipulates that, upon approval of the Settlement Agreement and the entry of the Order acknowledging Beale's waiver of discharge under 11 U.S.C. §727(a)(10), the Obligations will include, without limitations, all attorneys' fees and expenses incurred by REVOLUTION after March 5, 2004 (the "Post-Petition Fees and Expenses") in connection with the efforts undertaken by REVOLUTION in the Bankruptcy Proceeding to enforce its rights under the Judgment. As of the date of this Agreement, Beale stipulates that the Post-Petition Fees and Expenses are at least Two Million Two Hundred Thousand Dollars ($2,200,000) and, as a result, the total amount of the Obligations exceeds Nine Million Five Hundred Thousand Dollars ($9,500,000) to the extent that Beale does not receive a discharge of debts. To further induce REVOLUTION to enter into this Agreement, Beale hereby acknowledges and agrees that there are no defenses, offsets, claims, counterclaims and recoupments whether now known or unknown or otherwise, and, to the extent that such defenses do exist, they are hereby **WAIVED** to the fullest extent permitted by law.

2.   Payment of Beale Settlement Sum:

In satisfaction of Beale's personal liability to satisfy the Obligations as a consequence of Beale's waiver of discharge, REVOLUTION agrees to accept from Beale the sum of One Million, Six Hundred Thousand Dollars ($1,600,000) (the "Beale Settlement Sum"). It is the express intention of Beale and REVOLUTION that the satisfaction of the Beale Settlement Sum contemplated

by this Agreement will not limit, reduce, or alter REVOLUTION's right to participate in any distribution as a creditor of the Bankruptcy Proceeding in connection with its proof of claim and any award of an administrative claim. In this regard, Beale agrees that the funds received by REVOLUTION shall be applied against the Obligations in its discretion and that REVOLUTION intends to apply any such payments to the Post-Petition Fees and Expenses not subject to reimbursement or distribution from the Bankruptcy Proceeding. REVOLUTION and Beale agree that the Beale Settlement Sum shall be satisfied in the following manner:

(a)     Cash Payment. On the eleventh business day after the Order approving the Settlement Agreement is entered by the Bankruptcy Court and in the absence of a stay of barring the implementation of the Settlement Agreement (the "Initial Payment Date"), Beale shall pay REVOLUTION the sum of Three Hundred and Fifty Thousand Dollars ($350,000) from assets which are not property of the Beale bankruptcy estate. This sum is currently being held in escrow by Attorney Scott R. Clar and, upon entry of the Order approving the Settlement Agreement, Attorney Clar shall hold these funds in trust for REVOLUTION. On the Initial Payment Date, the funds will be transferred to REVOLUTION via wire transfer in accordance with the following instructions or as may be later modified in writing by REVOLUTION:

| | |
|---|---|
| *To:* | *Wachovia Bank* |
| | *740 15th Street, NW, Washington, DC* |
| *ABA Routing Number:* | *054001220* |
| *Account Number:* | *4380126891* |
| *For Credit To:* | *REVOLUTION Portfolio, LLC* |
| *Attention:* | *Phyllis Black (Tel: 202-879-7521)* |
| | *Branch Manager* |

*Also, please call and leave a message at 301-770-2490 for either Bill Buland (ext 203) or Rob Eisman (ext 204) giving whomever the Federal Reference Number, date and time the wire was sent.*

(b)     Life Insurance Policy.

    (i)     The balance of the Beale Settlement Sum shall be paid from the proceeds of the One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000) death benefit from an insurance policy on Beale's life (the "Policy").

    (ii)     Beale hereby agrees to use all best efforts to obtain the Policy and to cooperate with REVOLUTION in obtaining the Policy.

3

Examples of such efforts shall include, but not be limited to, the requirement that Beale submit no fewer than three separate applications for insurance and that Beale be required to submit himself to no more than three physical and/or medical examinations. In the event that Beale fails to qualify for an insurance policy acceptable to REVOLUTION after Beale exercises reasonable efforts (as determined by REVOLUTION in its sole and reasonable discretion), then Beale's obligations under paragraph 2(b) of this Agreement shall be limited to the payment of the Beale Premium Obligation (as defined below) in accordance with the deadlines described below and REVOLUTION shall be entitled to retain said premiums for its sole benefit and use.

(iii)    Beale further agrees to take all steps necessary to allow REVOLUTION to bind the Policy on or before December 16, 2005 including, but not be limited to, the following:

(1)    Completing a preliminary application for insurance including the contact information for all physicians Beale has consulted since December 1, 2000 and providing this information to Bruce Schlesinger at JMB Insurance Agency and Stuart Youngentob at Arkin, Youngentob Associates, LLC (collectively, the "Agents");

(2)    Complying with all requests of the Agents and potential insurers in connection with the application process including, but not limited to obtaining supplemental information from, or participating in follow-up examinations with Beale's physicians;

(3)    Providing to the Agents two complete insurance applications including all requisite financial information for the Policy and for a similar policy with a benefit limited to One Million Dollars ($1,000,000);

(4)    Being examined by one or more physicians, nurses, and other insurance-related professionals specified by any potential insurance company and taking all steps necessary to insure that the Agents receive the resulting report(s) as quickly as possible;

(5)    Being available for, and cooperating with an inspection report and/or interview;

(6)    Providing funds to the Agents sufficient to bind the Policy; and



4



(7)    Insuring the availability of the initial 10% of the Beale Premium Obligation (as defined below), by placing $15,000 from assets which are not property of the Beale bankruptcy estate in escrow with Attorney Scott R. Clar. Upon entry of the Order approving the Settlement Agreement, Attorney Clar shall hold these funds in trust for REVOLUTION and, to the extent necessary, such funds will be used to fund the Security Deposit (as defined below).

(iv)    Subject only to Beale's ability to qualify for coverage, REVOLUTION, in its sole discretion, shall have the right to designate the type of insurance policy to be obtained and the insurance company to issue the Policy.

(v)    REVOLUTION or its designee shall be the owner of the Policy. The premiums due under the Policy shall be paid by REVOLUTION and Beale shall be required to contribute to the payment of those premiums. Beale's obligation to pay those premiums shall be satisfied by paying to REVOLUTION a sum equal to ten years of premiums under a hypothetical ten-year, level premium, term insurance policy for which Beale could have qualified had he applied for such a policy instead of the Policy (the "Beale Premium Obligation"). Based upon the information available currently, Beale and REVOLUTION agree that the total amount of the Beale Premium Obligation will not be less than One Hundred Two Thousand Nine Hundred and Forty Dollars ($102,940), payable at $10,294 per year for ten years, if Beale qualifies for preferred insurance rates, but will be higher if Beale does not qualify for such rates. However, Beale and REVOLUTION agree that the exact amount of the Beale Premium Obligation shall be determined based upon the type of policy available to Beale as a result of the underwriting process and his physical and/or medical examinations and at the time he obtains the Policy. In the event that Beale fails to qualify for an insurance policy acceptable to REVOLUTION after Beale exercises reasonable efforts (as determined by REVOLUTION in its sole and reasonable discretion), then the Beale Premium Obligation shall be determined by using the insurance rates for sub-standard rated health and/or underwriting on a ten year, fixed rate basis.

(vi)    On or before December 16, 2005, Beale shall deposit with Attorney Clar, in trust for REVOLUTION, an additional Fifteen Thousand Dollars ($15,000) which is the estimated amount of one year of annual premiums if Beale qualifies for only standard insurance rates. From these funds, Attorney Clar shall pay to REVOLUTION ten percent (10%) of the actual Beale Premium

5



Obligation (the "Security Deposit") on the later of (i) the day that the Policy is bound and (ii) the Initial Payment Date. The Security Deposit shall be held in escrow at interest by REVOLUTION as security for Beale's performance under this Agreement. Any excess from the funds held by Attorney Clar shall continue to be held by him until the Policy is issued and the actual premium is determined. At that time, any additional amount owed to REVOLUTION to reach the full 10% of the actual Beale Premium Obligation will be due and payable to REVOLUTION immediately. Any excess held by Attorney Clar at that time over the full 10% of the actual Beale Premium Obligation may, at Beale's option, be returned to Beale at that time.

(vii) Beale shall pay the balance of the Beale Premium Obligation to REVOLUTION from assets which are not property of the Beale bankruptcy estate in accordance with the following schedule, TIME BEING OF THE ESSENCE:

(1) ten-percent (10%) on or before the earlier of the issuance of the Policy or January 15, 2006;

(2) ten-percent (10%) on or before December 1, 2006;

(3) ten-percent (10%) on or before December 1, 2007;

(4) ten-percent (10%) on or before December 1, 2008;

(5) ten-percent (10%) on or before December 1, 2009;

(6) ten-percent (10%) on or before December 1, 2010;

(7) ten-percent (10%) on or before December 1, 2011;

(8) ten-percent (10%) on or before December 1, 2012;

(9) ten-percent (10%) on or before December 1, 2013; and

(10) ten-percent (10%) on or before December 1, 2014. To the extent that the Security Deposit has not been reduced prior to December 1, 2014 and in the absence of any default, Beale may elect to have this final payment satisfied by application of the Security Deposit, with any excess to be returned to Beale.

(viii) To the extent that the payments described in the previous paragraph are not paid on or before the associated date, interest shall accrue on such payment in the amount of ten percent (10%) per annum based on the actual days outstanding and a 360 day



year. Beale also agrees to pay a late charge equal to five percent (5%) of the amount of any such payment not actually received by REVOLUTION on or before five (5) business days after the due dates described in the previous paragraph. In the event that any payment is not actually received by REVOLUTION on or before twenty (20) days after the due dates described in the previous paragraph, REVOLUTION shall have the right to declare a default under this Agreement and if such a default is declared by REVOLUTION, the entire remaining balance of the Beale Premium Obligation shall be accelerated and become immediately due and payable to REVOLUTION if such default is not cured within ten (10) business days after REVOLUTION provides notice of its declaration of default and intention to accelerate. Beale further agrees he shall be personally obligated for the Beale Premium Obligation and all interest and late charges described in this paragraph, plus all pre-judgment and post-judgment legal fees and expenses incurred by REVOLUTION in connection with any efforts it engages in to enforce its rights to receive the full amount due from Beale under this Agreement until such amount is paid in full. In the event of a default which is not cured within (10) business days after REVOLUTION provides notice of its declaration of default, REVOLUTION may, in its sole discretion, release the Security Deposit (and any interest accrued thereon) from escrow and apply it against any amount owed to it by Beale under this Agreement.

(ix) Beale may pre-pay all remaining amounts due under the Beale Premium Obligation plus accrued interest, late charges, and costs of collection (including attorneys' fees and expenses) without penalty at any time, provided that such funds are not derived from assets which are property of the Beale bankruptcy estate.

(x) After issuance of the Policy, Beale shall execute or cause to be executed whatever documents, instruments, and agreements are reasonably required in order for REVOLUTION to administer or implement the policy including, but not limited to, executing additional illustrations of premium payments.

3. <u>Withdrawal by REVOLUTION of Objection to Settlement Agreement:</u>

Upon confirmation that Attorney Clar is in possession of the full amount of $350,000 as required by paragraph 2(a) above, REVOLUTION will cease all discovery efforts relating to the Settlement Agreement. Upon confirmation that (i) Beale has executed this Agreement, (ii) Attorney Clar is in possession of the full amount of $15,000 as required by paragraph 2(b)(iii)(7), and (iii) the Policy has been bound, REVOLUTION will withdraw any objection it has filed, or intends to file, to the Settlement Agreement.



4. <u>Releases</u>:

(a) At the time he executes this Agreement, Beale, for himself and his partners, attorneys, agents, representatives, heirs, and executors, hereby remises, releases and forever discharges REVOLUTION and its members and their employees, partners attorneys, agents, subsidiaries, affiliates, predecessors (including the FDIC), successors and assigns of and from all and any manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, decrees, extents, execution, claims, and demands whatsoever, in law or in equity or otherwise, which against said party the other (and their successors, affiliates and assigns) ever had, now have or may have by reason of any cause or thing including, but not limited to, the Judgment, the Bankruptcy Proceeding, and the Adversary Proceeding from the beginning of the world to the date of this Agreement. In addition to the foregoing, Beale hereby waives and releases any right he may have to object to or oppose (i) any settlement reached by and between the Trustee and REVOLUTION and (ii) any claim by REVOLUTION for allowance and payment of an administrative claim in the Bankruptcy Proceeding.

(b) At the time it executes this Agreement, REVOLUTION shall also execute the Release annexed hereto as Exhibit A (the "REVOLUTION Release"). The REVOLUTION Release shall be held in escrow by Attorney Jeffrey D. Ganz until the later of (i) the Initial Payment Date, (ii) the receipt by REVOLUTION of the cash payment required by Paragraph 2(a), above, (iii) the receipt by REVOLUTION of the payment required by Paragraph 2(b)(vii)(1), above, (iv) the issuance of the Policy, and (v) the receipt by REVOLUTION of the Security Deposit. Upon Beale's timely compliance with all five of the foregoing requirements, Attorney Ganz shall release the REVOLUTION Release from escrow and deliver it to Attorney Clar. In the event that Beale fails to qualify for an insurance policy acceptable to REVOLUTION after Beale exercises best efforts (as determined by REVOLUTION in its sole and reasonable discretion), then Attorney Ganz shall release the REVOLUTION Release from escrow and deliver it to Attorney Clar on the later of (i) the Initial Payment Date, (ii) the receipt by REVOLUTION of the cash payment required by Paragraph 2(a), above, (iii) the receipt by REVOLUTION of the payment required by Paragraph 2(b)(vii)(1), above, and (iv) the receipt by REVOLUTION of the Security Deposit.

(c) Effective on the date of the delivery of the REVOLUTION Release to Beale, REVOLUTION shall also release its lien against Beale's life estate interest in certain property located in Islamorada, Florida. To the extent that the execution of any instrument or other documentation is required for the release of REVOLUTION's interest in this property to take effect, Beale shall be responsible for preparing same, subject to REVOLUTION's reasonable review.



8



(d)    Within sixty (60) days after the date of the delivery of the REVOLUTION Release to Beale, REVOLUTION shall cause all non-public documents it and its counsel has received through subpoena or other process in the Bankruptcy Proceeding, and over which REVOLUTION and/or its counsel currently has possession, custody, or control (the "Beale Documents"), to be either (i) delivered to the Trustee or (ii) destroyed. For the purposes of this paragraph the words "documents" and "Beale Documents" mean the original and all copies including, but not limited to, all paper copies and all electronic copies stored on CD-Rom, hard-drive or otherwise. Upon completion of the delivery or the destruction of the Beale Documents, REVOLUTION shall provide written notice to Beale confirming same and providing a general outline of the categories of documents delivered and/or destroyed. Thereafter, in the event that it learns or is notified that any Beale Document has not been delivered to the Trustee or destroyed, REVOLUTION agrees to take such efforts as may be reasonably necessary to cause that document to be delivered to the Trustee or destroyed. To the extent that any Beale Document is not delivered to the Trustee or destroyed, but is instead disseminated to a third party or publicly disclosed, REVOLUTION stipulates that Beale could suffer irreparable harm as a result and further stipulates to the entry of a temporary restraining order and/or preliminary injunction in any action brought by Beale to enforce the terms of this provision.

5.    Advice of Counsel: The parties hereto acknowledge each has had the opportunity to be advised by counsel and the parties agree that for all purposes (including the resolution of any ambiguities herein), this Agreement shall be deemed to have been negotiated by all parties and construed as if all parties shared equally in the drafting of same.

6.    Modification; Waiver, Etc.: This Agreement may only be modified by a writing executed by all parties. This Agreement and the obligations hereunder are for commercial and/or business purposes and not for family, household or personal purposes. Until payment in full of the Beale Premium Obligation, REVOLUTION is authorized by Beale to obtain credit information relating to Beale. Notwithstanding any defense of any nature available to Beale, the parties acknowledge that evidence of the execution of this Agreement (including a fax or photostatic copy hereof) shall be complete and legally sufficient evidence for REVOLUTION to meet its burden of establishing Beale's liability under this Agreement. If any provision of this Agreement is invalidated or declared against public policy by a court of law, the rest of the Agreement shall still be valid. Beale hereafter waives and relinquishes all claims, offsets, defenses, counterclaims and recoupments related to laches or to REVOLUTION's failure to prosecute or file any claim within any time period that may be required by law. It is not the intent of the parties to charge an interest rate greater than that allowed by law. If the interest rate charged hereunder is determined to be greater than that allowed by law or if there is any ambiguity with respect to the interest rate, then the parties agree that this Agreement shall be modified retroactively to reflect that the rate charged shall be limited to the highest rate allowed by law. If REVOLUTION has or obtains a judgment, the parties acknowledge that in the

9

event of a failure by Beale to strictly comply with the terms of the Agreement, Beale shall be responsible for all post judgment legal fees and costs of collection. TIME IS OF THE ESSENCE with respect to all payments and performance required by the Beale under this Agreement. This Agreement shall be construed under the laws of the State of Illinois and all parties hereto consent to the jurisdiction of that state's courts. This Agreement shall not be binding until executed by all parties hereto. This Agreement may be executed in counterparts and shall be deemed to be executed under seal.

7.  JURY TRIAL WAIVER: BEALE MAKES THE FOLLOWING WAIVER KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, AND UNDERSTANDS THAT REVOLUTION, IN ENTERING INTO THE WITHIN AGREEMENT, IS RELYING THEREON. BEALE HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT TO A TRIAL BY JURY IN ANY CASE OR CONTROVERSY IN WHICH REVOLUTION IS OR BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST REVOLUTION OR IN WHICH REVOLUTION IS JOINED AS A PARTY LITIGANT, WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN BEALE AND REVOLUTION) CONCERNING, ARISING FROM, OR RELATING TO THIS AGREEMENT. THE TERM "REVOLUTION" SPECIFICALLY INCLUDES ANY PREDECESSOR OR SUCCESSOR IN INTEREST TO REVOLUTION.

8.  Payment Address: Until further notice, the payments shall be made payable to **REVOLUTION Portfolio, LLC** and delivered c/o **Union Financial Corporation, Attn: Robert N. Eisman, 5510 Edson Lane, Rockville, MD 20852-3135.** REVOLUTION's rights hereunder shall be assignable without Beale's consent, and REVOLUTION reserves the right to change the address for payments to be made at any time by providing thirty (30) days notice to Beale.

9.  No Waiver: By electing any one or more remedies set forth in this Agreement, REVOLUTION does not waive any rights to later elect additional remedies until all amounts due under this Agreement are paid in full. If REVOLUTION does not elect any remedy or forbears or fails to take any action upon an event of default, or if REVOLUTION accepts payments after the due date or after a default, unless REVOLUTION agrees in writing to waive its rights and remedies, REVOLUTION may later exercise such rights or remedies as provided in this Agreement. Receipt and/or deposit of payments after a default (and the expiration of any applicable cure period) shall not act to cure or waive said default unless specifically acknowledged in writing by REVOLUTION to be such a case or waiver. At any time, without effecting the rights and remedies of REVOLUTION hereunder, REVOLUTION may extend the time for performance to be made by Beale hereunder and said extension shall be conclusively deemed to extend any prevailing statute of limitation.



10



10. <u>Notice</u>: Until further notice (given in accordance with this paragraph ("Notice")), any notices or mailings required to be sent to REVOLUTION under this Agreement shall be sent certified mail, return receipt requested, in writing to:

If to REVOLUTION:

At the address shown in Paragraph 8 hereof.

With copies to:

Jeffrey D. Ganz, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
Fax: 617-692-3568
Email: jganz@riemerlaw.com

And

Robert G. Gottllieb, Esquire
Venable
575 7th Street, N.W.
Washington, D.C. 20004
Fax: 202-244-8300
Email: rggottlieb@venable.com

All notices which may be required to be sent by REVOLUTION under this Agreement shall be deemed received by Beale on the earlier of actual receipt or two (2) calendar days after mailing by REVOLUTION via certified mail, return receipt requested or overnight mail or delivery to:

Joseph S. Beale
676 N. Orleans Street
Chicago, Illinois 60610

With copies to:

Scott R. Clar, Esquire
Crane, Heyman, Simon, Welch & Clar
135 South La Salle Street
Chicago, Illinois 60603
Fax: (312) 641-6777
Email: sclar@craneheyman.com

IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the date first set forth above and represent and warrant that they have obtained all requisite and

11



appropriate authority to enter into this transaction and to execute this Agreement in the capacity shown without further action or approval.

_____ (Seal)
Joseph S. Beale

### STATE OF ILLINOIS

_____, ss.

On this 12th day of December, 2005, before me, the undersigned notary public, personally appeared JOSEPH S. BEALE, proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My commission expires: _____

OFFICIAL SEAL
COLLEEN T SMITH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/2008

REVOLUTION Portfolio, LLC
by: Union Recovery Limited Partnership, a member
by: Union Financial Corporation, a general partner

by: _____ (Seal)
Robert N. Eisman, President

### STATE OF MARYLAND

_____, ss.                                        _____, 2005

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me.

_____
Notary Public
My commission expires: _____

WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exps. Oct. 1, 2009

926676.5

12

## RELEASE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency whereof are hereby acknowledged, the undersigned, **REVOLUTION Portfolio, LLC**, a Virginia limited liability company with a place of business located at 5510 Edson Lane, Rockville, Maryland (the "**Releasor**"), hereby releases, remises, and forever discharges Joseph S. Beale, his partners, representatives, agents, attorneys, successors, and assigns (the "**Releasee**"), from any and all claims, causes of action, suits, controversies, agreements, promises, acts, omissions, damages, liabilities, and any and all claims of every kind, nature, and description whatsoever, both in law and in equity, known or unknown, which against the Releasee the Releasor has or ever had, from the beginning of the world to this date including, but not limited to, that certain judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida, and excepting only those obligations arising out of a certain Settlement Agreement executed by the Releasor and the Releasee dated as of December 12, 2005 and any subsequent amendments thereto.

It is the express intention of the Releasor and the Releasee that this Release is intended to release the Releasee's personal liability only and it is not intended to release, limit, reduce, or alter the Releasor's ability to participate in any distribution as a creditor of the Chapter 7 bankruptcy estate of Joseph S. Beale (United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-0748) arising from the Releasor's proof of claim and any award of an administrative claim.

This Release is being executed by the Releasor upon full consideration and advice of independent counsel and is not executed in reliance upon any representations made by Releasee or its attorneys. This Release shall be governed by and construed in accordance with the law of the State of Illinois.

EXECUTED under seal this _22_ day of December 2005.

REVOLUTION Portfolio, LLC
by:    Union Recovery Limited Partnership, a member
by:    Union Financial Corporation, a general partner

by:    _____ (Seal)
       Robert N. Eisman, President

STATE OF MARYLAND

_County of Montgomery_                         _____, 2005

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me,

WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exps. Oct. 1, 2009

Notary Public
My commission expires:

# EXHIBIT B

## FIRST AMENDMENT TO SETTLEMENT AGREEMENT

THIS FIRST AMENDMENT TO SETTLEMENT AGREEMENT, (the "Amendment") dated as of June 26, 2007 by and between Joseph S. Beale ("Beale"), an individual with a business address in Chicago, Illinois and REVOLUTION Portfolio, LLC ("REVOLUTION"), a Virginia limited liability company with a business address in Rockville, Maryland.

## RECITALS

R.1    WHEREAS, as of December 12, 2005, Beale and REVOLUTION entered into a Settlement Agreement (the "Agreement") which required, among other things, Beale to pay the Beale Settlement Amount (as defined in the Agreement") of $1,600,000.00 and, upon receipt of the Beale Settlement Amount and the satisfaction of certain other conditions stated therein, REVOLUTION was required to provide certain releases; and

R.2    WHEREAS, the Agreement contemplated that $1,250,000.00 of the Beale Settlement Amount would be satisfied as a result of the issuance of the Policy (as defined in the Agreement) and that Beale would "use all best efforts to obtain the Policy"; and

R.3    WHEREAS, as of the date of this Amendment, the Beale Settlement Amount has not been paid in full and the Policy has not issued; and

R.4    WHEREAS, REVOLUTION asserts that Beale has committed one or more defaults under the Agreement and Beale asserts that no such defaults exist; and

R.5    WHEREAS, one or more disputes have arisen under the Agreement and REVOLUTION and Beale seek to resolve those disputes; and

R.6    WHEREAS, REVOLUTION is willing to refrain from exercising whatever rights it may have to pursue Beale's alleged defaults under the Agreement, but only if Beale strictly complies with the terms of this Amendment.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to resolve their disputes, BUT ONLY under the following terms and conditions:

1.    <u>Acknowledgement of Agreement, Obligations, and Underlying Recitals.</u>

Beale stipulates to the accuracy of all of (a) the recitals and statements set forth in the Agreement and (b) the recitals and statements set forth above in this Amendment. Beale further stipulates and hereby acknowledges, ratifies and re-affirms the existence of the Obligations (as defined in the Agreement), the absence of any defense he may have had to the Obligations, and his further waiver of any such defense. Unless specifically amended by the terms of this Amendment, the Agreement remains in full force and effect, subject to any defaults which may presently exist.



FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

1

2.    Settlement Funds and Life Insurance Policy.

Beale's obligation to procure an insurance policy on his life (the "Policy") providing a death benefit of One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000) under paragraph 2(b) of the Agreement shall be amended, replaced and superceded in accordance with sub-paragraphs 2(a) through 2(j), below. In all respects, the nature, type, form, and carrier of the Policy shall be subject to REVOLUTION's sole and unfettered discretion. TIME IS OF THE ESSENCE for each and every payment and for all performance required by Beale hereunder.

(a)    On or before the date that this Amendment is executed, but in any event no later than Wednesday, June 27, 2007 (TIME BEING OF THE ESSENCE), Beale shall execute and deliver to REVOLUTION's counsel the original, signed Demand Promissory Note annexed hereto as Exhibit A (the "Note");

(b)    On or before the date that this Amendment is executed, but in any event no later than Wednesday, June 27, 2007 (TIME BEING OF THE ESSENCE), Beale shall deliver to REVOLUTION's counsel via federal funds wire transfer the sum of Thirty Thousand Dollars ($30,000.00) so that it is actually received by REVOLUTION's counsel on or before Wednesday, June 27, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE). This sum represents a non-refundable deposit.

(c)    On or before Friday, June 29, 2007 (TIME BEING OF THE ESSENCE), Beale shall deliver to REVOLUTION's counsel via federal funds wire transfer the sum of Thirty-Seven Thousand, Five Hundred Dollars ($37,500.00) so that it is actually received by REVOLUTION's counsel on or before Friday, June 29, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE). This sum represents an additional non-refundable deposit.

(d)    After confirming the timely receipt of the two payments totaling Sixty-Seven Thousand, Five Hundred Dollars ($67,500.00) required by paragraphs 2(b) and 2(c) above, REVOLUTION will deliver a release of its lien against only Beale's life estate in the property located in Islamorada, Florida (the "Islamorada Release") to First American Title Insurance Company d/b/a/ Charter Title Company, Inc., 31 Ocean Reef Drive, Key Largo, Florida (the "Escrow Agent") to be held in escrow pending Beale's timely performance of the remaining obligations in this paragraph 2 and in accordance with the escrow instructions to be prepared by REVOLUTION. Upon transmitting the fully executed, original Islamorada Release to the Escrow Agent, REVOLUTION's counsel shall promptly notify Beale's counsel that the Islamorada Release has been delivered subject to the terms of this Amendment and the escrow instructions. In the event that the Note and either or both of the two non-refundable deposits are not received by REVOLUTION's counsel on or before 3:00 p.m. Eastern time on the dates set forth above (TIME BEING OF THE ESSENCE), then REVOLUTION shall not be required to execute the Islamorada Release and Beale will not be





entitled to receive it. Notwithstanding the foregoing, REVOLUTION will be entitled to retain all monies paid to it and all property and rights received by it under this Amendment, applying them against the Obligations (as that term is defined in the Agreement) in REVOLUTION's sole discretion.

(e)     Beale represents that he has applied for the Policy and his application has been approved by ING USA Annuity and Life Insurance Company or Security Life of Denver Insurance Company ("ING"). Beale further represents to REVOLUTION that during the time period beginning February 13, 2007 and ending thirty (30) days after the Policy is issued, Beale has not submitted (and no one acting on his behalf has submitted) any application for life insurance on Beale's life other than the Policy identified in this Amendment and the Agreement; Beale further warrants that he will not submit (nor will he allow anyone else to submit) nor will he consent to the submission of any application for life insurance on Beale's life other than the Policy identified in this Amendment and the Agreement. Beale further represents to REVOLUTION that he will not cause any lien, assignment or other encumbrance to be recorded against the Policy, EXCEPT that he has caused to be submitted to ING an Assignment of Life Insurance Policy as Collateral for the benefit of REVOLUTION in a form prepared by REVOLUTION (the "Assignment"). Beale represents that the Assignment has been filed with, and shall be acknowledged and accepted by ING, no later than the date that the Policy is issued.

(f)     After the Policy has been issued by ING, but in any event no later than July 2, 2007 (TIME BEING OF THE ESSENCE), Beale shall irrevocably transfer ownership of the Policy to REVOLUTION, free and clear of any lien, assignment, or other encumbrance except for the Assignment. Beale shall also obtain written confirmation from ING (the "Acknowledgement") that it has acknowledged and accepted the transfer of ownership of the Policy to REVOLUTION.

(g)     After the Policy has been issued and its ownership transferred to REVOLUTION, but in any event no later than July 2, 2007 (TIME BEING OF THE ESSENCE), Beale shall deliver the original Policy and the Acknowledgement to REVOLUTION's counsel so that they are actually received by REVOLUTION's counsel no later than July 2, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE).

(h)     REVOLUTION shall be authorized by Beale to sell, assign, or transfer the Policy at its discretion and, in connection with that authorization, Beale shall execute fifteen (15) standard form, HIPAA-compliant medical release forms (collectively, the "HIPAA Forms") authorizing the release of his medical records to a potential purchaser of the Policy. Beale shall also execute one Durable Power of Attorney (the "Power of Attorney") limited in scope to the extent necessary to allow REVOLUTION's counsel (but neither REVOLUTION nor its, managers, members or principals) to authorize the release and/or execution of all such documents as may be required in connection with a potential sale,



assignment, valuation or transfer of the Policy. The HIPAA Forms and the Power of Attorney shall be delivered to REVOLUTION's counsel no later than July 2, 2007, so that they are actually received by REVOLUTION's counsel on or before July 2, 2007 at 3:00 p.m. Eastern time (TIME BEING OF THE ESSENCE). The HIPAA Forms and the Power of Attorney shall not be held by REVOLUTION, but instead will be held by its counsel in escrow. The HIPAA Forms and the Power of Attorney shall only be released from escrow by REVOLUTION's counsel for the purpose of a possible sale, assignment, valuation or transfer of the Policy and then only to the extent requested by the prospective purchaser, assignee, appraiser or transferee. Under no circumstances, even in the event of a default by Beale, will the HIPAA Forms, the Power of Attorney, or any records obtained as a result of their use be delivered to REVOLUTION, its affiliates, or representatives, other than its counsel. In the event that the HIPAA Forms and the Power of Attorney are not sufficient to accomplish a sale, assignment, valuation or transfer of the Policy, or if additional documents are later requested or required to accomplish those ends, Beale shall execute all documents reasonably requested of him by REVOLUTION within ten (10) days of any such request (however, in no event shall Beale be required to take any additional medical examinations or tests). In the event that Beale fails to honor any such request, or in the event that Beale takes any action toward revoking the authorizations granted by him in any of the HIPAA Forms or the Power of Attorney or otherwise interfering with, hindering or delaying the implementation of any request for information or the receipt by REVOLUTION's counsel of such information, then the parties agree that Beale will be in default. In addition, REVOLUTION will be entitled to bring a suit against Beale for specific performance. If, in that suit, REVOLUTION's request is found to have been reasonable or Beale is found to have revoked any authorization or interfered with, hindered, or delayed the implementation of any request for information or the receipt by REVOLUTION's counsel of such information, then Beale shall be required to specifically perform the request and/or renew the authorization and REVOLUTION shall further be awarded all attorneys' fees and expenses it incurred in obtaining such a finding, plus interest on said amounts computed at the rate of twelve percent (12%) per year from the date of REVOLUTION's request until such amounts are paid in full. The remedies provided for in this paragraph 2(h) shall not be exclusive, but shall be cumulative of any other remedy or right REVOLUTION may have in the event of a default under this Amendment.

(i)      On or before July 2, 2007, Beale shall deliver to REVOLUTION's counsel via federal funds wire transfer the additional sum of One Hundred Fifteen Thousand, Five Hundred Dollars ($115,500.00) so that it is actually received by REVOLUTION's counsel on or before July 2, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE). In the event that this entire sum is not received by REVOLUTION's counsel on or before July 2, 2007 at 3:00 p.m. Eastern time (TIME BEING OF THE ESSENCE), then the Escrow Agent shall return the Islamorada Release to REVOLUTION and Beale will not be entitled to receive it. Notwithstanding the foregoing, REVOLUTION will be entitled to retain all monies paid to it and all property and rights received by it under this



Amendment, applying them against the Obligations (as that term is defined in the Agreement) in REVOLUTION's sole discretion.

(j)     In the event that the Note, the Policy, the Acknowledgement, the HIPAA Forms, and the Power of Attorney are not actually received by REVOLUTION or its counsel on or before July 2, 2007 at 3:00 p.m., Eastern time (TIME BEING OF THE ESSENCE), then the Escrow Agent shall return the Islamorada Release to REVOLUTION and Beale will not be entitled to receive it.  Notwithstanding the foregoing, REVOLUTION will be entitled to retain all monies paid to it and all property and rights received by it under this Amendment, applying them against the Obligations (as that term is defined in the Agreement) in REVOLUTION's sole discretion.

3.    Releases.

Paragraphs 4(b), 4(c), and 4(d) of the Agreement shall be amended, replaced and superceded as follows:

(a)     At the time he executes this Amendment, Beale, for himself and his partners, attorneys, agents, representatives, heirs, and executors, hereby remises, releases and forever discharges REVOLUTION and its members and their employees, partners attorneys, agents, subsidiaries, affiliates, predecessors (including the FDIC), successors and assigns of and from all and any manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, decrees, extents, execution, claims, and demands whatsoever, in law or in equity or otherwise, which against said party the other (and their successors, affiliates and assigns) ever had, now have or may have by reason of any cause or thing including, but not limited to, the Agreement, the Judgment, the Bankruptcy Proceeding, and the Adversary Proceeding (as those terms are defined in the Agreement), from December 11, 2005 to the date of this Amendment.

(b)     If Beale makes each and every payment required by this Amendment so that said payment is actually received by REVOLUTION (or its counsel) on or before the dates set forth herein and REVOLUTION (or its counsel) actually receives (i) the Note, (ii) the Policy free and clear of all liens, assignments and encumbrances, except for the Assignment, (iii) the Acknowledgement, (iv) the HIPAA Forms, and (v) the Power of Attorney on or before July 2, 2007 at 3:00 p.m., Eastern time, (TIME BEING OF THE ESSENCE FOR ALL OF THE ABOVE) then, and only then, shall the Escrow Agent deliver the Islamorada Release to Beale.

(c)     Within sixty (60) days after the date of the delivery by the Escrow Agent of the Islamorada Release to Beale, as long as there is no subsequent default by Beale, then REVOLUTION shall cause all non-public documents it and its counsel have received through subpoena or other process in the Bankruptcy



Proceeding (as defined in the Agreement), and over which REVOLUTION and/or its counsel currently has possession, custody, or control (the "Beale Documents"), to be either (i) delivered to the Trustee (as defined in the Agreement) or (ii) destroyed. For the purposes of this paragraph the words "documents" and "Beale Documents" mean the original and all copies including, but not limited to, all paper copies and all electronic copies stored on CD-Rom, hard-drive or otherwise. Upon completion of the delivery or the destruction of the Beale Documents, REVOLUTION shall provide written notice to Beale confirming same and providing a general outline of the categories of documents delivered and/or destroyed. Thereafter, in the event that it learns or is notified that any Beale Document has not been delivered to the Trustee or destroyed, REVOLUTION agrees to take such efforts as may be reasonably necessary to cause that document to be delivered to the Trustee or destroyed. To the extent that any Beale Document is not delivered to the Trustee or destroyed, but is instead disseminated to a third party or publicly disclosed, REVOLUTION stipulates that Beale could suffer irreparable harm as a result and further stipulates to the entry of ONLY a temporary restraining order and/or preliminary injunction in any action brought by Beale to enforce the terms of this provision. The parties further stipulate and agree that the sole remedy for any breach by REVOLUTION of this requirements of this sub-paragraph 3(c) shall be limited to an order requiring the delivery to the Trustee, and/or the destruction of the Beale Documents, and Beale shall not be entitled to recover any monetary or other damages against REVOLUTION.

(d)    At the time it executes this Amendment, REVOLUTION shall also execute the Release annexed hereto as Exhibit B (the "New REVOLUTION Release"). The New REVOLUTION Release shall be held in escrow by counsel to REVOLUTION. Upon receiving the original, signed New REVOLUTION Release, counsel to REVOLUTION shall be authorized and directed to destroy the REVOLUTION Release executed in connection with the Agreement. Counsel to REVOLUTION shall release the New REVOLUTION Release to counsel to Beale twenty-five months after the date REVOLUTION's counsel receives the Policy free and clear of all liens, assignments and encumbrances, except for the Assignment, BUT ONLY IF AT THAT TIME (i) Beale has timely performed all of his obligations under this Amendment, (ii) no other default exists under this Amendment (or existed after the execution of this Amendment, the existence of which was not specifically waived, in writing, by REVOLUTION)., and (iii) the Policy has not been cancelled, rescinded, modified, or the benefits denied to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer.

4.    Covenant Not to Sue.

(a)    REVOLUTION shall refrain and forbear from taking any action to recover the remaining amounts due under the Obligations, the Agreement or this Amendment, BUT ONLY to the extent that –



(i)     Beale makes each and every payment required by this Amendment so that said payment is actually received by REVOLUTION (or its counsel) on or before the dates set forth herein and REVOLUTION (or its counsel) actually receives (i) the Note, (ii) the Policy free and clear of all liens, assignments and encumbrances, except for the Assignment, (iii) the Acknowledgement, (iv) the HIPAA Forms, and (v) the Power of Attorney on or before July 2, 2007 at 3:00 p.m., Eastern time, (TIME BEING OF THE ESSENCE) such that the Islamorada Release is released from escrow to Beale, and

(ii)    The Policy is not cancelled, rescinded, modified, or the benefits denied to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer; and

(iii)   No other default exists under this Amendment (or existed after the execution of this Amendment, the existence of which was not specifically waived, in writing, by REVOLUTION).

(b)     REVOLUTION shall refrain and forbear from taking any action to recover the amounts due under the Note, BUT ONLY to the extent that -

(i)     The Policy is not cancelled, rescinded, modified, or the benefits denied to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer; and

(ii)    Either

(A)     The New REVOLUTION Release has not been delivered to Beale's counsel in accordance with paragraph 3(d), above; or

(B)     The New REVOLUTION Release has been delivered to Beale's counsel in accordance with paragraph 3(d), above, AND no other default exists under this Amendment (or existed after the execution of this Amendment, the existence of which was not specifically waived, in writing, by REVOLUTION).

(c)     Notwithstanding the requirements of paragraph 4(b), above, if conditions are such that REVOLUTION is no longer required to refrain from taking action to recover the amounts due under the Obligations in accordance with paragraph 4(a),





above, then REVOLUTION may, in its sole and exclusive discretion, elect to enforce the terms of the Note and take any action as may be necessary to recover the full amount due thereunder. In the event that REVOLUTION elects to enforce the Note, then immediately upon making such election, the amount due under the Obligations shall be reduced by One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000). REVOLUTION's right to make this election shall not be exclusive, but shall be cumulative of other remedy or right REVOLUTION may have recover the amounts due under the Obligations, the Agreement or this Amendment.

5.   Beale acknowledges that the execution of this Amendment, the issuance of the Policy, and the payment of the benefits arising under the Policy are dependent upon the truth, accuracy and completeness of the statements, disclosures and representations to REVOLUTION and ING made by Beale and his attorneys, agents, and representatives on his behalf. Beale further acknowledges that by entering into this Amendment, REVOLUTION is relying upon the truth, accuracy and completeness of those statements, disclosures and representations (including, but not limited to, the representations and warranties expressed in paragraphs 1 and 2(e), above). If, after the execution of this Amendment, (i) Beale is at any time in default hereunder, (ii) ING issues a notice asserting any reservation of its rights or challenge to the viability of the Policy, or (iii) the Policy is cancelled, rescinded, modified, or the benefits under the Policy are not paid to REVOLUTION or its designee as a result of any reason other than a failure or unwillingness of REVOLUTION to pay the premium required under the Policy or an act of negligence by REVOLUTION or the failure of REVOLUTION to take any reasonable measure requested by the policy issuer, then, notwithstanding anything to the contrary contained in the Agreement, this Amendment, or any other document,

(a)   until the New REVOLUTION Release is delivered to Beale's counsel, Beale shall be liable to REVOLUTION for the full amount remaining due under the Obligations (as defined in the Agreement), after accounting for all accrued interest and Post-Petition Fees and Expenses (as provided for in the Agreement), and after giving credit for all payments actually received by REVOLUTION; and

(b)   after the New REVOLUTION Release is delivered to Beale's counsel, Beale shall be liable to REVOLUTION for the full amount remaining due under the Note and no credit shall be given for any payments received under this Amendment, as all such payments will have been applied against the amounts due under the Obligations.

Notwithstanding the foregoing, as long as there has not been any default at any time after the execution of this Amendment, if REVOLUTION actually receives at least the full sum of One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000) from the payment of the proceeds from the Policy, then it shall be required to accept that payment in full satisfaction of the amounts due under the Note and the Obligations. In the event that the Policy generates any amount in

excess of the One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000), under no circumstances will Beale be entitled to receive any portion thereof.

6.    Advice of Counsel:  The parties hereto acknowledge each has had the opportunity to be advised by counsel and the parties agree that for all purposes (including the resolution of any ambiguities herein), this Amendment shall be deemed to have been negotiated by all parties and construed as if all parties shared equally in the drafting of same.

7.    Modification; Waiver, Etc.:  This Amendment may only be modified by a writing executed by all parties.  This Amendment and the obligations hereunder are for commercial and/or business purposes and not for family, household or personal purposes. Notwithstanding any defense of any nature available to Beale, the parties acknowledge that evidence of the execution of this Amendment (including a fax or photostatic copy hereof) shall be complete and legally sufficient evidence for REVOLUTION to meet its burden of establishing Beale's liability under this Amendment.   If any provision of this Amendment is invalidated or declared against public policy by a court of law, the rest of the Amendment shall still be valid.    Beale hereafter waives and relinquishes all claims, offsets, defenses, counterclaims and recoupments related to laches or to REVOLUTION's failure to prosecute or file any claim within any time period that may be required by law. It is not the intent of the parties to charge an interest rate greater than that allowed by law.  If the interest rate charged hereunder is determined to be greater than that allowed by law or if there is any ambiguity with respect to the interest rate, then the parties agree that this Amendment shall be modified retroactively to reflect that the rate charged shall be limited to the highest rate allowed by law.   If REVOLUTION has or obtains a judgment, the parties acknowledge that in the event of a failure by Beale to strictly comply with the terms of the Amendment, Beale shall be responsible for all post-judgment legal fees and costs of collection. TIME IS OF THE ESSENCE with respect to all payments and performance required by the Beale under this Amendment.  Except with respect to the Note, This Amendment shall be construed under the laws of the State of Illinois and all parties hereto consent to the jurisdiction of that state's courts. The Note shall be construed under the laws of the Commonwealth of Massachusetts and all parties hereto consent to the jurisdiction of that state's courts in connection with any dispute that shall arise under the Note.  This Amendment shall not be binding until executed by all parties hereto.   This Amendment may be executed in counterparts and shall be deemed to be executed under seal.

8.    JURY TRIAL WAIVER:   BEALE MAKES THE FOLLOWING WAIVER KNOWINGLY,     VOLUNTARILY,     AND     INTENTIONALLY,     AND UNDERSTANDS THAT REVOLUTION, IN ENTERING INTO THE WITHIN AMENDMENT,     IS     RELYING     THEREON.      BEALE     HEREBY IRREVOCABLY WAIVES ANY PRESENT OR FUTURE RIGHT TO A TRIAL BY JURY IN ANY CASE OR CONTROVERSY IN WHICH REVOLUTION IS OR BECOMES A PARTY (WHETHER SUCH CASE OR



CONTROVERSY IS INITIATED BY OR AGAINST REVOLUTION OR IN WHICH REVOLUTION IS JOINED AS A PARTY LITIGANT, WHICH CASE OR CONTROVERSY ARISES OUT OF, OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN BEALE AND REVOLUTION) CONCERNING, ARISING FROM, OR RELATING TO THIS AMENDMENT. THE TERM "REVOLUTION" SPECIFICALLY INCLUDES ANY PREDECESSOR OR SUCCESSOR IN INTEREST TO REVOLUTION.

9.    <u>No Waiver</u>:  By electing any one or more remedies set forth in this Amendment, REVOLUTION does not waive any rights to later elect additional remedies until all amounts due under this Amendment are paid in full and all performance by Beale required under this Amendment has been timely completed in strict compliance with the terms set forth herein.  If REVOLUTION does not elect any remedy or forbears or fails to take any action upon an event of default, or if REVOLUTION accepts payments after the due date or after a default, unless REVOLUTION specifically agrees in writing to waive its rights and remedies, REVOLUTION may later exercise such rights or remedies as provided in this Amendment.  Receipt and/or deposit of payments after a default (and the expiration of any applicable cure period) shall not act to cure or waive said default unless specifically acknowledged in writing by REVOLUTION to be such a case or waiver.  At any time, without effecting the rights and remedies of REVOLUTION hereunder, REVOLUTION may extend the time for performance to be made by Beale hereunder and said extension shall be conclusively deemed to extend any prevailing statute of limitation.

10.    <u>Notice</u>:  Until further notice (given in accordance with this paragraph ("Notice")), any notices or mailings required to be sent to REVOLUTION under this Agreement shall be sent ONLY BY certified mail, return receipt requested, or Fed Ex or UPS overnight delivery only, in writing to:

If to REVOLUTION:

REVOLUTION Portfolio, LLC
c/o Union Financial Corporation
5510 Edson Lane
Rockville, Maryland 20852-3135
Attention: Robert N. Eisman

With copies to:

Jeffrey D. Ganz, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
Fax: 617-692-3568
Email: jganz@riemerlaw.com

FIRST AMENDMENT TO
SETTLEMENT AGREEMENT
REVOLUTION/BEALE

10




And

Robert G. Gottllieb, Esquire
Venable
575 7th Street, N.W.
Washington, D.C. 20004
Fax: 202-244-8300
Email: rggottlieb@venable.com

All notices which may be required to be sent by REVOLUTION under this Amendment shall be deemed received by Beale on the earlier of actual receipt or two (2) calendar days after mailing by REVOLUTION via certified mail, return receipt requested or overnight mail by Fed Ex or UPS delivery to:

Mr. Joseph S. Beale
676 N. Orleans Street
Chicago, Illinois 60610

With copies to:

Scott R. Clar, Esquire
Crane, Heyman, Simon, Welch & Clar
135 South La Salle Street
Chicago, Illinois 60603
Fax:    (312) 641-6777
Email: sclar@craneheyman.com

IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the date first set forth above and represent and warrant that they have obtained all requisite and appropriate authority to enter into this transaction and to execute this Amendment in the capacity shown without further action or approval.

_____ *(Seal)*
Joseph S. Beale

REVOLUTION Portfolio, LLC
by:  Union Recovery Limited Partnership, a member
by:  Union Financial Corporation, a general partner

by:  _____ *(Seal)*
Robert N. Eisman, President

## STATE OF ILLINOIS

_____, ss.

On this 27th day of June, 2007, before me, the undersigned notary public, personally appeared JOSEPH S. BEALE, proved to me through satisfactory evidence of identification, which was State of HI drivers license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

> **OFFICIAL SEAL**
> **COLLEEN T SMITH**
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:06/20/09

Colleen T Smith
Notary Public
My commission expires: 6/20/09

State of Maryland
County of Montgomery, ss.

## STATE OF MARYLAND

June 29, 2007

Then personally appeared the above-named Robert N. Eisman, President of Union Financial Corporation, general partner of Union Recovery Limited Partnership, member of REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act and deed of REVOLUTION Portfolio, LLC, before me.



Notary Public
My commission expires:

1006861.14

> **WILLIAM B. BULAND**
> Notary Public
> Montgomery Co., MD
> My Comm. Exps. Oct. 1, 2009

## RELEASE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency whereof are hereby acknowledged, the undersigned, **REVOLUTION Portfolio, LLC**, a Virginia limited liability company with a place of business located at 5510 Edson Lane, Rockville, Maryland (the "**Releasor**"), hereby releases, remises, and forever discharges Joseph S. Beale, his partners, representatives, agents, attorneys, successors, and assigns (the "**Releasee**"), from any and all claims, causes of action, suits, controversies, agreements, promises, acts, omissions, damages, liabilities, and any and all claims of every kind, nature, and description whatsoever, both in law and in equity, known or unknown, which against the Releasee the Releasor has or ever had, from the beginning of the world to this date including, but not limited to, that certain judgment entered in favor of the Federal Deposit Insurance Corporation as Receiver of New Bank of New England, N.A. (the "FDIC") against Beale February 14, 1992 in Case No. CL 90-8877-AD in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County, Florida, and excepting only those obligations arising out of a certain Settlement Agreement executed by the Releasor and the Releasee dated as of December 12, 2005, as amended, replaced, and superceded by a certain First Amendment to Settlement Agreement dated as of June 26, 2007 (the "First Amendment"), and any subsequent amendments thereto.

It is the express intention of the Releasor and the Releasee that this Release is intended to release the Releasee's personal liability only and it is not intended to release, limit, reduce, or alter the Releasor's ability to participate in any distribution as a creditor of the Chapter 7 bankruptcy estate of Joseph S. Beale (United States Bankruptcy Court for the Northern District of Illinois, Case No. 04-B-0748) arising from the Releasor's proof of claim.

This Release is being executed by the Releasor upon full consideration and advice of independent counsel and is not executed in reliance upon any representations made by Releasee or its attorneys. This Release shall be governed by and construed in accordance with the law of the State of Illinois.

Upon execution, this original, signed Release is being delivered into escrow subject to certain conditions specified in the First Amendment. This Release shall not be effective until the original, signed Release is released from escrow, which shall be the only evidence that the conditions outlined in the Amendment have been satisfied. As such, only the original, signed Release shall be effective and no copy or facsimile of this Release shall be enforceable against the Releasor.

EXECUTED under seal this 2 day of June 2007.


*[remainder of page intentionally left blank]*

1

REVOLUTION Portfolio, LLC

by:     Union Recovery Limited Partnership, a member

by:     Union Financial Corporation, a general partner

by:     _____ (Seal)
        Robert N. Eisman, President


STATE OF MARYLAND

_____, ss.                    June 29, 2007

        Then personally appeared the above-named Robert N. Eisman, President of Union
Financial Corporation, general partner of Union Recovery Limited Partnership, member of
REVOLUTION Portfolio, LLC, and acknowledged the foregoing to be the authorized free act
and deed of REVOLUTION Portfolio, LLC, before me,

                                        _____
                                        Notary Public
                                        My commission expires:

1019662.1



WILLIAM B. BULAND
Notary Public
Montgomery Co., MD
My Comm. Exps. Oct. 1, 2009

2

# EXHIBIT C

## Joe Beale

**From:**      Joe Beale [jbeale@hawthorninterests.com]
**Sent:**      Wednesday, June 27, 2007 12:23 PM
**To:**        'Jeffrey D Ganz'
**Cc:**        'Scott R. Clar'
**Subject:** ING

Here's a thought for the two of you to consider.  If I were to wire the funds directly to ING for the first year's premium, it will expedite the process. Assuming it's around $40,000, I could then wire the remaining $27,500 to Jeff Ganz. The Policy will then be in full force and the documents re: the transfer of ownership in place. I'm still focused on a close by Friday.  Let me know and if you agree, and if so, we can work out the wire to ING.              Joe

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

# EXHIBIT D

## Joe Beale

| | |
|---|---|
| **From:** | Joe Beale [jbeale@hawthorninterests.com] |
| **Sent:** | Wednesday, June 27, 2007 1:55 PM |
| **To:** | 'Jeffrey D Ganz' |
| **Cc:** | 'Scott R. Clar' |
| **Subject:** | FW: Assignment of Judgment |

Thanks, Jeff. Any response to my memo about paying the ING premium?

-----Original Message-----
**From:** Coral Reef Title Key Largo Office [mailto:coralreeftitlekl@msn.com]
**Sent:** Wednesday, June 27, 2007 1:05 PM
**To:** JGanz@riemerlaw.com
**Cc:** jbeale@hawthorninterests.com
**Subject:** Assignment of Judgment


Thank you for sending that so soon. I have searched the public records of Monroe county and Palm Beach county and could not locate any documentation that is required. The Assignment is the exact thing I need to record in front of the Release. Since the Judgment was recorded in Monroe County we need the appropriate documentation to satisfy it in Monroe County.

Please let me know when you can get another completed original or get the original that was emailed to me, completed along with the power of attorney, so I can have it recorded with the closing documents.

Thanks for your time and effort.


Lisa Miller

Coral Reef Title Company
100125 Overseas Hwy
Key Largo, Fl 33037
305-451-6200
305-451-0994fax
**coralreeftitlekl@msn.com**

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM


Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.5.472 / Virus Database: 269.8.15/847 - Release Date: 6/12/2007 9:42 PM

# EXHIBIT E

Case 1:07-cv-06909     Document 48-2     Filed 06/05/2008     Page 61 of 65

# ING 🐘

Fax

ING Home Office
Minot Service Center
2000 21st Ave NW
Minot, ND 58703

To: Michael Vogt

Fax: 866-665-7546

Tel: 800-448-9839

From: Home Office

Fax: 877-275-3329

Tel: 877-882-5050

Date: 07/6/07

Re: 11620821

No. of Pages:2 (Includes Cover Sheet)

# ING 

Security Life of Denver Insurance Company
ING Service Center
P.O. Box 5065 Minot, ND 58702

July 3, 2007

Joseph S Beale
189 E Chicago Ave 32 G
Chicago IL 60611

RE: New Owner: Revolution Portfolio LLC

    Policy # 911620821          Insured(s): Joseph S Beale

Dear Sir or Madam:

As requested, the owner of this policy has been changed. For your protection, this confirmation is being sent to you as the previous owner. The new owner will also receive a confirmation letter and an endorsed copy of the Transfer of Ownership form.

Our records show that the payor is Revolution Portfolio LLC.

We appreciate the trust you've placed in the ING family of companies to help you meet your financial objectives. If you have any questions, please contact your agent, registered representative or the ING Service Center during our business hours of Monday – Friday, 7:00 a.m. to 7:00 p.m. CST.

Sincerely,

Kathleen B Martin
Client Change Coordinator

Questions?    Call: 877-253-5050
             Fax: 877-275-3329

Insurance products are issued by Security Life of Denver Insurance Company, a member of the ING family of companies.

# EXHIBIT F



AMERICAS

**Paula Cludray-Engelke**
**Counsel**

Phone: 612-342-3968
Fax: 612-342-7531
E-mail: paula.cludray-engelke@us.ing.com

July 18, 2007


Scott Clar
Crane, Heyman, Simon, Welch & Clar
Suite 3706
135 So. LaSalle St.
Chicago, IL 60603-4297

Jeffrey Ganz
Riemer & Braunstein, LLP
Three Center Plaza, 6th Floor
Boston, Massachusetts 02108

Re:    Security Life of Denver Life Insurance Company ("SLD" or "the Company")
       Insurance Policy No. 1620821 on Joseph S. Beale

Dear Mr. Clar and Mr. Ganz:

This letter is in response to the July 10, 2007 and July 13, 2007 letters sent by Mr. Clar and the July 10, 2007 letter sent by Mr. Ganz regarding the change in ownership on the above referenced life insurance policy. The following are the facts as reflected in the Company's records.

Mr. Beale applied for a Guaranteed Death Benefit UL Life Insurance Policy on May 11, 2007. On May 15, 2007, SLD received the fully executed Assignment of Life Insurance Policy as Collateral, which named Revolution Portfolio, LLC as the Assignee and Joseph S. Beale as the assignor. SLD Life Insurance Policy No. 1620821 was issued on June 6, 2007. SLD received the Transfer of Ownership, which was dated June 29, 2007, naming Revolution Portfolio, LLC as the new owner of the above referenced policy. The Transfer of Ownership was in good order and was signed by Joseph Beale and Revolution Portfolio, LLC. Additionally, a Beneficiary Designation form dated June 29, 2007 was submitted to SLD naming Revolution Portfolio, LLC as the primary beneficiary at 100%. No contingent beneficiary was named on the policy. The Transfer of Ownership and

Scott Clar and Jeffrey Ganz
July 18, 2007
Page 2 of 2

Beneficiary Designation were processed.  The Company's records show that a check for the quarterly premium in the amount of $12,000.00 was received on July 2, 2007.  The check was from Union Financial Recovery LLC.  The next quarterly premium payment of $12,000.00 is due on September 6, 2007.  The policy is in force and in good order.

As a result of the conflicting opinions of the parties involved concerning the change in ownership, the Company has placed a "hold" on the policy.  No transactions will be permitted on the policy, other than premium payments, until this situation has been resolved.  As SLD is not a party to Mr. Beale's bankruptcy, we suggest that both Mr. Beale and Revolution Portfolio, LLC, together with their counsel, work to resolve this issue.

We hope that you find this information to be helpful.  Please let the Company know when the issue of ownership has been resolved and SLD will remove the "hold" on the policy.  Please contact our Customer Contact Center with questions at 877-882-5050.

Sincerely,

Paula Cludray-Engelke
Counsel