# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH S. BEALE, | |
| **PLAINTIFF** | |
| v. | CASE NO. 07-06909 |
| REVOLUTION PORTFOLIO, LLC; and SECURITY LIFE OF DENVER INSURANCE COMPANY, ARKIN YOUNGENTOB ASSOCIATES, LLC and STUART YOUNGENTOB, | Judge Kocoras Magistrate Judge Valdez |
| **DEFENDANTS.** | |

## DEFENDANT REVOLUTION PORTFOLIO, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant REVOLUTION Portfolio, LLC ("REVOLUTION"), for its Answer to

Plaintiff's First Amended Complaint for Specific Performance, Injunction, and Other Relief (the

"Complaint"), states:

## NATURE OF ACTION

1.      This action arises out of an amendment to a settlement agreement between Beale and Revolution. In that amendment, Revolution required that Beale make certain payments and transfer to Revolution an insurance policy on Beale's life -- issued by ING -- in exchange for releases in favor of Beale. However, Revolution insisted on strict deadlines in the amendment and then intentionally interfered with Beale's compliance with those deadlines, causing delays. Based on these delays -- all of which were of its own doing -- Revolution has falsely claimed that Beale has breached the amendment and, consequently, it has failed and refused to perform thereunder. In doing so, Revolution has wrongfully retained all of the benefits that Beale provided to it pursuant to the amendment -- including the ING life insurance policy -- while simultaneously pursuing at least one action against Beale that it was supposed to have released.

**ANSWER: REVOLUTION admits that it entered into a First Amendment to a Settlement Agreement with Plaintiff Joseph S. Beale ("Beale") on or about June 26, 2007 which required Beale to make certain payments, procure an insurance policy, and take certain additional actions.  REVOLUTION further admits that it required Beale to honor all of his obligations under this agreement, including his obligation to timely perform all obligations. REVOLUTION denies all remaining allegations**

contained in this paragraph.

2.      Additionally, Youngentob and his company, AYA, were retained to act as Beale's insurance agent to assist him in acquiring the insurance policy required by the amendment and, as such, had a fiduciary duty to act on behalf of Beale and had a duty to act with ordinary care and skill. In violation of their duties, Youngentob and AYA concealed information from Beale, acted at the direction of -- and on behalf of -- Revolution instead of Beale, and failed to disclose to Beale problems that Youngentob and AYA knew would delay the issuance of the policy --- that were caused by Revolution -- which Revolution now contends are the basis for its non-performance under the amendment. Youngentob and AYA thus assisted Revolution in facilitating its scheme against Beale and, in so doing, breached their duties to Beale.

**ANSWER: REVOLUTION admits that AYA and Youngentob were retained by Beale to act as Beale's insurance agent. REVOLUTION admits that it had communications with AYA and Youngentob regarding the insurance policy in light of the fact that REVOLUTION was ultimately to become the owner of the insurance policy and that REVOLUTION was to pay a majority of the premiums for the insurance policy. REVOLUTION denies that any of these communications harmed or impaired Beale's interests. REVOLUTION denies that AYA and Youngentob acted at the direction of, and on behalf of, REVOLUTION. REVOLUTION denies that it caused the delay in the issuance of the policy and that it was involved in a "scheme" against Beale. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

3.      Beale brings this action for, among other things: (a) specific performance of the settlement agreement as amended; (b) damages against Youngentob and AYA for their breaches of fiduciary duties and negligence; (c) an injunction against Revolution to prevent it from proceeding with lawsuits on the claims it was required to release; or, in the alternative; (d) rescission of the amendment to the settlement agreement due to Revolution's substantial non-performance thereof and the imposition of a constructive trust against Revolution, compelling it to disgorge the benefits that it received pursuant to the amendment to the settlement agreement.

**ANSWER: This paragraph contains statements relating to the relief sought by Beale under the Complaint and, therefore, requires no response from REVOLUTION.  To the extent that a response is required, REVOLUTION denies that Beale is entitled to any of the relief he is seeking**

## PARTIES, JURISDICTION AND VENUE

4.      Beale is an individual who consents to the personal jurisdiction of Illinois for purposes of this dispute.

**ANSWER. REVOLUTION admits the allegations contained in this paragraph.**

5.      Revolution is a Virginia limited liability company. Revolution is engaged in the business of, among other things, purchasing judgments at a discount and attempting to collect upon

2

them.

>**ANSWER: REVOLUTION admits that it is a Virginia limited liability company and further admits that it has consented to this Court's jurisdiction in connection with the dispute over the First Amendment raised by Beale in the Complaint. REVOLUTION denies all remaining allegations contained in this paragraph.**

6.    ING is a Colorado corporation doing business as ING. ING is an insurance company, which issued the policy of insurance at issue in this lawsuit within the State of Illinois.

>**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

7.    AYA is a Maryland limited liability company, which is licensed to act as an insurance agent in Illinois. AYA acted as Beale's insurance agent (along with non-party JMB Insurance) in connection with Beale's procurement of the subject insurance policy.

>**ANSWER: REVOLUTION admits that AYA acted as Beale's insurance agent in connection with Beale's procurement of the subject insurance policy. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

8.    Youngentob is an individual residing in the State of Maryland. Youngentob is an insurance agent licensed in Illinois, and is the individual who acted as Beale's insurance agent in connection with his procurement of the subject insurance policy.

>**ANSWER: REVOLUTION admits that Youngentob acted as Beale's insurance agent in connection with Beale's procurement of the subject insurance policy. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

9.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this matter is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

>**ANSWER: This paragraph contains a statement of law to which no response is required.**

10.    Venue is proper in this Court pursuant to 28 U.S.C § 1391(a)(2) because the transactions giving rise to the causes of action alleged herein occurred in Cook County, Illinois.

>**ANSWER: This paragraph contains a statement of law to which no response is required from REVOLUTION.**

## GENERAL ALLEGATIONS

11.     On or about November 21, 1997, Revolution purchased a judgment that had been rendered against Beale (the "Judgment").

**ANSWER: REVOLUTION admits the allegations contained in this paragraph.**

12.     After it purchased the Judgment, in or about 2004, Revolution solicited the agreement of three creditors of partnerships in which Beale was a member or partner -- each of which had much smaller claims than Revolution -- to begin involuntary Bankruptcy Proceedings against Beale. In connection therewith, Revolution agreed to subordinate part if its claims in favor of at least one of the other creditors (which contended that it held a claim in the amount of only $16,000).

**ANSWER: REVOLUTION admits that, in 2004, after Beale failed, refused, and neglected to pay anything in satisfaction of the Judgment for the seven years that REVOLUTION held it, REVOLUTION and three other of Beale's creditors joined in filing an involuntary bankruptcy petition.  Beale did not contest this petition and his Chapter 7 bankruptcy proceeding remains active to this day. REVOLUTION denies the remaining allegations contained in this paragraph.**

13.     Thereafter, on or about March 5, 2004, Revolution and the three other creditors initiated involuntary Chapter 7 bankruptcy proceedings against Beale in the Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Proceedings").

**ANSWER: REVOLUTION admits that it was one of four petitioning creditors that initiated Beale's bankruptcy proceeding with an involuntary petition. REVOLUTION denies the remaining allegations in this paragraph.**

14.     In connection with these Bankruptcy Proceedings, the bankruptcy trustee instituted certain adversary proceedings against Beale and certain third-parties (the "Adversary Proceedings").

**ANSWER: REVOLUTION admits the allegations contained in this paragraph.**

15.     Beale, the bankruptcy trustee and the third parties desired to settle the Adversary Proceedings and, to that end, entered into a settlement agreement on or about November 15, 2005 (the "Bankruptcy Settlement Agreement").

**ANSWER: REVOLUTION admits that Beale, his bankruptcy trustee, and certain other parties entered into a settlement agreement which was subsequently approved by the Bankruptcy Court.   REVOLUTION is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

16.    Beale then entered into a separate settlement agreement with Revolution on or about December 12, 2005 (the "Revolution Settlement Agreement"), a copy of which is attached hereto as Exhibit A. Pursuant to the Revolution Settlement Agreement, Revolution agreed, among other things: (a) to release claims that it had against Beale; and (b) not to object to the Bankruptcy Settlement Agreement. In exchange, Beale agreed, among other things, to make a payment to Revolution in the amount of $350,000 and to attempt to secure a $1.25 million life insurance policy on his own life (the "Policy") and transfer ownership thereof to Revolution.

**ANSWER: REVOLUTION admits that Beale and REVOLUTION executed the REVOLUTION Settlement Agreement dated as of December 12, 2005. Further responding, REVOLUTION states that the REVOLUTION Settlement Agreement is a written document that speaks for itself. To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the REVOLUTION Settlement Agreement, REVOLUTION denies those allegations and characterizations.**

17.    Because Beale and Revolution did not know when -- or even if -- a life insurance policy would be issued on Beale's life, the Revolution Settlement Agreement provided that Beale would "use all best efforts to obtain the Policy and [would] cooperate with REVOLUTION in obtaining the Policy." (Ex. A, ¶2(b)(ii).) Additionally, Beale was required to make certain payments to Revolution, which were to be applied toward the premiums on the Policy once it was issued. (Id.) If Beale could not qualify for a life insurance policy, then his obligations with respect to the Policy would be deemed satisfied by his payment of the amounts that would otherwise have been applied to the Policy premiums. (Id.) In other words, if Beale could not qualify for a life insurance policy, that would not undo the Revolution Settlement Agreement.

**ANSWER: REVOLUTION admits that this paragraph contains an accurate partial quotation of section 2(b)(ii) of the REVOLUTION Settlement Agreement. Further answering, REVOLUTION states that the REVOLUTION Settlement Agreement is a written document that speaks for itself. To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the REVOLUTION Settlement Agreement, REVOLUTION denies those allegations and characterizations.**

18.    Beale paid to Revolution the $350,000 payment required by the Revolution Settlement Agreement.

**ANSWER: REVOLUTION admits that it received $350,000.00 as required by the Original Agreement.**

19.    Further, at the request of Revolution, AYA and Youngentob agreed to act as Beale's insurance agent to assist Beale in obtaining the insurance policy required by the Revolution Settlement Agreement. Despite that Beale used his best efforts to obtain the Policy, due to certain potential health concerns and, ironically, the filing of the involuntary Bankruptcy Proceedings, Beale was unable to immediately qualify for a life insurance policy.

**ANSWER: REVOLUTION admits that AYA and Youngentob agreed to act as Beale's insurance agent to assist Beale in obtaining the insurance policy required by the REVOLUTION Settlement Agreement. REVOLUTION denies the remaining allegations contained in this paragraph.**

20.    After several months of Beale using his best efforts to obtain the life insurance policy, Beale's counsel requested that Revolution provide the release required by the Revolution Settlement Agreement. Revolution refused, and asked that Beale continue his efforts to obtain the life insurance policy.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

21.    Finally, in early 2007, Beale's other insurance agent -- JMB Insurance -- was able to obtain a tentative agreement from an insurer to underwrite the required life insurance policy. Revolution, however, objected to the proposed terms of that policy. Revolution again requested that Beale continue his efforts to obtain a life insurance policy, but asked that he work with his other insurance agent -- AYA and Youngentob -- to acquire a different policy from ING. That is because, behind Beale's back, AYA and Youngentob told Revolution that they had certain relationships with ING that they could use to obtain a cheaper life insurance policy for Beale. As a result, Revolution would not accept the life insurance policy procured by Beale and JMB Insurance.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

22.    Then, on or about April 4, 2007, despite that the Revolution Settlement Agreement specifically contemplated the possibility that a policy would not be issued, and while Beale was in the process of working with AYA and Youngentob to obtain a cheaper policy per Revolution's request, Revolution declared that Beale was in default of the Revolution Settlement Agreement for not yet obtaining a policy. Revolution used this supposed default to extract further concessions from Beale.

**ANSWER: REVOLUTION admits that Beale defaulted under the REVOLUTION Settlement Agreement. REVOLUTION denies the remaining allegations contained in this paragraph.**

23.    In particular, Revolution refused to comply with the Revolution Settlement Agreement unless Beale would agree to, among other things: (a) make additional payments to Revolution; (b) sign a promissory note in favor of Revolution; and (c) amend the Revolution Settlement Agreement.

**ANSWER: REVOLUTION admits that Beale's default under the REVOLUTION Settlement Agreement eliminated one or more obligations it may have had under that same agreement.  REVOLUTION denies all remaining allegations contained in this paragraph.**

24.    In the meantime, on or about April 9, 2007, AYA and Youngentob, again behind Beale's back, contacted Revolution to provide it with options for the policy structure that they would proposed for Beale. AYA and Youngentob continued to secretly communicate with Revolution and its counsel over what policy terms to pursue for approximately two weeks. During this time, and for several days thereafter, AYA and Youngentob refused to respond to Beale's other insurance agent.

**ANSWER: REVOLUTION admits that Youngentob contacted REVOLUTION to provide it with option for the policy structure, but denies they secretly communicated "behind Beale's back." REVOLUTION denies that any of these communications harmed or impaired Beale's interests. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

25.    After hearing nothing from AYA or Youngentob, on or about April 29, 2007, Beale, through his other insurance agent, submitted a new application to ING in order to prevent Beale's medical underwriting examinations from expiring. Unfortunately, this application was denied.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

26.    Shortly thereafter, AYA and Youngentob once again contacted Beale, and offered to re-submit the application to ING in a manner that would take advantage of Youngentob's contacts. Accordingly, AYA and Youngentob, on behalf of Beale, submitted an additional insurance application to ING on or about May 15, 2007. This application was approved on or about June 6, 2007, and Beale informed Revolution that he had qualified for the Policy.

**ANSWER: REVOLUTION admits that Beale informed REVOLUTION that he had qualified for a policy. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

27.    Nevertheless, in the meantime, in order to appease Revolution, Beale agreed to enter into an amendment to the Revolution Settlement Agreement. However, in drafts of the amendment, Revolution insisted on onerous deadlines. For example, Revolution demanded that the Policy be issued, that it be transferred to Revolution, and that ING issue an acknowledgment demonstrating that the Policy had been issued and transferred to Revolution (the "Acknowledgment") -- all in less than one week after the amendment was to be signed.

**ANSWER: REVOLUTION admits that Beale and REVOLUTION executed the First Amendment. REVOLUTION further admits that the First Amendment contained a number of performance deadlines to which Beale agreed that TIME WAS OF THE ESSENCE. Further responding, REVOLUTION states that the First Amendment is a written document that speaks for itself. To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the First Amendment, REVOLUTION denies those allegations and characterizations.**

7

28.    In an attempt to meet these anticipated obligations, Beale, directly and through his insurance agents, worked with ING to make sure that the Policy would be issued and transferred to Revolution upon payment of the required premium while, at the same time, the amendment to the Revolution Settlement Agreement was still being negotiated.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

29.    By June 25, 2007, the amendment to the Revolution Settlement Agreement was substantially completed -- but not yet signed. Nevertheless, by that date, Beale had made all arrangements necessary with respect to the Policy so that it could be issued and transferred to Revolution upon the payment of the initial premium. Additionally, Beale made arrangements with ING, AYA and Youngentob to expedite the issuance and delivery of the Acknowledgment to Revolution.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

30.    Due to the very tight deadlines, on June 26, 2007 -- even before the amendment was signed -- Beale sent an e-mail directly to Revolution's outside counsel, Jeffrey Ganz ("Ganz"), inquiring about the procedures the parties could use to ensure that ING would timely issue the Acknowledgment to Revolution. On the same date, Revolution's counsel Ganz responded in an e - mail to Beale's counsel, Scott Clar ("Clar"), in which Ganz refused to answer Beale's questions. Nevertheless, Beale persisted in his efforts to make arrangements with Revolution and Ganz, both directly and through Clar, to expedite the issuance of the Policy and delivery of the Acknowledgment.

**ANSWER: REVOLUTION admits that Beale, Beale's counsel and REVOLUTION's counsel exchanged a number of communications via electronic mail at or near the time the First Amendment was executed. Further responding, REVOLUTION states that each of these communications is a writing that speaks for itself. To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the communications, REVOLUTION denies those allegations and characterizations.**

31.    On June 27, 2007, Beale executed the First Amendment to the Revolution Settlement Agreement (the "Amendment"), which was sent to Ganz for Revolution's execution. A copy of the Amendment is attached hereto as Exhibit B. Additionally, Beale executed other documents to cause the Policy to be transferred to Revolution upon the payment of the initial premium, and he further delivered certain signed documents to Revolution to allow it to re-sell the Policy including, among other things, HIPAA-complaint medical release forms and a Durable Power of Attorney (collectively, the "Re-Sale Authorizations"), all of which were required under the Amendment -- but not under the original Revolution Settlement Agreement.

**ANSWER: REVOLUTION admits that, on or about June 27, 2007, Beale executed a number of documents – including the First Amendment - and caused them to be delivered to REVOLUTION's counsel at various times. Further responding, REVOLUTION states that each document is a written document that speaks for itself.  To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the communications,  signed by Beale and delivered to REVOLUTION's counsel, REVOLUTION denies those allegations and characterizations.**

32.     On or about June 27, 2007, Youngentob and AYA, purportedly on behalf of Beale, advised Revolution that ING would issue the Acknowledgment one day after it received all required materials from Beale and Revolution. Youngentob and AYA further advised Revolution, purportedly on behalf of Beale, that they already had everything required from Beale to meet the deadline for the issuance of the Policy and the Acknowledgment of its transfer to Revolution -- i.e., July 2, 2007 -- and that the only remaining item to be received was the initial premium payment from Revolution. Accordingly, Youngentob and AYA sent an invoice for the initial premium payment to Revolution and its counsel on June 27, 2007.

**ANSWER: REVOLUTION denies that AYA and Youngentob sent REVOLUTION and its counsel an invoice for the initial premium on June 27, 2007. REVOLUTION admits that it had communications with AYA and Youngentob regarding the ING policy and the Acknowledgment. Further responding, REVOLUTION states that each document is a written document that speaks for itself.  To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the communications, REVOLUTION denies those allegations and characterizations.**

33.     In another attempt to meet the tight deadlines set forth in the Amendment, on June 27, 2007, Beale sent an e-mail to Ganz (copying Clar) asking about a way that the parties could expedite the payment to ING of the initial premium for the Policy which, in turn, would expedite the delivery of the Acknowledgment to Revolution. Specifically, Beale wrote:

> Here's a thought for the two of you to consider. If I were to wire the funds directly to ING for the first year's premium, it will expedite the process. Assuming it's around $40,000, I could then wire the remaining $27,500 to Jeff Ganz. The Policy will then be in full force and the documents re: the transfer of ownership in place. I'm still focused on a close by Friday. Let me know and if you agree, and if so, we can work out the wire to ING. Joe

A copy of this June 27, 2007 e-mail is attached hereto as Exhibit C.

**ANSWER: REVOLUTION admits that the First Amendment contained a number of performance deadlines to which Beale agreed that TIME WAS OF THE ESSENCE.  Further responding, REVOLUTION states that the First Amendment is a written document that speaks for itself.  To the extent that the allegations and**

**characterizations contained in this paragraph are contradicted by, or different from, those contained in the First Amendment, REVOLUTION denies those allegations and characterizations.   Further responding, REVOLUTION admits that, on or about June 27, 2007, Beale delivered one or more communications to its counsel via electronic mail and that each such communication is a writing that speaks for itself. To the extent that the allegations, quotations, and characterizations contained in this paragraph are contradicted by, or different from, those contained in Beale's communications, REVOLUTION denies those allegations, quotations, and characterizations.**

34.    Later that day, Beale sent another e-mail to Revolution's counsel asking: "Any response to my memo about paying the ING payment?" A copy of this later June 27, 2007 e-mail is attached hereto as Exhibit D.

**ANSWER: REVOLUTION admits that, on or about June 27, 2007, Beale delivered one or more communications to its counsel via electronic mail and that each such communication is a writing that speaks for itself. To the extent that the allegations, quotations, and characterizations contained in this paragraph are contradicted by, or different from, those contained in Beale's communications, REVOLUTION denies those allegations, quotations, and characterizations.**

35.    Hours later, Ganz, on behalf of Revolution, told Beale and Clar that Revolution could not agree or disagree with Beale's proposal to wire the initial premium payment directly to ING. Beale then told Ganz that he would wire the entire $67,500 payment directly to Revolution, and he did so. Revolution received and accepted the $67,500 from Beale on June 28, 2007.

**ANSWER: REVOLUTION admits that, on one or more occasions, counsel to REVOLUTION advised Beale that REVOLUTION would not grant Beale's request to deviate from the terms and conditions of the First Amendment.  REVOLUTION admits that on or about June 28, 2007, REVOLUTION's counsel received the sum of $67,500.00 via wire transfer.**

36.    Pursuant to the Amendment, upon receipt of the $67,500 from Beale, Revolution was required to sign and deliver a release of lien concerning certain real estate located in Florida (the "Florida Property"), to be held in escrow (the "Florida Release"), and to promptly notify Beale that it had done so. Then, on or before July 2, 2007, Beale was further required to make an additional payment to Revolution of $115,500.

**ANSWER: REVOLUTION admits that the First Amendment contained a number of performance deadlines by which Beale was required to make certain payments to REVOLUTION and for which Beale agreed that TIME WAS OF THE ESSENCE. Further responding, REVOLUTION states that the First Amendment is a written document that speaks for itself.  To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the First Amendment, REVOLUTION denies those allegations and characterizations**

10

37.     Beale preferred to make this $115,500 payment from proceeds of a loan that he intended to make by using the Florida Property as collateral (the "Beale Loan"). Beale advised Revolution that it was his preference to do so, and that it was essential that the Florida Release be available to the title company processing the Beale Loan so that it would be funded in time for Beale to make the $115,500 payment to Revolution by July 2, 2007. Beale further advised Revolution that he could not obtain the Beale Loan on the Florida Property without securing the Florida Release.

> **ANSWER: REVOLUTION admits that Beale requested REVOLUTION to deviate from the requirements of the First Amendment with respect to the $115,500.00 installment payment required by that document.  REVOLUTION further admits that Beale offered a number of reasons in support of his request.  REVOLUTION denies all remaining allegations contained in this paragraph.**

38.     Revolution agreed that it would accept the $115,500 payment out of the proceeds of the Beale Loan. To that end, Revolution's counsel had numerous communications with the title company closing the Beale Loan -- including providing wire instructions for the $115,500 payment and obtaining additional documents to be delivered at closing.

> **ANSWER: REVOLUTION admits that it would have accepted the $115,500 payment from any source, including out of the proceeds of the "Beale Loan," as the First Amendment did not limit which source Beale could use to make the $115,500 payment.  REVOLUTION admits that it communicated with the title company about the $115,500 payment and noted that REVOLUTION could not release the release until Beale satisfied all of the conditions precedent, including making the $115,500 payment, which he did not satisfy.**

39.     Despite that Revolution had received all of the deliverables required of Beale on or before June 28, 2007 -- including the $67,500 payment -- Revolution waited until the following day, Friday, June 29, 2007, to send the initial premium payment and Policy transfer documents to ING. Because June 29, 2007 was a Friday, the package was not received until Monday, July 2, 2007 -- the very same day that the Acknowledgment was due. Revolution thereby prevented the timely occurrence of a benefit that it was to receive by ensuring that the Acknowledgment would not be issued on time.

> **ANSWER: REVOLUTION denies that it delayed in taking any action it was required to take under the First Amendment.  REVOLUTION admits that it paid the initial premium installment due under the life insurance policy procured by Beale.  REVOLUTION denies all remaining allegations contained in this paragraph.**

40.     Worse, on or about June 29, 2007, AYA and Youngentob realized that, in addition to the materials already provided, ING would also require an additional document signed by Revolution evidencing the authorization of Revolution's signature on the Policy Transfer documents. Had AYA and Youngentob exercised ordinary care, they would have known of this problem earlier so that it could have been corrected and the Acknowledgment would have been

issued in a timely fashion. Further compounding this breach of duty to Beale, AYA and Youngentob did not advise Beale that the essential document was still missing. AYA and Youngentob did, however, tell Revolution.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

41.    Instead of immediately providing the final required document, Revolution waited until July 2, 2007 -- the due date for the Acknowledgment -- to give the document to AYA ad Youngentob. Then, AYA and Youngentob did not provide the final required document to ING until 3:50 p.m. on the due date. Thus, AYA, Youngentob and Revolution all knew that there was no way for the Acknowledgment to be issued on July 2, 2007. No one told Beale.

**ANSWER: REVOLUTION denies that it delayed in taking any action it was required to take under the First Amendment. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

42.    As a result of Revolution's delay in paying the initial Policy premium, and Revolution's, AYA's and Youngentob's delay in providing the required paperwork to ING, the Acknowledgment was not issued on July 2, 2007. Rather, it was issued one day late -- on July 3, 2007. A copy of the Acknowledgment is attached hereto as Exhibit E.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

43.    Despite receiving the $67,500 from Beale, Revolution failed to: (a) deliver the fully executed Florida Release; and (b) promptly notify Beale or his counsel that it had done so, as expressly required under the Amendment. These failures were material breaches of the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

44.    If Revolution had not breached these material obligations, either: (a) the Beale Loan would have closed and the final $115,500 payment would have been made to Revolution from the proceeds of that loan on or before July 2, 2007; or (b) Beale would have been on notice that the Florida Release was insufficient to cause the loan on the Florida Property to close and that he needed to make the additional $115,500 payment from another source, which he would have done on or before July 2, 2007. Either way, the $115,500 payment would have been made on time.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

45.    By engaging in the aforementioned tactics and breaches, Revolution materially breached the covenant of good faith and fair dealing implied in the Amendment, and interfered with, delayed and/or excused Beale's further performance under the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

12

46.     Moreover, Revolution used the aforementioned tactics and delays to issue a bogus notice of default to Beale. Specifically, Revolution improperly claimed that Beale breached the Amendment because: (a) the Acknowledgment was late; and (b) the $115,500 payment was late -- both of which were directly caused by Revolution. Based on these purported defaults, Revolution has failed and refused to perform under the Revolution Settlement Agreement and Amendment and, therefore, it has materially breached the same.

> **ANSWER: REVOLUTION admits that it provided Beale with written notice of certain events of default under the First Amendment.  REVOLUTION denies all remaining allegations contained in this paragraph.**

47.     Among other things, Revolution failed to: (a) deliver the Florida Release; (b) promptly give Beale notice that it delivered the Florida Release; (c) issue or deliver the general release also required by the Amendment and the Revolution Settlement Agreement (the "General Release"); and (d) honor the covenant not to sue contained in the Revolution Settlement Agreement and Amendment (the "Covenant Not To Sue"). Indeed, on or about July 9, 2007, Revolution instituted proceedings in Florida to execute on its lien against the Florida Property in a case captioned Revolution v. J. Beale, et al., Case No. 502007 CA 013090, pending in the Circuit Court for Palm Beach County, Florida (the "Florida Execution Proceedings").

> **ANSWER: REVOLUTION admits that it took certain action after Beale defaulted under the First Amendment including the filing of a lawsuit in Florida which Beale has labeled the "Florida Execution Proceedings."  REVOLUTION further admits that it refrained from taking certain action that – but for Beale's default under the First Amendment – it would have been required to take.  REVOLUTION denies all remaining allegations contained in this paragraph.**

48.     Revolution has wrongfully retained the benefits of the Revolution Settlement Agreement and the Amendment. Specifically, despite Beale's demand that Revolution return the benefits, Revolution has retained the Policy, the Re-Sale Authorizations, the $67,500 that Beale paid pursuant to the Amendment and all prior payments made by Beale to Revolution pursuant to the Revolution Settlement Agreement -- including the initial $350,000 payment. Moreover, Revolution is proceeding with the Florida Execution Proceedings in direct breach of its releases and covenant not to sue, despite its retention of all of the other benefits it received from Beale.

> **ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

49.     Due to Revolution's breach of the Revolution Settlement Agreement and Amendment, Beale contacted ING directly to revoke his transfer of the Policy to Revolution, and to request that the Policy be transferred back to Beale. Ganz, on behalf of Revolution, likewise contacted ING, and directed it not to honor Beale's request.

> **ANSWER:  REVOLUTION  denies  that  it  committed  a  breach  of  the REVOLUTION Settlement Agreement or the First Amendment.  REVOLUTION admits that its counsel directed a letter to ING after learning that Beale had**

13

**attempted to revoke certain actions he had previously taken. Further responding, REVOLUTION asserts that its counsel's letter is a written document that speaks for itself. To the extent that the allegations and characterizations contained in this paragraph are contradicted by, or different from, those contained in the letter, REVOLUTION denies those allegations and characterizations.**

50.     On July 18, 2007, ING responded to Beale and Ganz by letter, stating: As a result of the conflicting opinion of the parties involved concerning the change in ownership, the Company has placed a "hold" on the policy. No transactions will be permitted on the policy, other than premium payments, until this situation has been resolved.

A true and correct copy of the July 18, 2007 letter is attached hereto as Exhibit F.

**ANSWER: REVOLUTION admits that this paragraph contains a portion of a quotation from a letter sent on behalf of co-defendant Security Life sent on July 18, 2007.**

51.     Due to ING's "hold" on the Policy, Beale has been unable to re-obtain possession of the Policy.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

52.     Notwithstanding all of the foregoing, Beale has repeatedly offered to simultaneously exchange all of the parties' remaining deliverables under the Amendment through the use of a mutually acceptable escrow agent, which is what equity requires. Revolution has refused.

**ANSWER: REVOLUTION admits that, since he defaulted under the First Amendment, Beale has made a number of proposals to take certain actions in an effort to cure or remedy his default.**

53.     Nevertheless, Beale stands ready, willing and able to fully perform his remaining obligations under the Revolution Settlement Agreement and Amendment.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

## COUNT I
## <u>Specific Performance of the Amendment</u>
### (Against Revolution)

54.     Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

14

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

55.    The Revolution Settlement Agreement and Amendment are valid, binding and enforceable contracts.

**ANSWER: REVOLUTION admits that the document that most recently embodied the terms of the agreement between REVOLUTION and Beale was the First Amendment that, as a result of Beale's actions and omissions, is now in default. REVOLUTION denies all remaining allegations contained in this paragraph.**

56.    Beale has substantially performed all of the material terms of the Revolution Settlement Agreement and Amendment, and all material conditions precedent to Revolution's obligations have occurred.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

57.    Revolution contends that Beale breached certain terms of the Revolution Settlement Agreement and Amendment and/or that certain conditions precedent to its obligations did not occur. Even assuming *arguendo* that such breaches were committed by Beale -- which Beale does not admit -- they were not material and were of no pecuniary importance. Alternatively, the forfeitures which would be caused by enforcement of the condition precedent would be unconscionable.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

58.    Beale stands ready, willing and able to perform any and all remaining obligations thereunder.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

59.    Revolution has materially breached the Amendment to the Revolution Settlement Agreement, and presently refuses to perform thereunder.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

59.    Beale has no adequate remedy at law.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

60.    Accordingly, the Court should order Revolution to specifically perform all of its obligations under the Amendment, including, without limitation, delivering to Beale the Florida Release and the General Release.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

## COUNT II
## Injunction
## (Against Revolution)

62.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

63.    Pursuant to the Revolution Settlement Agreement and its Amendment, among other things, Revolution is required to sign and deliver the Florida Release, discharge its lien on the Florida Property, and it is prohibited from suing thereon.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

64.    Revolution's institution and ongoing pursuit of the Florida Execution Proceedings is in direct violation of the terms of the Settlement Agreement, including but not limited to Sections 2 through 4 thereof.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

65.    Beale has no adequate remedy at law with respect to Revolution's breaches set forth herein.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

66.    Beale will be irreparably harmed if the relief requested herein is not granted.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

## COUNT III
## Rescission of Amendment to Settlement Agreement
## (Pleaded in the Alternative Against Revolution)

67.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

16

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

68.    This Count is pleaded in the alternative to Counts I and II and applies in the event that the Court does not grant the relief sought therein.

**ANSWER: This paragraph is a statement of intention to which no response is required.**

69.    By reason of the foregoing, there has been substantial breach and substantial non-performance by Revolution of the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

70.    Revolution and Beale may be returned to the *status quo ante* by ordering Revolution to: (a) return the Re-Sale Authorizations to Beale; and (b) return to Beale all money and other benefits that Revolution received from Beale pursuant to the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

71.    Accordingly, the Court should enter an Order rescinding the Amendment and returning the parties to the *status quo ante -- i.e.,* place the parties back in the positions that they were in pursuant to the original Revolution Settlement Agreement.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

**COUNT IV**
**Unjust Enrichment/Constructive Trust**
**(Pleaded in the Alternative Against Revolution)**

72.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

73.    This Count is pleaded in the alternative to Counts I and II and applies in the event that the Court does not grant the relief sought therein.

**ANSWER: This paragraph is a statement of intention to which no response is required.**

17

74.    By reason of the foregoing, the Amendment to the Revolution Settlement Agreement should be rescinded. Nevertheless, Revolution refuses to return to Beale the Re-Sale Authorizations, the money and the other benefits that it received from Beale pursuant to the Amendment.

**ANSWER: REVOLUTION admits that it has not returned to Beale anything it received from Beale in connection with the First Amendment because it is not obligated to do so.  REVOLUTION denies the remaining allegations contained in this paragraph.**

75.    Accordingly, Revolution is wrongfully in possession of the Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

76.    Under the circumstances, it would be unjust to allow Revolution to retain Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

77.    Accordingly, this Court should enter an order: (a) imposing a constructive trust on the Re-Sale Authorizations and the money and other benefits tendered by Beale to Revolution pursuant to the Amendment, naming Revolution the trustee and Beale the beneficiary thereof; and (b) compelling Revolution to turn over to Beale *instanter* the Re-Sale Authorizations and the money and any and all other benefits tendered by Beale to Revolution pursuant to the Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC respectfully requests the entry of Judgment in its favor.

## COUNT V
## <u>Rescission of Settlement Agreement and Amendment</u>
## (Pleaded in the Alternative Against Revolution)

78.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

79.    This Count is pleaded in the alternative to Counts I through IV and applies in the event that the Court does not grant the relief sought therein.

18

**ANSWER: This paragraph contains a statement of intention to which no response is required.**

80.     By reason of the foregoing, there has been a substantial breach and substantial non-performance by Revolution of the Settlement Agreement and its Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

81.     Beale has no adequate remedy at law.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

82.     Revolution and Beale may be returned to the *status quo ante* by ordering Revolution to return to Beale: (a) ownership of the Policy; (b) all payments it received from Beale; (c) all Re-Sale Authorizations; and (d) any and all other benefits that Revolution received from Beale pursuant to the Settlement Agreement and Amendment.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

83.     Accordingly, the Court should enter an Order rescinding the Amendment and returning the parties to the *status quo ante -- i.e.,* place the parties back in the positions that they were in before the original Revolution Settlement Agreement.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

**COUNT VI**
**Declaratory Judgment**
**(Pleaded in the Alternative Against Revolution and ING)**

84.     Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

85.     This Count is pleaded in the alternative to Counts I through IV and applies in the event that the Court does not grant the relief sought therein.

**ANSWER: This paragraph contains a statement of intention to which no response is required.**

86.     This Count is brought pursuant to 28 U.S.C. § 2201.

**ANSWER: This paragraph contains a statement of law to which no response is required.**

87.     Beale has no adequate remedy at law with respect to the matters set forth herein.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

88.     There is an actual controversy among Beale, Revolution and ING as to Beale's and Revolution's rights with respect to ownership of the Policy, and ING's obligations to Beale and/or Revolution with respect to ownership of the Policy. Resolution of this controversy by means of the declaration requested herein will terminate the controversy or some part thereof.

**ANSWER: REVOLUTION admits the allegations contained in this paragraph.**

89.     By reason of the foregoing, this Court should declare that Beale is entitled to ownership of the Policy and Revolution is not.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

**COUNT VII**
**<u>Breach of Contract</u>**
**(Pleaded in the Alternative Against Revolution)**

90.     Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

91.     This Count is pleaded in the alternative to all prior Counts seeking equitable relief and applies solely in the event that the Court determines that Beale does have an adequate legal remedy for the injuries alleged above.

**ANSWER: This paragraph contains a statement of intention to which no response is required.**

92.     Beale has substantially performed all of the material terms of the Revolution Settlement Agreement and Amendment, and all material conditions precedent to Revolution's obligations have occurred.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

93.    Revolution contends that Beale breached certain terms of the Revolution Settlement Agreement and Amendment and/or that certain conditions precedent to its obligations did not occur. If such breaches were committed by Beale -- which Beale does not admit -- they were not material and were of no pecuniary importance. Alternatively, the forfeitures which would be caused by enforcement of the condition precedent would be unconscionable.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

94.    By reason of the foregoing, Revolution has materially breached the Amendment to the Revolution Settlement Agreement, and Beale has been injured and suffered damages thereby.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

### COUNT VIII
### Breach of Fiduciary Duty
### (Against AYA and Youngentob)

95.    Beale incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 1 through 53 above as though fully set forth herein.**

96.    At all relevant times, AYA and Youngentob were acting as insurance agents for Beale in connection with Beale's efforts to obtain the Policy required by the Revolution Settlement Agreement and the Amendment.

**ANSWER: REVOLUTION admits the allegations contained in this paragraph.**

97.    As agents of Beale, AYA and Youngentob each owed a fiduciary duty to Beale to exercise the utmost good faith, act with due care, and conduct themselves with absolute loyalty to Beale.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

98.    While AYA and Youngentob were supposed to be working as Beale's fiduciary, they were instead taking direction from Revolution, providing information to Revolution that was withheld from Beale and otherwise acting on behalf of Revolution.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

21

99.    Among other things, on or about June 29, 2007, AYA and Youngentob knew that Revolution had failed to provide all of the materials necessary to obtain the Acknowledgment by the deadline set forth in the Amendment, and that Revolution was going to declare a default under the Amendment as soon as the Policy was transferred.

**ANSWER: REVOLUTION denies the allegations contained in this paragraph.**

100.    AYA and Youngentob withheld this information from Beale. They withheld the information because they knew that Beale had a right to rescind the Policy, which Beale would exercise if he knew that Revolution was going to declare a default, and which would cause AYA and Youngentob to lose its commission on the Policy.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

101.    In fact, AYA and Youngentob had multiple communications with Revolution about Beale's right of rescission. At Revolution's request, Youngentob had discussions with ING without Beale's knowledge about whether Beale's right of rescission would survive the transfer of the Policy to Revolution. Youngentob discovered that, once the Policy was transferred, Beale could not rescind the Policy, and AYA and Youngentob's commission would be assured.

**ANSWER: REVOLUTION admits that it had communications with AYA and Youngentob. REVOLUTION denies the remaining allegations contained in this paragraph.**

102.    Youngentob relayed this information to Revolution, but withheld it from Beale. Thus, on or before July 2, 2007, Youngentob knew: (a) that the Acknowledgment would not be issued on time; (b) that Revolution was going to declare a default once the Policy was transferred; (c) that Beale could rescind the Policy before the transfer; and (d) that Beale would lose the right of rescission once the Policy was transferred. Youngentob also knew that, if the Policy was rescinded, AYA and Youngentob would lose their commission.

**ANSWER: REVOLUTION admits that it had communications with AYA and Youngentob. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

103.    In order to protect their commission, AYA and Youngentob withheld the material information from Beale to his great financial detriment, and otherwise acted in preference of their own interests and the interests of Revolution over the interests of Beale.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

104.    The foregoing conduct constitutes an egregious breach of AYA and Youngentob's fiduciary duties to Beale, and misappropriation of money in the form of commissions. Further, the

foregoing conduct was willful, wanton malicious and undertaken with callous disregard for Beale's rights.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

105.    As a direct and proximate result of the foregoing wrongful conduct, Beale has suffered and continues to suffer, substantial damages.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

## COUNT IX
### Negligence
**(Against AYA and Youngentob)**

106.    Beale incorporates by reference paragraphs 95 through 103 above as though fully set forth herein.

**ANSWER: REVOLUTION incorporates by reference its answers to paragraphs 95 through 103 above as though fully set forth herein.**

107.    At all relevant times, AYA and Youngentob were acting as insurance agents for Beale in connection with Beale's efforts to obtain the Policy required by the Revolution Settlement Agreement and the Amendment.

**ANSWER: REVOLUTION admits the allegations contained in this paragraph.**

108.    As agents of Beale, AYA and Youngentob each owed a duty to Beale to exercise ordinary care and skill in procuring the coverage requested by Beale.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

109.    AYA and Youngentob violated their duty to Beale to exercise ordinary care and skill in procuring the coverage requested by Beale. Among other things, AYA and Youngentob: (a) failed to identify all of the materials required to be provided to ING in time for the Policy and Acknowledgment to be issued in a timely fashion; (b) failed to provide competent counsel and service to Beale; (c) failed to advise Beale regarding his rights to rescind the Policy; (d) failed to advise Beale regarding the impact that the transfer of the Policy would have on his right to rescind; (e) secretly took direction from Revolution and its counsel; (f) failed to disclose all material information to Beale; (g) withheld information from Beale in an effort to protect their commission; and (h) otherwise failed to exercise ordinary care and skill in the

23

procurement of the Policy for Beale.

**ANSWER: REVOLUTION denies that it secretly gave direction to AYA and Youngentob. REVOLUTION has insufficient information to admit or deny the remaining allegations contained in this paragraph.**

110.    The foregoing conduct constitutes breaches of AYA and Youngentob's duty of care to Beale. Further, the foregoing conduct was willful, wanton malicious and undertaken with callous disregard for Beale's rights.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

111.    As a direct and proximate result of the foregoing wrongful conduct, Beale has suffered and continues to suffer, substantial damages.

**ANSWER: REVOLUTION has insufficient information to admit or deny the allegations contained in this paragraph.**

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

## AFFIRMATIVE DEFENSES

1.    Beale has waived all of the claims asserted in his First Amended Complaint.

2.    The First Amended Complaint must be dismissed because Beale has failed to state a claim upon which relief may be granted.

3.    All claims arising under the REVOLUTION Settlement Agreement fail because of an accord and satisfaction.

4.    All claims arising under the REVOLUTION Settlement Agreement fail because of a novation.

5.    All claims arising against REVOLUTION as a result of actions, events or circumstances which occurred prior to the execution of the First Amendment fail because of Beale's release.

6.      All claims arising against REVOLUTION as a result of actions, events or circumstances which occurred prior to the execution of the First Amendment fail because of Beale's waiver.

7.      Beale is estopped from pursuing any and all claims arising against REVOLUTION as a result of actions, events or circumstances which occurred prior to the execution of the First Amendment fail because of Beale's actions, omissions, and statements.

8.      All claims for breach of contract fail because of Beale's prior breach, relieving REVOLUTION of any further obligations.

9.      All claims based upon misrepresentations and/or fraud fail because of Beale's failure to plead them with the specificity required by Fed.R.Civ.P. 9(b).

10.     Beale's claim for specific performance fails because of his failure to satisfy all conditions precedent.

11.     Beale's claim for specific performance fails because of a lack of consideration.

12.     Beale's claims for specific performance and rescission fail because of his failure to tender.

13.     Beale's requests for equitable and injunctive relief fail because he has an adequate remedy at law.

14.     Beale's requests for equitable and injunctive relief fail because of his unclean hands.

15.     The Complaint must be dismissed because Beale has suffered no damages.

16.     The Complaint must be dismissed because any damages suffered by Beale were caused by his own actions and omissions.

17.    The First Amended Complaint must be dismissed because any damages suffered by Beale were caused by the actions and omissions over people or entities over whom REVOLUTION had no control.

WHEREFORE, REVOLUTION Portfolio, LLC, respectfully requests the entry of Judgment in its favor.

Dated: July 1, 2008                         Respectfully Submitted,
                                            REVOLUTION PORTFOLIO, LLC

                                            By: /s/ *Garrett C. Carter*___
                                                  One of its attorneys


Matthew P. Connelly
Garrett C. Carter
Connelly Roberts & McGivney LLC
55 W. Monroe St., Ste. 1700
Chicago, IL 60603
(312) 251-9600 Telephone
(312( 251-9601 Facsimile

Christopher B. Lega
ARDC No. 6276619
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts
(617) 523-9000 Telephone
(617) 880-3456 Facsimile

7888001/Answer & ADs to Amended Compl.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that on July 1, 2008, a true copy of the foregoing document was served upon the attorney of record for each other party via the ECF Filing System.

Monte Loren Mann
Richard George Douglass
Novack and Macey LLP
100 N. Riverside Plaza
Chicago, Illinois  60606

Thomas B Keegan
Edward W. Gleason
Keegan, Laterza, Loggren & Gleason
566 West Adams Street, Suite 750
Chicago, Illinois 60661

s/Garrett C. Carter
Garrett C. Carter