UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH S. BEALE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 CV 6909 |
| v. | ) | |
| | ) | Judge Kocoras |
| REVOLUTION PORTFOLIO, LLC, *et al* | ) | |
| | ) | Magistrate Judge Valdez |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS OF ARKIN YOUNGENTOB ASSOCIATES, LLC AND STUART YOUNGENTOB

Movants/Defendants Arkin Youngentob Associates, LLC ("AYA") and Stuart Youngentob ("Youngentob")(collectively referred to as "Movants"), by and through their attorneys and subject to and without waving their objection to the attempted service of process, submit this Memorandum in Support of their Motion to Dismiss and respectfully request that all of the relief requested in their Motions and in this supporting Memorandum be granted.

I.    **INTRODUCTION**

Plaintiff Joseph S. Beale ("Beale") filed a nine (9) count First Amended Complaint for Specific Performance, Injunction and Other Relief ("Amended Complaint") on June 11, 2008. Counts I-V and VII are directed solely against Defendant/Counter-Plaintiff Revolution Portfolio, LLC ("Revolution"); Count VI is directed against Revolution and Defendant Security Life of Denver Insurance Company d/b/a ING ("ING"); and Counts VIII and IX are directed solely against Movants. (Dkt. 51)  According to the Affidavits of Service filed by Beale, service of process was attempted to be effectuated upon AYA and Youngentob, on or about June 18, 2008 at 8:00 p.m., via substituted service on Bonnie Youngentob, at 7200 Wisconsin Avenue, Bethesda, Maryland 20814. (Dkt. 62, 63)    For the reasons set forth in Movant's Motion to Quash, Motion to Dismiss and this Memorandum, the substituted service of process attempted

to be effectuated upon AYA and Youngentob on June 18, 2008 is improper, insufficient and should be quashed. Alternatively and additionally, Counts VIII and IX should be dismissed with prejudice, in accordance with Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), 12(b)(6) and 12(b)(7), for the reasons set forth in Movants' Motions and this Memorandum.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   THE ILLINOIS STATE COURT PROCEEDINGS

On November 2, 2007, Beale filed a seven (7) count Verified Complaint against Revolution and ING ("Verified Complaint")(Dkt. 1) in the Circuit Court of Cook County, Illinois, Case No. 07-31969 ("Illinois State Court Proceedings"). The causes of action set forth in the Verified Complaint arise out of a dispute between Beale and Revolution over the performance of a Settlement Agreement dated December 12, 2005, ("Settlement Agreement") and a First Amendment to the Settlement Agreement dated June 26, 2007, ("Amendment"). (Dkt. 1) Copies of the Settlement Agreement and Amendment were attached to the Verified Complaint;[1] neither AYA nor Youngentob are parties to the Settlement Agreement or its Amendment. (Dkt. 1)

The Verified Complaint was executed by Beale, as well as one of his attorneys, on or about November 2, 2007; Beale certified, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, that the statements set forth in the Verified Complaint were true and correct. (Dkt. 1) Thus, Beale certified that the statements set forth in paragraph 28 of the Verified Complaint are true and correct. Paragraph 28 states:

"28. Further, on June 27, 2008, Beale told Ganz that he had learned from Revolution's own insurance agent, Stuart Youngentob, that if Revolution sent the initial premium payment for the Policy to ING on June 28, 2007 -- i.e. the date that Revolution received the $67,500 from Beale -- then the Acknowledgment would be issued by ING on the following day, June 29, 2007 -- i.e. the Friday before the deadline of Monday, July 2, 2007."[2]

---

[1] The Settlement Agreement and Amendment are attached as Exhibits A and B to the Amended Complaint (Dkt. 51).

[2] Neither AYA nor Youngentob were named as parties in the Illinois State Court Proceedings.

In paragraphs 30 and 31 of the Verified Complaint, Beale also certifies, under penalty of law, that Revolution's delay in executing the Amendment and making the initial premium payment to ING actually caused the delay in receipt of an Acknowledgment from ING. In paragraphs 45 and 80, Beale certifies that he "fully complied with the material terms" of the Settlement Agreement and Amendment or his performance thereof has been excused or waived due to Revolution's actions and/or by operation of law (Dkt. 1).

Also of note, a letter dated July 18, 2007 from Paula Cludray-Engelke of ING to counsel for Beale and Revolution ("ING Letter") is attached to the Verified Complaint. (Dkt. 1) The ING Letter confirms that ING received all documents and payments necessary to issue, assign and transfer ownership of the ING life insurance policy from Beale to Revolution and to designate Revolution as the sole beneficiary of the ING life insurance policy on or before July 2, 2007. The ING Letter also appears to confirm that ownership of the ING life insurance policy was transferred by Beale to Revolution on or before July 2, 2007. Coupled with the letter from Kathleen B. Martin of ING, Beale complied with the express requirements of Section 2(f) of the Amendment in that he irrevocably transferred ownership to Revolution no later than July 2, 2007 and then obtained written confirmation from ING of the transfer of ownership (Dkt. 1).

## B.     THE REMOVAL TO FEDERAL COURT

On December 7, 2007, Revolution and ING filed a Notice and Petition of Removal, pursuant to 28 U.S.C. §1441(a) and 28 U.S.C. §1332(a), alleging complete diversity of citizenship between the parties and claiming that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. (Dkt. 1) Thereafter, Revolution filed its Answer and Affirmative Defenses to the Verified Complaint and filed a Counterclaim against Beale (Dkt. 11); ING filed its Answer and Separate Defenses to the Verified Complaint (Dkt. 10); and Beale filed

an Answer and Affirmative Defenses to Revolution's Counterclaim (Dkt. 15) and filed First Amended Affirmative Defenses to Revolution's Counterclaim (Dkt 46).

After removal, and well prior to AYA and Youngentob being named as parties to these proceedings, Beale, Revolution and ING had an opportunity to conduct discovery, to exchange documents and information, and to obtain documents and/or information from entities and individuals who have not yet been named as parties to this proceedings, such as Bruce Schlesinger of JMB Insurance (collectively referred to as "Schlesinger"). The discovery practice engaged in by Beale and Revolution devolved into motion practice with respect to the exchange of documents and information (Dkt. 24, 28, 30, 32, 41, 42, 45, 55, 56) and with respect to the issuance of certain subpoenas, including, but not limited to, the issuance of a subpoena by Revolution to Schlesinger (Dkt. 26, 43, 47).

Beale moved to quash the subpoena issued to Schlesinger (Dkt. 26); according to Beale's Motion to Quash, Beale admitted that Schlesinger, Beale's long-time insurance agent, is "the insurance agent that assisted Beale with his efforts to obtain the subject policy". (Dkt. 26, ¶¶ 4 and 14)  Beale also admitted that the Acknowledgment may have been received a day late because Revolution failed to provide ING with the proper paperwork. (Dkt. 26, ¶12)

Notwithstanding Beale's verification of the truth and accuracy of the statements set forth in paragraph 28 of the Verified Complaint (Dkt. 1) and notwithstanding the judicial admission set forth in paragraph 14 of Beale's Motion to Quash (Dkt. 26), Beale moved for leave to file the Amended Complaint by claiming that he discovered that AYA and Youngentob "supposedly" were acting as Beale's insurance agent in connection with the issuance of the ING life insurance policy. (Dkt. 48, ¶ 5)  Regardless of the veracity of that statement, not a single duty alleged to have been breached by Movants caused either Revolution or Beale to breach or dishonor the Settlement Agreement and its Amendment or caused any of actual damage or injury to Beale.

## C.    THE AMENDED COMPLAINT

Beale was granted leave to file the Amended Complaint (Dkt. 50) and, on June 11, 2008,

filed a nine (9) count Amended Complaint with various exhibits attached in support (Dkt. 51).

Counts I-V and VII are directed solely against Revolution; Count VI is directed against

Revolution and ING; and Count VIII and IX are directed solely against Movants (Dkt. 51).   More

specifically, in Count VIII of the Amended Complaint, Beale attempts to assert a cause of action

for breach of fiduciary duty against AYA and Youngentob, his newly alleged insurance agents, in

connection with the procurement of the ING life insurance policy, even though Illinois prohibits

these types of actions for breach of fiduciary duty against insurance agents and even though

Maryland does not even recognize a separate cause of action for breach of fiduciary duty.[3]

In Count IX of the Amended Complaint, Beale opines that he is entitled to unspecified

economic losses from his newly alleged insurance agents, AYA and Youngentob, for negligence

in connection with the procurement of the ING life insurance policy which Beale was required to

procure under the Settlement Agreement and its Amendment, even though Exhibit F attached to

the Amended Complaint confirms that the ING life insurance policy was issued on June 6, 2007,

all documents necessary to transfer ownership of the ING life insurance policy from Beale to

Revolution were completed on or before June 29, 2007, and ING received and processed the

necessary documents to issue and transfer ownership of the from Beale to Revolution. (Dkt. 51)

In support of Counts VIII and IX, Beale alleges that AYA and Youngentob were retained

to act as his insurance agents in order to assist Beale in acquiring or obtaining an ING life

insurance policy. (Dkt. 51, ¶¶ 2, 19)[4]   However, since Beale claims only recently to have

discovered that AYA and Youngentob were acting as his insurance agents (Dkt. 48, ¶ 5), Beale

---

[3] 735 ILCS 5/2-2201(b), and Vinogradova v. SunTrust Bank, Inc., 162 Md.App. 495, 510-511, 875 A.2d 222, 230-231 (Md. Ct. Spec. App. 2005)(In affirming dismissal of fiduciary duty claim, Court holds that that Maryland does not recognize a separate action for breach of fiduciary duty.)

[4] AYA and Youngentob are not alleged to be agents of either Revolution or ING.

does not specifically allege that he ever engaged AYA or Youngentob to act as his insurance agents in the procurement of an ING life insurance policy or in the transfer of ownership of the ING life insurance policy from Beale to Revolution. Beale does not allege that Movants provided Beale with information regarding life insurance products from carriers other than ING. In fact, it does not appear that Beale ever alleges that he ever actually spoke or met with Movants regarding the ING life insurance policy or the Settlement Agreement or its Amendment.

AYA and Youngentob are not alleged to be parties to the Settlement Agreement or its Amendment. Beale never alleges that he ever provided Movants with a copy of the executed Settlement Agreement or its Amendment or that he spoke with Movants regarding any deadline set forth in the Amendment, which was not even executed by Revolution until June 29, 2007. (Dkt. 51, Ex. B of Amended Complaint) As Schlesinger, Beale's long-time insurance agent, was "the insurance agent that assisted Beale with his efforts to obtain the subject policy" (Dkt. 26, ¶¶ 4 and 14), Beale does not allege that he ever spoke with Movants regarding the ING life insurance policy, cancellation of that policy, transfer of ownership of that policy or its "free-look" period, either before or after its issuance on June 6, 2007.[5] Beale also never alleges that he actually attempted to cancel the ING life insurance policy before the "free-look" period ended.

Instead, the only claims attempted to be asserted against Movants purport to arise from the procurement of the ING life insurance policy. According to Exhibit F of the Amended Complaint, the ING life insurance policy was issued on June 6, 2007, a period in excess of three (3) weeks prior to July 2, 2007, and all documents necessary to effectuate the contemplated transfer of ownership were completed on or before June 29, 2007. In that regard, Beale fails to allege how the procurement of the ING life insurance policy, or any other alleged action or inaction by AYA or Youngentob, caused any actual injury to Beale, especially since Beale

_____

[5]The Amended Complaint is devoid of any allegations that Beale engaged Movants to obtain an Acknowledgment from ING, to obtain a Certificate of Membership Resolution from Revolution, or to assist with the transfer of ownership

alleges that Revolution prevented the timely issuance of the Acknowledgement (Dkt. 51, ¶ 39) and that Beale failed to tender a required payment of $115,000 to Revolution on or before July 2, 2007 (Dkt. 51, ¶44). In other words, regardless of whether Beale complied with the requirements of Sections 2(f) and 2(g) of the Amendment, Beale still failed to make the payment required by Section 2(i) of the Amendment and, therefore, still breached the Amendment (Dkt. 51, ¶46). As such, according to Section 2(j) of the Amendment, attached as Exhibit B to the Amended Complaint, Revolution was and is entitled to retain ownership of the ING life insurance policy and other payments made by Beale and to apply those payments and the value of the ING life insurance policy against the outstanding obligations owed by Beale to Revolution.

Nonetheless, amidst the labels, conclusions and formulaic recitation of elements littering Counts VIII and IX, Beale still opines that he suffered "substantial damages" (Dkt. 51, ¶¶105, 111). The vague and nebulous term "substantial damages", coupled with his unspecified requests for damages to be determined at trial (Dkt. 51, *See* prayers of relief for Counts VIII-IX), do not plausibly suggest that Beale has suffered any actual injury as the result of any alleged action or inaction on the part of Movants and do not raise the possibility of an actual injury to Beale above any "speculative level". Beale's failure places an unfair and undue burden not only upon Movants, but also on the Court which will have to decipher what the claim is and the factual grounds upon which it rests and is moored.

### D.    ATTEMPTED SERVICE OF PROCESS

On June 11, 2008, summons was issued to AYA and Youngentob. According to the Affidavits of Service executed by Beale's process server, Tom Chedester, service of process was attempted to be effectuated upon AYA and Youngentob, on or about June 18, 2008 at 8:00 p.m., via substituted service on Bonnie Youngentob at 7200 Wisconsin Avenue, Bethesda, Maryland 20814. (Dkt. 62, 63)  The Affidavits of Service do not indicate that the summons was

of the ING life insurance policy from Beale to Revolution prior to 3:00 p.m. on July 2, 2007.

ever personally served upon Youngentob, either individually or as the registered agent of AYA. The Affidavits of Service for AYA do not indicate that Bonnie Youngentob was a registered agent or officer or agent of AYA.  The Affidavits of Service do not indicate that a copy of the summons and complaint were ever mailed to Youngentob at his usual place of abode.

## III.    MOTION TO DISMISS

### A.    THE SERVICE OF PROCESS IS INSUFFICIENT AND IMPROPER.

The Court may dismiss a complaint for ineffective service of process pursuant to Rule 12(b)(5) if the plaintiff fails to establish that he or she has properly effectuated service pursuant to Rule 4. Bober v. Kovitz, Shifrin & Nesbit, 2005 WL 2271861, * 3-6 (N.D.Ill. 2005)(Dismissal of complaint where plaintiff failed to effectuate service in accordance with Rule 4); See Light v. Wolf, 816 F.2d 746, 751 (D.C.Cir.1987). "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." Id.[6]

As a preliminary matter, for the reasons set forth in Movant's Motion to Quash and its supporting affidavits, filed contemporaneously herewith, the substituted service of process attempted to be effectuated upon AYA and Youngentob on June 18, 2008 was insufficient and improper and should be quashed. Further, the statements set forth in the Affidavits of Service regarding Youngentob's usual place of abode are mere uncorroborated hearsay and should be stricken. Robinson Engineering Co. Pension Plan and Trust v. George, 223 F.3d 445, 451-452 (7th Cir. 2000).  As service of process has never been properly effectuated upon either AYA or Youngentob and as no alleged action or inaction of AYA or Youngentob in Illinois is alleged to

---

[6] See also Hilska v. Jones, 217 F.R.D. 16, 20 (D.D.C.2003)(holding that "the plaintiff carries the burden of establishing that he has properly affected service")

have caused any damage in to Beale, there is no personal jurisdiction over Youngentob or AYA and the claims should be dismissed in accordance with Rules 12(b)(5) and 12(b)(2).

**B.   BEALE FAILS TO PLEAD FACTS NECESSARY TO GIVE THE COURT JURISDICTION OVER THE CLAIMS ASSERTED AGAINST MOVANTS.**

A party who invokes the jurisdiction of a federal court must allege all facts necessary to give the court jurisdiction of the subject matter. Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987)(noting that it is the plaintiff's burden to establish that jurisdictional requirements have been met); Western Transp. Co. v. Couzens Warehouse & Distribs. Inc., 695 F.2d 1033, 1038 (7th Cir. 1982)("The party alleging jurisdiction must support its allegation with competent proof of jurisdictional facts.").[7] The court must dismiss a case without reaching the merits if it concludes that it has no jurisdiction. Shockley v. Jones, 823 F.2d 1068, 1070 n. 1 (7th Cir. 1987). It is abundantly clear that (1) parties cannot simply consent to jurisdiction by stating that there is diversity of citizenship of the parties and (2), if diversity of citizenship is properly pled, the statement shall identify the citizenship of each party to the litigation, including the state of incorporation and the state in which the corporation has its principal place of business if any party is a corporation. Thomas v. Guardsmark, LLC, 487 F.3d 531, 533 (7th Cir. 2007).

Although Beale alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, Beale does not allege his citizenship at the present, at the time that the ING life insurance policy was issued or at the time that ownership was transferred to Revolution (Dkt. 51, ¶4). Further, while Beale does allege that Revolution is a Virginia limited liability company, AYA is a Maryland limited liability company, and that ING is a Colorado corporation, Beale fails to allege the principal place of business of each of the corporate defendants. This is not enough to establish subject matter jurisdiction according the dictates of the above referenced Seventh Circuit caselaw. As subject matter jurisdiction has not been properly alleged in the Amended

---

[7] Further, once a defendant challenges diversity of citizenship, the plaintiff has the burden to establish that the basis for diversity exists and that diversity is complete. Ski Train Fire, 257 F.Supp.2d 717, 724-725 (S.D.NY 2003)

Complaint or established by Beale with respect to the claims asserted against Movants, Movants request dismissal of the claims pursuant to Rule 12(b)(1).

## C.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH THE RELIEF REQUESTED MAY BE GRANTED AGAINST MOVANTS.

### 1.    STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1966 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. Factual allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if it does not, the plaintiff pleads itself out of court. Id. 127 S.Ct. at 1965, 1972 n. 14.[8]

Moreover, a Court may consider the documents attached to the complaint as exhibits when ruling upon a motion to dismiss pursuant to Rule 12(b)(6). When a written instrument or exhibit attached to the complaint contradicts allegations in the complaint, the exhibit trumps the allegations. Graue Mill v. Colonial Bank & Trust, 927 F.2d 988, 991 (7th Cir. 1991); ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n. 8 (3rd Cir. 1994)(concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss for failure to state a claim). In fact, a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment. In re: Wade, 969 F.2d 241, 249 (7th Cir.1992).

---

[8] Killingsworth v HSBC Bank Nevada, 507 F.3d 614, 618-619 (7th Cir. 2007)(Observing that Bell Atlantic "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is

## 2.    ARGUMENT

### a.    COUNT VIII IS BARRED BY 735 ILCS 5/2-2201(b).

In Count VIII of the Amended Complaint, Beale attempts to assert an action for breach of fiduciary duty against his alleged insurance agents, AYA and Youngentob, in connection with the procurement of the ING life insurance policy. As Count VIII is alleged to arise from the sale, placement, procurement or cancellation of the ING life insurance policy, it is subject to and barred by the Illinois Insurance Placement Liability Act, 735 ILCS 5/2-2201(b), which states:

> No cause of action brought by any person or entity against any insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer, registered firm, or limited insurance representative of any money that was received as premiums, as a premium deposit, or as payment of a claim.

Furthermore, Count VIII does not set forth any factual or plausible basis for pursuing relief under the only exception to 735 ILCS 5/2-2201(b). More specifically, although paragraph 104 of the Amended Complaint attempts to label or characterize a claim for "misappropriation of money in the form of commissions", the Amended Complaint is devoid of any factual or plausible basis regarding the wrongful retention or misappropriation by AYA or Youngentob of any money that was received as premiums, as a premium deposit or as a payment of a claim. Additionally, there are no allegations that the procurement and transfer of ownership of the ING life insurance policy was not advantageous to Beale; on the contrary, Beale would not have "substantially performed all of the material terms" of the Settlement Agreement and its Amendment (Dkt. 51, ¶56), including Sections 2(f) and 2(g) of the Amendment and would not be entitled to any of the equitable relief requested in the Amended Complaint, but for the procurement and transfer of

plausible on its face.")

ownership of the ING life insurance policy. Further, Beale does not allege that any better or less expensive life insurance policy, which satisfied Revolution's "sole and unfettered discretion" as used in Exhibit B of the Amended Complaint, was even available to Beale through other carriers. As such, the cause of action for breach of fiduciary duty attempted to be asserted by Beale against his alleged insurance agents, AYA and Youngentob, does not fall within the limited exception to 735 ILCS 5/2-2201(b) and, therefore, should be dismissed with prejudice.

### b. COUNTS VIII AND IX ARE BARRED BY THE *MOORMAN DOCTRINE.*

As this Court is aware, the *Moorman Doctrine* is an economic loss doctrine[9] which was adopted by the Illinois Supreme Court in Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 88, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). With limited exceptions, the *Moorman Doctrine* prohibits plaintiffs from recovering in tort for purely economic losses. Id. In other words, "*Moorman* prevents the use of tort measures of damages in what are really contract cases." Decatur Memorial Hosp. v. Connecticut General Life Ins. Co., 990 F.2d 925, 928 (7th Cir.1993). With respect to tort claims for economic damages against insurance agents which arise in connection with the sale or procurement of an insurance policy, Courts consistently have dismissed those claims as barred by the *Moorman Doctrine*. Dahm v. First American Title Insurance Co., 2008 WL 1701901, *2-3 (N.D.Ill. 2008)(Rejecting commercial information supplier exception and dismissing of negligent procurement action as barred by economic loss doctrine); LeDonne v. Axa Equitable Life Ins. Co. 411 F.Supp.2d 957, 963-964 (N.D.Ill. 2006)(*Moorman Doctrine* bars claims against insurance agents as an insurance agent is considered to be in the business of providing non-informational products when selling an insurance policy); Nepomoceno v. Knights of Columbus, 1999 WL 66570, *11-12 (N.D.Ill. 1999).

Applying the foregoing guidelines to Counts VIII and IX of the Amended Complaint, Beale alleges that Movants were insurance agents in connection with the procurement of the ING life

insurance policy (Dkt. 51, ¶¶ 2, 19, 26). There are no allegations that Movants provided Beale with information about products from carriers other than ING. There are no allegations that Movants caused damage to person or property. Instead, Beale seeks economic losses under tort theories of negligence and breach of fiduciary duty against his newly alleged insurance agents with respect to the procurement or cancellation of the ING life insurance policy (Dkt. 51, *See* prayers of relief of Counts VIII and IX). As such, Counts VIII and IX are barred by the *Moorman Doctrine* and should be dismissed with prejudice.

### c. NO DUTY WAS BREACHED BY MOVANTS.

Neither AYA nor Youngentob were alleged to be parties to the Settlement Agreement or its Amendment. As such, neither AYA nor Youngentob are alleged to owe any duty with respect to the terms set forth in the Settlement Agreement and its Amendment. As neither AYA nor Youngentob owed such duties, neither AYA nor Youngentob can be held to have breached any duties arising from the performance of the Settlement Agreement and its Amendment. Instead, the only claims attempted to be asserted by Beale against AYA and Youngentob purport to arise from the procurement of the ING life insurance policy. According to the ING Letter, the ING life insurance policy was issued on June 6, 2007; thus, the ING life insurance policy was issued a period in excess of three (3) weeks prior to the date that Revolution actually executed the Amendment. As the Amendment was not executed at the time that the ING life insurance policy was issued, there was no duty to produce any documents to Revolution by July 2, 2007. Accordingly, Movants could not have breached any such duty in connection with or at the time of issuance of that policy.[10]

---

[9] The economic loss doctrine is recognized in Hawaii. City Exp., Inc. v. Express Partners, 959 P.2d 836 (Hawaii 1998).

[10] Beale does not allege that Movants were obligated to obtain an Acknowledgment from ING or to pay $115,000 to Revolution on or before 3:00 p.m. (Eastern) on July 2, 2007.

-13-

Moreover, as the exhibits attached to the Amended Complaint trump any unsupported and conflicting allegations set forth in the Amended Complaint, Counts VIII and IX should be dismissed because Movants could not have breached any fiduciary or common law duty owed to Beale.[11]  Even if Beale has standing to assert claims against Movants as a non-owner of that policy, Beale must concede that Movants could not have breached any duty with respect to the procurement of the ING life insurance policy since Beale alleges that he materially performed all of the material terms of the Settlement Agreement and its Amendment (Dkt. 51, ¶ 56); those terms included the procurement and transfer of ownership of the ING life insurance policy to Revolution (*See* Exhibit B of the Complaint) on or before July 2, 2007.  As such, Beale cannot argue, in good faith, that Movants negligently procured the ING life insurance policy, which was acceptable to Revolution and which enabled Beale to perform under the Settlement Agreement and its Amendment; otherwise, the allegations set forth in the Amended Complaint would not only be internally contradictory, but would also contradict Exhibit F.

### d.    MOVANTS CAUSED NO DAMAGE TO BEALE.

None of the purported duties alleged to have been breached by Movants caused an actual injury[12] to Beale and the claim of "substantial damages" to be determined at trial does not rise above a "speculative level" and is not moored in any facts.  In fact, as Beale admits that he failed to make a required payment of $115,000 to Revolution, Beale breached the Settlement Agreement and its Amendment regardless of the procurement of the ING life insurance policy.  As Beale has suffered no actual injury as the result of any action of AYA or Youngentob, Counts VIII and IX should be dismissed with prejudice.

### e.    BEALE HAS NO RIGHT TO RECOVER ATTORNEY'S FEES.

---

[11]Bell v. Lane, 657 F.Supp. 815, 817 (N.D.Ill.1987)(where exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations).

[12]For a claim to be ripe, the plaintiff must show that the alleged injury has in fact occurred.  In re Prudential Ins. Co. of America, 962 F.Supp. 450, 506 (D.N.J.1997), aff'd,148 F.3d 283 (3d Cir.1998), cert. denied, 67 U.S.L.W. 3364 (1999)

Illinois follows the "American Rule," which provides that absent statutory authority or a contractual agreement, each party must bear its own attorney fees and costs. <u>Morris B. Chapman & Associates, Ltd. v. Kitzman</u>, 193 Ill.2d 560, 572, 251 Ill.Dec. 141, 739 N.E.2d 1263, 1271 (2000). Beale has alleged no statutory or contractual basis which would entitle him to recover attorneys' fees from Movants so his claims should be stricken and dismissed.

## IV.    CONCLUSION

Simply stated, AYA and Youngentob have been dragged into a case in which they simply do not belong.  While Beale and Revolution may have issues with respect to the performance of their Settlement Agreement and its Amendment and may wish to spend their hard earned money by rattling sabers and waging wars, the undisputed fact of the matter is that Beale was able to procure the ING life insurance policy on June 6, 2007 and all of the necessary documents relating to the transfer of ownership of that policy were completed on June 29, 2006, according to Exhibit F.  As such, Beale has no viable claim against AYA and Youngentob under any scenario, especially since he has not even been damaged.  Accordingly, Movants respectfully request this Court to grant their Motions and to dismiss the claims asserted against them.

> Respectfully submitted,
> Arkin Youngentob Associates, LLC
> and Stuart Youngentob,


By:      /s/Martin Q. Ryan
         One of their Attorneys

Martin Q. Ryan
David A. Baugh
David R. Carlson
Baugh, Carlson & Ryan LLC
55 W. Monroe St., Suite 600
Chicago, IL 60603
312/759-1400

## Certificate of Service

Martin Q. Ryan, an attorney, hereby certifies that, on August 1, 2008, he caused a true and correct copy of the foregoing MEMORANDUM OF IN SUPPORT OF MOTION TO DISMISS OF ARKIN YOUNGENTOB ASSOCIATES, LLC AND STUART YOUNGENTOB to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated in the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.


/s/ Martin Q. Ryan
Martin Q. Ryan