# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH S. BEALE, | ) | |
| | ) | Case No. 07 CV 6909 |
| Plaintiff, | ) | |
| | ) | Judge Kocoras |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| REVOLUTION PORTFOLIO, LLC, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |
| | ) | |
| REVOLUTION PORTFOLIO, LLC, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH S. BEALE, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS ARKIN YOUNGENTOB ASSOCIATES,
## LLC AND STUART YOUNGENTOB'S MOTION TO DISMISS

Monte L. Mann
Richard G. Douglass
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
(312) 419-6900
Firm No. 91731
Attorneys for Plaintiff

Doc. #: 239344

Plaintiff Joseph S. Beale ("Beale"), by and through his attorneys, Monte L. Mann and Richard G. Douglass, submits this Response in Opposition to Defendants Arkin Youngentob Associates, LLC ("AYA") and Stuart Youngentob's ("Youngentob") Motion to Dismiss Counts VIII and IX of Plaintiffs First Amended Complaint for Specific Performance Injunction and Other Relief (the "Amended Complaint"), and states as follows:

## I.  SUMMARY

Beale filed this action when Defendant Revolution Portfolio, LLC ("Revolution") refused to perform under a settlement agreement, as amended (the "Settlement Agreement"). Among other things, Revolution asserted that it was not required to perform because a certain life insurance policy that was to be issued and transferred to Revolution pursuant to the Settlement Agreement (the "Policy") was transferred a day late. Then, based on the "late" insurance policy, Revolution refused to provide a release of lien to the closing agent for a loan, out of which Revolution was to receive a payment of $115,500. Because Revolution would not tender the release, the $115,500 was placed in escrow instead of being paid to Revolution. Then, Revolution claimed that the failure to pay the $115,500 was a second default, and Revolution refused to perform at all. Immediately thereafter, Revolution instituted proceedings to foreclose on the lien it was supposed to have released.

As alleged in the original Complaint, Revolution's claims of default are nonsense because they were either caused by Revolution, were immaterial or both. Accordingly, Beale filed this action seeking to enforce the Settlement Agreement. During the course of written discovery, Revolution produced documents showing that AYA and Youngentob, in direct violation of their fiduciary and statutory duties to Beale as insurance agents, knowingly participated in Revolution's scheme to set up the phoney default concerning the Policy, which led to all the others. Beale timely filed his

Amended Complaint to add AYA and Youngentob as additional defendants based on their obvious violations of their duties to Beale.

AYA and Youngentob (collectively, "Movants") now seek dismissal of the Amended Complaint on three alleged grounds: (1) improper service of process; (2) failure to sufficiently identify the citizenship of all the parties; and (3) failure to state a claim. Movants have since waived service of process, thus rendering the first issue moot. (See Dk. 78 & 79.) As for the second issue, Plaintiff is willing to file a Second Amended Complaint setting forth additional allegations of fact regarding his citizenship and the place of business of each Defendant -- the items AYA and Youngentob claim are missing. This amendment will render the second issue moot. Accordingly, the only disputed issue remaining for determination by this Court is whether Counts VIII and IX of the Amended Complaint are sufficient to state a claim against AYA and Youngentob. As will now be shown, each of the Counts states a valid claim, and the Motion to Dismiss pursuant to Rule 12(b)(6) should be denied.

## II.　ARGUMENT

### A.　Legal Standard

Federal Rule of Civil Procedure 12(b)(6) tests only the legal sufficiency of a plaintiff's complaint. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). In ruling on a motion to dismiss pursuant to Rul 12(b)(6), a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir.1993); Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir.1991). Viewed in this light, a complaint need only convey enough information to allow the defendant to

understand the gravamen of the complaint. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir.1999). So long as the allegations rise above the level of mere speculation, the motion to dismiss should be denied. E.g., First Franklin Fin. Corp. v. Amerihome Mtg. Co., No. 08 C 1809, 2008 WL 2622829, at *2 (N.D. Ill. June 30, 2008).

### B. Count VIII States A Claim For Breach Of Fiduciary Duty

Under Illinois law, an insurance agent working to procure a policy of insurance for a potential insured has a fiduciary duty to the potential insured. E.g., DOD Techs. v. Mesirow Ins. Servs., Inc., 381 Ill. App. 3d 1042, 1047 (1st Dist. 2008). Count VIII of the Amended Complaint alleges that AYA and Youngentob acted as Beale's insurance agents, but repeatedly breached their fiduciary duties to Beale, and conspired with Revolution to deprive Beale of his rights under the Policy and the Settlement Agreement. Movants argue that this claim is barred by the Illinois Insurance Placement Liability Act, 735 ILCS 5/2-2201 (the "Insurance Placement Act").

The first section of the Insurance Placement Act -- conspicuously ignored by Movants in their Motion -- creates a statutory duty on the part of insurance agents to act with ordinary due care and skill in connection with matters involving the procurement or placement of insurance. 735 ILCS 5/2-2201(a). The second section of the Insurance Placement Act places some limitations on the civil actions that may be brought against an insurance agent for breach of fiduciary duty. 735 ILCS 5/2-2201(b). This section does not eliminate an insurance agent's fiduciary duty. Id.; DOD Technologies, 381 Ill. App. 3d at 1049. Rather, it says that no action for breach of fiduciary duty may be brought by the insured unless the "conduct upon which the cause of action is based involves the wrongful retention or misappropriation . . . of any money that was received as premiums, as a

3

premium deposit, or as payment of a claim." 735 ILCS 5/2-2201(b). Any action based on conduct falling within this exception is still actionable.

This misappropriation exception has been interpreted broadly to avoid unjust results. DOD Technologies, 381 Ill. App. 3d at 1049. For example, in DOD Technologies an insurance agent had secret arrangements with certain insures to receive bonuses for selling their policies. Id. The plaintiff alleged that, as a result of the undisclosed arrangements, the agent steered the plaintiff to purchase a policy that was not the most advantageous to the insured. Id. The defendant argued that this claim was barred by the Insurance Placement Act because the defendant had not "'diverted funds intended to pay premiums.'" Id. at 1048. The Appellate Court disagreed. In reaching its conclusion, the court noted that Illinois law will not presume that the legislature intended to create an unjust result in drafting a statute, and that allowing the defendant to escape liability by narrowly interpreting the misappropriation exception would be unjust. Id. at 1049. Accordingly, the court reversed the trial court's dismissal of the action, stating: "We hold that the placement of policies with companies that were not the most advantageous for the consumers constitutes 'the wrongful . . . misappropriation' of money received as premiums." Id.

AYA and Youngentob claim that Count VIII does not fall within the misappropriation exception. In making this argument, however, they fail to address the actual allegations of the Amended Complaint, choosing instead to make vague conclusory generalizations. Yet, when the contents of the Amended Complaint are considered, it is clear that Count VIII falls within the exception.

Like the complaint in DOD Technologies, the Amended Complaint in this case alleges that AYA and Youngentob were Beale's insurance agents, and that they placed the Policy (and caused

4

it to be transferred to Revolution) despite their knowledge that doing so was disadvantageous to Beale -- all so that they could protect their commissions. Specifically, the Amended Complaint alleges, in pertinent part:

> 97. As agents of Beale, AYA and Youngentob each owed a fiduciary duty to Beale to exercise the utmost good faith, act with due care, and conduct themselves with absolute loyalty to Beale.
>
> 98. While AYA and Youngentob were supposed to be working as Beale's fiduciary, they were instead taking direction from Revolution, providing information to Revolution that was withheld from Beale and otherwise acting on behalf of Revolution.
>
> 99. Among other things, on or about June 29, 2007, AYA and Youngentob knew that Revolution had failed to provide all of the material necessary to obtain the Acknowledgment by the deadline set forth in the Amendment, and that Revolution was going to declare a default under the Amendment as soon as the Policy was transferred.
>
> 100. AYA and Youngentob withheld that information from Beale. They withheld the information because they knew that Beale had a right to rescind the Policy, which Beale would exercise if he knew that Revolution was going to declare a default, and which would cause AYA and Youngentob to lose its commission on the Policy.
>
> 101. In fact, AYA and Youngentob had multiple communications with Revolution about Beale's right of rescission. At Revolution's request, Youngentob had discussions with ING without Beale's knowledge about whether Beale's right of rescission would survive the transfer of the Policy to Revolution. Youngentob discovered that, once the Policy was transferred, Beale could not rescind the Policy, and AYA and Youngentob's commission would be assured.
>
> 102. Youngentob relayed this information to Revolution, but withheld it from Beale. Thus, on or before July 2, 2007, Youngentob knew: (a) that the Acknowledgment would not be issued on time; (b) that Revolution was going to declare a default once the Policy was transferred; (c) that Beale could rescind the Policy before the transfer; and (d) that Beale would lose the right of rescission once the Policy was transferred. Youngentob also knew that, if the Policy was rescinded, AYA and Youngentob would lose their commission.

> 103. In order to protect their commission, AYA and Youngentob withheld the material information from Beale to his great financial detriment, and otherwise acted in preference of their own interests and the interests of Revolution over the interests of Beale.

(Amended Complaint, ¶¶ 97-103.) Thus, like the brokers in <u>DOD Technologies</u>, AYA and Youngentob concealed vital information from their client. Further, like the brokers in <u>DOD Technologies</u>, AYA and Youngentob placed a policy despite their knowledge that it was disadvantageous to their client. Specifically, they knew that the only reason Beale wanted to place the Policy was to induce Revolution to perform its obligations under the Settlement Agreement, and they knew that Revolution was not going to do so. But, they placed the Policy anyway, despite their knowledge that the purpose of the Policy would be defeated. This alone is enough to establish a breach of fiduciary duty within the exception to the Act and the Motion to Dismiss should be denied for this reason. But there is more.

Beale alleges that, after the Policy was placed, AYA and Youngentob conspired with Revolution to destroy Beale's ability to rescind it. (<u>E.g.</u>, Amended Complaint, ¶¶ 100, 109.) Worse, they did so to ensure that they would receive their commission. (<u>Id.</u>) AYA and Youngentob knew that Revolution was not going to perform under the Settlement Agreement once the Policy was transferred. (<u>Id.</u> ¶ 99.) And they knew that Beale would lose his right to rescind the Policy once it was transferred. (<u>Id.</u> ¶ 101.) But AYA and Youngentob intentionally withheld that information from Beale and, instead, <u>told it to Revolution</u>. (<u>Id.</u> ¶¶ 101-02.) They then proceeded with the transfer, destroyed Beale's right to rescind, and collected their paycheck. (<u>Id.</u> ¶ 103.) To allow AYA and Youngentob to now hide behind the Insurance Placement Act would sanction an unjust result that is even more shocking and offensive than what was before the <u>DOD Technologies</u> court. In sum,

the allegations of Count VIII fall squarely within the misappropriation exception, and the claim is not barred.

  **C.** **The Moorman Doctrine Does Not Apply To Counts VIII or IX**

Next, AYA and Youngentob argue that the Moorman doctrine bars Beale's claim for breach of fiduciary duty (Count VIII) and his negligence claim (Count IX). Actually, clear Illinois authority demonstrates that neither claim is subject to the Moorman doctrine.

  **1.** **Beale's Fiduciary Duty Claim Is Not Barred**

The Moorman Doctrine places limits on certain tort claims that seek to recover purely economic losses. Moorman Mfg. Co. v. Nat'l Tank Co., 91 Ill.2d 69, 88 (1982). It does not bar all tort claims. Id. More specifically, the Illinois Appellate Court has expressly held that the Moorman doctrine does not apply to claims for breach of fiduciary duty against an insurance agent. Lake County Grading Co. v. Great Lakes Agency, Inc., 226 Ill. App. 3d 697, 703 (2nd Dist. 1992). Count VIII of the Amended Complaint alleges just such a claim. Therefore, the Moorman doctrine does not bar it. Id.

  **2.** **Beale's Negligence Claim Is Not Barred Because It Is Based On AYA and Youngentob's Statutory Duty Of Care**

As noted above, the Insurance Placement Act imposes a statutory duty on insurance agents to exercise ordinary care and skill in connection with their procurement or placement of an insurance policy. 735 ILCS 5/2-2201(a). Specifically, the Act provides: "An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." Id.

Count IX of the Amended Complaint alleges that Movants violated this statutory duty by failing to act with ordinary skill and care in procuring the Policy at issue.

The Moorman doctrine does not apply to tort claims where, as here, the duty that was allegedly breached is extracontractual. E.g., Lake County Grading Co., 226 Ill. App. 3d at 702. Thus, for example, the Moorman doctrine does not apply to bar claims for malpractice against an attorney because the ethical and fiduciary duties an attorney owes to a client arise independently of their contract. Id.

Applying this principal, the Illinois Appellate Court has held that the Moorman doctrine does not apply to claims for negligent breach of the statutory duty of an insurance agent under the Insurance Placement Act. Country Mut. Ins. Co. v. Carr, 366 Ill. App. 3d 758, 769 (4th Dist. 2006) appeal allowed Country Mut. Ins. Co. v. Vogelzang, 222 Ill.2d 569 (2006), vacated by settlement In re Country Mut. Ins. Co., 889 N.E.2d 209 (Ill. 2007). The reasoning of Country Mutual was later adopted by another Illinois Appellate Court in holding that, because consumer fraud claims arise by statute, they too are not barred by the Moorman doctrine. Golf v. Henderson, 376 Ill. App. 3d 271, 274 (1st Dist. 2007). Based on the foregoing, the Moorman doctrine does not apply to Beale's claim for breach of the statutory duty of care imposed upon AYA and Youngentob by the Insurance Procurement Act.

Further, the cases cited in the Motion to Dismiss at page 12 are inapposite. Not one of them addressed the statutory duty contained in the Insurance Procurement Act, or the Moorman doctrine's application thereto. In fact, contrary to Movants' representations of these cases, three of the four did not involves claims against insurance agents subject to the Insurance Procurement Act. Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co., 990 F.2d 925 (7th Cir. 1993) (claim was against an insurer

8

directly); Dahm v. First Am. Title Ins. Co., No. 06 C 5031, 2008 WL 1701901 (N.D. Ill. April 9, 2008) (against mortgage broker); Nepomoceno v. Knights of Columbus, No. 96 C 4789, 1999 WL 66570 (N.D. Ill. Feb. 8, 1999) (also against insurer). Ironically, in the only case that does involve an insurance agent, the court upheld a statutory claim under the consumer fraud act -- despite the defendant's successful Moorman doctrine challenge to the common law negligence claims. LeDonne, 411 F. Supp. 2d at 964-65. Thus, AYA and Youngentob's own legal authority supports the viability of Beale's statutory negligence claim under the Insurance Procurement Act. Thus, the Court should deny the Motion to Dismiss.

### D. Movants Breached Their Duties To Beale

AYA and Youngentob next argue that they did not breach any duty to Beale but, again, do not actually analyze any of the allegations of the Amended Complaint. Contrary to their position, the Amended Complaint is replete with allegations of how AYA and Youngentob breached their fiduciary duties and their statutory duties of ordinary skill and care. Among other things, the Amended Complaint alleges the following:

- "In violation of their duties, Youngentob and AYA concealed information from Beale, acted at the direction of -- and on behalf of -- Revolution instead of Beale, and failed to disclose to Beale problems that Youngentob and AYA knew would delay the issuance of the policy --- that were caused by Revolution -- which Revolution now contends are the basis for its non-performance under the amendment. Youngentob and AYA thus assisted Revolution in facilitating its scheme against Beale and, in so doing, breached their duties to Beale." (Am. Compl., ¶ 2.)

- "[B]ehind Beale's back, AYA and Youngentob told Revolution that they had certain relationships with ING that they could use to obtain a cheaper life insurance policy for Beale. As a result, Revolution would not accept the life

9

  insurance policy procured by Beale and JMB Insurance." (<u>Id.</u> at ¶ 21.)

- "[O]n or about April 9, 2007, AYA and Youngentob, again behind Beale's back, contacted Revolution to provide it with options for the policy structure that they would propose for Beale. AYA and Youngentob continued to secretly communicate with Revolution and its counsel over what policy terms to pursue for approximately two weeks. During this time, and for several days thereafter, AYA and Youngentob refused to respond to Beale's other insurance agent." (<u>Id.</u> at ¶ 24.)

- "[O]n or about June 29, 2007, AYA and Youngentob realized that, in addition to the materials already provided, ING would also require an additional document signed by Revolution evidencing the authorization of Revolution's signature on the Policy Transfer documents. Had AYA and Youngentob exercised ordinary care, they would have known of this problem earlier so that it could have been corrected and the Acknowledgment would have been issued in a timely fashion. Further compounding this breach of duty to Beale, AYA and Youngentob did not advise Beale that the essential document was still missing. AYA and Youngentob did, however, tell Revolution." (<u>Id.</u> at ¶ 40.)

- "AYA and Youngentob did not provide the final required document to ING until 3:50 p.m. on the due date. Thus, AYA, Youngentob and Revolution all knew that there was no way for the Acknowledgment to be issued on July 2, 2007. No one told Beale." (<u>Id</u> at ¶ 41.)

- "As a result of Revolution's delay in paying the initial Policy premium, and Revolution's, AYA's and Youngentob's delay in providing the required paperwork to ING, the Acknowledgment was not issued on July 2, 2007. Rather, it was issued one day late -- on July 3, 2007." (<u>Id.</u> at ¶ 42.)

- "While AYA and Youngentob were supposed to be working as Beale's fiduciary, they were instead taking direction from Revolution, providing information to Revolution that was withheld from Beale and otherwise acting on behalf of Revolution." (<u>Id.</u> at ¶ 98.)

- "AYA and Youngentob withheld this information from Beale. They withheld the information because they knew that Beale had a right to rescind the Policy, which Beale would exercise if he knew that Revolution was going to declare a default, and which would cause AYA and Youngentob to lose its commission on the Policy." (Id. at ¶ 100.)

- "In order to protect their commission, AYA and Youngentob withheld the material information from Beale to his great financial detriment, and otherwise acted in preference of their own interests and the interests of Revolution over the interests of Beale." (Id. at ¶ 103.)

- "AYA and Youngentob: (a) failed to identify all of the materials required to be provided to ING in time for the Policy and Acknowledgment to be issued in a timely fashion; (b) failed to provide competent counsel and service to Beale; (c) failed to advise Beale regarding his rights to rescind the Policy; (d) failed to advise Beale regarding the impact that the transfer of the Policy would have on his right to rescind; (e) secretly took direction from Revolution and its counsel; (f) failed to disclose all material information to Beale; (g) withheld information from Beale in an effort to protect their commission; and (h) otherwise failed to exercise ordinary care and skill in the procurement of the Policy for Beale." (Id. at ¶ 109.)

Of course, all of these allegations must be taken as true when evaluating the Motion to Dismiss. First Franklin Fin. Corp., 2008 WL 2622829, at *1. And they clearly -- and in greater detail than necessary -- allege that AYA and Youngentob breached their fiduciary and statutory duties to Beale. Nevertheless, AYA and Youngentob advance two arguments which they say disprove Beale's allegations of breach. These arguments are without merit.

First, AYA and Youngentob assert that they could not have breached the Settlement Agreement. So what? The Amended Complaint alleges that AYA and Youngentob breached their

fiduciary duties to Beale (Count VIII) and their statutory duties to Beale (Count IX). Their argument about whether they breached the Settlement Agreement is irrelevant.

Second, AYA and Youngentob claim that, because Beale substantially performed the Settlement Agreement by, among other things, procuring and transferring the Policy to Revolution, they could not have breached their duties to him in connection therewith. One has nothing to do with the other. AYA and Youngentob breached their duties to Beale by conspiring with Revolution and playing along with Revolution's ploy to cause a minor delay in performance, and then refuse to perform the Settlement Agreement. Despite their knowledge of this plan, and despite that they knew Beale would lose his right of rescission upon transfer of the Policy, AYA and Youngentob did not tell Beale and, instead, protected their commissions. Beale thus lost the Policy and lost the benefits of the Settlement Agreement.[1] The fact that Beale (correctly) claims that he substantially performed his obligations to Revolution does not change the fact that AYA and Youngentob breached their duties to Beale.

### E. AYA and Youngentob Caused Damage To Beale

Next, AYA and Youngentob argue that, because Beale breached the Settlement Agreement, nothing they did could have caused him harm. Of course, Beale does not admit that he breached the Settlement Agreement. Moreover, Beale alleges that any breach in connection with the transfer of the Policy was caused by Revolution and AYA and Youngentob. (E.g., Amended Complaint, ¶ 42.)

---

[1] AYA and Youngentob also poke fun at Beale for earlier alleging that they were Revolution's insurance agents. (Mot., pp. 3-4.) These earlier allegations are irrelevant to the Motion to Dismiss because: (a) AYA and Youngentob do not actually deny that they were Beale's insurance agents; (b) regardless of Beale's earlier understanding, they really were his insurance agents under Illinois law; and (c) in any event, as the Court knows, alternative allegations are expressly allowed under the federal rules.

Further, Beale specifically has alleged that AYA and Youngentob intentionally caused Beale to lose the right to rescind the Policy so that they could protect their commission. (Id. ¶¶ 99-104.) Thus, Beale has alleged that Movants caused him to lose the Policy <u>and</u> the benefits of the Settlement Agreement.

### F. Beale May Seek Attorney's Fees Pursuant To The Court's Inherent Ability To Sanction Defendants Bad Faith

It has uniformly has been held that an award of attorneys' fees can be assessed because of the oppressive conduct or bad faith of the opposing litigant. <u>E.g.</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991). In <u>Chambers</u>, the Supreme Court expressly upheld the authority of trial courts to award attorney's fees based on bad faith despite the losing party's argument that there was no contractual or statutory basis therefor. <u>Id.</u> The Amended Complaint alleges that Movants conspired with Revolution to set up a fake default under the Settlement Agreement, which Revolution could use (and has used) to deny its obligations thereunder. This has forced Beale to bring this action, and to defend frivolous suits in other jurisdictions. Such obstinate conduct may be sanctioned by an award of attorney's fees. <u>E.g.</u>, <u>Sierra Club v. U.S. Army Corps of Engineers</u>, 776 F.2d 383, 390 (2nd Cir.) <u>cert.</u> <u>denied</u> 475 U.S. 1084 (1985); <u>Fairley v. Patterson</u>, 493 F.2d 598,m 605-06 (5th Cir. 1974). Accordingly, there is a proper basis for Beale's request for attorney's fees.

### III.   <u>CONCLUSION</u>

Contrary to their feigned innocence, AYA and Youngentob are right where they belong. They were in the thick of it while Revolution was setting up its phoney default, and they willingly played along in obvious violation of their duties to Beale. While Beale was originally not aware of their complicity, discovery revealed their role in the scheme, and Beale promptly filed his Amended

Complaint. AYA and Youngentob's accusation that, by doing so, Beale is "rattling sabers and waging wars" rings hollow. It was AYA and Youngentob who helped Revolution set up its farce of a defense to this action in the first place.

WHEREFORE, Plaintiff Joseph S. Beale respectfully requests that the Court enter an Order as follows:

    A.    Denying as moot the Motion to Dismiss for improper service of process pursuant to Rule 12(b)(2) and 12(b)(5);

    B.    Granting Plaintiff leave to file a Second Amended Complaint containing additional allegations regarding his citizenship and the places of business of the Defendants;

    C.    Denying the Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6); and

    D.    Granting him such other and further relief as is appropriate.

    Respectfully submitted,

    JOSEPH S. BEALE


    By:   /s/ Monte L. Mann
          One of His Attorneys

## CERTIFICATE OF SERVICE

Monte L. Mann, an attorney, hereby certifies that, on September 10, 2008, he caused a true and correct copy of the foregoing ***Plaintiff's Response in Opposition to Defendant Arkin Youngentob Associates LLC and Stuart Youngentob's Motion to Dismiss*** to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to receive electronic filings as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                /s/ Monte L. Mann
                Monte L. Mann